2/4/2026 9:12 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Ana Henriquez Quesada

CAUSE NO. D-1-GN-26-000754 _____

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | 459TH, DISTRICT COURT |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

TO THE HONORABLE TRAVIS COUNTY DISTRICT COURT:

Plaintiff, Texas Precious Metals, LLC ("Texas Precious Metals"), files this Verified Original Petition and Application for Temporary Restraining Order and Injunctive Relief and states as follows:

## INTRODUCTION

In 2015, the Texas Legislature created the Texas Bullion Depository (the "Agency") as an agency of the Texas Comptroller of Public Accounts. The Legislature authorized the Agency to do one thing and one thing only—**store** precious metals such as gold and silver. In late 2025, however, the Agency began acting as a precious metal mint. Inexplicably, given its limited statutory mandate, the Agency has started an entirely new line of business—producing, marketing, and selling gold and silver coins and other Agency-branded precious metals products. These products feature the same mint mark used by Texas Precious Metals to authenticate its own products, a mark for which Texas Precious Metals owns an incontestable federal trademark.

But the Agency has no statutory authority to **manufacture, promote, and sell** precious metals products. By doing so, it is de facto setting itself up as a mint and precious metals dealer. It is acting ultra vires and in direct competition with Texas Precious Metals and other bullion dealers. What is more, the Agency markets the precious metals products at issue as a "new program" and being officially authorized by the State. By definition, the products cannot be official because the Agency has no authority to mint, market, or sell them or to represent itself as a mint. The harm caused by the Agency's unauthorized conduct is imminent and irreparable, and there is no adequate remedy at law. The Agency must immediately be restrained and enjoined from unlawfully minting, promoting, and selling precious metals.

## DISCOVERY CONTROL PLAN

Texas Precious Metals intends to conduct this case under a Level 3 discovery plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

## PARTIES

1.      Plaintiff Texas Precious Metals is a Texas limited liability company with its principal place of business located at 959 Hwy 95N, Shiner, Texas 77984.

2.      Defendant Kelly Hancock is Acting Texas Comptroller of Public Accounts (the "Comptroller"). The Comptroller's principal office is located at 111 East 17th Street, Austin, Texas 78774. The Comptroller may be served through the Texas Secretary of State.

3.      Defendant Macy Douglas ("Administrator") is Administrator of the Agency, which is an agency of the Comptroller's Office. The Administrator's principal office is located at 111 East 17th Street, Austin, Texas 78774. The Administrator may be served through the Texas Secretary of State.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under Article V, § 8 of the Texas Constitution and Chapter 37 of the Texas Civil Practice and Remedies Code because Texas Precious Metals seeks non-monetary relief in the form of a declaratory judgment and a temporary and permanent injunction against Defendants for actions taken without legal authority.

5.      Venue is proper in this Court pursuant to Tex. Civ. P. & Rem. Code 15.002, because Defendants' principal office is in Travis County and a substantial part of the events giving rise to the claims asserted herein occurred in Travis County.

## CONDITIONS PRECEDENT

6.      All conditions precedent to Texas Precious Metals' claims for relief have been performed, have occurred, or have otherwise been met, waived, or excused.

## JURY DEMAND

7.      Texas Precious Metals demands a trial by jury on all issues triable in this lawsuit.

## FACTS

**I.      Since 2011, Texas Precious Metals has Marketed and Sold Gold and Silver**

8.      Texas Precious Metals is a subsidiary of Kaspar Companies, a 128-year old, fifth-generation family business in Shiner, Texas with deep Texas roots. Its longstanding connections to the State of Texas have been at the heart of its business for decades.

9.      For more than 15 years, Texas Precious Metals has become a leader in the precious metals industry, having processed over $4 billion in client transactions and shipped more than 200,000 orders to all 50 states. As one example of its industry leadership, in 2025 Texas Precious Metals became an Affiliate Member of the London Bullion Market Association (the "LBMA"). The LBMA is the leading global trade association for the precious metals industry. Among other

things, the LBMA sets the benchmark spot prices for precious metals that financial institutions and industry participants use worldwide.

10. At the core of Texas Precious Metals' branding is a series of marks featuring a silhouette of the State of Texas (the "Mint Mark"), which functions as a central source identifier for Texas Precious Metals' products and appears as follows:



11. In the precious metals industry, a "mint mark" is a letter, symbol, or inscription on precious metals products indicating their source, purity, and authenticity. Texas Precious Metals consistently uses its Mint Mark across its product line.

12. For example, one of Texas Precious Metals' signature products is a series of "rounds"—an industry term for privately minted, non-legal tender medallions resembling a coin, made with either gold or silver—bearing Texas-themed imagery (known as "Texas Rounds"). These products are widely distributed and prominently marketed by Texas Precious Metals, and all feature Texas Precious Metals' Mint Mark. Below are examples of the 2024 Gold Texas Round and the 2019 Silver Texas Round, featuring the Mint mark:

 

 

13.     The signature gold and silver Texas Rounds—as well as the Mint Mark—are at the heart of the nationwide brand recognition and popularity for Texas Precious Metals and serve as key source identifiers for its precious metals products.

14.     Texas Precious Metals also sells a collection of rodeo-themed silver rounds (the "Pro Rodeo Rounds"). As shown in the examples below, the Pro Rodeo Rounds also feature Texas Precious Metals' Mint Mark:

 



15.     Another category of products sold by Texas Precious Metals is silver and gold bars. For example, below are images of its Texas Mint Silver Bars, which prominently feature the Mint Mark on both sides:



16.     Texas Precious Metals also sells a collection of state-themed gold notes, which are thin, lightweight banknote-style bills made with genuine 24-karat gold and protected by a durable polymer. Gold notes are a newer and emerging category within the precious metals industry that are distinct from conventional bullion bars, rounds, and coins. The Dallas-Fort Worth Texas Gold Note features Texas Precious Metals' Mint Mark, as shown in the image and excerpt below:





17.     Texas Precious Metals also prominently features its Mint Mark on its product packaging, as shown below, thereby reinforcing consumer recognition of the Mint Mark as an indicator of Texas Precious Metals' source and quality:



18.     Texas Precious Metals also owns a federal trademark registration for Texas Mint, and it operates a minting division known as Texas Mint, through which it designs and offers precious metals products to the public. Texas Precious Metals markets and sells those products nationwide through the Texas Mint website, as shown below, and the site prominently features Texas Mint branding that consumers recognize as identifying Texas Precious Metals as the source of those minted products.





**II.     In 2015, the Texas Legislature Created the Agency to Do One Thing and One Thing Only—Store Precious Metals**

19.     In 2015, the Texas Legislature enacted H.B. 483 to establish the Agency and allow the State, state agencies, and private individuals to **store** precious metals in Texas.  *See* Office of the Texas Governor, *Governor Abbott Signs Legislation To Establish State Bullion Depository* (Press Release, June 12, 2015).

20.     H.B. 483 was codified at Texas Government Code Chapter 2116, which established the Agency "as an agency of this state in the office of the comptroller." Tex. Gov't Code § 2116.002(a).

21.     Chapter 2116 authorizes the Agency "to serve as the custodian, guardian, and administrator of certain bullion and specie that may be transferred to or otherwise acquired by this state or an agency, a political subdivision, or another instrumentality of this state." *Id*. at § 2116.002(b). In other words, the Agency is authorized to store precious metals.

22.     To fulfill its purpose, the Agency operates a 40,000-square-foot facility designed exclusively for the storage of precious metals.

**III.  In 2025, the Agency Began Acting as a Mint and Designing, Marketing, and Selling Precious Metals Featuring the Mint Mark**

23.     On December 29, 2025, Defendants announced "a new program . . . that offers authorized commemorative precious metal products to investors and collectors." Rather than simply store precious metals, the Agency now acts as a mint and designs, markets, and sells "commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes" ("State of Texas Coins"). On information and belief, based on communications with the Agency, the Agency has produced approximately 46,000 State of Texas Coins to date.



24.     The Agency also designs, markets, and sells "a series of 24K commemorative gold notes . . . , each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate" ("Redbacks"). The Redbacks are available in three weights: 5 cg, 20 cg, and 100 cg.



25.     The State of Texas Coins and the Redbacks are "crafted under the direction of the Texas Bullion Depository and the state of Texas," according to a press release issued by the Comptroller. Defendants advertise and market the State of Texas Coins and the Redbacks prominently on the Agency's website:



26.     Defendants sell the State of Texas Coins and the Redbacks by linking the Agency's website to a third party, United States Gold Bureau ("USGB"), a direct competitor of Texas Precious Metals.



27.     Defendants do not currently sell the State of Texas Coins and the Redbacks through any other party, though the Agency advertises on its website its plans to expand sales, including through direct purchases from the Agency itself.[1]

> **Where To Buy**
>
> The Depository seeks to make State of Texas Precious Metal products available worldwide, and at competitive prices.  Direct purchases from the Depository will soon be available on this website.

28.     Defendants' State of Texas Coins and Redbacks compete—intentionally and directly—with Texas Precious Metals' products, including the Texas Rounds and gold notes. Defendants are marketing to Texas Precious Metals' exact customer base, *i.e.*, purchasers of gold and silver rounds and 24-karat gold deposited in a durable polymer, with an interest in Texas-themed products. That is unfair competition, not only because Defendants have no authorization to sell precious metals, but also because Defendants misrepresent the State of Texas Coins and Redbacks as carrying the State's official imprimatur. The Comptroller even described the coins in in a Request for Proposal ("RFP No. 237b") as "official state of Texas numismatic and commemorative coins."

29.     Compounding the harm of unauthorized competition, the State of Texas Coins also depict Texas Precious Metals' Mint Mark, thereby making Defendants' products confusingly similar to Texas Precious Metals' Texas Rounds:

---

[1] *See* https://texasbulliondepository.gov/where-to-buy, last visited February 4, 2026.

| **Texas Precious Metals' Texas Rounds** | **Defendants' State of Texas Coins** |
|---|---|



30.　And by their very nature of being banknote-style bills made with 24-karat gold deposited in a durable polymer, Defendants' Redbacks are also confusingly similar to Texas Precious Metals' gold notes and also feature Texas Precious Metals' Mint Mark:

**Defendants' Use of Texas Precious Metals' Mint Mark with Excerpt**





31.     These facts reflect a direct and unauthorized effort to capture market share in the precious metals retail space using the State's credibility and perceived endorsement—advantages no private competitor can match. The facts further represent Defendants' deliberate attempt to improperly use Texas Precious Metals' goodwill and reputation to create confusion in the marketplace. Not only is this unjust, it is beyond the scope of Defendants' authority.

32.     The State of Texas Coins and the Redbacks are manufactured by Defendants' contractors or subcontractors, including Valaurum, Inc., and Scottsdale Mint, LLLP. Because the Agency lacks statutory authority to design, commission, authorize, mint, market, or sell precious metals products, the Agency's procurement instruments and contracts for the manufacture and commercialization of these products are ultra vires and void ab initio. Notwithstanding the void

nature of those contracts, Texas Precious Metals recently initiated federal litigation against Valaurum, Inc., and Scottsdale Mint, LLLP (the manufacturers of the State of Texas Coins and the Redbacks, respectively) for infringement of its trademarks, which include Texas Precious Metals' Mint Mark.

33.     Defendants' engagement of Scottsdale Mint further reflects an intent to operate and to be perceived as a mint. Scottsdale Mint is a producer of coins and bullion and serves as a contract manufacturer for foreign countries and private mints. In substance and in presentation, Defendants are functioning in the same way a private mint would—designing, commissioning, distributing, and selling minted precious metals products—while holding themselves out as if they were the official mint of the State of Texas, despite lacking any statutory authority to create or operate a mint. And Defendants' own comparisons to products produced by sovereign mints, as shown below, further underscore their intent to be perceived as a mint.

> Like the US Mint's Gold Eagle and Silver Eagle coins, or the Canadian Mint's Maple Leaf coins, State of Texas Coins are beautiful pieces of art crafted in gold or silver of the highest purity.

34.     News reports further reveal Defendants' acts for what they are: an entry into the precious metals market by minting and selling gold and silver products to precious metals investors:



Sports   KVUE+

ADVERTISE WITH US    LOCAL    DEFENDERS    BOOMTOWN    SPORTS    HONOR FLIG

TEXAS NEWS

# Texas launches commemorative coins and notes <u>for investors</u> and collectors

Texas Lone Star Coins, which come in gold and silver, feature the state coat of arms and a detailed map of Texas.

Author: Jeff Bell, Matt Coutu
Published: 4:56 PM CST December 30, 2025
Updated: 5:41 PM CST December 30, 2025

AUSTIN, Texas — <u>State officials are launching a new way for Texans to invest in precious metals.</u>

The comptroller's office just announced inaugural Texas Lone Star Coins, which come in gold and silver. They feature the state coat of arms and a detailed map of Texas.

## IV.     The Agency Has No Authority to Produce, Design, Market, or Sell Precious Metals

35.     Chapter 2116, as amended, authorizes the Agency to store precious metals—not to operate as a mint and sell them. After all, the Legislature chose to refer to the Agency as a

17

**depository**, not a seller or a mint. By designing, marketing, and selling the State of Texas Coins and the Redbacks, the Agency is acting outside the bounds of its legislatively crafted authority. Nothing in Chapter 2116 grants the Agency authority to act as a precious metals seller or mint. The statute instead limits the Agency to storing precious metals and entering into limited transactions and relationships to further this narrow purpose, nothing more. *See* Tex. Gov't Code § 2115.002.

36.     Despite that narrowly crafted authority, the Agency has chosen to present itself as a minting entity. In addition to the Agency's use of Texas Precious Metals' Mint Mark, the Agency has adopted and used its own mint mark—a cannon with the initials "TXBD"—on the State of Texas Coins, a practice commonly used to identify the entity that struck or produced a coin.



37.     Defendants have also represented on the Agency's website that these coins have been "struck by the State of Texas," reinforcing the message that the Agency is acting as a State-authorized mint rather than a custodial storage facility. Nothing in Chapter 2116 authorizes the Agency to create mint marks, to strike coins, or to hold itself out as a state mint.

### Description

Introducing the 2025 1 oz Silver State of Texas Bullion Coin, a landmark release struck by the State of Texas under the authority of the Texas Bullion Depository law.

38.     The Legislature included only a narrow, express sales authorization in the Agency's enabling statute: the Agency may sell "**promotional items** approved by the administrator to further the purposes of this chapter and to promote the depository." *Id*. at § 2116.021(c). Chapter 2116 does not define "promotional items," let alone define the term to include precious metals. The Agency's precious metals products cannot be promotional items because, as explained below, they have substantial value. Moreover, Defendants' offerings are of the same type of precious metals the Agency exists to safeguard, underscoring that the products are in fact genuine commercial products intended to compete in the marketplace, **not** incidental promotional merchandise.

39.     Any attempt to shoehorn these products into § 2116.021(c) also fails as a matter of basic logic. The Agency exists to store customers' precious metals; the very items it is charged with storing cannot be both "precious metals" necessitating safeguarding and mere "promotional items." Treating stored precious metals (or depository-issued precious metals products) as "promotional" is a non sequitur that would convert a narrow merchandising carve-out into an authorization to sell the depository's core subject matter.

40.     Defendants' own marketing confirms the point: the Agency touts these products as "commemorative, numismatic and collectible"[2] and offers them "at competitive prices,"[3] language that is incompatible with nominal promotional merchandise and instead reflects a deliberate effort to sell genuine, valuable precious metals products in direct competition with private dealers and mints.

41.     Moreover, the Comptroller's RFP No. 237b distinguishes the State of Texas Coins from "promotional" items. RFP No. 237b explicitly prohibits the successful bidder from using its

---

[2] *See* https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin, last visited February 4, 2026.

[3] *See* https://texasbulliondepository.gov/where-to-buy, last visited February 4, 2026.

"trademark or logo" in connection with the coins "except that [the successful bidder] may use its trade name on packaging, advertising, and **promotional materials** for the" State of Texas Coins. If the coins were promotional items, then RFP No. 237b would make no sense.

42.     Other Texas statutes confirm what "promotional items" are—and what they are not. For example, the Agriculture Code authorizes the sale of "'Go Texan' promotional items and program merchandise," including "clothing, posters, and banners." Tex. Agric. Code § 46.0095(a). The Transportation Code likewise describes promotional items as "calendars, books, prints, caps, light clothing, or other items" approved to advertise Texas recourses. Tex. Transp. Code §204.009(a). And the Government Code authorizes the sale of "items, including clothing, posters, and banners" to promote Teas-manufactured products. Tex. Gov't Code §490C.056(a). These examples reflect the ordinary meaning of "promotional items:" incidental merchandise whose purpose is advertising or public outreach, not the sale of regulated assets or financial products.

43.     Consistent with that common understanding, Texas law treats promotional items as having no inherent value apart from their promotional purpose. The Alcoholic Beverage Code, for instance, permits certain "promotional items" to be packaged with alcoholic beverages only if the items "have no value or benefit to the retailer other than that of having potential of attracting purchases and promoting sales." Tex. Alco. Bev. Code § 108.035. Unlike promotional items, precious metals have **substantial** intrinsic value. If they had no value, then they would not need a depository to act as a "custodian, guardian, and administrator." *See* Tex. Gov't Code § 2116.002.)

44.     The State of Texas Coins and the Redbacks are priced relative to the intrinsic value of their gold and silver content, further demonstrating that they are not merely "promotional items." For example, the price of each of the three different weights of Redbacks increases in proportion to its gold content. As of the filing of this petition, the 5 cg Redback sells for $15.33,

and the 20 cg Redback sells for $61.65, *i.e.*, four times as much gold and four times the price. The 100 cg Redback sells for $311.13, *i.e.*, twenty times as much gold as the 5 cg Redback and twenty times the price.



45.     Defendants' own marketing confirms they are offering the State of Texas Coins and Redbacks as precious metals products intended to be purchased and held for their metal value. In their December 2025 announcement, Defendants described State of Texas Coins as "made from pure precious metals **that serve as a store of value**." And they described the Redbacks as "crafted **with intrinsic value**." Those admissions are incompatible with the notion that these are merely "promotional items."

46.     Section 2116.021(c) is a narrow exception that allows the Agency to sell only administrator-approved "promotional items" to promote the depository. Tex. Gov't Code §2116.021(c). It cannot be construed to authorize the sale of bullion or specie, especially where Chapter 2116 defines those terms and assigns the Agency a custodial role over them. *See id.* §§

2116.001, 2116.002. Reading "promotional items" to include products marketed and valued as stores of precious metals wealth would transform a limited promotional carve out into an unbounded retail authorization the Legislature did not grant.

47.     Nor can Defendants expand their powers by styling these products as "commemorative." Chapter 2116 does not authorize the Agency to create a state-branded product line, commission designs, arrange minting or manufacturing, set terms of sale, advertise to consumers, or otherwise operate as a market-facing seller of precious metals goods. The statute does not use the term "commemorative" at all, and marketing labels cannot supply legal authority the Legislature withheld. In short, the Agency's limited power to sell "promotional items" does not include the power to sell precious metals.

## V.     Defendants Refuse to Stop Their Ultra Vires Acts

48.     On February 2, 2026, Texas Precious Metals Founder and Chief Executive Officer Tarek Saab met with Agency Deputy Minister David Cruz to discuss the improper use of Texas Precious Metals' Mint Mark and registered trademarks. During the meeting, Mr. Saab questioned the Agency's authorization to produce, market, and sell precious metals products in light of Chapter 2116's limited scope for storage only. Mr. Cruz responded that Defendants' design, marketing, and sale of precious metals products was authorized by the "promotional items" text in Section 2116.021(c). He did not offer any other purported authority for the Agency's action made the subject of this petition.

49.     But, as discussed above, that section permits only the sale of "promotional items," such as T-shirts, posters, and caps. Tellingly, in RFP No. 237b, Defendants relied on a misstatement of Section 2116.021(c) as the basis for its actions: "The Depository is also authorized to issue, sell, or license for sale, or obtain a license to sell promotional items, **including commemorative coins**, approved by the Administrator to promote the Depository and further the purposes of the

Depository." Section 2116.021(c) makes no mention of "commemorative coins." RFP No. 237b further reveals that Defendants plan to design, mint, and sell "other Licensed Products, including Coins of appropriate weight and purity, as Respondent believes will **maximize sales**." Thus, Defendants have no intention of reining in their ultra vires actions, and their primary motivation is to "maximize sales."

50.     By letter of February 4, 2026, Mr. Cruz, on behalf of the Comptroller and the Agency, refused to stop the unauthorized conduct at issue and rejected Texas Precious Metals' concerns as "without merit." Defendants and Texas Precious Metals thus remain at an impasse, necessitating this petition. Furthermore, Mr. Cruz confessed that the Texas Bullion Depository was aware of Texas Precious Metals' incontestable marks and decided to proceed anyway. These are not the actions of an agency looking to create promotional items. They are the actions of an agency looking compete in the private market.

## FIRST CAUSE OF ACTION:
## DECLARATION THAT THE AGENCY IS ACTING ULTRA VIRES AND CANNOT TRADE IN PRECIOUS METALS

51.     Texas Precious Metals realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this petition as if fully set forth herein.

52.     Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Texas Precious Metals seeks a declaratory judgment to determine a question of construction arising under Texas Government Code Chapter 2116 because the parties' rights, status, or other legal relations are affected by that statute.

53.     Texas law provides that state agencies are "creatures of the legislature," possessing only the powers the Legislature delegates in clear statutory language, together with implied powers reasonably necessary to carry out those expressly delegated duties. *Pub. Util. Comm'n of Tex. v. GTE-Sw., Inc.*, 901 S.W.2d 401, 406 (Tex. 1995); *Cent. Educ. Agency v. Sellhorn*, 781 S.W.2d 716,

718 (Tex. App.—Austin 1989, writ denied). The separation of powers likewise limits executive agencies to delegated authority and prohibits the exercise of powers not granted by law. *See* Tex. Const. art. II, § 1.

54.     Consistent with those principles, there are "two general means of proving an ultra vires claim: (1) an action 'without legal authority' or (2) failure to 'perform a purely ministerial act.'" *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.*at 238. Here, the Agency is acting ultra vires by commissioning, authorizing, producing, advertising, promoting, marketing, offering for sale, and contracting for the manufacture, sale, and distribution of precious metals products even though its only legislatively authorized purpose is to serve as a precious metals depository.

55.     An actual controversy exists between Texas Precious Metals and Defendants arising in connection with Texas Government Code Chapter 2116. The parties disagree as to whether Texas Government Code Chapter 2116 authorizes Defendants to design, sell, and market precious metals or limits Defendants to securing and storing precious metal assets.

56.     This controversy turns on Defendants' interpretation and application of their enabling statute, Texas Government Code Chapter 2116, and thus concerns the "bounds of [their] own authority." *Hall*, 508 S.W.3d at 241. Defendants' entry into the precious metals market by selling and marketing gold and silver, including the State of Texas Coins and Redbacks, exceeds any limited discretion conferred by Chapter 2116 and constitutes action "without legal authority." *See id.*

57.     Texas Precious Metals seeks a declaration that Texas Government Code Chapter 2116 does **not** authorize Defendants to compete with private retailers in the precious metals market by selling and marketing precious metals, such as the State of Texas Coins and the Redbacks.

58.     Texas Precious Metals further seeks a declaration that any request for proposals, solicitation, procurement, agreement, or contract issued, executed, or maintained by the Agency or its officials for the design, commissioning, authorization, production, manufacture, minting, marketing, promotion, offering for sale, sale, distribution, fulfillment, or other commercialization of precious metals products, including the State of Texas Coins and the Redbacks, or for any activity beyond custodial depository services (including storage and safeguarding) authorized by Texas Government Code chapter 2116, is ultra vires, unauthorized, and therefore void and of no force or effect. Texas Precious Metals seeks a further declaration that neither the State of Texas Coins nor the Redbacks are "promotional items" within the meaning Texas Government Code § 2116.021(c).

59.     Texas Precious Metals also seeks a declaration that Defendants' challenged conduct exceeds the statutory authority delegated by Chapter 2116 and is ultra vires.

**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

60.     Immediate and permanent injunctive relief is necessary to prevent Defendants from continuing their ultra vires actions pending the Court's final determination on the merits. To obtain a temporary injunction, a party must show that (1) it has a cause of action against the defendant, (2) there is a probable right to the relief sought, and (3) there is a probable, imminent and irreparable injury in the interim. *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002). Where party seeks a temporary restraining order, the very fact that the party has pleaded a cause of action "is enough." *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (plaintiff had cause of action sufficient for temporary restraining order because plaintiff filed petition for breach of

contract). A movant sufficiently proves that it has a cause of action against the defendant and a probable right to relief when it alleges a cause of action and produces evidence supporting its allegations. *See Butnaru*, 84 S.W.3d at 210.

61. "A party seeking a temporary injunction must show it has a probable, imminent, and irreparable injury in the interim between the temporary injunction hearing and trial on the merits." *Sharma v. Vidmar Int'l, Ltd.*, 231 S.W.3d 405, 426 (Tex. App.—Houston [14th Dist.] 2007, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id*. at 426–27.

62. Based on the foregoing allegations, Texas Precious Metals meets all criteria for a temporary injunction.

63. ***Texas Precious Metals has a cause of action against Defendants.*** Texas Precious Metals has a cause of action for declaratory judgment, as detailed above.

64. ***Texas Precious Metals has a probable right to the relief sought.*** Texas Precious Metals has a probable right to relief on its cause of action. Texas law strictly limits administrative agencies to the powers the Legislature has conferred. "Agencies may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed." *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983). In other words, "every [State administrative] agency has only those powers expressly conferred upon it by the Legislature." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). "An agency may not . . . exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes." *Id*. Moreover, when interpreting a statute, courts look "first and foremost" to the "plain language" of the statute. *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d

844, 847 (Tex. 2024). Courts "presume[e] that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include." *Id*. Simply put, courts "must enforce the statute 'as written.'" *Id*. at 848.

65.     As discussed in the preceding paragraphs, Texas Government Code § 2116 expressly permits Defendants to "serve as the **custodian, guardian, and administrator** of certain bullion and specie that may be transferred to or otherwise acquired by this state." Tex. Gov't Code § 2116.002(b). Storing and securing rounds, bullion, and gold notes is consistent with that language. But the Legislature said nothing about **selling** precious metals products. This Court must therefore presume that the Legislature purposefully omitted references to selling precious metals. Defendants have only those powers expressly conferred upon them by the Legislature, *i.e*., to act as a custodian or guardian of bullion or specie; they may not exercise what is effectively a new power to sell precious metals.

66.     The Legislature authorized Defendants to sell only "promotional items." Texas Government Code § 2116.021(c). The State of Texas Coins and Redbacks are not "promotional items;" they are gold and silver specie and bullion. *See id*. at § 2116.001 (defining "bullion" and "specie"). If the Legislature intended for Defendants to sell specie and bullion, it would have said so. But it did not.

67.     As discussed above, the text and context of § 2116.021(c) confirm that "promotional items" means ordinary depository-branded marketing merchandise that has no inherent value apart from that promotional function, as reflected by the Legislature's use of the same term elsewhere to describe items like clothing, calendars, caps, and posters. *See* Tex. Agric. Code § 46.0095(a); Tex. Transp. Code § 204.009(a); Tex. Gov't Code § 490C.056(a); Tex. Alco. Bev. Code § 108.035. Consistent with that understanding, Defendants do not even market the State

of Texas Coins and Redbacks as "promotional items." Instead, they market them as "commemorative precious metal products to investors and collectors," underscoring that Defendants are not engaged in incidental promotions and advertising, but instead operating an unauthorized sales program for precious metals.

68. ***There is a probable, imminent, and irreparable injury***. Texas Precious Metals operates in a competitive market that depends on trust, lawful conduct, and fair competition. The Agency's unlawful, ultra vires actions upend that balance.

69. The Agency is authorized to store precious metals. It is not authorized to sell them. But the Agency has entered the retail market anyway, and it has done so by designing, marketing, and selling precious metals products that feature Texas Precious Metals' Mint Mark. That conduct places Texas Precious Metals at an immediate disadvantage. The Agency's state-backed status confers credibility, visibility, and perceived endorsement that no private seller can match. When the Agency uses that position to facilitate sales, customers are diverted away from lawful market participants like Texas Precious Metals. Those actions do not merely reduce sales—they erode Texas Precious Metals' brand and damage Texas Precious Metals' goodwill and reputation by creating confusion in the marketplace about affiliation, sponsorship, or approval, and by forcing Texas Precious Metals to compete against an entity operating outside its statutory authority.

70. The resulting loss of goodwill is irreparable. Once customer trust is eroded and confusion has taken hold, the harm to reputation and brand cannot be fully measured or restored through later monetary relief. Absent injunctive relief, Texas Precious Metals will continue to suffer ongoing diversion of customers, brand erosion, dilution of its hard-earned goodwill, and continuing public confusion—injuries that are probable, imminent, and will persist unless the Court intervenes.

71.     The injury is not speculative. It is happening now. And just this week, Defendants refused to stop their ultra vires acts. Defendants have already produced 46,000 State of Texas Coins and nothing is stopping them from producing more. In fact, RFP No. 237b reveals that Defendants plan to design, mint, and sell even more precious metals products with the intent to "maximize sales." Each day that the ultra vires sales continue, Texas Precious Metals loses prospective customers, transactions, and market share. Those losses compound over time. The longer the unauthorized sales persist, the more entrenched the harm becomes.

72.     Defendants' unlawful entry into a rapidly changing market causes harm that cannot be unwound. Each unauthorized sale locks in a lost transaction at a specific market price that will never recur. No damages award can reconstruct what Texas Precious Metals would have earned in a fast-moving commodities market had Defendants not intervened unlawfully. As a direct and proximate cause of Defendants' conduct, Texas Precious Metals will continue to be harmed by their unauthorized, ultra vires foray into the precious metals market.

73.     Texas Precious Metals has no adequate remedy at law because monetary damages cannot adequately remedy the harm caused by Defendants' activities. Texas Precious Metals' damages are not quantifiable, and there is no monetary relief that can be obtained from Defendants. Defendants have acted and continue to act outside their statutory authority by entering the precious metals market. Moreover, they are doing so in a way that unfairly favors one private retailer over others. Only injunctive relief can preserve the status quo of Defendants' pre-ultra-vires acts.

74.     The harm to Texas Precious Metals if the injunction is not granted far outweighs any potential harm to Defendants by the issuance of the injunction. An injunction would merely require Defendants to comply with the limits the Legislature placed on their authority. By contrast, absent injunctive relief, Texas Precious Metals will continue to suffer ongoing loss of goodwill,

customer confusion, and diversion of sales caused by the State's unauthorized entry into the precious metals market. Granting the injunction would also benefit the public interest by preserving the separation of powers, ensuring that state agencies operate within their statutory mandates, and protecting consumers from confusion regarding the source, sponsorship, and official status of precious metals products.

75.     Pursuant to Tex. R. Civ. P. 680 *et seq*. and Tex. Civ. Prac. & Rem. Code § 65.001 *et seq*., Texas Precious Metals seeks a temporary restraining order and on hearing, a temporary and permanent injunction, immediately restraining Defendants from designing, marketing, or selling precious metals, including the State of Texas Coins and Redbacks.

76.     This Court has authority to enjoin unlawful state action. Under Texas law, sovereign immunity does not bar a suit for **prospective injunctive relief** to restrain state officials from acting **without legal or statutory authority**. When an official acts ultra vires, those acts are not considered acts of the State, and a court may enjoin the unlawful conduct to require compliance with the governing statute. *Heinrich*, 284 S.W.3d at 372–74.

## REQUEST FOR HEARING

77.     Texas Precious Metals requests that the Court set this application for temporary restraining order for hearing soon as practicable, and after hearing the application, issue a temporary injunction against Defendants enjoining them from the acts described above.

## PRAYER FOR RELIEF

Texas Precious Metals prays that this Court enter judgment against Defendants and award the following relief:

> a.  Issue a declaration that the Agency is acting ultra vires by designing, commissioning, authorizing, producing, minting, promoting, marketing, contracting for the manufacture or distribution of, and selling precious metals products.

b. Issue a declaration that Texas Government Code § 2116 does not authorize Defendants to compete with private retailers in the precious metals market.

c. Issue a declaration that neither the State of Texas Coins nor the Redbacks are "promotional items" within the meaning Texas Government Code § 2116.021(c).

d. Issue a temporary restraining order, a temporary injunction, and a permanent injunction restraining Defendants from designing, commissioning, authorizing, producing, minting, advertising, promoting, marketing, offering for sale, selling, distributing, or otherwise facilitating the commercialization of precious metals, including the State of Texas Coins and the Redbacks, whether directly or indirectly, and whether in their own name or through any third party.

e. Issue a declaration that any request for proposals, solicitation, procurement, agreement, or contract issued, executed, or maintained by the Agency or its officials for the design, commissioning, authorization, production, manufacture, minting, marketing, advertising, promotion, offering for sale, sale, distribution, fulfillment, or other commercialization of precious metals products—including the State of Texas Coins and the Redbacks—or for any activity beyond custodial depository services (including storage and safeguarding) authorized by Texas Government Code chapter 2116, is ultra vires, unauthorized, and therefore void ab initio and of no force or effect, and order Defendants to cease performance under any such instruments.

f. Grant all other relief in law and equity to which Texas Precious Metals may be entitled.

Date: February 4, 2026

Respectfully submitted,

/s/ Casey Low

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## <u>VERIFICATION</u>

STATE OF TEXAS                                    §
                                                         §
COUNTY OF TRAVIS                            §

I, Tarek Saab, declare as follows:

1.      "My name is Tarek Saab. I am the President and co-founder of Texas Precious Metals, LLC. My work address is 959 Hwy 95N, Shiner, Texas, 77984. I am over 18 years of age, and I am of sound mind and am competent to make this Verification. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

2.      I have read the foregoing Original Petition and Application for Temporary Restraining Order and Injunctive Relief and have knowledge of the facts stated therein. Based on my review of the records over which I am a custodian, my personal knowledge, and reasonable information and belief, I declare under penalty of perjury that the facts stated therein are true and correct to the best of my knowledge and belief."

I declare under penalty of perjury that the foregoing is true and correct and within my personal knowledge.

Signed on February 4, 2026

_____
Tarek Saab

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kira Hamm on behalf of Ronald Low
Bar No. 24041363
kira.hamm@pillsburylaw.com
Envelope ID: 110876088
Filing Code Description: ORIGINAL PETITION/APPLICATION - (OCA)
Filing Description: PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF
Status as of 2/5/2026 9:14 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Casey Low | | casey.low@pillsburylaw.com | 2/4/2026 9:12:19 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/4/2026 9:12:19 PM | SENT |
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/4/2026 9:12:19 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/4/2026 9:12:19 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/4/2026 9:12:19 PM | SENT |

CAUSE NO. _____

| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
|     Plaintiff, | § | |
| | § | |
|     v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
|     Defendants. | § | _____ JUDICIAL DISTRICT |

### ORDER GRANTING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON TEMPORARY INJUNCTION

On this date the Court heard Texas Precious Metals, LLC's ("Plaintiff") Application for Temporary Restraining Order against Defendants Kelly Hancock as Acting Texas Comptroller of Public Accounts and Macy Douglas as Administrator of the Texas Bullion Depository. The Court, after considering Plaintiff's application, the pleadings, the verification and evidence on file, and arguments of counsel, finds that the application is well taken and should be **GRANTED**.

The Court further finds that Plaintiff will suffer probable, imminent, and irreparable harm before the temporary injunction hearing if the Court does not issue a temporary restraining order against Defendants.

The Court further finds it necessary to enjoin Defendants as ordered herein to prevent this harm because Defendants have violated and continue to violate Texas Government Code Chapter 2116 by engaging in ultra vires acts and are designing, marketing, and selling precious metals products outside their statutory authorization. Defendants' actions are likely to irreparably harm

Plaintiff, and an injunction is necessary to prevent Defendants' further unauthorized designing, marketing, and selling of precious metals products.

It is therefore, **ORDERED** that Defendants are immediately restrained from designing, commissioning, authorizing, producing, minting, advertising, promoting, marketing, offering for sale, selling, distributing, or otherwise facilitating the commercialization of precious metals, including the State of Texas Coins and the Redbacks, whether directly or indirectly, and whether in their own name or through any third party.

It is further **ORDERED** that the Clerk of the Court issue a writ of injunction to Defendants in accordance with the terms of this Order.

It is further **ORDERED** that Plaintiff's application for a temporary injunction is set for hearing on the __ day of February 2026, at ____.

This Order expires on _____, 2026, unless extended for good cause shown.


SIGNED this ___ day of _____, 2026.

_____
Duty Judge

2/5/2026 5:36 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Norma Ybarra

## CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## NOTICE OF HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

PLEASE TAKE NOTICE that Plaintiff Texas Precious Metals, LLC's Application for Temporary Restraining Order has been set for an emergency oral hearing on **Friday, February 6, 2026, at 10 a.m.** in the 459th Judicial District Court of Travis County, Texas.

This emergency hearing will take place **via ZOOM VIDEO CONFERENCE.** Zoom information will be sent to all counsel of record once provided by the Court.

Date: February 5, 2026

Respectfully submitted,

/s/ Casey Low

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200

Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on January 5, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

/s/   *Casey Low*
Casey Low

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kira Hamm on behalf of Ronald Low
Bar No. 24041363
kira.hamm@pillsburylaw.com
Envelope ID: 110926587
Filing Code Description: Notice
Filing Description: NOTICE OF HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER
Status as of 2/11/2026 3:28 PM CST

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/5/2026 5:36:31 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/5/2026 5:36:31 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/5/2026 5:36:31 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/5/2026 5:36:31 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/5/2026 5:36:31 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/5/2026 5:36:31 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/5/2026 5:36:31 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/5/2026 5:36:31 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/5/2026 5:36:31 PM | SENT |

2/10/2026 5:21 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Melissa Romero

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

## DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL

Defendants Kelly Hancock and Macy Douglas (Defendants), each in their official capacities, file this notice that Special Counsel Ali M. Thorburn now appears as attorney-in charge for Defendants in the above-captioned case. Ms. Thorburn is a member in good standing with the State Bar of Texas. Her contact information is contained in the signature block.

As required by Texas Rule of Civil Procedure 21a, this notice has been provided to all parties or their counsel of record.

Date: February 10, 2026

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

/s/ Ali M. Thorburn
ALI M. THORBURN
Special Counsel

BRENT WEBSTER
First Assistant Attorney General

Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275

RALPH MOLINA
Deputy First Assistant Attorney General

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

Austin, Texas 78711-2548
Tel: (512) 463-2100

RYAN G. KERCHER
Chief, Special Litigation Division

Fax: (512) 457-4410
ali.thorburn@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on February 10, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

PILLSBURY WINTHROP SHAW
PITTMAN LLP

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

*Attorneys for Texas Precious Metals, LLC*

/s/ Ali M. Thorburn
ALI M. THORBURN
Special Counsel

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111099304
Filing Code Description: Notice
Filing Description: DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL
Status as of 2/17/2026 10:54 AM CST

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/10/2026 5:21:46 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/10/2026 5:21:46 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/10/2026 5:21:46 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/10/2026 5:21:46 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/10/2026 5:21:46 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/10/2026 5:21:46 PM | SENT |

2/10/2026 5:26 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Nancy Ramirez

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |
| | § | |

---

### DEFENDANTS' NOTICE OF APPEARANCE AND DESIGNATION OF ATTORNEY IN CHARGE

Defendants Kelly Hancock and Macy Douglas (Defendants), each in their official capacities, file this notice that Senior Special Counsel David Bryant appears as co-counsel for Defendants in the above-captioned case. Mr. Bryant is a member in good standing with the State Bar of Texas. His contact information is contained in the signature block.

As required by Texas Rule of Civil Procedure 21a, this notice has been provided to all parties or their counsel of record.

Date: February 10, 2026                    Respectfully Submitted.

K<small>EN</small> P<small>AXTON</small>                                     A<small>LI</small> M. T<small>HORBURN</small>
Attorney General of Texas                  Special Counsel
                                           Attorney-in-Charge
B<small>RENT</small> W<small>EBSTER</small>                                 Texas State Bar No. 24125064
First Assistant Attorney General           Direct: (512) 936-2275

R<small>ALPH</small> M<small>OLINA</small>                                   */s/ David Bryant*
Deputy First Assistant Attorney General    D<small>AVID</small> B<small>RYANT</small>
                                           Senior Special Counsel
R<small>YAN</small> D. W<small>ALTERS</small>                               Attorney-in-Charge
Deputy Attorney General for Legal Strategy Texas Bar No. 03281500

R<small>YAN</small> G. K<small>ERCHER</small>                              **OFFICE OF THE TEXAS ATTORNEY GENERAL**
Chief, Special Litigation Division         Special Litigation Division
                                           P.O. Box 12548, Capitol Station
                                           Austin, Texas 78711-2548
                                           Tel: (512) 463-2100
                                           Fax: (512) 457-4410
                                           ali.thorburn@oag.texas.gov
                                           david.bryant@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on February 10, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

C<small>ASEY</small> L<small>OW</small>                                    PILLSBURY WINTHROP SHAW
Texas Bar No. 24041363                     PITTMAN LLP
casey.low@pillsburylaw.com
                                           401 W. 4th Street
R<small>YAN</small> J. S<small>ULLIVAN</small>                             Suite 3200
Texas Bar No. 24102548                     Austin, TX 78701
ryan.sullivan@pillsburylaw.com             (512) 580-9600

E<small>LIZABETH</small> B<small>LACKFORD</small>                          *Attorneys for Texas Precious Metals, LLC*
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

                                           */s/ David Bryant*
                                           D<small>AVID</small> B<small>RYANT</small>

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of David Bryant
Bar No. 3281500
tamera.martinez@oag.texas.gov
Envelope ID: 111099549
Filing Code Description: Notice
Filing Description: DEFENDANTS' NOTICE OF APPEARANCE AND DESIGNATION OF ATTORNEY IN CHARGE
Status as of 2/17/2026 11:12 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/10/2026 5:26:01 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/10/2026 5:26:01 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/10/2026 5:26:01 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/10/2026 5:26:01 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/10/2026 5:26:01 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/10/2026 5:26:01 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/10/2026 5:26:01 PM | SENT |

2/10/2026 5:27 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Eva Fairchild

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |
| | § | |

---

## DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL

Defendants Kelly Hancock and Macy Douglas (Defendants), each in their official capacities, file this notice that Special Counsel Munera Al-Fuhaid now appears as co-counsel for Defendants in the above-captioned case. Ms. Al-Fuhaid is a member in good standing with the State Bar of Texas. Her contact information is contained in the signature block.

As required by Texas Rule of Civil Procedure 21a, this notice has been provided to all parties or their counsel of record.

Date: February 10, 2026

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

ALI M. THORBURN
Special Counsel
Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275

*/s/ Munera Al-Fuhaid*
MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

*COUNSEL FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I certify that on February 10, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*


/s/ *Munera Al-Fuhaid*
MUNERA AL-FUHAID
Special Counsel

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Munera Al-Fuhaid
Bar No. 24094501
tamera.martinez@oag.texas.gov
Envelope ID: 111099631
Filing Code Description: Notice
Filing Description: DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL
Status as of 2/17/2026 1:56 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/10/2026 5:27:35 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/10/2026 5:27:35 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/10/2026 5:27:35 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/10/2026 5:27:35 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/10/2026 5:27:35 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/10/2026 5:27:35 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/10/2026 5:27:35 PM | SENT |

2/10/2026 5:28 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Eva Fairchild

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

---

### DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL

---

Defendants Kelly Hancock and Macy Douglas (Defendants), each in their official capacities, file this notice that Special Counsel Alexia K. Baker now appears as co-counsel for Defendants in the above-captioned case. Ms. Baker is a member in good standing with the State Bar of Texas. Her contact information is contained in the signature block.

As required by Texas Rule of Civil Procedure 21a, this notice has been provided to all parties or their counsel of record.

Date: February 10, 2026

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

DAVID BRYANT
Senior Special Counsel
Attorney-in-Charge
Texas Bar No. 03281500

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
Direct: (512) 936-2275

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

RYAN G. KERCHER
Chief, Special Litigation Division

*/s/ Alexia K. Baker*
ALEXIA K. BAKER
Assistant Attorney General
Tex. State Bar No. 24149596

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

*COUNSEL FOR DEFENDANTS*

I certify that on February 10, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

*/s/ Alexia K. Baker*
ALEXIA K. BAKER
Assistant Attorney General

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Alexia Baker
Bar No. 24149596
tamera.martinez@oag.texas.gov
Envelope ID: 111099700
Filing Code Description: Notice
Filing Description: DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL
Status as of 2/17/2026 1:57 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/10/2026 5:28:53 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/10/2026 5:28:53 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/10/2026 5:28:53 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/10/2026 5:28:53 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/10/2026 5:28:53 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/10/2026 5:28:53 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/10/2026 5:28:53 PM | SENT |

2/11/2026 5:03 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Stephanie Garza

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | TRAVIS COUNTY, TEXAS |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | 459TH JUDICIAL DISTRICT |
| Defendants. | § | |

---

### NONPARTY TEXAS GOLD BUREAU LLC'S OBJECTIONS
### TO SUBPOENA DUCES TECUM AND MOTION FOR PROTECTIVE ORDER

Five days after filing this lawsuit, Plaintiff Texas Precious Metals, LLC ("TPM") served its direct competitor, nonparty Texas Gold Bureau LLC (the "Gold Bureau"), with a deposition notice and subpoena duces tecum. Ex. A. Pursuant to Texas Rules of Civil Procedures 176.6 and 199.4, the Gold Bureau objects to the notice/subpoena and moves for a protective order on three independent grounds:

1. This is an *ultra vires* case against two state officers based on a pure question of statutory construction. None of the discovery sought from the Gold Bureau is relevant or likely to lead to the discovery of admissible evidence on TPM's sole claim that the defendants are acting *ultra vires* by causing a state agency to trade in precious metals.

2. The discovery period has not yet commenced in this week-old lawsuit. Rule 199.2(a) prohibits TPM from taking a deposition outside the discovery period, and Rule 176.3 prohibits TPM from using a subpoena to conduct discovery at a time other than as provided by the discovery rules.

3. TPM did not confer with the Gold Bureau regarding the time for producing documents or appearing for an oral deposition, neither of which is feasible for the Gold Bureau.

1

**ARGUMENT**

**I.   Nonparty discovery from the Gold Bureau is not within the permissible scope of discovery in this narrow ultra vires case against two state officers.**

According to TPM's own pleading, this is a very narrow suit.  In contrast, TPM's attempt to take discovery from a nonparty competitor is extremely broad, invasive, harassing, and inappropriate.  In its sole cause of action, TPM seeks only "a declaratory judgment to determine a question of construction arising under Texas Government Code Chapter 2116."  Orig. Pet. at ¶ 52.  TPM says: "The parties disagree as to whether Texas Government Code Chapter 2116 authorizes Defendants to design, sell, and market precious metals or limits Defendants to securing and storing precious metal assets."  *Id*. at ¶ 55.

Statutory construction is, of course, a pure question of law.  *Lopez v. Tex. Workers' Comp. Ins. Fund*, 11 S.W.3d 490, 494 (Tex. App.—Austin 2000, pet. denied).  Invasive discovery from a nonparty will not illuminate legislative intent or otherwise assist the Court in construing the Government Code or declaring the boundaries of the defendants' statutory authority.

**II.   TPM is unlawfully attempting to take discovery before the discovery period begins.**

The defendants have not yet answered this lawsuit, no party has served initial disclosures, and the discovery period has not opened.  TPM pled that it intends to conduct discovery under a Level 3 scheduling order under Rule 190.4.  Orig. Pet. at 2.  But the Court has not yet signed any such order, which means the case is currently governed by the discovery limitations of Rule 190.3.  *See* Tex. R. Civ. P. 190.4(b).  Because this suit is not governed by the Family Code, "all discovery must be conducted during the discovery period, which begins when the first initial disclosures are due."  Tex. R. Civ. P. 190.3(b)(1)(A).  "A party must make the initial disclosures within 30 days after the filing of the first answer or general appearance unless a different time is set by the parties'

agreement or court order." Tex. R. Civ. P. 194.2. TPM's attempt to commence discovery is, at a minimum, several weeks premature.

"An oral deposition may be taken outside the discovery period only by agreement of the parties or with leave of court." Tex. R. Civ. P. 199.2(a). And TPM cannot evade this restriction simply by serving a subpoena on a nonparty: "A subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery." Tex. R. Civ. P.176.3(b). Because there is no agreement or court order providing otherwise, TPM cannot proceed with discovery at this time.

### III.    The Gold Bureau objects to time.

Pursuant to Texas Rule of Civil Procedure 199.4, the Gold Bureau objects to the time that TPM unilaterally set for the document production and deposition. Not only are the chosen dates before the discovery period opens, but if the Court were to require the Gold Bureau to search for, review, and produce documents responsive to TPM's requests and to prepare a witness to testify, the Gold Bureau would need thirty days or more to comply.

PRAYER

The nonparty subpoena is unauthorized. The Gold Bureau prays that the Court sustain these objections, issue a protective order absolving the Gold Bureau from compliance with the subpoena, and award the Gold Bureau such other relief to which it may be entitled.

Respectfully submitted,

By: */s/ Joseph R. Knight*
Joseph R. Knight
State Bar No. 11601275
EWELL BROWN BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
(512) 770-4010

Attorneys for Nonparty Texas Gold Bureau

**<u>CERTIFICATE OF CONFERENCE</u>**

I certify that on February 11, 2026, I spoke by telephone with Ryan Sullivan, one of the lawyers for TPM.  We were unable to resolve the issues raised by these objections and motion. Therefore, they are being presented to the Court as **opposed**.

/s/ *Joseph R. Knight*
Joseph R. Knight

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 11, 2026, I filed the foregoing with the Clerk of Court using the e-filing system which will deliver a copy to all counsel of record

/s/ *Joseph R. Knight*
Joseph R. Knight

# EXHIBIT A

**Notice of Oral Deposition and Subpoena Duces Tecum**

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |



## TEXAS PRECIOUS METALS, LLC'S NOTICE OF ORAL DEPOSITION AND SUBPOENA DUCES TECUM TO U.S. GOLD BUREAU

PLEASE TAKE NOTICE that pursuant to Texas Rules of Civil Procedure 176, 199, and 205, Plaintiff, Texas Precious Metals, LLC ("Plaintiff" or "TPM"), by and through its counsel of record, is serving a subpoena duces tecum and notice of oral deposition on non-party U.S. Gold Bureau, attached as **Exhibit A** hereto. Pursuant to Texas Rule of Civil Procedure 199.2(b)(1), U.S. Gold Bureau shall, within a reasonable time before the deposition, designate one or more individuals to testify on its behalf regarding the matters listed in **Exhibit A-2**. The deposition will commence at 9:00 a.m. Central Time on **February 20, 2026,** and will continue day to day until completed or adjourned by the attorneys taking the deposition. The deposition will take place at the offices of Pillsbury Winthrop Shaw Pittman LLP, 401 W. 4th St., Suite 3200, Austin, Texas 78701 or as otherwise agreed by the parties, including by remote means if agreed. The deposition will be recorded stenographically and videotaped before a certified reporter authorized by law to take video depositions.

In accordance with Texas Rules of Civil Procedure 199.2 and 205.2, U.S. Gold Bureau is further requested to produce and permit inspection and copying of the documents (including emails, recordings, or other electronically stored information) identified in **Exhibit A-1** hereto. The documents shall be produced on or before **February 18, 2026**. Such deposition testimony and documents are for discovery purposes and may be used as evidence in the trial of the above-styled case and for other purposes permitted by law.

Date: February 9, 2026

Respectfully submitted,

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on February 9, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

/s/ *Casey Low*
Casey Low

# **EXHIBIT A**

## SUBPOENA DUCES TECUM
## ISSUED IN THE NAME OF THE STATE OF TEXAS

You, U.S. Gold Bureau, are hereby commanded, on or before **February 18, 2026,** to produce documents relating to Cause No. D-1-GN-26-000754; *Texas Precious Metals, LLC v. Hancock, et al.;* as set forth in the requests attached hereto as **Exhibit A-1**. The documents shall be delivered to the undersigned counsel via email or hand delivery.

### Party/Person Issuing Subpoena

This subpoena is issued at the instance of Texas Precious Metals, LLC, Plaintiff in the above-referenced cause, and by and through its attorneys of record Pillsbury Winthrop Shaw Pittman, LLP.

### Documents or Tangible Things

You are commanded to produce the following documents or tangible things in your possession, custody, or control at the place and time specified above.

*See* **Exhibit A-1** attached hereto.

### Deposition

You are further commanded to personally appear at the office of Pillsbury Winthrop Shaw Pittman, LLP at 401 W 4th St, Suite 3200, Austin, Texas, 78701, at **9:00 a.m. Central Time** on **February 20, 2026** ("Deposition Date"), before the officer present who is duly authorized by law to take your deposition by stenographic and videographic means, then and there be sworn as a witness for the purpose of giving your deposition.

### WARNING
### ENFORCEMENT OF SUBPOENA PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 176.8

**FAILURE OF ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED A CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH. TEX. R. CIV. P. 176.8(A).**

This subpoena is issued on the 9th day of February, 2026 by:

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

**Witness Accepts Service**

I, _____, accept service of the attached subpoena as well as receipt of the witness fee and will appear at the time and place directed in said subpoena.

Date:_____          _____
                                                                            [Signature of Witness]

**Statement by Person Serving Subpoena**

I, _____, am over the age of 18 years.  I am not a party in the aforementioned cause of action.  On the ___ day of _____, 2026, I served a subpoena, of which this is a true and correct copy on U.S. Gold Bureau, by and through their registered agent, Lone Star Tangible Assets Management, LLC, 203 Heritage Grove Road, Leander, TX 78641 at ____ o'clock ___A.M./P.M. I also tendered to the person served the witness fee required by law at the time the subpoena was delivered.

_____          _____
Date                                                              [Signature of Person Serving Subpoena]

# EXHIBIT A-1

## INSTRUCTIONS

1.    In responding to these requests, please produce all documents and information within your possession, custody, or control, and all documents and information reasonably available to you, including documents and information in the possession of your attorneys or their investigators, and all persons acting on your behalf.

2.    For each document requested, produce the entire document, including all attachments, appendices, and exhibits.

3.    For each document requested, produce all non-identical copies of that document.

4.    Produce documents as they are kept in the usual course of business or organize and label them to correspond with the categories in the document requests.

5.    If you withhold any document, or any portion of that document, under a claim of privilege, You shall produce a written privilege log that sets forth: (i) the author of the document; (ii) the type of document, *e.g.* letter or memorandum; (iii) the date of the document; (iv) all recipients of the document; (v) such other information as is sufficient to identify the document; and (vi) the nature of the privilege asserted.

6.    If information is redacted from a document produced in response to a request, you shall identify the redaction by stamping the word "Redacted" on the document at each place where information has been redacted and separately log each redaction on the privilege log.

7.    If any requested document has been lost or destroyed, you shall state the circumstances of its loss or destruction, including the identity of person(s) having knowledge as to the circumstances of its loss or destruction and the date of its loss or destruction.

8.    Unless otherwise indicated, these Requests seek documents from December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period. These requests are continuing in nature. If, after producing any documents in response to any of the following Requests, you obtain or become aware of additional responsive information, you are required to provide such information or documents by way of a supplemental production.

# **DEFINITIONS**

1. "USGB," "United States Gold Bureau," "You" and "Your" refers to United States Gold Bureau, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

2. "Defendants" refers to Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts, and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository, collectively or individually, and include any person or entity acting or purporting to act on any Defendant's behalf or at any Defendant's direction or control, including employees, agents, representatives, contractors, consultants, assistants, and service providers.

3. "Plaintiff" or "Texas Precious Metals" or "TPM" refers to Texas Precious Metals, LLC, including its divisions and brands (including Texas Mint), and its current and former officers, directors, managers, employees, agents, attorneys, representatives, affiliates, and any other person or entity purporting to act on its behalf.

4. "Texas Precious Metals Products" refers to Texas Gold Rounds, Texas Silver Rounds, Pro Rodeo Rounds, Goldbacks, and all other products sold by Texas Precious Metals and bearing the Texas Precious Metals mint mark.

5. "Agency" or "Texas Bullion Depository" or "Depository" means the Texas Bullion Depository, including the Office of the Comptroller of Public Accounts to the extent it acts through or on behalf of the Texas Bullion Depository, and any current or former officers, employees, agents, attorneys, representatives, contractors, consultants, and other persons or entities purporting to act on its behalf.

6. "Valaurum" refers to Valaurum, Inc., and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

7. "Scottsdale Mint" refers to Scottsdale Mint, LLLP, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

8. "Person" means any natural person, public or private corporation, partnership, joint venture, association, group, government, or governmental entity (including any governmental agency or political subdivision of any government), and any other form of business or legal organizational arrangement.

9. References to specific individuals include their respective current and former businesses, professional associations, partnerships, corporations, partners, affiliates, employees, agents, attorneys, and/or representatives.

10. References to specific public and private entities include their current and former officers, directors, representatives, employees, agents, attorneys, parents, subsidiaries, and/or affiliates.

11. The term "produce" means to produce the responsive documents that are in your possession, custody, or control, which includes those documents in your constructive possession or in which you have a superior right to compel the production from any other person, for copying and inspection.

12. "Redbacks" means the gold-note products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "a series of 24K commemorative gold notes . . . each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate," including all versions, denominations, weights, formats, designs, series, editions, and packaging.

13. "State of Texas Coins" means the commemorative coin products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes," including all versions, finishes, designs, series, editions, and packaging.

14. The term "ESI" means electronically stored information including, but not limited to, information electronically, magnetically or optically stored as: (a) digital communications (*e.g.*, email, voice mail, instant messaging); (b) word processed documents (*e.g.*, Word or WordPerfect documents and drafts); (c) spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets); (d) accounting application data (e.g., QuickBooks, Money, Peachtree data files); (e) image and facsimile files (*e.g.*, PDF, TIFF, JPG, GIF images); (f) sound recordings (*e.g.*, WAV and MP3 files); (g) video and animation (*e.g.*, AVI and MOV files); (h) databases (*e.g.*, Access, Oracle, SQL Server data, SAP); (i) electronic mail, contact and relationship management data (*e.g.*, Outlook, Maximizer, ACT!), including any deleted emails or any other emails resident on any servers or computers; (j) calendar and diary application data (*e.g.*, Outlook PST, Yahoo, blog tools); (k) online access data (*e.g.*, temporary internet files, history, cookies); (l) presentations (*e.g.*, PowerPoint, Corel Presentations); (m) network access and server activity logs; (n) project management application data; (o) computer-aided design/drawing files; and (q) back-up and archival files (*e.g.*, ZIP, GHO). ESI shall be produced (with metadata intact) in the format specified in the Instructions set forth below.

15. The term "metadata" means system and application metadata. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, dates of creation and last modification or access, number of attachments, and document type (*i.e.* email, attachment, etc.). Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. For electronic mail (including deleted emails), metadata includes all header routing data and

Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, Sent Date, Time Sent, CC, BCC and Body fields.

16.    The term "documents" means the original and each non-identical copy of any written, graphic, electronic, or magnetic matter, however produced, whether sent or received, or neither (including deleted emails), including drafts and both sides thereof, in your possession, custody, or control and specifically includes ESI (as defined herein). The term shall include handwritten, typewritten, printed, photocopied, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, drawings, blueprints, charts, maps, graphs, photographs, still or moving picture films, parts or components of equipment, models, information stored in, or accessible through, computer or other information storage or retrieval systems, all other "documents and tangible things" as set forth in Texas Rule of Civil Procedure 192.3(b), and any physical object in the possession of, subject to the control of, or within the knowledge of the party responding to these requests for production, including their counsel, experts or investigators.

17.    The use of the singular shall be deemed to include the plural, the masculine, and the feminine, as appropriate in the context.

18.    "And" and "or" mean "and/or."

19.    The terms "relating to," "regarding," or any derivative of either, include the following meanings: relating to; referring to; concerning; pertaining to; discussing; mentioning; containing; reflecting; evidencing; describing; displaying; showing; identifying; providing; disproving; consisting of; supporting; contradicting; in any way legally, logically, or factually connected with the matter referred to; or having a tendency to prove or disprove the matter referred to.

20.    The term "including," or one of its derivatives, means "includ[ing] but not limited to."

21.    The term "copy," or one of its derivatives, means and refers to any reproduction in any form whatsoever, including but not limited to transmissions over a network, printouts, or screenshots.

22.    The term "any" means "all," and should be understood in either its most or least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

23.    Unless otherwise indicated, the "relevant time period" shall refer to December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: Produce all call logs, call detail records, recordings, transcripts, notes, tickets, customer-service records, and all other documents or data reflecting or relating to inbound or outbound calls to 833-403-2211 that refer to Texas Precious Metals or the Texas Precious Metals Products

**REQUEST FOR PRODUCTION NO. 2**: Produce all documents that reference, reflect, or relate to any order, purchase, attempted purchase, or customer inquiry concerning Texas Precious Metals or the Texas Precious Metals Products.

**REQUEST FOR PRODUCTION NO. 3**: Produce documents sufficient to show the volume and value of sales of the State of Texas Coins and Redbacks, including without limitation units sold, gross revenue, net revenue, dates of sale, SKU/product identifiers, and sales channel(s), for the relevant time period.

**REQUEST FOR PRODUCTION NO. 4**: Produce documents sufficient to show any and all **pricing** for the State of Texas Coins and Redbacks and any changes to pricing (including base price, premiums/markups, discounts, promotions, and shipping/handling or other fees), including without limitation price lists, webpages, internal pricing approvals, and pricing-change logs, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 5**: Produce all documents sufficient to show the Google advertising keywords and search terms used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, for the relevant time period, including without limitation: (a) keyword lists, keyword-selection documents, and keyword-planning materials; (b) search term reports reflecting actual user queries; (c) negative keyword lists; and (d) communications with Defendants, the Agency, or any advertising vendor, consultant, or agency concerning the selection, addition, removal, or modification of keywords or search terms for such campaigns.

**REQUEST FOR PRODUCTION NO. 6**: Produce documents sufficient to identify and describe the full scope of "promotional items" marketed, licensed, offered for sale, sold, or distributed by or on behalf of the Texas Bullion Depository, including without limitation product lists, descriptions, SKUs, images, pricing, dates offered, quantities sold/distributed, and the channels through which such promotional items were marketed or provided, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 7**: Produce all contracts, agreements, statements of work, purchase orders, amendments, addenda, and related documents with any third party relating to the marketing, licensing, offering for sale, sale, fulfillment, distribution, manufacture, minting, design, or promotion of (a) any Texas Bullion Depository promotional items, (b) the State of Texas Coins, or (c) the Redbacks, including without limitation agreements with Defendants and with any other vendors or subcontractors, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 8**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Defendants that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 9**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Valaurum that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 10**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Scottsdale Mint that reference, reflect, or relate to Texas Precious Metals.

# EXHIBIT A-2

## SCHEDULE OF DEPOSITION TOPICS

1. Sales of the State of Texas Coins and Redbacks, including the quantity and dollar value of completed sales and placed orders (including pending, canceled, refunded, or returned orders), by product type and sales channel(s), for the relevant time period.

2. Procedures for the sale of the State of Texas Coins and Redbacks, including order intake, customer communications, payment processing, pricing and price changes, fulfillment, shipping, returns, refunds, and customer-service processes (including any call center procedures and call routing used for such sales), for the relevant time period.

3. Sales of "promotional items" for or on behalf of the Agency, including the identity and description of such items, the quantity and dollar value of sales, the channels through which such items were marketed and sold, and USGB's role in offering, selling, fulfilling, or accounting for such items, for the relevant time period.

4. The relationship between USGB and Defendants and/or the Agency with regard to the marketing, offering for sale, sale, fulfillment, distribution, customer service, and returns of the State of Texas Coins and Redbacks, including the existence and terms of any agreements, division of responsibilities, marketing approvals, pricing authority, inventory and fulfillment responsibilities, reporting obligations, and any revenue-sharing, fees, or commissions, for the relevant time period.

5. Internet search terms and keywords used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, including Google Ads keywords, search term reports reflecting actual user queries, negative keywords, and any processes for selecting, approving, modifying, or monitoring such terms, for the relevant time period.

6. Confusion between Texas Precious Metals Products and the State of Texas Coins and/or Redbacks, including consumer inquiries, complaints, returns, or communications reflecting confusion as to source, sponsorship, affiliation, or approval; USGB's procedures for documenting and responding to such confusion; and any communications with Defendants and/or the Agency regarding such confusion, for the relevant time period.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 111155056
Filing Code Description: RESPONSE
Filing Description: NONPARTY TEXAS GOLD BUREAU LLC'S OBJECTIONS TO SUBPOENA DUCES TECUM AND MOTION FOR PROTECTIVE ORDER
Status as of 2/19/2026 3:45 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/11/2026 5:03:46 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/11/2026 5:03:46 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/11/2026 5:03:46 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/11/2026 5:03:46 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/11/2026 5:03:46 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/11/2026 5:03:46 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/11/2026 5:03:46 PM | SENT |

2/11/2026 8:15 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Candy Schmidt

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | TRAVIS COUNTY, TEXAS |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | 459TH JUDICIAL DISTRICT |
| Defendants. | | |

---

### NONPARTY U.S. GOLD BUREAU LLC'S AMENDED[1] OBJECTIONS TO SUBPOENA DUCES TECUM AND MOTION FOR PROTECTIVE ORDER

Five days after filing this lawsuit, Plaintiff Texas Precious Metals, LLC ("TPM") served its direct competitor, nonparty U.S. Gold Bureau LLC (the "Gold Bureau"), with a deposition notice and subpoena duces tecum. Ex. A. Pursuant to Texas Rules of Civil Procedures 176.6 and 199.4, the Gold Bureau objects to the notice/subpoena and moves for a protective order on three independent grounds:

1. This is an *ultra vires* case against two state officers based on a pure question of statutory construction. None of the discovery sought from the Gold Bureau is relevant or likely to lead to the discovery of admissible evidence on TPM's sole claim that the defendants are acting *ultra vires* by causing a state agency to trade in precious metals.

2. The discovery period has not yet commenced in this week-old lawsuit. Rule 199.2(a) prohibits TPM from taking a deposition outside the discovery period, and Rule 176.3 prohibits TPM from using a subpoena to conduct discovery at a time other than as provided by the discovery rules.

3. TPM did not confer with the Gold Bureau regarding the time for producing documents or appearing for an oral deposition, neither of which is feasible for the Gold Bureau.

---

[1] The original mistakenly identified the movant as Texas Gold Bureau LLC rather than U.S. Gold Bureau LLC.

# ARGUMENT

**I.    Nonparty discovery from the Gold Bureau is not within the permissible scope of discovery in this narrow ultra vires case against two state officers.**

According to TPM's own pleading, this is a very narrow suit.  In contrast, TPM's attempt to take discovery from a nonparty competitor is extremely broad, invasive, harassing, and inappropriate.  In its sole cause of action, TPM seeks only "a declaratory judgment to determine a question of construction arising under Texas Government Code Chapter 2116."  Orig. Pet. at ¶ 52. TPM says: "The parties disagree as to whether Texas Government Code Chapter 2116 authorizes Defendants to design, sell, and market precious metals or limits Defendants to securing and storing precious metal assets."  *Id*. at ¶ 55.

Statutory construction is, of course, a pure question of law.  *Lopez v. Tex. Workers' Comp. Ins. Fund*, 11 S.W.3d 490, 494 (Tex. App.—Austin 2000, pet. denied).  Invasive discovery from a nonparty will not illuminate legislative intent or otherwise assist the Court in construing the Government Code or declaring the boundaries of the defendants' statutory authority.

**II.    TPM is unlawfully attempting to take discovery before the discovery period begins.**

The defendants have not yet answered this lawsuit, no party has served initial disclosures, and the discovery period has not opened.  TPM pled that it intends to conduct discovery under a Level 3 scheduling order under Rule 190.4.  Orig. Pet. at 2.  But the Court has not yet signed any such order, which means the case is currently governed by the discovery limitations of Rule 190.3. *See* Tex. R. Civ. P. 190.4(b).  Because this suit is not governed by the Family Code, "all discovery must be conducted during the discovery period, which begins when the first initial disclosures are due."  Tex. R. Civ. P. 190.3(b)(1)(A).  "A party must make the initial disclosures within 30 days after the filing of the first answer or general appearance unless a different time is set by the parties'

agreement or court order." Tex. R. Civ. P. 194.2. TPM's attempt to commence discovery is, at a minimum, several weeks premature.

"An oral deposition may be taken outside the discovery period only by agreement of the parties or with leave of court." Tex. R. Civ. P. 199.2(a). And TPM cannot evade this restriction simply by serving a subpoena on a nonparty: "A subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery." Tex. R. Civ. P.176.3(b). Because there is no agreement or court order providing otherwise, TPM cannot proceed with discovery at this time.

**III.    The Gold Bureau objects to time.**

Pursuant to Texas Rule of Civil Procedure 199.4, the Gold Bureau objects to the time that TPM unilaterally set for the document production and deposition. Not only are the chosen dates before the discovery period opens, but if the Court were to require the Gold Bureau to search for, review, and produce documents responsive to TPM's requests and to prepare a witness to testify, the Gold Bureau would need thirty days or more to comply.

**PRAYER**

The nonparty subpoena is unauthorized. The Gold Bureau prays that the Court sustain these objections, issue a protective order absolving the Gold Bureau from compliance with the subpoena, and award the Gold Bureau such other relief to which it may be entitled.

Respectfully submitted,

By: */s/ Joseph R. Knight*
     Joseph R. Knight
     State Bar No. 11601275
     EWELL BROWN BLANKE & KNIGHT LLP
     111 Congress Avenue, Suite 2800
     Austin, Texas 78701
     (512) 770-4010

     Attorneys for Nonparty U.S. Gold Bureau LLC

**CERTIFICATE OF CONFERENCE**

I certify that on February 11, 2026, I spoke by telephone with Ryan Sullivan, one of the lawyers for TPM. We were unable to resolve the issues raised by these objections and motion. Therefore, they are being presented to the Court as **opposed**.

/s/ *Joseph R. Knight*
Joseph R. Knight

**CERTIFICATE OF SERVICE**

I certify that on February 11, 2026, I filed the foregoing with the Clerk of Court using the e-filing system which will deliver a copy to all counsel of record

/s/ *Joseph R. Knight*
Joseph R. Knight

# EXHIBIT A

**Notice of Oral Deposition and Subpoena Duces Tecum**

**CAUSE NO. D-1-GN-26-000754**



| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## TEXAS PRECIOUS METALS, LLC'S NOTICE OF ORAL DEPOSITION AND SUBPOENA DUCES TECUM TO U.S. GOLD BUREAU

PLEASE TAKE NOTICE that pursuant to Texas Rules of Civil Procedure 176, 199, and 205, Plaintiff, Texas Precious Metals, LLC ("Plaintiff" or "TPM"), by and through its counsel of record, is serving a subpoena duces tecum and notice of oral deposition on non-party U.S. Gold Bureau, attached as **Exhibit A** hereto. Pursuant to Texas Rule of Civil Procedure 199.2(b)(1), U.S. Gold Bureau shall, within a reasonable time before the deposition, designate one or more individuals to testify on its behalf regarding the matters listed in **Exhibit A-2**. The deposition will commence at 9:00 a.m. Central Time on **February 20, 2026,** and will continue day to day until completed or adjourned by the attorneys taking the deposition. The deposition will take place at the offices of Pillsbury Winthrop Shaw Pittman LLP, 401 W. 4th St., Suite 3200, Austin, Texas 78701 or as otherwise agreed by the parties, including by remote means if agreed. The deposition will be recorded stenographically and videotaped before a certified reporter authorized by law to take video depositions.

In accordance with Texas Rules of Civil Procedure 199.2 and 205.2, U.S. Gold Bureau is further requested to produce and permit inspection and copying of the documents (including emails, recordings, or other electronically stored information) identified in **Exhibit A-1** hereto. The documents shall be produced on or before **February 18, 2026**. Such deposition testimony and documents are for discovery purposes and may be used as evidence in the trial of the above-styled case and for other purposes permitted by law.

Date: February 9, 2026

Respectfully submitted,

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on February 9, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

*/s/ Casey Low*
Casey Low

# **EXHIBIT A**

## SUBPOENA DUCES TECUM
## ISSUED IN THE NAME OF THE STATE OF TEXAS

You, U.S. Gold Bureau, are hereby commanded, on or before **February 18, 2026,** to produce documents relating to Cause No. D-1-GN-26-000754; *Texas Precious Metals, LLC v. Hancock, et al.;* as set forth in the requests attached hereto as **Exhibit A-1**. The documents shall be delivered to the undersigned counsel via email or hand delivery.

### Party/Person Issuing Subpoena

This subpoena is issued at the instance of Texas Precious Metals, LLC, Plaintiff in the above-referenced cause, and by and through its attorneys of record Pillsbury Winthrop Shaw Pittman, LLP.

### Documents or Tangible Things

You are commanded to produce the following documents or tangible things in your possession, custody, or control at the place and time specified above.

*See* **Exhibit A-1** attached hereto.

### Deposition

You are further commanded to personally appear at the office of Pillsbury Winthrop Shaw Pittman, LLP at 401 W 4th St, Suite 3200, Austin, Texas, 78701, at **9:00 a.m. Central Time** on **February 20, 2026** ("Deposition Date"), before the officer present who is duly authorized by law to take your deposition by stenographic and videographic means, then and there be sworn as a witness for the purpose of giving your deposition.

### WARNING
### ENFORCEMENT OF SUBPOENA PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 176.8

FAILURE OF ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED A CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH. TEX. R. CIV. P. 176.8(A).

This subpoena is issued on the 9th day of February, 2026 by:

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

**Witness Accepts Service**

I, _____, accept service of the attached subpoena as well as receipt of the witness fee and will appear at the time and place directed in said subpoena.

Date:_____          _____
                                                          [Signature of Witness]

**Statement by Person Serving Subpoena**

I, _____, am over the age of 18 years. I am not a party in the aforementioned cause of action. On the ___ day of _____, 2026, I served a subpoena, of which this is a true and correct copy on U.S. Gold Bureau, by and through their registered agent, Lone Star Tangible Assets Management, LLC, 203 Heritage Grove Road, Leander, TX 78641 at ____ o'clock ___A.M./P.M. I also tendered to the person served the witness fee required by law at the time the subpoena was delivered.

_____          _____
Date                                                        [Signature of Person Serving Subpoena]

# EXHIBIT A-1

## INSTRUCTIONS

1.    In responding to these requests, please produce all documents and information within your possession, custody, or control, and all documents and information reasonably available to you, including documents and information in the possession of your attorneys or their investigators, and all persons acting on your behalf.

2.    For each document requested, produce the entire document, including all attachments, appendices, and exhibits.

3.    For each document requested, produce all non-identical copies of that document.

4.    Produce documents as they are kept in the usual course of business or organize and label them to correspond with the categories in the document requests.

5.    If you withhold any document, or any portion of that document, under a claim of privilege, You shall produce a written privilege log that sets forth: (i) the author of the document; (ii) the type of document, *e.g.* letter or memorandum; (iii) the date of the document; (iv) all recipients of the document; (v) such other information as is sufficient to identify the document; and (vi) the nature of the privilege asserted.

6.    If information is redacted from a document produced in response to a request, you shall identify the redaction by stamping the word "Redacted" on the document at each place where information has been redacted and separately log each redaction on the privilege log.

7.    If any requested document has been lost or destroyed, you shall state the circumstances of its loss or destruction, including the identity of person(s) having knowledge as to the circumstances of its loss or destruction and the date of its loss or destruction.

8.    Unless otherwise indicated, these Requests seek documents from December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period. These requests are continuing in nature. If, after producing any documents in response to any of the following Requests, you obtain or become aware of additional responsive information, you are required to provide such information or documents by way of a supplemental production.

## <u>DEFINITIONS</u>

1. "USGB," "United States Gold Bureau," "You" and "Your" refers to United States Gold Bureau, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

2. "Defendants" refers to Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts, and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository, collectively or individually, and include any person or entity acting or purporting to act on any Defendant's behalf or at any Defendant's direction or control, including employees, agents, representatives, contractors, consultants, assistants, and service providers.

3. "Plaintiff" or "Texas Precious Metals" or "TPM" refers to Texas Precious Metals, LLC, including its divisions and brands (including Texas Mint), and its current and former officers, directors, managers, employees, agents, attorneys, representatives, affiliates, and any other person or entity purporting to act on its behalf.

4. "Texas Precious Metals Products" refers to Texas Gold Rounds, Texas Silver Rounds, Pro Rodeo Rounds, Goldbacks, and all other products sold by Texas Precious Metals and bearing the Texas Precious Metals mint mark.

5. "Agency" or "Texas Bullion Depository" or "Depository" means the Texas Bullion Depository, including the Office of the Comptroller of Public Accounts to the extent it acts through or on behalf of the Texas Bullion Depository, and any current or former officers, employees, agents, attorneys, representatives, contractors, consultants, and other persons or entities purporting to act on its behalf.

6. "Valaurum" refers to Valaurum, Inc., and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

7. "Scottsdale Mint" refers to Scottsdale Mint, LLLP, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

8. "Person" means any natural person, public or private corporation, partnership, joint venture, association, group, government, or governmental entity (including any governmental agency or political subdivision of any government), and any other form of business or legal organizational arrangement.

9. References to specific individuals include their respective current and former businesses, professional associations, partnerships, corporations, partners, affiliates, employees, agents, attorneys, and/or representatives.

10.     References to specific public and private entities include their current and former officers, directors, representatives, employees, agents, attorneys, parents, subsidiaries, and/or affiliates.

11.     The term "produce" means to produce the responsive documents that are in your possession, custody, or control, which includes those documents in your constructive possession or in which you have a superior right to compel the production from any other person, for copying and inspection.

12.     "Redbacks" means the gold-note products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "a series of 24K commemorative gold notes . . . each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate," including all versions, denominations, weights, formats, designs, series, editions, and packaging.

13.     "State of Texas Coins" means the commemorative coin products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes," including all versions, finishes, designs, series, editions, and packaging.

14.     The term "ESI" means electronically stored information including, but not limited to, information electronically, magnetically or optically stored as: (a) digital communications (*e.g.*, email, voice mail, instant messaging); (b) word processed documents (*e.g.*, Word or WordPerfect documents and drafts); (c) spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets); (d) accounting application data (e.g., QuickBooks, Money, Peachtree data files); (e) image and facsimile files (*e.g.*, PDF, TIFF, JPG, GIF images); (f) sound recordings (*e.g.*, WAV and MP3 files); (g) video and animation (*e.g.*, AVI and MOV files); (h) databases (*e.g.*, Access, Oracle, SQL Server data, SAP); (i) electronic mail, contact and relationship management data (*e.g.*, Outlook, Maximizer, ACT!), including any deleted emails or any other emails resident on any servers or computers; (j) calendar and diary application data (*e.g.*, Outlook PST, Yahoo, blog tools); (k) online access data (*e.g.*, temporary internet files, history, cookies); (l) presentations (*e.g.*, PowerPoint, Corel Presentations); (m) network access and server activity logs; (n) project management application data; (o) computer-aided design/drawing files; and (q) back-up and archival files (*e.g.*, ZIP, GHO). ESI shall be produced (with metadata intact) in the format specified in the Instructions set forth below.

15.     The term "metadata" means system and application metadata. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, dates of creation and last modification or access, number of attachments, and document type (*i.e.* email, attachment, etc.). Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. For electronic mail (including deleted emails), metadata includes all header routing data and

Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, Sent Date, Time Sent, CC, BCC and Body fields.

16.     The term "documents" means the original and each non-identical copy of any written, graphic, electronic, or magnetic matter, however produced, whether sent or received, or neither (including deleted emails), including drafts and both sides thereof, in your possession, custody, or control and specifically includes ESI (as defined herein).  The term shall include handwritten, typewritten, printed, photocopied, or recorded matter.  It shall include communications in words, symbols, pictures, sound recordings, films, tapes, drawings, blueprints, charts, maps, graphs, photographs, still or moving picture films, parts or components of equipment, models, information stored in, or accessible through, computer or other information storage or retrieval systems, all other "documents and tangible things" as set forth in Texas Rule of Civil Procedure 192.3(b), and any physical object in the possession of, subject to the control of, or within the knowledge of the party responding to these requests for production, including their counsel, experts or investigators.

17.     The use of the singular shall be deemed to include the plural, the masculine, and the feminine, as appropriate in the context.

18.     "And" and "or" mean "and/or."

19.     The terms "relating to," "regarding," or any derivative of either, include the following meanings:  relating to; referring to; concerning; pertaining to; discussing; mentioning; containing; reflecting; evidencing; describing; displaying; showing; identifying; providing; disproving; consisting of; supporting; contradicting; in any way legally, logically, or factually connected with the matter referred to; or having a tendency to prove or disprove the matter referred to.

20.     The term "including," or one of its derivatives, means "includ[ing] but not limited to."

21.     The term "copy," or one of its derivatives, means and refers to any reproduction in any form whatsoever, including but not limited to transmissions over a network, printouts, or screenshots.

22.     The term "any" means "all," and should be understood in either its most or least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

23.     Unless otherwise indicated, the "relevant time period" shall refer to December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period.

<u>**REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

<u>**REQUEST FOR PRODUCTION NO. 1**</u>: Produce all call logs, call detail records, recordings, transcripts, notes, tickets, customer-service records, and all other documents or data reflecting or relating to inbound or outbound calls to 833-403-2211 that refer to Texas Precious Metals or the Texas Precious Metals Products

<u>**REQUEST FOR PRODUCTION NO. 2**</u>: Produce all documents that reference, reflect, or relate to any order, purchase, attempted purchase, or customer inquiry concerning Texas Precious Metals or the Texas Precious Metals Products.

<u>**REQUEST FOR PRODUCTION NO. 3**</u>: Produce documents sufficient to show the volume and value of sales of the State of Texas Coins and Redbacks, including without limitation units sold, gross revenue, net revenue, dates of sale, SKU/product identifiers, and sales channel(s), for the relevant time period.

<u>**REQUEST FOR PRODUCTION NO. 4**</u>: Produce documents sufficient to show any and all **pricing** for the State of Texas Coins and Redbacks and any changes to pricing (including base price, premiums/markups, discounts, promotions, and shipping/handling or other fees), including without limitation price lists, webpages, internal pricing approvals, and pricing-change logs, for the relevant time period.

<u>**REQUEST FOR PRODUCTION NO. 5**</u>: Produce all documents sufficient to show the Google advertising keywords and search terms used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, for the relevant time period, including without limitation: (a) keyword lists, keyword-selection documents, and keyword-planning materials; (b) search term reports reflecting actual user queries; (c) negative keyword lists; and (d) communications with Defendants, the Agency, or any advertising vendor, consultant, or agency concerning the selection, addition, removal, or modification of keywords or search terms for such campaigns.

<u>**REQUEST FOR PRODUCTION NO. 6**</u>: Produce documents sufficient to identify and describe the full scope of "promotional items" marketed, licensed, offered for sale, sold, or distributed by or on behalf of the Texas Bullion Depository, including without limitation product lists, descriptions, SKUs, images, pricing, dates offered, quantities sold/distributed, and the channels through which such promotional items were marketed or provided, for the relevant time period.

<u>**REQUEST FOR PRODUCTION NO. 7**</u>: Produce all contracts, agreements, statements of work, purchase orders, amendments, addenda, and related documents with any third party relating to the marketing, licensing, offering for sale, sale, fulfillment, distribution, manufacture, minting, design, or promotion of (a) any Texas Bullion Depository promotional items, (b) the State of Texas Coins, or (c) the Redbacks, including without limitation agreements with Defendants and with any other vendors or subcontractors, for the relevant time period.

<u>**REQUEST FOR PRODUCTION NO. 8**</u>: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Defendants that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 9**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Valaurum that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 10**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Scottsdale Mint that reference, reflect, or relate to Texas Precious Metals.

# EXHIBIT A-2

## SCHEDULE OF DEPOSITION TOPICS

1. Sales of the State of Texas Coins and Redbacks, including the quantity and dollar value of completed sales and placed orders (including pending, canceled, refunded, or returned orders), by product type and sales channel(s), for the relevant time period.

2. Procedures for the sale of the State of Texas Coins and Redbacks, including order intake, customer communications, payment processing, pricing and price changes, fulfillment, shipping, returns, refunds, and customer-service processes (including any call center procedures and call routing used for such sales), for the relevant time period.

3. Sales of "promotional items" for or on behalf of the Agency, including the identity and description of such items, the quantity and dollar value of sales, the channels through which such items were marketed and sold, and USGB's role in offering, selling, fulfilling, or accounting for such items, for the relevant time period.

4. The relationship between USGB and Defendants and/or the Agency with regard to the marketing, offering for sale, sale, fulfillment, distribution, customer service, and returns of the State of Texas Coins and Redbacks, including the existence and terms of any agreements, division of responsibilities, marketing approvals, pricing authority, inventory and fulfillment responsibilities, reporting obligations, and any revenue-sharing, fees, or commissions, for the relevant time period.

5. Internet search terms and keywords used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, including Google Ads keywords, search term reports reflecting actual user queries, negative keywords, and any processes for selecting, approving, modifying, or monitoring such terms, for the relevant time period.

6. Confusion between Texas Precious Metals Products and the State of Texas Coins and/or Redbacks, including consumer inquiries, complaints, returns, or communications reflecting confusion as to source, sponsorship, affiliation, or approval; USGB's procedures for documenting and responding to such confusion; and any communications with Defendants and/or the Agency regarding such confusion, for the relevant time period.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 111160127
Filing Code Description: Motion (No Fee)
Filing Description: NONPARTY U.S. GOLD BUREAU LLC'S AMENDED OBJECTIONS TO SUBPOENA DUCES TECUM AND MOTION FOR PROTECTIVE ORDER
Status as of 2/16/2026 4:09 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/11/2026 8:15:03 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/11/2026 8:15:03 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/11/2026 8:15:03 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/11/2026 8:15:03 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/11/2026 8:15:03 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/11/2026 8:15:03 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/11/2026 8:15:03 PM | SENT |

2/12/2026 4:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Susan Schmidt

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

## STATE DEFENDANTS' OPPOSED MOTION TO QUASH NONPARTY SUBPOENA AND FOR ENTRY OF PROTECTIVE ORDER

Defendants Kelly Hancock and Macy Douglas (State Defendants), each in their official capacities, file this Motion to Quash Texas Precious Metals, LLC's Notice of Oral Deposition and Subpoena Duces Tecum to U.S. Gold Bureau and respectfully request the Court quash the Notice of Oral Deposition and enter a protective order staying discovery under the Subpoena Duces Tecum

### INTRODUCTION

Texas Precious Metals filed this lawsuit on February 4, 2026. Yet, on February 9, 2026, Texas Precious Metals issued a Notice of Oral Deposition and Subpoena Duces Tecum. Texas Precious Metals did not confer with State Defendants concerning the Notice of Oral Deposition and Subpoena Duces Tecum and the Notice of Oral Deposition and Subpoena Duces Tecum violates the Texas Rules of Civil Procedure governing the discovery process.

### LEGAL STANDARD

"A party may compel production of documents and tangible things from a nonparty by serving--a reasonable time before the response is due but no later than 30 days before the end of any applicable discovery period--the notice required in Rule 205.2 and a subpoena compelling production or inspection of documents or tangible things." Tex. R. Civ. P. 205.3(a). However, "[a]

subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery." Tex. R. Civ. P. 176.3(b).

Unless a suit is governed by a discovery control plan under Rules 190.2 (Level 1 Discovery) or 190.4 (Level 3 Discovery), discovery must be conducted in accordance with Level 2 Discovery. Tex. R. Civ. P. 190.3(a). In a case governed by Level 3 discovery, "[t]he discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless specifically changed in the discovery control plan ordered by the court." Tex. R. Civ. P. 190.4(b) Under Level 1 Discovery, "[i]n a suit not governed by the Family Code, all discovery must be conducted during the discovery period, which begins when the first initial disclosures are due and continues for 180 days." Tex. R. Civ. P. 190.2(b)(1)(A). Under Level 2 Discovery, "[i]n a suit not governed by the Family Code, all discovery must be conducted during the discovery period, which begins when the first initial disclosures are due and continues until the earlier of: (i) 30 days before the date set for trial; or (ii) nine months after the first initial disclosures are due." Tex. R. Civ. P. 190.3(b)(1)(A). And generally, "[i]n a suit not governed by the Family Code, unless otherwise agreed to by the parties or ordered by the court, a party cannot serve discovery on another party until after the other party's initial disclosures are due." Tex. R. Civ. P. 192.2(a)(1).

"A party or witness may object to the time and place designated for an oral deposition by motion for protective order or by motion to quash the notice of deposition." Tex. R. Civ. P. 199.4. "If the motion is filed by the third business day after service of the notice of deposition, an objection to the time and place of a deposition stays the oral deposition until the motion can be determined." *Id.* "In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included." Tex. R. Civ. P. 4.

"A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought." Tex. R. Civ. P. 192.6(a). "If a person seeks

protection regarding the time or place of discovery, the person must state a reasonable time and place for discovery with which the person will comply." *Id.* "To protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights," the Court may order, in the interest of justice, that "the requested discovery not be sought in whole or in part; . . . the discovery not be undertaken at the time or place specified; . . . [or] the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court." Tex. R. Civ. P. 192.6(b).

<u>FACTUAL BACKGROUND</u>

Texas Precious Metals filed its Verified Original Petition and Application for Temporary Restraining Order and Injunctive Relief ("TPM's Petition") on February 4, 2026. TPM's Petition at 1. Texas Precious Metals requested the case proceed "under a Level 3 discovery plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure." TPM's Petition at 2. Texas Precious Metals issued a Notice of Oral Deposition and Subpoena Duces Tecum ("Subpoena") to U.S. Gold Bureau on February 9, 2025. Exhibit A at 1. State Defendants received notice of the Subpoena that day. *Id.* at 2. The Subpoena orders the U.S. Gold Bureau to "appear at the office of Pillsbury Winthrop Shaw Pittman, LLP . . . at **9:00 a.m. Central Time** on **February 20, 2026**" for an oral deposition. *Id.* at 4. It also orders the U.S. Gold Bureau to produce documents by February 18, 2026. *Id.* This suit is not governed by the Family Code. *See generally* TPM's Petition. The Court has not ordered a Level 3 discovery control plan.

<u>MOTION TO QUASH</u>

State Defendants object to Texas Precious Metals' Notice of Oral Deposition and Subpoena Duces Tecum on grounds of time and place of the deposition and untimeliness of service. State Defendants will suffer prejudice in the absence of judicial intervention, and this intervention is not sought for delay or any improper purpose. As such, State Defendants respectfully request this Court quash the Subpoena and enter a protective order staying Texas Precious Metal's Subpoena Duces Tecum. *See* Tex. R. Civ. P. 199.4.

State Defendants object to the time and place of Texas Precious Metal's Subpoena. *See* Tex. R. Civ. P. 199.4. The enumerated deposition topics include information concerning the sales of State Defendants' "Coins and Redbacks" such as the "quantity and dollar value of completed sales and placed orders," "[p]rocedures for the sale" of these and other promotional products, including "channels through which such items were marketed and sold," among other things. Exhibit A at 13. This is information that Texas Precious Metals could potentially seek from State Defendants and has the possibility of containing confidential information affecting State Defendants' rights. As such, State Defendants may desire to be present at the deposition. However, Texas Precious Metals did not confer with State Defendants regarding the time or place of the deposition.

Additionally, State Defendants object to the Subpoena on the grounds that it is untimely. Texas Precious Metals filed the present lawsuit on February 4, 2026. TPM's Petition at 1. Texas Precious Metals requested discovery proceed under Level 3. TPM's Petition at 2. However, the Court has not entered a discovery order, nor have the parties agreed to expedited discovery. Thus, Level 2 discovery rules currently apply. Tex. R. Civ. P. 190.3(a) ("Unless a suit is governed by a discovery control plan under Rules 190.2 or 190.4, discovery must be conducted in accordance with this subdivision."). But even if Level 3 discovery rules govern, Level 1 discovery rules apply in the absence of a Court order. Tex. R. Civ. P. 190.4(b) ("The discovery limitations of Rule 190.2, if applicable, or otherwise Rule 190.3 apply unless specifically changed in the discovery control plan ordered by the Court."). Regardless, both Level 1 and 2 discovery rules state "all discovery must be conducted during the discovery period, which begins when the first initial disclosures are due[.]" Tex. R. Civ. P. 190.2(b)(1)(A); Tex R. Civ. P. 190.3(b)(1)(A). In suits not governed by the Family Code, initial disclosures are due "within 30 days after the filing of the first answer or general appearance unless a different time is set by the parties' agreement or court order." Tex. R. Civ. P. 194.2(a).

The discovery period is not open. Thirty days have not occurred since Texas Precious

Metals filed its lawsuit, much less since State Defendants made their first general appearance. TPM's Petition at 1; Defendants' Notice of Appearance of Counsel at 2 (filed Feb. 10, 2026). The Court has not entered an order modifying the discovery period, nor have parties entered into an agreement. As such, the discovery period is not open.

The Subpoena is a form of discovery which must be conducted during the discovery period. Notices of Oral Deposition and Subpoenas Duces Tecum to nonparties are forms of discovery. Tex. R. Civ. P. 205.1 ("Forms of Discovery; Subpoena Requirement"). Under both Level 1 and 2 discovery "all discovery must be conducted during the discovery period[.]" Tex. R. Civ. P. 190.2(b)(1)(A); Tex R. Civ. P. 190.3(b)(1)(A). As such, the Subpoena must be issued during the discovery period. *See* Tex. R. Civ. P. 190.2(b)(1)(A); *see also* Tex R. Civ. P. 190.3(b)(1)(A). Because the Subpoena was issued before discovery period was open, it is untimely.

State Defendants are prejudiced by the Subpoena because it is untimely and seeks information that, in large part, could otherwise be potentially discoverable from State Defendants during the regular discovery period. Moreover, the discovery sought is overbroad and not relevant to the answer before the Court in this matter: the scope of State Defendants' authority under a statute. This prejudice could be alleviated by this Court's entry of an order quashing the Subpoena and entry of a protective order staying the requested discovery.

For these reasons, State Defendants request the Court quash the Subpoena and enter a protective order staying the requested discovery until the discovery period is open by operation of law, order of the Court, or agreement of the parties and until a protective order concerning potential confidential, trade secret, or otherwise privileged documents and information has been agreed to by the parties and entered into by this Court.

<u>CONCLUSION</u>

For these reasons, State Defendants respectfully request that this Court quash Texas Precious Metals, LLC's Notice of Oral Deposition and Subpoena Duces Tecum to U.S. Gold Bureau and enter a protective order.

Date: February 12, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

Respectfully Submitted.

/s/ *David Bryant*
DAVID
BRYANT
Senior Special Counsel
Attorney-in-Charge
Texas Bar No.
03281500

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
Direct: (512) 936-2275

MUNERA AL-
FUHAID
Special Counsel
Texas Bar No. 24094501

ALEXIA K. BAKER
Assistant Attorney General
Tex. State Bar No. 24149596

*COUNSEL FOR DEFENDANTS*

**CERTIFICATE OF CONFERENCE**

I certify that on February 12, 2026, I conferred with Mr. Ryan Sullivan, counsel for Plaintiff, Texas Precious Metals in a good faith effort to resolve or narrow the issues raised. We were unable to resolve the issues raised by this Motion and Mr. Sullivan indicated TPM is opposed to the filing of this Motion.

*/s/ Ali M. Thorburn*
ALI M. THORBURN
Special Counsel

**CERTIFICATE OF SERVICE**

I certify that on February 12, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

*/s/ Ali M. Thorburn*
ALI M. THORBURN
Special Counsel

**Exhibit A**
Plaintiff's Subpoena Duces Tecum



| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

### TEXAS PRECIOUS METALS, LLC'S NOTICE OF ORAL DEPOSITION AND SUBPOENA DUCES TECUM TO U.S. GOLD BUREAU

PLEASE TAKE NOTICE that pursuant to Texas Rules of Civil Procedure 176, 199, and 205, Plaintiff, Texas Precious Metals, LLC ("Plaintiff" or "TPM"), by and through its counsel of record, is serving a subpoena duces tecum and notice of oral deposition on non-party U.S. Gold Bureau, attached as **Exhibit A** hereto. Pursuant to Texas Rule of Civil Procedure 199.2(b)(1), U.S. Gold Bureau shall, within a reasonable time before the deposition, designate one or more individuals to testify on its behalf regarding the matters listed in **Exhibit A-2**. The deposition will commence at 9:00 a.m. Central Time on **February 20, 2026,** and will continue day to day until completed or adjourned by the attorneys taking the deposition. The deposition will take place at the offices of Pillsbury Winthrop Shaw Pittman LLP, 401 W. 4th St., Suite 3200, Austin, Texas 78701 or as otherwise agreed by the parties, including by remote means if agreed. The deposition will be recorded stenographically and videotaped before a certified reporter authorized by law to take video depositions.

In accordance with Texas Rules of Civil Procedure 199.2 and 205.2, U.S. Gold Bureau is further requested to produce and permit inspection and copying of the documents (including emails, recordings, or other electronically stored information) identified in **Exhibit A-1** hereto. The documents shall be produced on or before **February 18, 2026**. Such deposition testimony and documents are for discovery purposes and may be used as evidence in the trial of the above-styled case and for other purposes permitted by law.

Date: February 9, 2026

Respectfully submitted,

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on February 9, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

/s/ *Casey Low*
Casey Low

# EXHIBIT A

<u>**SUBPOENA DUCES TECUM**</u>
**ISSUED IN THE NAME OF THE STATE OF TEXAS**

You, U.S. Gold Bureau, are hereby commanded, on or before **February 18, 2026,** to produce documents relating to Cause No. D-1-GN-26-000754; *Texas Precious Metals, LLC v. Hancock, et al.;* as set forth in the requests attached hereto as **Exhibit A-1**. The documents shall be delivered to the undersigned counsel via email or hand delivery.

**Party/Person Issuing Subpoena**

This subpoena is issued at the instance of Texas Precious Metals, LLC, Plaintiff in the above-referenced cause, and by and through its attorneys of record Pillsbury Winthrop Shaw Pittman, LLP.

**Documents or Tangible Things**

You are commanded to produce the following documents or tangible things in your possession, custody, or control at the place and time specified above.

*See* **Exhibit A-1** attached hereto.

**Deposition**

You are further commanded to personally appear at the office of Pillsbury Winthrop Shaw Pittman, LLP at 401 W 4th St, Suite 3200, Austin, Texas, 78701, at **9:00 a.m. Central Time** on **February 20, 2026** ("Deposition Date"), before the officer present who is duly authorized by law to take your deposition by stenographic and videographic means, then and there be sworn as a witness for the purpose of giving your deposition.

<u>**WARNING**</u>
<u>**ENFORCEMENT OF SUBPOENA PURSUANT TO TEXAS RULE OF CIVIL**</u>
<u>**PROCEDURE 176.8**</u>

**FAILURE OF ANY PERSON WITHOUT ADEQUATE EXCUSE TO OBEY A SUBPOENA SERVED UPON THAT PERSON MAY BE DEEMED A CONTEMPT OF THE COURT FROM WHICH THE SUBPOENA ISSUED OR A DISTRICT COURT IN THE COUNTY IN WHICH THE SUBPOENA IS SERVED, AND MAY BE PUNISHED BY FINE OR CONFINEMENT, OR BOTH. TEX. R. CIV. P. 176.8(A).**

This subpoena is issued on the 9th day of February, 2026 by:

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

**Witness Accepts Service**

I, _____, accept service of the attached subpoena as well as receipt of the witness fee and will appear at the time and place directed in said subpoena.


Date:_____              _____
                                                                    [Signature of Witness]


**Statement by Person Serving Subpoena**

I, _____, am over the age of 18 years.  I am not a party in the aforementioned cause of action.  On the ___ day of _____, 2026, I served a subpoena, of which this is a true and correct copy on U.S. Gold Bureau, by and through their registered agent, Lone Star Tangible Assets Management, LLC, 203 Heritage Grove Road, Leander, TX 78641 at _____ o'clock ___A.M./P.M. I also tendered to the person served the witness fee required by law at the time the subpoena was delivered.


_____              _____
Date                                                              [Signature of Person Serving Subpoena]

# EXHIBIT A-1

## INSTRUCTIONS

1. In responding to these requests, please produce all documents and information within your possession, custody, or control, and all documents and information reasonably available to you, including documents and information in the possession of your attorneys or their investigators, and all persons acting on your behalf.

2. For each document requested, produce the entire document, including all attachments, appendices, and exhibits.

3. For each document requested, produce all non-identical copies of that document.

4. Produce documents as they are kept in the usual course of business or organize and label them to correspond with the categories in the document requests.

5. If you withhold any document, or any portion of that document, under a claim of privilege, You shall produce a written privilege log that sets forth: (i) the author of the document; (ii) the type of document, *e.g.* letter or memorandum; (iii) the date of the document; (iv) all recipients of the document; (v) such other information as is sufficient to identify the document; and (vi) the nature of the privilege asserted.

6. If information is redacted from a document produced in response to a request, you shall identify the redaction by stamping the word "Redacted" on the document at each place where information has been redacted and separately log each redaction on the privilege log.

7. If any requested document has been lost or destroyed, you shall state the circumstances of its loss or destruction, including the identity of person(s) having knowledge as to the circumstances of its loss or destruction and the date of its loss or destruction.

8. Unless otherwise indicated, these Requests seek documents from December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period. These requests are continuing in nature. If, after producing any documents in response to any of the following Requests, you obtain or become aware of additional responsive information, you are required to provide such information or documents by way of a supplemental production.

## <u>DEFINITIONS</u>

1.    "USGB," "United States Gold Bureau," "You" and "Your" refers to United States Gold Bureau, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

2.    "Defendants" refers to Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts, and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository, collectively or individually, and include any person or entity acting or purporting to act on any Defendant's behalf or at any Defendant's direction or control, including employees, agents, representatives, contractors, consultants, assistants, and service providers.

3.    "Plaintiff" or "Texas Precious Metals" or "TPM" refers to Texas Precious Metals, LLC, including its divisions and brands (including Texas Mint), and its current and former officers, directors, managers, employees, agents, attorneys, representatives, affiliates, and any other person or entity purporting to act on its behalf.

4.    "Texas Precious Metals Products" refers to Texas Gold Rounds, Texas Silver Rounds, Pro Rodeo Rounds, Goldbacks, and all other products sold by Texas Precious Metals and bearing the Texas Precious Metals mint mark.

5.    "Agency" or "Texas Bullion Depository" or "Depository" means the Texas Bullion Depository, including the Office of the Comptroller of Public Accounts to the extent it acts through or on behalf of the Texas Bullion Depository, and any current or former officers, employees, agents, attorneys, representatives, contractors, consultants, and other persons or entities purporting to act on its behalf.

6.    "Valaurum" refers to Valaurum, Inc., and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

7.    "Scottsdale Mint" refers to Scottsdale Mint, LLLP, and its current and former officers, directors, managers, employees, agents, attorneys, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on its behalf.

8.    "Person" means any natural person, public or private corporation, partnership, joint venture, association, group, government, or governmental entity (including any governmental agency or political subdivision of any government), and any other form of business or legal organizational arrangement.

9.    References to specific individuals include their respective current and former businesses, professional associations, partnerships, corporations, partners, affiliates, employees, agents, attorneys, and/or representatives.

10.    References to specific public and private entities include their current and former officers, directors, representatives, employees, agents, attorneys, parents, subsidiaries, and/or affiliates.

11.    The term "produce" means to produce the responsive documents that are in your possession, custody, or control, which includes those documents in your constructive possession or in which you have a superior right to compel the production from any other person, for copying and inspection.

12.    "Redbacks" means the gold-note products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "a series of 24K commemorative gold notes . . . each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate," including all versions, denominations, weights, formats, designs, series, editions, and packaging.

13.    "State of Texas Coins" means the commemorative coin products offered, marketed, distributed, or sold by or on behalf of the Texas Bullion Depository described as "commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes," including all versions, finishes, designs, series, editions, and packaging.

14.    The term "ESI" means electronically stored information including, but not limited to, information electronically, magnetically or optically stored as: (a) digital communications (*e.g.*, email, voice mail, instant messaging); (b) word processed documents (*e.g.*, Word or WordPerfect documents and drafts); (c) spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets); (d) accounting application data (e.g., QuickBooks, Money, Peachtree data files); (e) image and facsimile files (*e.g.*, PDF, TIFF, JPG, GIF images); (f) sound recordings (*e.g.*, WAV and MP3 files); (g) video and animation (*e.g.*, AVI and MOV files); (h) databases (*e.g.*, Access, Oracle, SQL Server data, SAP); (i) electronic mail, contact and relationship management data (*e.g.*, Outlook, Maximizer, ACT!), including any deleted emails or any other emails resident on any servers or computers; (j) calendar and diary application data (*e.g.*, Outlook PST, Yahoo, blog tools); (k) online access data (*e.g.*, temporary internet files, history, cookies); (l) presentations (*e.g.*, PowerPoint, Corel Presentations); (m) network access and server activity logs; (n) project management application data; (o) computer-aided design/drawing files; and (q) back-up and archival files (*e.g.*, ZIP, GHO).  ESI shall be produced (with metadata intact) in the format specified in the Instructions set forth below.

15.    The term "metadata" means system and application metadata. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, dates of creation and last modification or access, number of attachments, and document type (*i.e.* email, attachment, etc.). Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing.  For electronic mail (including deleted emails), metadata includes all header routing data and

Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, Sent Date, Time Sent, CC, BCC and Body fields.

16.     The term "documents" means the original and each non-identical copy of any written, graphic, electronic, or magnetic matter, however produced, whether sent or received, or neither (including deleted emails), including drafts and both sides thereof, in your possession, custody, or control and specifically includes ESI (as defined herein).  The term shall include handwritten, typewritten, printed, photocopied, or recorded matter.  It shall include communications in words, symbols, pictures, sound recordings, films, tapes, drawings, blueprints, charts, maps, graphs, photographs, still or moving picture films, parts or components of equipment, models, information stored in, or accessible through, computer or other information storage or retrieval systems, all other "documents and tangible things" as set forth in Texas Rule of Civil Procedure 192.3(b), and any physical object in the possession of, subject to the control of, or within the knowledge of the party responding to these requests for production, including their counsel, experts or investigators.

17.     The use of the singular shall be deemed to include the plural, the masculine, and the feminine, as appropriate in the context.

18.     "And" and "or" mean "and/or."

19.     The terms "relating to," "regarding," or any derivative of either, include the following meanings:  relating to; referring to; concerning; pertaining to; discussing; mentioning; containing; reflecting; evidencing; describing; displaying; showing; identifying; providing; disproving; consisting of; supporting; contradicting; in any way legally, logically, or factually connected with the matter referred to; or having a tendency to prove or disprove the matter referred to.

20.     The term "including," or one of its derivatives, means "includ[ing] but not limited to."

21.     The term "copy," or one of its derivatives, means and refers to any reproduction in any form whatsoever, including but not limited to transmissions over a network, printouts, or screenshots.

22.     The term "any" means "all," and should be understood in either its most or least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

23.     Unless otherwise indicated, the "relevant time period" shall refer to December 1, 2025, through the present; however, documents created earlier must be produced if they were in effect, relied upon, referenced, or used during the relevant time period, or if they reflect the policies, practices, pricing, marketing, procurement, contracting, manufacturing, distribution, or sales activities at issue during that period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**: Produce all call logs, call detail records, recordings, transcripts, notes, tickets, customer-service records, and all other documents or data reflecting or relating to inbound or outbound calls to 833-403-2211 that refer to Texas Precious Metals or the Texas Precious Metals Products

**REQUEST FOR PRODUCTION NO. 2**: Produce all documents that reference, reflect, or relate to any order, purchase, attempted purchase, or customer inquiry concerning Texas Precious Metals or the Texas Precious Metals Products.

**REQUEST FOR PRODUCTION NO. 3**: Produce documents sufficient to show the volume and value of sales of the State of Texas Coins and Redbacks, including without limitation units sold, gross revenue, net revenue, dates of sale, SKU/product identifiers, and sales channel(s), for the relevant time period.

**REQUEST FOR PRODUCTION NO. 4**: Produce documents sufficient to show any and all **pricing** for the State of Texas Coins and Redbacks and any changes to pricing (including base price, premiums/markups, discounts, promotions, and shipping/handling or other fees), including without limitation price lists, webpages, internal pricing approvals, and pricing-change logs, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 5**: Produce all documents sufficient to show the Google advertising keywords and search terms used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, for the relevant time period, including without limitation: (a) keyword lists, keyword-selection documents, and keyword-planning materials; (b) search term reports reflecting actual user queries; (c) negative keyword lists; and (d) communications with Defendants, the Agency, or any advertising vendor, consultant, or agency concerning the selection, addition, removal, or modification of keywords or search terms for such campaigns.

**REQUEST FOR PRODUCTION NO. 6**: Produce documents sufficient to identify and describe the full scope of "promotional items" marketed, licensed, offered for sale, sold, or distributed by or on behalf of the Texas Bullion Depository, including without limitation product lists, descriptions, SKUs, images, pricing, dates offered, quantities sold/distributed, and the channels through which such promotional items were marketed or provided, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 7**: Produce all contracts, agreements, statements of work, purchase orders, amendments, addenda, and related documents with any third party relating to the marketing, licensing, offering for sale, sale, fulfillment, distribution, manufacture, minting, design, or promotion of (a) any Texas Bullion Depository promotional items, (b) the State of Texas Coins, or (c) the Redbacks, including without limitation agreements with Defendants and with any other vendors or subcontractors, for the relevant time period.

**REQUEST FOR PRODUCTION NO. 8**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Defendants that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 9**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Valaurum that reference, reflect, or relate to Texas Precious Metals.

**REQUEST FOR PRODUCTION NO. 10**: Produce all communications between June 1, 2025, and the present (including emails, letters, texts, chats, messages, and meeting notes) between You and Scottsdale Mint that reference, reflect, or relate to Texas Precious Metals.

# EXHIBIT A-2

## SCHEDULE OF DEPOSITION TOPICS

1. Sales of the State of Texas Coins and Redbacks, including the quantity and dollar value of completed sales and placed orders (including pending, canceled, refunded, or returned orders), by product type and sales channel(s), for the relevant time period.

2. Procedures for the sale of the State of Texas Coins and Redbacks, including order intake, customer communications, payment processing, pricing and price changes, fulfillment, shipping, returns, refunds, and customer-service processes (including any call center procedures and call routing used for such sales), for the relevant time period.

3. Sales of "promotional items" for or on behalf of the Agency, including the identity and description of such items, the quantity and dollar value of sales, the channels through which such items were marketed and sold, and USGB's role in offering, selling, fulfilling, or accounting for such items, for the relevant time period.

4. The relationship between USGB and Defendants and/or the Agency with regard to the marketing, offering for sale, sale, fulfillment, distribution, customer service, and returns of the State of Texas Coins and Redbacks, including the existence and terms of any agreements, division of responsibilities, marketing approvals, pricing authority, inventory and fulfillment responsibilities, reporting obligations, and any revenue-sharing, fees, or commissions, for the relevant time period.

5. Internet search terms and keywords used by or on behalf of USGB to advertise, promote, or market the State of Texas Coins and Redbacks, including Google Ads keywords, search term reports reflecting actual user queries, negative keywords, and any processes for selecting, approving, modifying, or monitoring such terms, for the relevant time period.

6. Confusion between Texas Precious Metals Products and the State of Texas Coins and/or Redbacks, including consumer inquiries, complaints, returns, or communications reflecting confusion as to source, sponsorship, affiliation, or approval; USGB's procedures for documenting and responding to such confusion; and any communications with Defendants and/or the Agency regarding such confusion, for the relevant time period.

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| Texas Precious Metals, LLC, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Travis County, Texas |
| | § | |
| Kelly Hancock; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and Macy Douglas, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459th Judicial District |

---

### [Proposed] Order Granting State Defendants' Motion to Quash Nonparty Subpoena and for Entry of Protective Order

---

Before this Court is Defendants Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts, and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository's Motion to Quash Nonparty Subpoena and for Entry of Protective Order. Having reviewed the Motion, applicable law, and arguments of the Parties, the Court is of the opinion that the Motion to Quash Nonparty Subpoena and for Entry of Protective Order is meritorious and should be GRANTED.

It is therefore ORDERED that the Motion to Quash Nonparty Subpoena and for Entry of Protective Order is GRANTED. Plaintiff Texas Precious Metals, LLC's February 9, 2026 Notice of Oral Deposition and Subpoena Duces Tecum to U.S. Gold Bureau is hereby QUASHED. Further requests for discovery are STAYED until such a time as the Court has entered an order approving expedited discovery or until the parties come to a mutual agreement enforceable by Rule 11 as to expedited discovery.

SO ORDERED on this _____ day of February 2026.

_____
Presiding Judge
459th District Court
Travis County, Texas

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111207218
Filing Code Description: Motion (No Fee)
Filing Description: STATE DEFENDANTS' OPPOSED MOTIONTO QUASH NONPARY SUBPOENA AND FOR ENTRY OF PROTECTIVE ORDER
Status as of 2/17/2026 11:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/12/2026 4:45:31 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/12/2026 4:45:31 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/12/2026 4:45:31 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/12/2026 4:45:31 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/12/2026 4:45:31 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/12/2026 4:45:31 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/12/2026 4:45:31 PM | SENT |

2/12/2026 11:02 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Norma Ybarra

## CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## NOTICE OF HEARING ON PLAINTIFF TEXAS PRECIOUS METALS, LLC'S APPLICATION FOR TEMPORARY INJUNCTION

PLEASE TAKE NOTICE that Plaintiff Texas Precious Metals, LLC's Temporary Injunction hearing has been set to be heard on **Thursday, March 5, 2026, at 9 a.m.** on the Central Docket in the 200th Judicial District Court of Travis County, Texas. The estimated time for this hearing will be three hours.

This hearing will take place **in person** at the Travis County Civil and Family Courts Facility (CFCF), located at 1700 Guadalupe Street in Austin. Since several cases may be scheduled at the same time, the case may be called later in the day and possibly later in the week, and you must be available when your case is called.

Please note that this case is **not** specially assigned to a particular judge under the Travis County Local Rules, so the parties must check the docket setting prior to each proceeding, either online at https://www.traviscountytx.gov/courts/files/dockets/civil-district or in person at the CFCF in order to determine the courtroom assigned for the proceeding.

Assignments will be posted on Friday of the week before the proceeding. Questions about case assignments or locations for proceeding should be directed to the office of the Court Administrator for the Civil District Courts at (512) 854-2484, not to a particular court.

Date: February 12, 2026

Respectfully submitted,

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on February 12, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

/s/ *Casey Low*
Casey Low

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kira Hamm on behalf of Ronald Low
Bar No. 24041363
kira.hamm@pillsburylaw.com
Envelope ID: 111177260
Filing Code Description: Notice
Filing Description: NOTICE OF HEARING ON PLAINTIFF TEXAS PRECIOUS METALS, LLC'S APPLICATION FOR TEMPORARY INJUNCTION
Status as of 2/18/2026 10:37 AM CST

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/12/2026 11:02:27 AM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/12/2026 11:02:27 AM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/12/2026 11:02:27 AM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/12/2026 11:02:27 AM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/12/2026 11:02:27 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/12/2026 11:02:27 AM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/12/2026 11:02:27 AM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/12/2026 11:02:27 AM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/12/2026 11:02:27 AM | SENT |

2/19/2026 10:40 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Norma Ybarra

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

---

### RULE 11 AGREEMENT

---

The parties submit their Rule 11 Agreement attached as Attachment A.

**Attachment A**

| | |
|---|---|
| **From:** | Sullivan, Ryan <ryan.sullivan@pillsburylaw.com> |
| **Sent:** | Thursday, February 19, 2026 10:08 AM |
| **To:** | Ali Thorburn |
| **Cc:** | David Bryant; Munera Al-Fuhaid; Alexia Baker; Tamera Martinez; Low, Casey; Blackford, Elizabeth |
| **Subject:** | RE: Texas Precious Metals v. Hancock et. al., Cause No. D-1-GN-26-000754; Rule 11 Agreement |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thank you, Ali. Agreed.

Best,
Ryan

**Ryan Sullivan** | Counsel
Pillsbury Winthrop Shaw Pittman LLP
401 W 4th St, Suite 3200 | Austin, TX 78701
t +1.512.580.9655
ryan.sullivan@pillsburylaw.com | website bio



---

**From:** Ali Thorburn <Ali.Thorburn@oag.texas.gov>
**Sent:** Thursday, February 19, 2026 10:02 AM
**To:** Sullivan, Ryan <ryan.sullivan@pillsburylaw.com>
**Cc:** David Bryant <David.Bryant@oag.texas.gov>; Munera Al-Fuhaid <Munera.Al-Fuhaid@oag.texas.gov>; Alexia Baker
<Alexia.Baker@oag.texas.gov>; Tamera Martinez <Tamera.Martinez@oag.texas.gov>; Low, Casey
<casey.low@pillsburylaw.com>; Blackford, Elizabeth <elizabeth.blackford@pillsburylaw.com>
**Subject:** RE: Texas Precious Metals v. Hancock et. al., Cause No. D-1-GN-26-000754; Rule 11 Agreement

Ryan,

Upon receipt of an email showing your confirmation of agreement and signature, please let this email serve as the complete written agreement between the parties pursuant to Rule 11 of the Texas Rules of Civil Procedure.

The parties agree to limited expedited discovery as follows:

- Thursday, Feb. 19
  - Parties will exchange 2 to 3 narrowly tailored discovery requests. Agreement to accept these requests does not waive the parties' rights to object to scope, breadth, undue burden, or other lawful objection prior to the deadline for production or answer.
- Wednesday, Feb. 25, by 5:00 p.m.
  - Parties produce documents/serve responses, including indemnity and insuring agreements responsive to Texas Rules of Civil Procedure 192.3(f) and 194.2(b)(7).

- o Parties will agree to serve initial disclosures and agree that the regular discovery period does not open until after the initial disclosures would regularly have been due absent this agreement.
- Monday, Mar. 2, by 5:00 p.m.
  - o Parties do not agree to depositions at this time.
  - o Parties exchange witness & exhibit lists, including exhibits.
- The parties agree to enter into an agreed protective and confidentiality order.

Sincerely,



**Ali Thorburn**
*Special Counsel*

Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
(737) 330-4404

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

Date: February 19, 2026

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel
Attorney-in-Charge
Texas Bar No. 03281500

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
Direct: (512) 936-2275

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

RYAN G. KERCHER
Chief, Special Litigation Division

ALEXIA K. BAKER
Assistant Attorney General
Tex. State Bar No. 24149596

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

*COUNSEL FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW
PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111450990
Filing Code Description: No Fee Documents
Filing Description: RULE 11 AGREEMENT
Status as of 2/24/2026 2:48 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/19/2026 10:40:03 AM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/19/2026 10:40:03 AM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/19/2026 10:40:03 AM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/19/2026 10:40:03 AM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/19/2026 10:40:03 AM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/19/2026 10:40:03 AM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/19/2026 10:40:03 AM | SENT |

2/20/2026 6:40 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Victoria Benavides

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

## STATE DEFENDANTS' ORIGINAL ANSWER AND DEFENSES

Defendants Kelly Hancock and Macy Douglas (State Defendants), each in their official capacities, file this Original Answer and Defenses to Plaintiff Texas Precious Metals, LLC's (Texas Precious Metals) Verified Original Petition and Application for Temporary Restraining Order and Injunctive Relief (Texas Precious Metal's Petition).

## ORIGINAL ANSWER (GENERAL DENIAL)

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, State Defendants generally deny the allegations in Texas Precious Metal's Petition and demand strict proof thereof.

## DEFENSES

Pleading further, State Defendants hereby assert the following defenses pursuant to Rule 94 of Texas Civil Procedure and otherwise:

1. State Defendants assert the defense of sovereign immunity from suit and liability to all claims.

2. State Defendants assert the defense of laches to all claims.

3. State Defendants assert the defense of estoppel to all claims.

4. State Defendants reserve the right to raise additional affirmative and other defenses as it becomes apparent during the development of the case.

<u>CONCLUSION</u>

For these reasons, State Defendants respectfully request that this Court dismiss Plaintiff Texas Precious Metals LLC's claims against them, enter judgment for State Defendants and against Plaintiff, holding that Plaintiff take nothing by this action, and award State Defendants any such further relief to which it is entitled.

Date: February 20, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

Respectfully Submitted.

*/s/ Ali M. Thorburn*
ALI M. THORBURN
Special Counsel
Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ALEXIA K. BAKER
Assistant Attorney General
Tex. State Bar No. 24149596

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

*COUNSEL FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

I certify that on February 20, 2026, a true and correct copy of the above and foregoing has been served has been served on all counsel of record in accordance with File and Serve Texas System of Travis County, Texas.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

/s/ *Ali M. Thorburn*
ALI M. THORBURN

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111549613
Filing Code Description: Answer/Response
Filing Description: STATE DEFENDANTS' ORIGINAL ANSWER AND DEFENSES
Status as of 2/24/2026 9:14 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/20/2026 6:40:49 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/20/2026 6:40:49 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/20/2026 6:40:49 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/20/2026 6:40:49 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/20/2026 6:40:49 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/20/2026 6:40:49 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/20/2026 6:40:49 PM | SENT |

2/20/2026 6:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Victoria Benavides

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

---

## STATE DEFENDANTS' PLEA TO THE JURISDICTION

Defendants Kelly Hancock and Macy Douglas (collectively, State Defendants, individually the Comptroller and the Administrator), each in their official capacities, file this Plea to the Jurisdiction and would respectfully show the Court as follows:

Table of Contents ....................................................................................................... ii

Introduction ...............................................................................................................1

Legal Standard ......................................................................................................... 2

Argument ................................................................................................................. 4

    I.   TPM lacks standing to pursue its claims against the Comptroller because the Comptroller is a separate entity from the Depository and the Comptroller does not have the requisite enforcement connection to the statutes at issue............................ 4

    II.  The Comptroller and Administrator have sovereign immunity from Texas Precious Metals' claims. ..................................................................................5

    III. Texas Precious Metals has not pled a valid *ultra vires* claim to overcome the Administrator's sovereign immunity................................................................ 6

        A.  The creation and sale of the promotional coins and notes is within the Administrator's statutory authority because the Depository has authority to do more than merely "store" precious metals. ........................................... 8

        B.  The creation and sale of the promotional coins and notes is within the Administrator's statutory authority because the Depository has express statutory authority to create and sell promotional products and discretionary authority to determine what those products may be....................................10

        C.  The coins and notes are promotional products under section 2116............................ 11

            1.  The coins and notes are marketed as, and do in fact serve as, promotional items....................................................................................................12

            2.  The mere fact that an item has intrinsic value does not preclude it from being a "promotional item."............................................................ 13

            3.  The statute does not prohibit the use of coins and notes as promotional products. ...............................................................................................14

            4.  The creation and sale of the coins and notes as promotional items does not conflict with any statutory authority..................................................14

        D.  In the alternative, should the Court find TPM has standing to sue the Comptroller and finds Administrator and Comptroller lack statutory authority under section 2116, the Comptroller's actions are within his statutory authority under section 403.0301................................................................ 15

IV. Conclusion .................................................................................................................16

Certificate of Service...................................................................................................17

## INTRODUCTION

In 2015, the Legislature created the Texas Bullion Depository (the Depository) as an agency of the State of Texas in the Office of the Comptroller. Establishment and Administration of a State Bullion Depository, 84th R.S., ch. 1000, § 1, 2015 Tex. Gen. Laws, 3534 (current version at Tex. Gov't Code § 2116). When H.B. 483 was enacted, the Legislature granted the Depository broad powers to "enter into transactions and relationships with bullion banks, depositories, dealers, central banks, sovereign wealth funds, financial institutions, international nongovernmental organizations, and other persons, located inside or outside of this state or inside or outside of the United States, as the comptroller determines to be prudent and suitable to facilitate the operations of the depository and to further the purposes of this chapter." *Id.* (current version at Tex. Gov't Code § 2116.021(a)).

In 2019, the Legislature expanded the Depository's authority, in relevant part, by giving the Depository broad authority to "advertise and promote the depository in any available media" and to "issue, sell, license for sale, or obtain a license to sell promotional items" approved by the Administrator for a "commercially reasonable price." Establishment and Administration of a State Bullion Depository, 86th R.S., ch. 198, 2019 Tex. Gen Laws, 339 (current version at Tex. Gov't Code §§ 2116.021(b–c)). The Legislature did not define or place any limits on what constitutes a "promotional item." Tex. Gov't Code § 2116.021. As such, the Depository in 2025 announced a new program selling Texas-themed silver and gold commemorative coins and notes to promote the Depository and the Depository's services pursuant to its power under section 2116.021. Texas Precious Metal's Petition (TPM's Pet.) at 10, 22–23.

Texas Precious Metals (TPM) is a privately owned company that sells silver and gold Texas-themed coin-like "rounds," silver and gold bars, and Texas-themed gold notes. TPM's Pet. at 3–6. TPM now brings this suit against the Comptroller and Administrator alleging they acted *ultra vires* in selling silver and gold Texas-themed commemorative coins and notes as promotional items. TPM's Pet. at 1–2. In essence, the company is asking this Court to impose on the Depository

limitations the Legislature never created in an effort to undermine what it perceives is a market competitor. *Id.*

<h2 align="center">LEGAL STANDARD</h2>

As an initial matter, "[a] plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). The plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction. *Id.* at 150. Subject-matter jurisdiction is "never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Ctr. Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). At the earliest opportunity, the court must determine whether it has jurisdiction under the constitution or by statute to allow litigation to proceed. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"When a plea to the jurisdiction challenges the pleadings, [the court] determine[s] if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. This includes establishing the State's consent to the suit, which may be alleged either by reference to a statute or to express legislative permission. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). A suit against state officials in their official capacities is equivalent to a suit against the State. *Pickell v. Brooks*, 846 S.W.2d 421, 425 (Tex. App.—Austin 1992, writ denied). Consequently, public officials sued in their official capacities are protected by the same sovereign or governmental immunity as the governmental unit they represent. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843-44 (Tex. 2007).

To challenge the constitutionality of a government action, the proper mechanism is an ultra vires suit against "the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). Sovereign immunity does not bar an ultra vires suit seeking prospective injunctive relief against a state official in their official capacity for acting unlawfully. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). "To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. This

rule "derives from the premise that the 'acts of officials which are not lawfully authorized are not acts of the State.'" *Id.* at 373. So, if the plaintiff has not actually alleged an action taken without legal authority or the failure to perform a purely ministerial act, then the claims remain jurisdictionally barred. *Hall v. McRaven*, 508 S.W.3d 232, 240-41 (Tex. 2017).

Critically, "merely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.). "[I]f the claimant is attempting to restrain a state officer's conduct on the grounds that it is unconstitutional, it must allege facts that actually constitute a constitutional violation" to fall within the ultra vires exception. *Creedmoor-Maha Water Supply Corp. v Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 (Tex. App.—Austin 2010, no pet).

Turning to standing, "'Texas standing requirements parallel the federal test for Article III standing,' such that a 'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Abbott v. Mexican Am. Legis. Caucus, Texas House of Reps.*, 647 S.W.3d 681, 690 (Tex. 2022) (quoting *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020)). "To establish standing, then, a plaintiff must show (1) an 'injury in fact' that is (2) 'fairly traceable' to the defendant's challenged action and (3) redressable by a favorable decision." *Id.* (quoting *Abbott*, 601 S.W.3d at 808).

ARGUMENT

This Court should dismiss TPM's claims for two reasons. First, this Court should dismiss TPM's claims against the Comptroller for lack of standing because the Comptroller lacks the requisite enforcement connection to the statutes at issue. *Second*, this Court should dismiss TPM's claims against the Administrator because TPM has not alleged a viable *ultra vires* claim overcoming the Administrator's sovereign immunity.[1]

At bottom, TPM alleges the Administrator acted *ultra vires* "by commissioning, authorizing, producing, advertising, promoting, marketing, offering for sale, and contracting for the manufacture, sale, and distribution of precious metals products[.]" TPM's Pet. at 24. But whether the Administrator acted within his legal authority depends on whether the coins and notes at issue are promotional items permitted to be created and sold under § 2116.021(c). That is plainly a legal question of statutory interpretation for this Court to determine. *Third Coast Servs., LLC v. Castaneda*, 726 S.W.3d 201, 206 (Tex. 2025) ("Statutory interpretation is a question of law that we review de novo."). Taking as true the facts alleged in TPM's Petition, the coins and notes *are* promotional items permitted to be created and sold under § 2116.021(c). Because the coins and notes are promotional items, TPM has not alleged the Administrator engaged in acts outside his legal authority. Thus, TPM has not overcome the Administrator's sovereign immunity and TPM's claims should be dismissed.

**I. TPM lacks standing to pursue its claims against the Comptroller because the Comptroller is a separate entity from the Depository and the Comptroller does not have the requisite enforcement connection to the statutes at issue.**

TPM's claims against the Comptroller should be dismissed because Comptroller does not have the requisite enforcement connection to the statutes at issue. To maintain standing, the alleged injury must be fairly traceable to the defendant's challenged action. *Abbott*, 647 S.W.3d at

---

[1] To the extent the Court considers the TPM's *ultra vires* claims against the Comptroller beyond finding that TPM lacks standing to bring them, the Comptroller asserts all arguments regarding the Administrator, including sovereign immunity, equally as to the Comptroller.

697. An injury is not fairly traceable to a government official when the official lacks enforcement authority over the challenged statute. *Id.*

Here, they Depository is "established as an agency of this state" "under the direction and supervision of a bullion depository administrator." Tex. Gov't Code §§ 2116.002(a), 2116.003(a). TPM bases its claims on section 2116.021, the section that authorizes the sale of promotional items. Tex. Gov't Code § 2116.021; TPM's Pet. at 30–31. But section 2116.021 contains no mention of the Comptroller. Tex. Gov't Code § 2116.021. Tellingly, section 2116 states "the *depository may* enter into transactions and relationships . . . [t]he *depository* may advertise and promote the depository in any available media . . . [t]he *depository* may issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator . . . [t]he *depository* may set commercially reasonable prices for items licensed or sold under this section." *Id.* (emphasis added). Nothing in TPM's pleadings demonstrates *any* enforcement connection between the challenged actions and the Comptroller's authority under section 2116.021. TPM, then, has not established the traceability requirement of standing as to its claims against the Comptroller. Therefore, TPM's claims against Comptroller should be dismissed.

## II. The Comptroller and Administrator have sovereign immunity from Texas Precious Metals' claims.

Sovereign immunity bars TPM's claims against the Comptroller and the Administrator. The Comptroller and Administrator have sovereign immunity from suit and liability when sued in his official capacity. Tex. Const. art. IV, § 23 (listing the Comptroller of Public Accounts as an executive officer of Texas); Tex. Gov't Code § 2116.002(a) (establishing the Texas Bullion Depository as an agency of the State in the Office of the Comptroller); Tex. Gov't Code § 2116.003 (establishing the Administrator of the Texas Bullion Depository); *Matzen v. McLane*, 659 S.W.3d 381, 387 (Tex. 2021)("Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability."); *Koseoglu*, 233 S.W.3d at 844(suits against government officials in their official capacities are effectively suits against the entity). Here, TPM sues the Comptroller and Administrator in their official capacities. TPM's Pet. at 1. Thus, absent a

legislative waiver or valid *ultra vires* claim, TPM's claims are barred by sovereign immunity. *Matzen*, 659 S.W.3d at 388.

### III. Texas Precious Metals has not pled a valid *ultra vires* claim to overcome the Administrator's sovereign immunity.

The Administrator retains sovereign immunity against TPM's *ultra vires* claims because those claims are not valid. *See Matzen*, 659 S.W.3d at 388. Sovereign immunity "continues to protect state officials from both suit and liability in their official capacities" when "the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity." *Id.* (first citing *Hall*, 508 S.W.3d at 238 (Tex. 2017), then citing *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344–45 (Tex. 2019)). "[T]o defeat a plea to the jurisdiction, the plaintiff suing the state or its officers must plead facts that, if true, 'affirmatively demonstrate' that sovereign immunity either does not apply or has been waived." *Id.* "As applied to ultra vires claims, this rule requires the plaintiff's petition to allege facts affirmatively demonstrating actionable ultra vires conduct by state officials in order to avoid dismissal on jurisdictional grounds due to sovereign immunity." *Id.* (citing *Miranda*, 133 S.W.3d at 226).

The burden lies not with the Administrator, but with the plaintiff, TPM. *Id.* at 389. The Administrator need not show that TPM's claims could never exist. *Id.* "Instead, the proper question is whether [TPM's] pleaded facts 'affirmatively demonstrate' either that state officials are engaged in ultra vires conduct or that [TPM] otherwise has stated a valid claim not barred by sovereign immunity." *Id.* "If additional facts would be necessary to state a viable ultra vires claim or to state a viable claim falling within a waiver or exception to immunity, then the plaintiff has not affirmatively demonstrated the court's jurisdiction." *Id.* "In such a case, a plea to the jurisdiction should be granted." *Id.* (citing *Klumb v. Hous. Mun. Empls. Pension Sys.*, 458 S.W.3d 1, 17 (Tex. 2015)).

Here, even taking as true the facts pled in TPM's petition, TPM has not affirmatively pled a viable *ultra vires* claim or other waiver of sovereign immunity. To state a viable *ultra vires* claim, a plaintiff must allege an officer "acted without legal authority or failed to perform a purely

ministerial act." *Hall*, 508 S.W.3d at 238 (quoting *City of El Paso*, 284 S.W.3d at 372). Here, TPM has not pled a failure to perform a ministerial act. TPM's Pet. at 24. "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall*, 508 S.W.3d 239 (citing *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). "If the challenged actions 'were not truly outside the officer's authority or in conflict with the law,' then the plaintiff has not stated a valid ultra vires claim and governmental immunity will bar the suit." *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332–33 (Tex. 2022)(quoting *Matzen*, 659 S.W.3d at 388).

Crucially, "[u]ltra vires claims depend on the scope of a state official's authority. The natural starting point in this case, therefore, is the" Administrator's statutory authority to act. *Hall*, 508 S.W.3d at 234. TPM admits the statutes give the Administrator at least some discretion to determine whether to sell promotional items, what promotional items to sell, how much to sell them for, and how to contract to produce the promotional items. *See* Tex. Gov't Code § 2116.021; *see also* TPM's Pet. at 24 (claiming the Administrator's action "exceeds any limited discretion conferred by Chapter 2116"). The Texas Government Code authorizes the Depository to

> (1) "issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator to further the purposes of this chapter and to promote the depository[;]"
>
> (2) "set commercially reasonable prices for items licensed or sold under this section[;]"
>
> (3) "advertise and promote the depository in any available media[;]" and
>
> (4) "enter into transactions and relationships with bullion banks, depositories, dealers, central banks, sovereign wealth funds, financial institutions, international nongovernmental organizations, and other persons, located inside or outside of this state or inside or outside of the United States, as the comptroller determines to be

prudent and suitable to facilitate the operations of the depository and to further the purposes of this chapter."

Tex. Gov't Code § 2116.021.

Neither the chapter creating the Texas Bullion Depository nor the section authorizing it to license and sell promotional items defines "promotional item." *See generally* Tex. Gov't Code § 2116. As such, the Administrator has authority to determine what promotional items to sell. Tex. Gov't Code § 2116.021(c). Thus, to plead a viable *ultra vires* claim for an act taken without legal authority, TPM must plead facts showing the Administrator's conduct exceeds the bounds of the granted authority or conflicts with the law itself. *Hall*, 508 S.W.3d at 238. TPM has not done so.

Even taking as true the facts alleged, the Administrator has not acted *ultra vires* in creating and selling promotional coins and notes for several reasons. TPM has not alleged that the Administrator did not approve the promotional items. *See generally* TPM's Pet. Instead, TPM's argument rests in its claims that (1) the Depository was created "to do one thing and one thing only—store precious metals" and thus any act outside the mere facilitation of "storage" is *ultra vires*; (2) the Depository has "no statutory authority to manufacture, promote and sell precious metals products" and thus, the creation of the promotional coins and notes was *ultra vires*; and (3) the coins and notes are not promotional items and thus their creation falls outside the Administrator's statutory authority. TPM's Pet. at 1–2, 9, 19. Each of those arguments fails as a matter of law. Because these arguments fail as a matter of law, TPM has failed to allege a viable *ultra vires* claim, and its claims should be dismissed.

A. The creation and sale of the promotional coins and notes is within the Administrator's statutory authority because the Depository has authority to do more than merely "store" precious metals.

First, the text of the statute illustrates the Depository was created to do more than just store precious metals. TPM's assertion that the Depository was created to do "One Thing and One Thing Only—Store Precious Metals[,]" is based only on a Press Release by the Governor, not the language of the statute itself. TPM's Pet. at 9 (citing a press release from the Governor).

But that is error. "As with any statute, our interpretation begins with the statute's text." *Third Coast Servs.,* 726 S.W.3d at 206 (citing *Hampton v. Thome*, 687 S.W.3d 496, 501 (Tex. 2024)).

Even when it was first created, the Depository was never intended to be a mere storage receptacle. The Depository was first established in 2015 "to serve as the custodian, guardian, and administrator of certain bullion and specie that may be transferred to or otherwise acquired by this state or an agency, a political subdivision, or another instrumentality of this state." Tex. Gov't Code § 2116.002(b). The Administrator was authorized to, among other things, "liaise with the comptroller and other divisions of the office of the comptroller to ensure that each transaction with the depository that involves state money, that involves an agency, a political subdivision, or another instrumentality of this state, or that involves a private person is planned, administered, and executed in a manner to achieve the purposes of this chapter." Tex. Gov't Code § 2116.003(b)(2). Moreover, "[r]evenue the depository realizes from fees, charges, or other payments received in the course of depository operations shall be deposited to the credit of the general revenue fund." Tex. Gov't Code § 2116.004(c). As such, from the beginning, it was contemplated that the Depository would be more than a mere storage receptacle and would engage in transactions, manage assets, and produce revenue for the State.

Then the Legislature expanded the Depository's authority in 2019. In the 86th Legislative Session, the Legislature gave Depository more authority, including the authority to sell promotional items. Tex. Gov't Code § 2116.021(c). This shows two things. First, the Legislature *broadened* the scope of the Depository's authority. It expressly authorized it to sell promotional items, illustrating the Legislature's intent was not to limit or constrain the Depository's authority. *See id.* Second, given that the Legislature expressly authorized the Depository to sell promotional items at a commercially reasonable price, it is simply untrue as a matter of law and logic that the Depository only has authority to "Do One Thing and One Thing Only—Store Precious Metals."

B. The creation and sale of the promotional coins and notes is within the Administrator's statutory authority because the Depository has express statutory authority to create and sell promotional products and discretionary authority to determine what those products may be.

The Depository has express statutory authority to create and sell promotional items. Tex. Gov't Code § 2116.021(c). TPM admits the Legislature included an express sales authorization in the Depository's enabling statute allowing it to sell "promotional items approved by the administrator to further the purposes of this chapter and to promote the depository." TPM's Pet. at 19 (citing Tex. Gov't Code § 2116.021(c)). TPM also admits, "Chapter 2116 does not define 'promotional items[.]" TPM's Pet. at 19. TPM, however, incorrectly assumes this must mean precious metals *cannot* be promotional products. *See id.* This is incorrect and unsupported by the text of the statute.

"We 'presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.'" *Third Coast Servs.,* 726 S.W.3d at 206(quoting *Rogers v. Bagley*, 623 S.W.3d 343, 352 (Tex. 2021)). As TPM outlined in its Petition, the Legislature limited the breadth of permissible promotional products in other unrelated statutes. TPM's Pet. at 20. The Legislature's intentional *limiting* of what constitutes a permissible promotional item in *other* statutes should not be taken as an implied limiting of promotional items in *this* statute. *See Third Coast Servs.,* 726 S.W.3d at 206 (stating the courts should presume the Legislature purposely omits words not chosen). To the contrary, that the Legislature limited the scope of permissible promotional items in other statutes shows that the Legislature knew how to limit an agency's authority to define promotional items if it wanted to but did not here. *See* Tex. Gov't Code § 2116.021. This omission was not accidental, and the court should not treat it as accidental. *See Third Coast Servs.*, 726 S.W.3d at 206. Instead, it should be treated as the broad grant of discretion the Legislature gave.

A broad authority to determine what promotional items to create and sell is consistent with the broad authority granted to the Depository in other subsections of the statute. For example, in 2116.021(b), the Legislature states "[t]he depository may advertise and promote the depository in

any available media." Tex. Gov't Code § 2116.021(b). It is consistent to interpret the next subsection, 2116.021(c), to also give broad discretion to the Depository to determine what promotional items to sell. *Id.* §§ 2116.021(b–c). Imposing a non-existent limitation on the type of promotional items that may be sold, on the other hand, would be inconsistent with the broad authority the text grants to the Depository over advertising and promotion. *See id.* §§ 2116.021(b–c).

This case is not like *Houston Belt*, 487 S.W.3d at 165–66. There, the statute at issue provided an express definition of the topic at issue: benefited properties. *Id.* at 167. The court found the plaintiffs properly alleged an *ultra vires* claim because the statute did not authorize the official to interpret the definition and usage of "benefitted property" in a way that conflicted with the statutory definition or other provisions of the ordinance. *Id.* Here, the statute at issue does not provide a definition of the topic at issue: promotional items. Tex. Gov't Code § 2116.021(c). And unlike in *Houston Belt*, the plaintiffs have not pointed to any portion of the Depository's enacting code which conflicts with the Administrator's interpretation of "promotional items" to include coins and notes. *See Hous. Belt,* 487 S.W.3d at 165–67 (describing how the official's interpretation of "benefitted properties" conflicted and was inconsistent with the interpretation of other provisions in the relevant statute).

Instead, TPM only argues potential inconsistency with the definition of "promotional item" in other, completely unrelated statutes. TPM's Pet. at 20. That is not the test. *See e.g., Hous. Belt,* 487 S.W.3d at 165–67. As such, TPM has failed to state a plausible claim showing the Administrator acted outside their statutory authority in licensing for sale the coins and notes as promotional items. *See Matzen*, 659 S.W.3d at 389 (citing *Klumb*, 458 S.W.3d at 17)). Therefore, TPM's claims are barred by sovereign immunity and should be dismissed. *Id.*

C. The coins and notes are promotional products under section 2116.

The coins and notes at issue are promotional products consistent with section 2116. TPM's claims to the contrary fail for several reasons. First, the coins and notes are advertised as and serve as promotional products. Second, the mere fact that an item has intrinsic value does not preclude

it from being a "promotional item." Third, nothing in the statute prohibits the manufacturing, sale, or promotion of precious metal products as promotional items. Fourth, the creation of the coins and notes as promotional products does not conflict with any statutory authority. Because the coins and notes are promotional items, TPM has not alleged a viable *ultra vires* claim and TPM's claims should be dismissed as barred by sovereign immunity. *Matzen*, 659 S.W.3d at 388.

        1.   *The coins and notes are marketed as, and do in fact serve as, promotional items.*

      The coins and notes are marketed as, and do in fact serve as, promotional items. The Depository advertises the coins as "commemorative, numismatic, and collectible[.]" TPM's Pet. at 19 (citing https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin).[2] The facts in TPM's pleading illustrate the promotional nature of the products. Promotional items are items which further the growth or development of something through means such as advertising and publicity. *Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). Thus, a promotional item for the Texas Bullion Depository is an item which promotes the growth or development of the Texas Bullion Depository through advertising or publicity. *See id.*

      The coins and notes do just that, generating valuable recognition. For example, the Depository's coins have "Texas Bullion Depository" along on the rounded edge. TPM's Pet. at 14. The Depository's coins have a Texas Bullion Depository mark on them as well. TPM's Pet. at 18. The Depository's notes have "Texas Bullion Depository" in more than one place. TPM's Pet. at 15. The Depository's notes also prominently feature the Depository's website information. TPM's Pet. at 11, 15. Placing the Depository's name on the coins obviously advertises the Depository. Why else would the Depository put its name on its coins and notes? Notably, TPM also puts its name on its coins and notes in similar locations. *See* TPM's Pet. at 4–7.[3]

---

[2] TPM incorporated several websites and documents into its initial Petition by citing to quotations and providing links to the full website or document. *See e.g.*, TPM's Pet. at 19 n.2.

[3] That Comptroller's RFP permits the successful bidder to use its trade name on packaging, advertising, and promotional materials for the coins does not mean that the coins do not also promote the Depository. TPM's Pet. at 19–20.

2. *The mere fact that an item has intrinsic value does not preclude it from being a "promotional item."*

The price or value of the coins and notes does not preclude them from being permissible promotional items. TPM incorrectly claims the Depository's coins and notes "cannot be promotional items" because "they have substantial value." TPM's Pet. at 19. This conclusion is simply not supported by the text of the statute. First and foremost, nothing in the law prohibits promotional items from having substantial value. Tex. Gov't Code § 2116.021. Second, the statute specifically authorizes the Depository to "set commercially reasonable prices for the items licensed or sold under this section." *Id.* § 2116.021(c). This shows several things: (1) the Legislature authorized the items to be sold, not merely given away for free and (2) the Legislature left pricing decisions to the discretion of the Depository. *See id.* Neither of these statements lead to the conclusion that the statute *forbids* the Depository from selling promotional items with "intrinsic value." To the contrary, they lead to the logical conclusion that the Legislature authorized items of value to be sold and left it to the discretion of the Depository to set the price.

The coins and notes are sold at prices in compliance with the statute. The statute authorizes the Depository to "set commercially reasonable prices for items licensed or sold under this section." Tex. Gov't Code § 2116.021(c). TPM admits the coins and notes "are priced relative to the intrinsic value of their gold and silver content[.]" TPM's Pet. at 20. "For example, the price of each of the three different weights of Redbacks increases in proportion to its gold content." TPM's Pet. at 20. When a Redback has "four times as much gold" it is sold for "four times the price." TPM's Pet. at 20–21. This demonstrates that the Depository is selling the promotional items at "commercially reasonable prices." Tex. Gov't Code § 2116.021(c).

Additionally, the definition of a "promotional" item does not hinge on the item's value. *Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). Instead of reading into the law requirements that do not exist, "[w]hen the statute does not define a term, we apply its ordinary, common meaning unless a contrary meaning is apparent from the text, typically by looking to dictionary definitions." *Third Coast Servs. LLC*, 726 S.W.3d at 207 (citing *Tex. State Bd.*

*Of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017)). According to Merriam-Webster's Collegiate Dictionary, the word "promotion" or "promotional" means, in relevant part, "the act of furthering the growth or development of something; *esp.*: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). It thus follows that a "promotional item" is an item that furthers the growth or development of something especially by advertising or publicity. *See id.* As discussed, *supra* at § II(C)(1), that is precisely what the coins and notes do. TPM requests this Court read into the statute a value requirement that simply is not there. This Court should refuse to do so.

### 3. The statute does not prohibit the use of coins and notes as promotional products.

Nothing in the statute prohibits the manufacturing, sale, or promotion of precious metal products. TPM claims that because the Depository "exists to store customers' precious metals" it cannot treat precious metals as promotional items because "that would convert a narrow merchandising carve-out into an authorization to sell the depository's core subject matter." TPM's Pet. at 19. This conclusion is similarly not supported by logic or the text of the statute. Section 2116.021 does not contain an express prohibition on the manufacture, sale, or promotion of precious metals. Tex. Gov't Code § 2116.021. Further, directly following the section authorizing the sale of promotional items is a section titled "Certain Actions Prohibited." Tex. Gov't Code § 2116.022. That section does not contain any prohibition on what items may be marketed and sold as promotional items. *Id.* In fact, the prohibited actions have nothing to do with the sale of promotional items. *Id.* This illustrates that the Legislature had the opportunity to restrict or limit the Depository's action with regard to the sale of promotional items but chose not to.

### 4. The creation and sale of the coins and notes as promotional items does not conflict with any statutory authority.

The creation and sale of the coins and notes as promotional items does not conflict with any statutory authority. It is the plaintiff's burden to demonstrate a conflict with statutory authority, *Hall*, 508 S.W.3d at 238, and TPM has identified no authority that prohibits or conflicts

with the Depository's creation and sale of the coins and notes beyond TPM's interpretation of the Depository's authorizing statutes. To the contrary, the law authorizes the Depository to "sell, license for sale, or obtain a license to sell promotional items approved by the administrator to further the purposes of this chapter and to promote the depository." Tex. Gov't Code § 2116.021. TPM has not alleged the Administrator did not approve the creation, sale, or licensure of the promotional items. *See generally* TPM's Pet. As such, TPM has not alleged a viable claim showing the Administrator engaged in activity which conflicts with or is outside of their statutory authority.

TPM's factual allegations concerning the Depository's use of the outline of the shape of Texas are not relevant to the question before this Court—*i.e.*, whether the Administrator is acting *ultra vires* by selling promotional coins and notes. As such, this Court should not let TPM distract it from answering the question before it: whether the Administrator is acting *ultra vires* by creating and selling promotional coins and notes. To that question, the answer is no.

Because TPM has not alleged a viable claim showing the Administrator engaged in activity which conflicts with statutory authority or is outside the scope of any statutory authority, TPM has not stated a viable *ultra vires* claim. As such, the Administrator's sovereign immunity is not waived and the Court lacks jurisdiction over TPM's claims.

D. In the alternative, should the Court find TPM has standing to sue the Comptroller and finds Administrator and Comptroller lack statutory authority under section 2116, the Comptroller's actions are within his statutory authority under section 403.0301.

In the event the Court finds the Comptroller and Administrator lack authority to issue, sell, license for sale, or obtain a license to sell the promotional items at issue in this case under section 2116.021, the Court should still find the Comptroller did not exceed his statutory authority. Under Texas Government Code section 403.0301, the Comptroller has the authority to "contract with a person for the sale, lease, marketing, or other distribution of the comptroller′s intellectual property" and "obtain under a contract described in Subdivision (2) a royalty, license right, or other appropriate means of securing reasonable compensation for the development or purchase of the comptroller's intellectual property[.]" Tex. Gov't Code §§ 403.0301(a)(2-3). This is precisely

what is occurring here. As such, in the event the Court finds TPM has standing to sue the Comptroller and the Comptroller and Administrator lack sufficient authority under section 2116, the Court should nevertheless find the acts are not *ultra vires* pursuant to the Comptroller's authority under section 403.0301.

## IV. Conclusion

For these reasons, State Defendants Kelly Hancock and Macy Douglas, each in their official capacities, respectfully request this Court dismiss Plaintiff Texas Precious Metals LLC's claims against them, enter judgment for State Defendants and against Plaintiff Texas Precious Metals LLC, holding that Plaintiff Texas Precious Metals LLC take nothing by this action, and award State Defendants any such further relief to which they are entitled.

Date: February 20, 2026

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

*/s/ Ali M. Thorburn*
ALI M. THORBURN
Special Counsel
Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ALEXIA K. BAKER
Assistant Attorney General
Tex. State Bar No. 24149596

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
david.bryant@oag.texas.gov
ali.thorburn@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

*COUNSEL FOR DEFENDANTS*

<u>**CERTIFICATE OF SERVICE**</u>

   I certify that on February 20, 2026, a true and correct copy of the above and foregoing has been served on all counsel of record by email.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*


*/s/ Ali M. Thorburn*
ALI M. THORBURN

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | 459TH JUDICIAL DISTRICT |
| *Defendants.* | § | |

## FINAL ORDER

Before this Court is Defendants KELLY HANCOCK and MACY DOUGLAS'S Plea to the Jurisdiction. After considering the Plea, applicable law, and arguments of the parties, the Court is of the opinion that the motion is meritorious and should be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Defendants' Plea to the Jurisdiction is GRANTED and that all Plaintiff Texas Precious Metals, LLC's claims against Defendants Kelly Hancock and Macy Douglas are DISMISSED.

All requested relief not specifically granted herein is denied. This judgment disposes of all claims against the Defendants Kelly Hancock and Macy Douglas and is final and appealable.

SIGNED this _____ day of _____ 2026.


_____
PRESIDING JUDGE

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111549667
Filing Code Description: No Fee Documents
Filing Description: STATE DEFENDANTS' PLEA TO THE JURISDICTION
Status as of 2/26/2026 10:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/20/2026 6:43:16 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/20/2026 6:43:16 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/20/2026 6:43:16 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/20/2026 6:43:16 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/20/2026 6:43:16 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/20/2026 6:43:16 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/20/2026 6:43:16 PM | SENT |

2/20/2026 6:44 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-26-000754
Norma Ybarra

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

---

## NOTICE OF HEARING

You are notified that the pending Defendants' Plea to the Jurisdiction and Plaintiff's Motion for Temporary Injunction in this case has been set for hearing on **Thursday, March 5, 2026,** at **9:00 a.m.** on the Central Docket in the Travis County Civil District Courts for 3 hours. This hearing will take place in person at the Travis County Civil and Family Courts Facility (CFCF), located at 1700 Guadalupe Street in Austin. Since several cases may be scheduled at the same time, your case may be called later in the day [and possibly later in the week if it is on the long docket], and you must be available when your case is called.

Please note that this case is not specially assigned to a particular judge under the Travis County Local Rules, so the parties must check the docket setting prior to each proceeding, either online at https://www.traviscountytx.gov/courts/files/dockets/civil-district or in person at the CFCF in order to determine the courtroom assigned for the proceeding.

Assignments will be posted on Friday of the week before the proceedings. Questions about case assignments or locations for proceedings should be directed to the office of the Court Administrator for the Civil District Courts at 512-854-2484, not to a particular court.

Date: February 20, 2026                    Respectfully Submitted.

KEN PAXTON                                  /s/ Ali M. Thorburn
Attorney General of Texas                   ALI M. THORBURN
                                            Special Counsel
BRENT WEBSTER                               Attorney-in-Charge
First Assistant Attorney General            Texas State Bar No. 24125064
                                            Direct: (512) 936-2275
RALPH MOLINA
Deputy First Assistant Attorney General     MUNERA AL-FUHAID
                                            Special Counsel
RYAN D. WALTERS                             Texas Bar No. 24094501
Deputy Attorney General for Legal Strategy
                                            ALEXIA K. BAKER
RYAN G. KERCHER                             Assistant Attorney General
Chief, Special Litigation Division          Tex. State Bar No. 24149596

DAVID BRYANT                                **OFFICE OF THE TEXAS ATTORNEY GENERAL**
Senior Special Counsel                      Special Litigation Division
Texas Bar No. 03281500                      P.O. Box 12548, Capitol Station
                                            Austin, Texas 78711-2548
                                            Tel: (512) 463-2100
                                            Fax: (512) 457-4410
                                            david.bryant@oag.texas.gov
                                            ali.thorburn@oag.texas.gov
                                            munera.al-fuhaid@oag.texas.gov
                                            alexia.baker@oag.texas.gov

*COUNSEL FOR DEFENDANTS*


## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies she actually conferred with opposing counsel on February 20, 2026, by email regarding the State Defendants' request to set the State Defendants' Plea to the Jurisdiction for hearing immediately preceding the hearing on Plaintiff's application for temporary injunctive relief. Counsel have not been able to resolve the matter presented and opposing counsel has indicated that Plaintiff is opposed.

/s/ Ali M. Thorburn
ALI M. THORBURN

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 20, 2026, a true and correct copy of the above and foregoing has been served on all counsel of record by email.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

COUNSEL FOR TEXAS PRECIOUS METALS, LLC


*/s/ Ali M. Thorburn*
ALI M. THORBURN

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tamera Martinez on behalf of Ali Thorburn
Bar No. 24125064
tamera.martinez@oag.texas.gov
Envelope ID: 111549702
Filing Code Description: Notice
Filing Description: NOTICE OF HEARING
Status as of 2/26/2026 9:58 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Munera Al-Fuhaid | 24094501 | munera.al-fuhaid@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Alexia Baker | 24149596 | alexia.baker@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Ali Thorburn | | Ali.Thorburn@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| David Bryant | | David.Bryant@oag.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Murl Miller | | Murl.Miller@cpa.texas.gov | 2/20/2026 6:44:50 PM | SENT |
| Elena Bendea | | Elena.Bendea@cpa.texas.gov | 2/20/2026 6:44:50 PM | SENT |

Associated Case Party: TEXAS PRECIOUS METALS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kira NHamm | | kira.hamm@pillsburylaw.com | 2/20/2026 6:44:50 PM | SENT |
| Docket Docket | | Docket@Pillsburylaw.com | 2/20/2026 6:44:50 PM | SENT |
| Casey Low | | casey.low@pillsburylaw.com | 2/20/2026 6:44:50 PM | SENT |
| Ryan Sullivan | | ryan.sullivan@pillsburylaw.com | 2/20/2026 6:44:50 PM | SENT |
| Elizabeth Blackford | | elizabeth.blackford@pillsburylaw.com | 2/20/2026 6:44:50 PM | SENT |

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK; in his official capacity as | § | |
| Acting Texas Comptroller of Public | § | |
| Accounts, and MACY DOUGLAS, in her official | § | |
| capacity as Administrator of the Texas Bullion | § | |
| Depository, | § | |
| *Defendants.* | § | 459TH JUDICIAL DISTRICT |

## RULE 11

| From: | Sullivan, Ryan |
| To: | Ali Thorburn |
| Cc: | David Bryant; Munera Al-Fuhaid; Alexia Baker; Tamera Martinez; Low, Casey; Blackford, Elizabeth; Hamm, Kira N. |
| Subject: | RE: Texas Precious Metals v. Hancock et. al., Cause No. D-1-GN-26-000754; Rule 11 Agreement |
| Date: | Tuesday, February 24, 2026 3:40:48 PM |
| Attachments: | image001.png |

Agreed.

Best,
Ryan

**Ryan Sullivan** | Counsel
Pillsbury Winthrop Shaw Pittman LLP
401 W 4th St, Suite 3200 | Austin, TX 78701
t +1.512.580.9655
ryan.sullivan@pillsburylaw.com | website bio

---

**From:** Ali Thorburn <Ali.Thorburn@oag.texas.gov>
**Sent:** Tuesday, February 24, 2026 3:38 PM
**To:** Sullivan, Ryan <ryan.sullivan@pillsburylaw.com>
**Cc:** David Bryant <David.Bryant@oag.texas.gov>; Munera Al-Fuhaid <Munera.Al-Fuhaid@oag.texas.gov>; Alexia Baker <Alexia.Baker@oag.texas.gov>; Tamera Martinez <Tamera.Martinez@oag.texas.gov>; Low, Casey <casey.low@pillsburylaw.com>; Blackford, Elizabeth <elizabeth.blackford@pillsburylaw.com>
**Subject:** RE: Texas Precious Metals v. Hancock et. al., Cause No. D-1-GN-26-000754; Rule 11 Agreement

Ryan,

Upon receipt of an email showing your confirmation of agreement and signature, please let this email serve as the complete written agreement between the parties pursuant to Rule 11 of the Texas Rules of Civil Procedure.

The parties agree to extend the previously agreed expedited discovery response deadline (including production of initial disclosures and discovery responses and objections) of Wednesday February, 25 at 5:00 PM to Thursday February, 26 at 5:00 PM to allow for negotiations regarding an agreed confidentiality and protective order.


Sincerely,

Ali Thorburn

**Ali Thorburn**
*Special Counsel*
Special Litigation Division

Date: February 24, 2026

Respectfully,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

/s/ Ali M. Thorburn
ALI M. THORBURN
Special Counsel
Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275

DAVID BRYANT
Senior Special Counsel
Texas State Bar No. 03281500

MUNERA AL-FUHAID
Special Counsel
Texas State Bar No. 24094501

ALEXIA K. BAKER
Assistant Attorney General
Texas State Bar No. 24149596

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410
ali.thorburn@oag.texas.gov
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
alexia.baker@oag.texas.gov

COUNSEL FOR STATE DEFENDANTS

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 24, 2026, a true and correct copy of the above and foregoing has been served on all counsel of record by email.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

COUNSEL FOR TEXAS PRECIOUS METALS, LLC


*/s/ Ali M. Thorburn*
ALI M. THORBURN

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## <u>AGREED CONFIDENTIALITY AND PROTECTIVE ORDER</u>

Before the court is the joint motion of the parties for the entry of a confidentiality and protective order ("Protective Order"). After careful consideration, it is hereby ORDERED as follows:

**1.      Classified Information**

"Classified Information" means any information of any type, kind, or character that is designated as "Confidential", "For Counsel Only", or "Attorneys Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

**2.      Qualified Persons**

"Qualified Persons" means:

a.      For Counsel or Attorneys Only information:

      i.      counsel for the parties in this litigation and their respective staff, excluding employees of the Texas Bullion Depository;

        ii.       actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this litigation (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a document agreeing to be bound by the terms of this Protective Order (such signed document to be maintained by the attorney retaining such person) and have been designated in writing by notice to all counsel;

        iii.     this court and its staff and any other tribunal or dispute resolution officer duly appointed or assigned in connection with this litigation.

    b.    For Confidential information:

        i.       the persons identified in subparagraph 2(a);

        ii.       the party, if a natural person;

        iii.     if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have been designated in writing by notice to all counsel and have signed a document agreeing to be bound by the terms of this Protective Order (such signed document to be maintained by the attorney designating such person);

        iv.     litigation vendors, court reporters, and other litigation support personnel;

        v.      any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

    c.    Such other person as this court may designate after notice and an opportunity to be heard.

**3.    Designation Criteria**

    a.    *Nonclassified Information.* Classified Information shall not include information that either:

        i.       is in the public domain at the time of disclosure, as evidenced by a written document;

        ii.       becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

        iii.    the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

        iv.    lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

b.    *Classified Information*. A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified.

Information and documents that may be designated as Classified Information include, but are not limited to, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Correspondence and other communications between the parties or with nonparties may be designated as Classified Information if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public.

c.    *For Counsel or Attorneys Only*. The designation "For Counsel Only" or "Attorneys Eyes Only" shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, non-public financial information, pricing information (including premium above spot price), customer identification data, trade secrets, confidential or proprietary financial information, and certain study methodologies.

d.    *Ultrasensitive Information.* At this point, the parties do not anticipate the need for

higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that the court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

4.      **Use of Classified Information**

All Classified Information provided by any party or nonparty in the course of this litigation shall be used solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose, and shall not be disclosed except in accordance with the terms hereof. No Classified Information produced by Texas Precious Metals, LLC shall be disclosed to any third party—defined as any person or entity other than the named parties and their counsel—without the express written permission of Texas Precious Metals, LLC. No Classified Information produced by the Texas Bullion Depository shall be disclosed to any third party—defined as any person or entity other than the named parties and their counsel—without the express written permission of the Texas Bullion Depository.

5.      **Marking of Documents**

Documents provided in this litigation may be designated by the producing person or by any party as Classified Information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential", "For Counsel Only", or "Attorneys Eyes Only". The designation of all "For Counsel Only" or "Attorneys Eyes Only" documents should be made in a fashion or form that is conspicuous yet allows the Classified Information to remain legible. In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

6.        **Disclosure at Depositions**

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a nonparty may be designated by any party as Classified Information by indicating on the record at the deposition that the testimony is "Confidential" or "For Counsel Only" and is subject to the provisions of this Order.

Any party also may designate information disclosed at a deposition as Classified Information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Classified Information thereafter. Each party shall attach a copy of each such written notice to the face of the transcript and each copy thereof in that party's possession, custody, or control. All deposition transcripts shall be treated as For Counsel Only for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court and/or its staff shall segregate into separate transcripts information designated as Classified Information with blank, consecutively numbered pages being provided in a non-designated main transcript. The separate transcript containing Classified Information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Classified Information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Classified Information is being used or discussed.

7.        **Disclosure to Qualified Persons**

a.        *To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with

applicable law or the valid order of a court of competent jurisdiction; ***provided, however***, that in the event of a disclosure compelled by law or court order, the receiving party will so notify the producing party as promptly as practicable (if at all possible, prior to making such disclosure) and shall seek a protective order or confidential treatment of such information. Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

b. *Retention of Copies During this Litigation.* Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this litigation.

c. Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

**8. Unintentional Disclosures**

Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all

reasonable efforts to prevent disclosure by each unauthorized person who received such information.

**9.    Documents Produced for Inspection Prior to Designation**

In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential", "For Counsel Only", or "Attorneys Eyes Only" by the producing party.

**10.    Consent to Disclosure and Use in Examination**

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

**11.    Challenging the Designation**

a.    *Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. If any party to this litigation disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the

court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless and until the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information. For challenges to a designation of Classified Information produced prior to the hearing on Plaintiff's Application for Temporary Injunction, the designating party shall then have 2 days to move the court for an order preserving the designated status of the disputed information, and the parties agree that the court may hear the designating party's motion at the commencement of the hearing on Plaintiff's Application for Temporary Injunction.

b.      *Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the dispute cannot be resolved, the objecting party shall have 14 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 14 days from service of the request to move the court for an order denying the disposed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting person shall have the burden of demonstrating that disclosure to the disputed person would expose the objecting party to the risk of serious harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless and until the court enters an order preserving the designation.

c.      *Other*. In the event any information that Defendants designate as Confidential or Attorneys Eyes Only is released pursuant to an Open Records request in unredacted form, the publicly released information shall no longer be considered Classified Information. State Defendants will work in good faith to declassify information and documents identified by TPM that have been produced

in unredacted form pursuant to Open Records requests.

**12.     Manner of Use in Proceedings**

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this litigation, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for *in camera* review; or (3) file such information under seal with the court consistent with the sealing requirements of this litigation and the Western District of Texas.

**13.     Return of Documents**

Not later than 120 days after conclusion of this litigation and any appeal related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as the court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

**14.     Ongoing Obligations**

Insofar as the provisions of this Protective Order, or any other protective orders entered in this litigation, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this litigation, except that (a) there shall be no restriction on documents that are used as exhibits in final litigation hearing unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing

party or order of the court with respect to dissolution or modification of this, or any other, protective order.

### 15. Advice to Clients

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this litigation from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

### 16. Duty to Ensure Compliance

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

### 17. Waiver

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work product protection is waived by disclosure connected with this litigation.

### 18. Modification and Exceptions

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

It is SO ORDERED this_____day of_____, 2026.

_____
JUDGE PRESIDING

**AGREED AS TO FORM AND SUBSTANCE**

/s/ Ryan J. Sullivan

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com
Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com
Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Plaintiff*

/s/ Ali M. Thorburn

Ali M. Thorburn
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov
OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410

*Attorney for Defendants*

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

**PLAINTIFF TEXAS PRECIOUS METALS' RESPONSE TO DEFENDANTS' PLEA TO THE JURISDICTION AND BRIEF IN SUPPORT OF ITS <u>MOTION FOR TEMPORARY INJUNCTION</u>**

In 2015, the Texas Legislature created the Texas Bullion Depository ("Depository") for the expressly stated purpose of acting as a depository of precious metals, meaning "to serve as the custodian, guardian, and administrator of certain bullion and specie that may be transferred to or otherwise acquired by this state or an agency, a political subdivision, or another instrumentality of this state." The Depository followed that authorization for over a decade and, in exchange for a fee, safeguarded and recorded the deposits it has received, tracked those deposits in depository accounts, and returned the precious metals upon demand as a depository should. Until now.

Beginning in late 2025, the Defendants, Comptroller Kelly Hancock ("Comptroller") and the Depository's Administrator, Macy Douglas ("Administrator") embarked on a new program whereby the Depository would act as a mint and retailer of the very types of precious metals it was established to safeguard. Specifically, the Comptroller contracted with third party mints and metal dealers to create gold and silver "coins" and gold "notes," all with images of trademarks that are registered to Plaintiff Texas Precious Metals, LLC ("Texas Precious Metals"). In January 2026, the Depository began marketing these coins and notes on its website as "investments" in bullion and specie .. Almost immediately, Texas Precious Metals began fielding calls from consumers expressing confusion over the nature of these products, including their source and whether they are in fact currency. Meanwhile, the Depository stands to generate more revenue on this new line of products that dwarfs its core authorized operation.

When asked to provide the new statutory authorization for this admitted "expansion" in the Depository's operation, Defendants pointed to a two-sentence authorization for the Depository to sell "***promotional items.***" When confronted with the fact that promotional items are generally considered to be merchandise (or swag) such as "clothing, posters, and banners," which the Legislature has referenced in the Government Code and other statutes, Defendants claim that

because the Administrator must approve the "promotional items" and set their "commercially reasonable price," she has carte blanc authority to authorize anything she wants. As a result, the Depository, which was specifically created to operate as a safe guarder of bullion and specie, is now minting and selling "investments" in precious metals, including gold "coins" for more than $5,000 a pop—a substantial premium on the value of the metal sold—all the while confusing the public into believing it is official currency.

Claiming the Legislature authorized this substantial new venture "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013). If promotional items can literally mean anything sold by the entity promoting itself, then the term has no meaning. What is worse, Defendants are now doing so with zero legislative guardrails, and in the process are creating the false impression their coins and notes are backed by the full faith and credit of the State of Texas, all the while using marks the United States Patent and Trademark Office registered to Texas Precious Metals long ago. The result is not only ultra vires conduct that exceeds statutory authority, but harmful conduct that is irreparable, requiring immediate injunctive relief.

## FACTUAL BACKGROUND

Texas Precious Metals is a Texas-based precious metals dealer and producer that has operated for more than a decade. Texas Precious Metals has processed billions of dollars in precious metals transactions and ships products nationwide. A central feature of Texas Precious Metals' branding is a series of source-identifying marks featuring a silhouette of the State of Texas (the "Mint Mark"), which Texas Precious Metals uses consistently across its product line to indicate the source and authenticity of its products. Texas Precious Metals owns an incontestable federal trademark registration for the Mint Mark.

One of Texas Precious Metals' signature products is its line of Texas-themed gold and silver "rounds" (privately minted, non-legal-tender medallions), marketed and sold nationwide. Texas

Precious Metals also offers other precious metals products—including bars and other Texas-themed items—bearing the Mint Mark. Because the Depository is now engaged in a new line of business that the Legislature never authorized and directly infringes on the Mint Mark, and is now causing inexcusable public confusion, Texas Metals brings this action to enjoin such conduct.

I.      **The Depository's "New Program" to Mint, Market, and Sell Precious Metals Products**

In late 2025, the Depository began operating not merely as a depository, but as a producer and marketer of branded precious metals products. On December 29, 2025, the Comptroller publicly announced "a new program" on behalf of the Depository offering "authorized commemorative precious metal products" to investors and collectors. As part of that program, Defendants began promoting and selling precious metals products that include, among other things, a series of Texas-branded coins and other gold/silver products (including gold "notes").

Defendants sell the Texas-branded investments by linking from the Depository's website to a third-party retailer, the United States Gold Bureau ("USGB"), which is itself a direct competitor of Texas Precious Metals in the precious metals retail market. The Texas-branded precious metals products are manufactured through contractors or subcontractors, including Valaurum, Inc. and Scottsdale Mint, LLLP. Defendants' use of established private mints and minting contractors underscores that the challenged conduct is not passive or incidental; it is a deliberate product program involving design, production, marketing, and commercial sale into the retail precious metals market.

The Depository and its affiliates market these items as state-authorized, suggesting an official imprimatur of sovereign currency that no private seller can match. As Scottsdale Mint has promoted, on behalf of the Depository: "Texas is the first state to facilitate a closed loop system for precious metals from manufacturing to vaulting to direct to consumer sales. By launching its own branded coins and gold bills through an official dot gov storefront, the state is creating a

physical alternative to traditional financial systems." Kitco NEWS, *Physical Metals Enter the State Economy: Texas Unveils Official Bullion Program* (Feb. 11, 2026), available at: https://www.youtube.com/watch?v=LrCsUQcJou8.

While promoted as "commemorative," "numismatic," and "collectible," they are still sold as "coin" and "notes" created by a sovereign entity, and their pricing is tied to the intrinsic value of the gold or silver content, albeit with a hefty premium.



## A.      Direct Competition and Confusion with Texas Precious Metals' Products

The Depository's products compete directly with Texas Precious Metals' products, including Texas Precious Metals' Texas-themed rounds and gold-note-style products. Compounding that competitive harm, the Depository's products also incorporate Texas Precious Metals' Mint Mark—i.e., the same Texas-silhouette mark Texas Precious Metals uses to authenticate and identify the source of its products.

| **Texas Precious Metals' Texas Rounds** | **Depository's State of Texas Coins** |
|:---:|:---:|

 

 

The Depository's use of that mark has and continues to cause marketplace confusion regarding source, sponsorship, affiliation, and/or approval.

**B.      The Resulting Irreparable Harm to Texas Precious Metals and the Public**

As a result, Texas Precious Metals faces ongoing and escalating harm from (i) direct state-backed competition in the same market segment, (ii) the Depository's use of Texas Precious Metals' Mint Mark on competing products, and (iii) the Depository's marketing of the products as "authorized" and tied to the State—conditions that increase confusion and threaten Texas Precious Metals' goodwill and brand integrity in ways that are difficult to quantify or unwind. In just the short time the Depository has been selling its new "investments," Texas Precious Metals has received numerous consumer inquiries expressing confusing as to their relationship to Texas Precious Metals products and relationship to official state currency in general.

While such evidence will be presented at the Court's March 5 temporary injunction hearing, representative examples contained within Texas Precious Metals' call logs include:

(1) January 6, 2026: Consumer called Texas Precious Metals believing he was contacting the Texas Bullion Depository and questioned why the Leander facility was "government-administered," then stated, "I believe I'm talking to the Texas Bullion Depository. That's not true?" After being told "This is not Texas Bullion Depository … we are not associated with them," the consumer responded, "I've landed on this page by mistake." *See* Ex. A, Declaration of Tarek Saab ("Saab Decl.") at Ex. 1 (TPM001189).

(2) January 13, 2026: Consumer asked who sells the "depository coins," identified the products as "Texas Bullion Depository" coins seen online (describing the design as "a state of Texas … [and] a wreath"), and then stated, "I thought y'all were one of the same," after Texas Precious Metals explained Texas Bullion Depository is a competitor and Texas Precious Metals does not sell those products. See *id.* (TPM001207).

(3) January 14, 2026: After reviewing the Texas Bullion Depository website, a consumer called Texas Precious Metals and asked, "Is this the company that manages the Texas Bullion Depository or not?" and explained he needed information about "the operation of the Texas Bullion Depository." Texas Precious Metals had to clarify that it is a separate company and "not the same depository." See *id.* (TPM001213).

The harm is not only ongoing and imminent, it was predictable to Defendants, who chose to structure their new program as an expanding product line of selling "coins" of the State of Texas rather than a one-time promotion. *See* Request for Proposals (RFP No. 237b) for Texas Bullion Depository Licensed Product Services, at 5.

## LEGAL STANDARDS

When governmental officials challenge jurisdiction through a plea to the jurisdiction, the Court should determine "whether the alleged facts, if true, affirmatively demonstrate jurisdiction" and "construe pleadings liberally in favor of the pleader." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). When the jurisdictional facts are challenged, the Court should "consider relevant evidence in the record" and "grant the plea only if there is no question of fact as to the jurisdictional issue." *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). The standard is akin to summary judgment, where the Court should "take as true all evidence favorable to the non-movants, and [] indulge every reasonable inference and resolve any doubts in their favor." *Id.* As the burden for dismissal lies with the government officials, the Court should deny the plea unless the officials can conclusively demonstrate no genuine fact issue exists that their conduct is authorized by statute. *Id.* at 328.

When sufficient evidence exists to prove that government officials exceed their statutory authority, "a claimant who successfully proves an ultra vires claim is entitled to prospective injunctive relief" barring further unlawful acts. *Heinrich*, 284 S.W.3d at 376. "[U]ltra vires suits do not attempt to exert control over the state — they attempt to reassert the control of the state," as such actions "encourages enforcement of existing policy" *Houston Belt & Terminal Railway v. Houston*, 487 S.W.3d 154, 164 (Tex. 2016) (quoting *Heinrich*, 284 S.W.3d at 372). Because "[m]oney damages are not available in an ultra vires action," injunctive relief may issue on the legal determination alone. *See State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (citing *Heinrich*, 284 S.W.3d at 368-69). Nevertheless, temporary injunctive relief should certainly issue when "the balance of harms" favors it, especially when "the injured parties cannot be compensated, and damages cannot be measured by any pecuniary standards." *See, e.g.*, *Texas Health & Human Servs.*

*Comm'n v. Collier*, No. 15-25-00182-CV, slip. op. at 7 (Tex. App—Austin [15th] Dec. 12, 2025, no pet. h.) (citing *Hollins*, 620 s.W.3d at 410).

## SUMMARY OF ARGUMENT

The Court should deny Defendants' plea to the jurisdiction and grant temporary injunctive relief barring Defendants from engaging in the unauthorized sale of gold and silver coins and gold backed notes, including those containing the marks of Texas Precious Metals for multiple reasons. First, Texas Precious Metals has pled a viable cause of action over which this Court has jurisdiction—namely the unauthorized acts of governmental officials in their official capacity to create a new line of business for the Depository well beyond the Legislature's authorization of its operations. Second, because the acts of the of the Depository, its Administrator, and the Comptroller are not within their statutorily prescribed authority, the acts are illegal and should be enjoined as a matter of law. Specifically, a full reading of the statute shows that the Legislature established the Depository to safeguard bullion and specie—not to operate as a market-facing seller of bullion-grade products. Had the Legislature intended for the Depository to sell gold and silver "commemorative coins" and notes, it would have said so, and in fact considered but removed such an authorization and instead limited the Depository to selling "promotional items."

Because Defendants have acted outside the scope of their legal authority, an injunction is necessary to ensure compliance with the law. Without an injunction, Texas Precious Metals will suffer probable, imminent, and irreparable injury—diverted sales, brand erosion, and customer confusion—that cannot be measured or unwound through damages. Moreover, the public interest will be harmed, not only because the Depository will operate outside of its statutorily authorized bounds, but because the public will continue to be confused whether they are purchasing currency backed by the State of Texas—which many believe they are doing—a harm that is also difficult if not impossible to measure and irreparable.

## ARGUMENT AND AUTHORITIES

### I.      Texas Precious Metals Has Pled a Viable Cause of Action.

Texas Precious Metals seeks prospective injunctive relief to restrain state officials from acting without legal authority, specifically actions in their official capacity to cause the Depository to mint and sell gold and silver coins and notes beyond statutory authorization. Because the claim is one of ultra vires, the officials taking unauthorized action are the proper defendants in their official capacity and the claims are not barred by immunity. *See, e.g., Heinrich*, 284 S.W.3d at 371.

There are "two general means of proving an ultra vires claim: (1) an action 'without legal authority' or (2) failure to 'perform a purely ministerial act.'" *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017) (quoting *Heinrich*, 284 S.W.3d at 372). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* at 238. "[A]s a general rule, 'a public officer has no discretion or authority to misinterpret the law.'" *Houston Belt*, 487 S.W.3d at 163 (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011)). Thus, because "governmental immunity only extends to those government officers who are acting consistently with the law, which includes those who act within their granted discretion," jurisdiction exists to enjoin officers acting outside of their authority. *Id.* at 164.

Here, Defendants are acting ultra vires by commissioning, authorizing, producing, advertising, promoting, marketing, offering for sale, and contracting for the manufacture, sale, and distribution of precious metals products even though its only legislatively authorized purpose is to serve as a precious metals depository. When an official acts ultra vires, those acts are not considered acts of the State, and a court may enjoin the unlawful conduct to require compliance with the governing statute. *Heinrich*, 284 S.W.3d at 372–74.

**II. Texas Precious Metals' Action Is Likely to Succeed on the Merits**

Texas Precious Metals has a probable right to relief on its ultra vires and declaratory judgment claims. Chapter 2116 authorizes safekeeping of precious metals; it does not authorize the minting, marketing, and sale of bullion-grade products. Defendants' reliance on a limited right in Section 2116.021(c) to sell "promotional items," a right the Legislature has given to many agencies to sell swag and even charge for it, does not provide the necessary authorization for a whole new line of business and purpose in contravention of that stated in the statute. Accordingly, Defendants' new coin program exceeds the authority the Legislature delegated in Chapter 2116.

**A. Agencies Possess Only Those Powers the Legislature Has Delegated**

Texas law strictly limits administrative agencies to the powers the Legislature has conferred. Even an existing agency with broad statutory authority and discretion is still confined to those powers and purposes expressed in its enabling statute, as "every [s]tate administrative agency has only those powers expressly conferred upon it by the Legislature." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). "An agency may not . . . exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes." *Id. See also Pub. Util. Comm'n of Tex. v. GTE-Sw., Inc.*, 901 S.W.2d 401, 406 (Tex. 1995) (agencies are "creatures of the legislature" with only delegated powers and those implied powers reasonably necessary to carry out express duties); *Cent. Educ. Agency v. Sellhorn*, 781 S.W.2d 716, 718 (Tex. App.—Austin 1989, writ denied). The separation of powers likewise limits executive agencies to delegated authority and prohibits the exercise of powers not granted by law. Tex. Const. art. II, § 1.

These limits are enforced through ordinary principles of statutory construction. Courts look "first and foremost" to the statute's "plain language." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024). Courts presume "the Legislature intended for each of the statute's words to

have a purpose and that the Legislature purposefully omitted words it did not include." *Id.* Simply put, courts "must enforce the statute 'as written.'" *Id.* at 848.

**B.   Chapter 2116 Provides for a "Depository" to Safeguard Precious Metals**

Chapter 2116 of the Texas Government Code establishes and provides for "The Texas Bullion Depository." Tex. Gov't Code § 2116.002(a). In doing so, the Legislature gave the depository a custodial mission, not a retail mandate: "The depository is established serve as the ***custodian, guardian, and administrator*** of certain bullion and specie that may be transferred to or otherwise acquired by this state." Tex. Gov't Code § 2116.002(b) (emphasis added). The statute's express authorization of how the depository should operate is spelled out in great detail over numerous provisions of Chapter 2116, and every one concerns details of operating a depository for safekeeping of bullion and specie. *See* Tex. Gov't Code §§ 2116.005–20.

Thus, a complete reading of the statute from start to finish makes it clear that the business of the Depository is that it will operate as a depository, meaning it will "receive" and safeguard a deposit of precious metals such as bullion and specie, record the amount received in "depository accounts," and "deliver" the precious metals upon demand. As it relates to contracting specifically, the Depository is limited to "Depository Account Contracts," meaning third parties may enter into a "contract with the depository for a depository account." *Id.* § 2116.008. The core generation of revenue is similarly limited as "[t]he comptroller may establish fees, service charges, and penalties ***to be charged a depository account holder for a service or activity regarding a depository account***, including a fee for an overdraft, an insufficient fund check or draft, or a stop payment order." *Id.* § 2116.010 (emphasis added).

**C.   Contracting to and Selling Bullion and Species is not Authorized in the Statute**

Defendants do not seem to contest that their new challenged practice, the contracting with mints such as Scottsdale Mint to print "commemorative coins," does not fall within any of the

aforementioned functions of a "depository." Instead, Defendants maintain that "[i]n 2019, the Legislature expanded the Depository's authority, in relevant part, by giving the Depository broad authority to 'advertise and promote the depository in any available media' and to issue, sell, license for sale, or obtain a license to sell promotional items" approved by the Administrator for a 'commercially reasonable price.'" Def. Plea at 1 (quoting Tex. Gov't Code § 2116.021(b)&(c)). But their selective quotation from one section of the statute that pertains to **promotion** of the Depository, is divorced from the rest of the statute regarding how the Depository should actually **operate**, and demonstrates why the Legislature did not clearly provide broad authority for the Depository to open up a new line of business as a mint and seller of specie and other precious metals, including gold and silver "coin" and gold back "notes."

### 1. Defendants Violate the Statutory Limits on the Depository's Operations

Determining an agency's authorization starts with construing the plain language of the statute, the primary purpose of which is to give effect to the Legislature's intent. *Bexar Appraisal Dist.*, 691 S.W.3d at 847. Construing an agency's authority thus means words and phrases shall be read in the context of the statute as a whole, and "courts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *See, e.g.*, *Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *cf.* Tex. Gov't Code § 311.011.

Noticeably missing from Defendants selective quotation of the depository's authorization to sell promotional items is the purpose of doing so. Specifically, in Section 2116.021(c) the Legislature prescribed: "The depository may issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator **to further the purposes of this chapter and to promote the depository**." Tex. Gov't Code § 2116.021(c) (emphasis added). Defendants do not contest, nor could they, that the Legislative purpose of the Depository did not change, which was

"established to serve as the custodian, guardian, and administrator of certain bullion and specie that may be transferred to or otherwise acquired by this state or an agency, a political subdivision, or another instrumentality of this state." Tex. Gov't Code § 2116.002(b). Serving as a "custodian, guardian, or administrator" of precious metals transferred to the depository means exactly that—acting as a depository as the Legislature intended. Actively selling the same precious metals is a separate line of business, not the promotion of the existing one—"safeguarding" the deposits received by the depository. *See, e.g.*, *Moneygram Int'l v. Comm'r Int. Rev. Serv.*, 999 F.3d 269, 277 (5th Cir. 2021) (holding selling a check process service "inconsistent with a safekeeping purpose" of a depository and "the depositor's ability to demand repayment of funds").

Second, in selectively quoting subsection (c)'s authorization to sell "promotional items" and subsection (b)'s authority to "advertise and promote the depository in any available media," i.e. newspaper, internet, etc., the Defendants ignore that Section 2116.021(a) expressly provides who the depository may do business with and in what capacity:

> The depository ***may enter into transactions and relationships*** with bullion banks, depositories, dealers, central banks, sovereign wealth funds, financial institutions, international nongovernmental organizations, and other persons, located inside or outside of this state or inside or outside of the United States, as the comptroller determines to be prudent and suitable ***to facilitate the operations of the depository*** and to further the purposes of this chapter.

*Id.* § 2116.021(a) (emphasis added). Nothing in § 2116.021(a)—or elsewhere in Chapter 2116—authorizes the Depository to mint, manufacture, market, or sell precious-metals products to the public; the statute speaks in terms of custodial operations and relationships to facilitate those operations, not a retail bullion-product program.

For over a decade, the Depository has engaged in those operations and stored and secured rounds, bullion, and gold notes, with the promise to safeguard them and return them on demand—actions consistent with the statutory authorization. Despite providing numerous statutory

provisions about how the Depository should operate in its receipt of precious metals, the Legislature never said anything about ***selling*** bullion and specie, which it easily could have had it intended to do so. But courts "must enforce the statute 'as written,'" and presume the Legislature "purposefully omitted words it did not include." *Bexar Appraisal Dist.*, 691 S.W.3d at 847–48. If the Legislature intended to authorize the Depository to sell bullion and specie, it could have done so expressly—particularly because Chapter 2116 defines those terms and places them at the center of the Depository's custodial function. Tex. Gov't Code §§ 2116.001, 2116.002(b). It did not.

### 2. The Legislature's Prohibitions on Leveraging and Trading Precious Metals Only Further Demonstrates the Limited Operations of the Depository

In ignoring the prescription on how the Depository should ***operate***, Defendants assert that because the Legislature also contained express prohibitions in Section 2116.022 of the statute, and selling bullion and specie was not one of them, then the Legislature did not prohibit doing so. But this argument inverts the burden in this case—an agency must point to explicit statutory authority to conduct even the most basic transactions, and express prohibitions on conduct cannot extend by implication an agency's power. *See Pub. Util. Comm'n*, 53 S.W.3d at 316. The fact that an agency cannot engage in even the most basic business transactions without express authority is nothing new to Defendants considering the Legislature saw the need to provide that the Comptroller authority to acquire a building for the Depository and lease it for commercial activities. Tex. Gov't Code § 2116.072-073.

In specifically listing prohibited transactions, the Legislature clearly expressed the limits as to how the Depository should safeguard the bullion and specie it receives, including by making clear the Depository could not leverage or otherwise sell it. While acting as a depository is one typical function of a savings and loan or a bank, the Legislature made clear that other banking transactions were off limits, such as "entering into a precious metals leasing, sale-leaseback,

forward transaction, swap transaction, future transaction, index transaction," entering into third party trust arrangements, "extending credit," or otherwise "engaging in a business or activity that, if conducted by a private person, would be subject to regulation in this state as a banking or savings and loan function." *See* Tex. Gov't Code § 2116.022(1), (3), (4), (5). The Legislature made those prohibitions explicit so that the Depository would not leverage the precious metals it received, and thus undermine its core function of maintaining on hand and ensuring the return on demand of the bullion and specie it was safeguarding. *See, e.g.*, *id.* § 2116.022(2) (prohibiting crediting account balances, ***"if to do so would cause the aggregate depository account balances*** with respect to any precious metal represented by all depository accounts ***to exceed the aggregate quantities of such precious metal held*** by or for the benefit of the depository and the depository's depository agents.").

Nevertheless, Defendants now claim that if the Legislature did not want the Depository to sell the bullion and specie it was charged with safeguarding, there would be a prohibition saying so. Respectfully, not only do the listed prohibitions clearly indicate the Legislature never intended the Depository's operations to include trading in precious metals, instead of safeguarding them, that stated intent cannot rationally be flipped to conclude it was fine with the Depositor minting and retailing them. The Legislature surely could not list everything the Depository should not do that does not align with the clear purpose of acting as a depository. Because actually minting and selling its own gold and silver coin and notes is so far beyond the Depository's authorized operational purpose, Defendants cannot justify that power based on prohibitions of lesser actions.

### 3. Selling "Promotional Items" Must Promote Existing Operations

In confronting the clarity of the limited nature of a depository, Defendants' statutory theory as to why this particular Depository can now mint and sell bullion and specie primarily rests on a single phrase—"promotional items." Other than contracts for depository accounts, "promotional

items" are the only items that the Legislature has ever authorized the Depository to sell. But to conclude such a narrow provision serves as a blank check for the Depository to design, mint, market, and sell precious metal products, contrary to the longstanding and detailed limits on its operational conduct is incompatible with the statutory text and the plain meaning of the term.

*First*, the term "promotional items" has a plain meaning, i.e., objects designed to increase the sales of an existing product or service. *See, e.g.*, Collins Online Dict. ("promotional item" & definition of "promotional"). Section 2116.021(c)'s use of the term "promotional item" reflects this plain meaning: it permits sales "to further the purposes of this chapter and to promote the depository"—i.e., incidental promotion supporting a custodial mission, not a parallel commercial enterprise. The Court should therefore construe § 2116.021 as it reads: it authorizes "transactions and relationships" in subsection (a) "to facilitate the operation of the depository," and authorizes advertisements (subsection (b)), and the sale of "promotional items," (subsection (c)) "to promote the depository," and its existing custodial purposes. Expanding the section to also provide for transactions and relationships that would expand the operations of the depository to include the creation and retail sale of precious-metals products styled as commemorative coins or bullion is simply not included. Tex. Gov't Code § 2116.021.

*Second,* the Legislature's consistent usage of the term "promotional items" over the course of many statutes including in the same Government Code reflects the same meaning. Every time the Legislature has illustrated what is meant by "promotional items" it has indicated that it concerns marketing the existing operations of the entity or agency—not the grant of some new authority to sell the very products they are regulating or open new lines of business. *See* Tex. Agric. Code § 46.0095(a); Tex. Transp. Code § 204.009(a); Tex. Gov't Code § 490C.056(a); Tex. Alco. Bev. Code 108.04(1) (referencing "the sale or gift of novelties advertising the product of a brewer

or distributor"); Tex. Educ. Code 61.9705 (authorizing the sale of "promotional items, including clothing, posters, and banners, designed to promote the public awareness campaign"). For example, when the Legislature authorized "Packaging of Certain Promotional Items" for "brewers," it did not contemplate those items would be the alcoholic beverages, but would be "other items" accompanying those product if "the additional items are branded and have no value or benefit to the retailer other than that of having the potential of attracting purchases and promoting sales." Tex. Alco. Bev. Code § 108.035. Permission to promote existing sales with swag, even if sold and not given away, is not an authorized expansion into another line of business.

### 4. Defendants Bend "Promotional Item" Beyond Recognition

Defendants nevertheless invert that principle by arguing that because Section 2116.021(c) does not define "promotional items," the Legislature intended boundless discretion. Plea at 10. The opposite is true: the Legislature's repeated usage with illustrative examples, if anything, reinforces the "technical or particular meaning." Tex. Gov't Code § 311.011(b). Nor does Chapter 2116 permit redefining what constitutes a "promotional item" when it requires the promotional items to be "approved by the administrator." Tex. Gov't Code § 2116.021(c). That language does not confer authority to redefine the statutory term itself, which is what still binds the governmental official in her approval. *See, e.g.*, *Houston Belt*, 487 S.W.3d at 168.

The Legislature decided what category of items may be sold ("promotional items") and then assigned who decides whether a proposed item within that category should be approved (the administrator). Put differently, "approved by the administrator" is an internal gatekeeping requirement, not a delegation to expand "promotional items" into whatever revenue-producing products the Depository wishes to create. Nor does § 2116.021(c)'s pricing clause ("commercially reasonable prices") expand the category of permissible items; it only presupposes that the items are for sale, but they still must be "promotional." Nor does a product become "promotional" simply

because it bears the Depository's name. If that were enough, any commercial product with a logo would be a "promotional item," and the statutory limitation would collapse.

Section 2116.021(c)'s text and purpose clause foreclose Defendants' interpretation. Section 2116.021(c) authorizes sales only to "further the purposes of this chapter and to promote the depository." Tex. Gov't Code § 2116.021(c). That purpose clause is not surplusage. It confines "promotional items" to incidental merchandise that promotes the Depository's statutory mission as a custodian. It does not establish a new free-standing power to design, mint, market, and sell bullion-grade products as a retail line of business—exactly the kind of "new power" courts refuse to infer from general language. *See Pub. Util. Comm'n*, 53 S.W.3d at 316.

Even on Defendants' own terms, these products stop being "promotional" because they are marketed and sold as investment pieces and collectible goods, not incidental promotional merchandise. Here, Defendants' products are marketed for investment and appreciation, emphasizing scarcity as a value driver and creating resale expectations—all hallmarks of a commercial investment product rather than an incidental promotional item. *See, e.g.,* Jeff Bell & Matt Coutu, *Texas launches commemorative coins and notes for investors and collectors,* KVUE (Dec. 30, 2025), available at: https://www.kvue.com/article/news/local/texas/texas-comptroller-gold-silver-coins/269-69ad4f21-a37d-4bd3-b77c-a0b91f2a61c7 (pictured below).



Sports  KVUE+  ADVERTISE WITH US   LOCAL   DEFENDERS   BOOMTOWN   SPORTS   HONOR FLI

TEXAS NEWS

# Texas launches commemorative coins and notes for investors and collectors

—

Texas Lone Star Coins, which come in gold and silver, feature the state coat of arms and a detailed map of Texas.

Author: Jeff Bell, Matt Coutu
Published: 4:56 PM CST December 30, 2025
Updated: 5:41 PM CST December 30, 2025

AUSTIN, Texas — State officials are launching a new way for Texans to invest in precious metals.

The comptroller's office just announced inaugural Texas Lone Star Coins, which come in gold and silver. They feature the state coat of arms and a detailed map of Texas.

And the program is plainly structured to generate profits, not merely defray costs. *See* Request for

20

Proposals (RFP No. 237b) for Texas Bullion Depository Licensed Product Services, at 5 (discussing "maximiz[ing] sales.").

For these reasons, Defendant's "promotional items" theory makes no sense as a matter of text, context, and structure. The Court should construe § 2116.021(c) as written—as a defined authorization for incidental promotional merchandise that supports the Depository's existing custodial operations—not as a vehicle for a new state-sponsored bullion business.

### D. Defendants Selling of "Coin" is Also Ultra Vires or Downright Illegal

Defendants' sell of its new products, while also marketing them as official "coins" of the sovereign State of Texas highlights the problem with their statutory theory: the term carries sovereign implications in the precious metals market, yet Chapter 2116 contains no clear authorization for the Depository to operate a coin-issuance and sales program.

### 1. "Coin" Denotes Sovereign Coinage in the Precious Metals Market

In the precious metals market, "coins are commonly understood as government-issued legal tender coinage, distinct from privately minted "rounds." *See, e.g.*, U.S. Mint, Coin Term Glossary (defining "Coin" as a "flat piece of metal issued by the government as money"); U.S. Mint, Bullion Coin Programs (stating that American Eagle Bullion Coins are "legal tender coins"). Market participants use the term "coin" to denote official coinage and that "coin" conveys sovereign issuance and authenticity in a way "round" does not. Ex. A, Saab Decl. ¶ 6.

That is exactly how Defendants structured and marketed this program. The Comptroller issued a request for proposals seeking an exclusive vendor to "strike and issue" uncirculated and proof "Coins" meeting specific weight and purity requirements, and it anticipates an ongoing series of products designed to "maximize sales." Request for Proposals (RFP No. 237b) for Texas Bullion Depository Licensed Product Services, at 5. Those are hallmarks of a sovereign coin program—not incidental promotional merchandise.

## 2. The Constitution and Legislative Record Confirm No Such Authority Exists

Against that backdrop, Defendants' sale of gold and silver coins creates a constitutional problem as well as a statutory problem. The Constitution prohibits states from "coin[ing] Money." U.S. Const. art. I, § 10. Even the Comptroller's own representative has acknowledged the constitutional barrier: in a Committee on State Affairs hearing on March 26, 2025 (discussion of H.B. 1056, 89th Leg., R.S.), Victoria North testified on behalf of the Comptroller that, as to creating currency, "it is our office's analysis that it would not be constitutional and would be preempted by the U.S. constitution."

Defendants try to sidestep the constitutional implications of their "coin" program by describing the coins as "commemorative, numismatic, and collectible." But labels do not change what "coin" communicates in this market: the production of money by a sovereign. Even the United States Mint, which is authorized to print official currency on behalf of the United States Government, can only do so when authorized by Congress. Without explicit authorization for a specific coin, including the amount, weight, and design, a court has no authority to hold that the United States Mint could print more. *See Mesaros v. United States*, 845 F.2d 1576, 1582 (Fed. Cir. 1988) ("The Mint has no power to mint coins unless it has been authorized to do so by Congress.").

Leaving aside whether the State of Texas could commission the minting of "commemorative coins" (it cannot), taking such an unprecedented step would surely have come with far more guidance than a bare, vague authorization "to sell promotional items," including clear limits on production, distribution, and design, as well as directives on funding and where any substantial revenues would be deposited. *See, e.g.*, The Library of Congress, Commemorative Coins: An Overview (2026) (describing specifications and requirements typically included in congressional coin acts).

This is not to say that the Legislature did not consider doing so before choosing not to. During House consideration of H.B. 2458, the House adopted an amendment that would have added proposed § 2116.0215, expressly authorizing the Depository to offer for sale "commemorative gold and silver coins" under § 2116.021(c), while imposing detailed governance constraints (including a governor-appointed design panel, mandated design subject matter, annual design updates, and panel approval). *See* Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 24, 2019) (proposing § 2116.0215). The very next day, however, the House struck the commemorative-coin section from the bill, deleting the express coin authorization and its accompanying oversight structure before final passage. *See* Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 25, 2019) (deleting proposed § 2116.0215). That sequence matters: where the Legislature considers a specific authorization and then removes it before final passage, the Court should not read the enacted, more general term ("promotional items") to silently do the work of the rejected, specific grant ("commemorative gold and silver coins"). *Cf.* Tex. Gov't Code § 311.023(3) (permitting consideration of legislative history).

Despite the absence of such authority—which is required of any agency that is a creature of statute—Defendants market the depository's new venture as "commemorative precious metal products to investors and collectors." These statements confirm Defendants are not merely promotion the depository's existing function as a depository, but a market-facing sales program of bullion-grade products—not incidental promotional merchandise.

## III.    Texas Precious Metals Has Standing Against the Comptroller

Texas Precious Metals has standing to complain of the unauthorized conduct at issue in this case. First, Defendants' unauthorized actions have and will continue to cause harm to Texas Precious Metals in terms of confusion over its own products and dilution of its marks, which is well more than "a particularized injury distinct from that suffered by the general public." *Jones*,

646 S.W.3d at 323. Further, because the unauthorized conduct involves unauthorized "government expenditures," Texas Precious Metals also has standing because (1) it is a taxpayer, and (2) the "public funds are expended on allegedly illegal activity." *Id.*

### A. The Comptroller Violated His Statutory Authorization

Defendants do not attempt to challenge the specific standing of Texas Metals as a plaintiff against the Administrator or the Depository's conduct in general. Instead, Defendants assert that "TPM bases its claims on section 2116.021, the section that authorizes the sale of promotional items," which "contains no mention of the Comptroller." Plea at 5. This argument is specious.

First, Texas Precious Metals does not base its claim on the Legislature's irrelevant authorization to sell promotional items—Defendants do—claiming that section is their "authorization" to mint and sell gold and silver backed coin and notes. While the two sentence authorization to sell swag does not mention the Comptroller, it also does not mention, much less authorize, the vast power that both the Comptroller and the Administrator have exerted in setting up an entire new line of business that exceeds the statutory purpose of the Depository.

Instead, the basis for Texas Precious Metals' claims is that both the Comptroller and Administrator exceeded their authority under numerous other statutes that make clear that the Depository must act as a depository, only. For example, Section 2116.002 not only makes clear that "[t]he depository is established to serve as the custodian, guardian, and administrator of certain bullion and specie," it also directs that "[t]he comptroller *shall* adopt rules necessary to carry out this chapter." Tex. Gov't Code § 2116.002(b) & (c). While the Comptroller has adopted rules in the Texas Administrative Code governing the Depository's custodial operations, it has not adopted rules authorizing or regulating the minting, marketing, or sale of state-branded precious metals products. And in any event, the rulemaking directive is expressly tethered to implementing the Depository's custodial functions, such as how it should "receive" and "account for deposits." *Id.*

§ 2116.005(a) ("The depository may ***receive a deposit*** of bullion or specie from or on behalf of a person acting in the person's own right, as trustee, or in another fiduciary capacity, ***in accordance with rules adopted by the comptroller***"); *id.* § 2116.005(c) ("The ***comptroller shall adopt standards*** by which the quantities of precious metals ***deposited are credited*** to a depositor's depository account…") (emphasis added).

Ultimately, it was the Comptroller that issued an RFP with third parties to act on behalf of the Depository for the production and sale of gold and silver coin and notes, which also greatly exceeded the limited discretion the Legislature granted him to enter into transactions and accept money regarding depository accounts. *See id.* § 2116.010 ("***The comptroller*** may establish fees, service charges, and penalties ***to be charged a depository account holder*** for a service or activity regarding a depository account."). While Defendants bluntly claim that "the Comptroller does not have the requisite enforce connection to the statutes at issue," (Plea at 4), Defendants not only ignore all of the provisions above, but also apparently missed that it is ***the Comptroller*** that polices the "transactions and relationships" the Depository may enter into, which should be "prudent and suitable to facilitate the operations of the depository." *Id.* § 2116.021(a). The Comptroller failed that duty, acting well beyond the scope in facilitating transactions and contracts with third parties for conduct other than operating a depository, in facilitating an entirely new line of business.

### B. The Comptroller's Authority to License His Own Mark is Irrelevant

Aware that the Comptroller took action, such as issuing RFPs and contracting on behalf of the Depository, Defendants bury at the end of their Plea that such action by the Comptroller would be authorized "in the alternative," by Texas Government Code § 403.0301(m). But Section 403.0301(m) is, at most, a general contracting provision that allows the Comptroller to arrange for "sale, lease, marketing, or other distribution of ***the comptroller's intellectual property***." Def. Plea at 15 (quoting Tex. Gov't Code § 403.0301(m)) (emphasis added).

But more importantly, nowhere does the statutory authorization do anything more than permit the Comptroller to apply for and obtain trademark registrations, and to license those marks once he does. The statute certainly does not grant the Comptroller the authority to build and operate an end-to-end precious metals retail program, especially where the Legislature separately enacted Chapter 2116 to define more specifically what the Bullion Depository may and may not do.

## IV.  Injunctive Relief is Required to Ensure Compliance with the Law and Prevent Imminent and Irreparable Harm

In demonstrating that Defendants are acting outside of their authority, injunctive relief must issue to prevent that unauthorized conduct until trial, otherwise the policy of the Legislature will be frustrated. *See Hollins*, 620 S.W.3d at 410.  Additionally, absent injunctive relief, Texas Precious Metals will continue to suffer diversion of sales and irreparable harm to goodwill through ongoing marketplace confusion. *See, e.g.*, *Texas Health & Human Servs. Comm'n v. Collier*, No. 15-25-00182-CV, slip. op. at 7 (citing *Hollins*, 620 s.W.3d at 410); *cf. ConcernedApe LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:25-CV-1537-RP, 2025 WL 3290428, at *2 (W.D. Tex. Nov. 26, 2025) (balance of harms favored plaintiff where potential harm to reputation and goodwill outweighed harm to defendants from being restrained from unlawful sales).

### A.  Ongoing and Escalating Competitive Injury and Diversion of Business

Texas Precious Metals operates in a competitive, trust-dependent market in which brand integrity and source identification matter. Defendants' unlawful, ultra vires actions upend that market by transforming a statutory depository into a state-backed retail competitor that designs, markets, and sells precious metals products featuring Texas Precious Metals' Mint Mark. This harm is imminent because Defendants' challenged sales and marketing are ongoing and continuing each day pending trial. *See* Ex. A, Saab Decl. ¶10.

This competitive injury is not static—it is escalating. Defendants have already produced approximately 46,000 "State of Texas Coins," and nothing prevents them from producing more. Defendants' own RFP contemplates an ongoing, expanding product line—additional products "as Respondent believes will maximize sales," with a preference for continuing series and redesigns—confirming an intent to deepen and broaden the program rather than pause it. *See* Request for Proposals (RFP No. 237b) for Texas Bullion Depository Licensed Product Services, at 5. And the Depository website advertises plans to begin direct sales. Accordingly, absent an injunction, Texas Precious Metals will continue to lose sales and market share to an ongoing, expanding, ultra vires program.

**B. Loss of Goodwill Combined with Customer Confusion Yields Irreparable Harm**

Defendants' conduct does not merely reduce sales; it erodes Texas Precious Metals' brand and damages goodwill and reputation by creating confusion in the marketplace about affiliation, sponsorship, or approval—especially because the Depository's products depict Texas Precious Metals' Mint Mark and are marketed as state-authorized.

That confusion is not hypothetical. Texas Precious Metals will present at the hearing concrete examples of consumer confusion reflected in its customer call logs and related communications. Consumers have contacted Texas Precious Metals asking, among other things, whether the State's coin program is affiliated with Texas Precious Metals and whether Texas Precious Metals is the issuer or seller of the "State of Texas" coins. To date, Texas Precious Metals has collected more than forty documented instances of consumer confusion, and additional confused inquiries continue to arrive regularly as Defendants' marketing and sales remain ongoing. *See* Ex. A, Saab Decl. ¶ 11, Ex. 1.

This loss of goodwill is irreparable. Once customer trust is eroded and confusion takes hold, Texas Precious Metals cannot fully restore the integrity of its brand through money damages

after the fact. Absent an injunction, Texas Precious Metals will continue to suffer ongoing diversion of customers, brand erosion, dilution of goodwill, and continuing public confusion.

**C. Injuries Are Not Readily Quantifiable and Cannot Be Remedied in Damages**

The injury here is immediate and ongoing—not speculative. Defendants refused to stop their ultra vires conduct and have continued forward with production and sales. Each unauthorized sale locks in a lost transaction at a specific market price that will never recur in a fast-moving commodities market, making damages inherently difficult (if not impossible) to reconstruct with any reliable pecuniary standard. Those losses compound over time as the program continues and expands. Texas Precious Metals therefore has no adequate remedy at law: damages cannot restore lost goodwill or unwind confusion, and they cannot reliably reconstruct diverted transactions in a volatile commodities market where each lost sale occurs at a market price that will not recur.

Only injunctive relief can restore and preserve the status quo by stopping the continued diversion of customers, erosion of goodwill, and marketplace confusion caused by the State's unauthorized entry into the precious-metals retail market.

**D. The Public Interest Favors Temporary Injunctive Relief**

The public interest also favors a temporary injunction. It preserves the separation of powers by ensuring state agencies operate within their statutory mandates, and it protects consumers from confusion regarding the source, sponsorship, and "official" status of precious metals products marketed under the State's imprimatur and bearing Texas Precious Metals' Mint Mark. *See Hollins*, 620 S.W.3d at 410; *cf. ConcernedApe*, 2025 WL 3290428, at *2 (public interest favors protecting trademark interests and protecting the public from being defrauded by palming off counterfeit goods). An order restoring the lawful status quo to the "the last, actual, peaceable, noncontested status which preceded the pending controversy" until trial thus advances both equity and public policy. *Transport Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553-54 (1953).

A temporary injunction is thus necessary to halt ongoing ultra vires conduct, prevent continued market distortion through state-backed competition, and reduce the risk that consumers will be misled about affiliation, sponsorship, or approval. Because injunctive relief is necessary to upholding the existing law, the Court should therefore grant a temporary injunction.

## CONCLUSION AND PRAYER

Based on the foregoing, Texas Precious Metals respectfully requests that the Court deny Defendants' plea to the jurisdiction and issue a temporary injunction barring Defendants from taking actions outside the bounds of their lawfully prescribed authority. Such restrained actions should include causing the Depository to market and sell gold and silver coins and gold notes, such as those with the trademarks belonging to Texas Precious Metals. Texas Precious Metals also respectfully requests such other and further relief as this Court may deem appropriate.

Date: February 26, 2026

Respectfully submitted,

*/s/ Casey Low*

Casey Low
Texas Bar No. 24041363
casey.low@pillsburylaw.com

Ryan J. Sullivan
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

Elizabeth Blackford
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for Texas Precious Metals, LLC*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I hereby certify that on February 26, 2026, a true and correct copy of this instrument was served on all counsel of record via electronic filing.

/s/  *Casey Low*
Casey Low

# EXHIBIT A

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## <u>DECLARATION OF TAREK SAAB</u>

**THE STATE OF TEXAS**
**COUNTY OF DALLAS**

I, Tarek Saab, declare as follows:

1. "My name is Tarek Saab. I am over 18 years of age, of sound mind, and capable of making this declaration. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

2. I am the Chief Executive Officer and Co-Founder of Texas Precious Metals, LLC ("Texas Precious Metals"). I have held this role since Texas Precious Metals' founding.

3. Established in 2011, Texas Precious Metals is a large precious metals company, with approximately $1 billion in annual sales. Texas Precious Metals services retail, wholesale, and institutional clients as a market maker for gold and silver coins and bars.

4. Texas Precious Metals operates an online retail platform at texmetals.com, a depository, and a fulfillment and logistics service center. Texas Precious Metals also offers a line of custom-

minted products under the brand Texas Mint, including licensed products for Texas A&M University, the Professional Rodeo Cowboys Association, and other partners.

5. At the core of Texas Precious Metals' branding is a series of marks featuring a silhouette of the State of Texas (the "Silhouette Mark"). Texas Precious Metals uses the Silhouette Mark as its "mint mark"—a small letter, symbol, or inscription on precious metal products indicating its source, purity, and authenticity.

6. Texas Precious Metals has continuously used the Silhouette Mark in commerce through the United States since at least 2013 in connection with its precious metals business. The Silhouette Mark is featured on products such as silver bars and non-legal tender medallions (referred to as "rounds"), including Texas Precious Metals' Texas Silver Rounds and Texas Gold Rounds. ("Round" and "coin" have different meanings in the precious metals industry. Participants in the precious metals market use the term "coin" to denote official coinage; "coin" conveys sovereign issuance and authenticity in a way that "round" does not.)

    a. A true and accurate depiction of Texas Precious Metals' 2019 Texas Silver Round is below:

 

b. A true and accurate depiction of Texas Precious Metals' 2024 Texas Gold Round is below:



7. Texas Precious Metals also offers lightweight, banknote-style pieces made from genuine 24-karat gold and protected by a durable polymer layer known as gold notes. Gold notes are a relatively new and developing segment of the precious metals market, distinct from traditional bullion bars, rounds, and coins. A true and accurate depiction of Texas Precious Metals' Dallas–Fort Worth Texas Gold Note, bearing Texas Precious Metals' Silhouette Mark on the left side, is below:



8. The Silhouette Mark is the subject of three active federal trademark registrations owned by Texas Precious Metals. Two registrations are on the Principal Register and are incontestable: U.S. Reg. No. 5,113,004 (Class 14, "precious metals; non-monetary coins, namely, rounds; and bullion") and U.S. Reg. No. 5,113,005 (Class 35, "online retail store featuring gold and silver and other rare metals, coins, and bullion"). A third registration has been on the Supplemental Register since September 2013: U.S. Reg. No. 4,404,997 (Class 35, "online retail store featuring gold and silver and other rare materials, coins of others, and bullion").

9. I recently became aware that the Texas Bullion Depository was marketing state-branded precious metals products that depict Texas Precious Metals' Silhouette Mark or a mark that is confusingly similar.

10. Since learning of the Texas Bullion Depository's marketing and sale of state-branded precious metals products depicting Texas Precious Metals' Silhouette Mark or a confusingly similar mark, Texas Precious Metals has experienced ongoing harm to its goodwill and reputation. Such on-going harm includes customer confusion regarding whether Texas Precious Metals is affiliated with, sponsors, or is approved by the Texas Bullion Depository or the state-branded coin and gold note products. This confusion is reflected in, among other things, customer call logs and related communications maintained by Texas Precious Metals in the ordinary course of business, including instances where consumers contacted Texas Precious Metals believing they were contacting the Texas Bullion Depository or seeking to purchase or inquire about the state-branded products from Texas Precious Metals. The confusion and resulting harm have continued as the Texas Bullion Depository's marketing and sales have continued.

11. I am a records custodian of Texas Precious Metals, and as such, I am the custodian of the records attached to this declaration. The records attached to this declaration, consisting of

135 pages of call logs (redacted to protect customers' private information), are kept in the regular course of its business. It was the regular course of that business for an employee or representative of the business with knowledge of the act, event, condition, or opinion recorded to make the record or to transmit information thereof to be included in such record. The record was made at or near the time of the act, event, condition, or opinion recorded, or reasonably soon thereafter. The attached records are the originals or exact duplicates of the originals.

I declare under penalty of perjury that the foregoing is true and correct and within my personal knowledge.

Signed on this the 26th day of February, 2026.

Tarek Saab
Chief Executive Officer and Co-Founder, Texas
Precious Metals, LLC

Exhibit 1

# Inbound call with  in queue Shipping

## Call Details

Date: November 17, 2025 at 04:30 PM UTC
Duration: 1m 45s
Participants: , Kayla Michalec

## Summary

- A customer sought clarification on shipping to Texas Precious Metals and was informed by Kayla (Customer Support Representative, TPM Shipping) that drop-offs are not allowed, but pickups can be scheduled.

## Transcript

**Kayla Michalec [00:02]**
TPM Shipping, this is Shanna. Probably at a FedEx shipping center, yes.

**[00:04]**
Hello. I have a question about shipment. I'm selling something and the person I talked to asked if I wanted to drop it off. And I think he meant drop it off at a UPS place. You don't -- or FedEx.

**Kayla Michalec [00:27]**
Like if it's over a thousand, you have to sign for it. Like you're buying something from us or you're...

**[00:27]**
Okay, so you don't accept people dropping stuff off on your doorstep, right?
No, I'm selling something to you and I know you're in Leander. Is it Leander?

**Kayla Michalec [00:50]**
We are in Shiner. And drop it off. No. No.

**[00:57]**
Where are
you? Shiner. Okay, Shiner. So I can't drive over to Shiner and knock on your door and drop off something, right?

**Kayla Michalec [01:10]**
We schedule a pickup for you and then they come, either FedEx will come and pick it up from you. Yes. Third source app. Oh, yes. No, we will schedule a pickup for you and send you a label.

**[01:17]**
Okay. That's what I thought. I just wondered because he asked me if I wanted to drop it off and that made me think, I don't think I can go to your doorstep. All right.

**Kayla Michalec [01:32]**
And then we'll schedule a pickup time for you and they will come by and pick up the package. Okay. You're welcome. You too. Bye.

**[01:38]**
Okay. Great. All right. Thank you very much. Have a good day.
Bye.

TPM001158

# Inbound call with ██████████████ in queue TPMD

## Call Details

Date: December 01, 2025 at 03:52 PM UTC
Duration: 3m 2s
Participants: ███████████, Afton Chacon

## Summary

- Afton (Customer Support Representative) received a call from █████ (Customer) seeking information about storing gold bars at Texas Precious Metals.
- The conversation focused on storage fees, where Afton clarified that fees depend on the gold's value and confirmed no extra charges apply.
- ██████ requested a follow-up call to compare pricing, and Afton assured him they would get back soon with that information.

## Transcript

**Afton Chacon [00:02]**

TPMD, this is Afton. How may I help you?

**██████████ [00:05]**

Yes, is this correct number to get some information about storing gold bars at your facility?

**Afton Chacon [00:11]**

Yes, sir. Yes,

**██████████ [00:14]**

Could you tell me anything about it or send me some information about

**Afton Chacon [00:17]**

sir. Yeah, if you visit our website, TexasDepository.com, all of the fees will be there. There's actually a little informative video that you could watch as well.

**██████████ [00:19]**

things and stuff?

Oh, okay. Okay, I saw the website there. And there's all...

I guess, I guess the, are you familiar with, I guess it would be your competitor, I guess, in Shiner, Texas?

**Afton Chacon [00:41]**

We actually are in China.

**██████████ [00:47]**

Oh, you are Shiner. Okay, I thought this was, I thought this was Linder.

**Afton Chacon [00:48]**

We are China.

No, Leander is a different depository.

**██████████ [00:53]**

Linder? Linder. Oh, completely different. Okay. Okay. So is there, is there, uh,

**Afton Chacon [00:56]**

Yes, sir.

**██████████ [01:02]**

Just a general question, I guess it's based on the amount of GoBars you have,

**Afton Chacon [01:08]**

TPM001159



Correct. So what we do is we take the spot price times the number of ounces that you have and we multiply that times the storage rate. So it's really well, the storage rate is going to depend on your value of exactly what you have in the account. Yes, sir. It is a monthly fee.

 **[01:25]**

right? Oh, okay. Okay. And that can range from what? I guess it's a monthly fee or a yearly fee?

Okay. Any idea roughly what it would be for, let's say, $18 million? Okay.

**Afton Chacon [01:44]**

So I would have to look into that.

If you like, we can give you a call back with an idea about that.

 **[01:56]**

Okay, yeah, if you would, I'd just like to compare, compare, you're right.

**Afton Chacon [01:58]**

Okay. Absolutely. What is your name? And are these medals that you have inside of your possession?

 **[02:04]**

No, they're being shipped from overseas.

**Afton Chacon [02:19]**

Yeah, okay, we will look into this and give you a call, but if you want to visit our website, TexasDepository.com, there is a little informative video that you can watch and kind of get a little idea.

 **[02:31]**

Okay, so is there like a set fee or is there a fee on top of another fee or is it just based on the amount, the value? Okay.

**Afton Chacon [02:33]**

So the only... Correct. It's based on the amount and the value. We don't do any additional fees.

 **[02:45]**

Okay, so whatever it is on the website based on the dollar amount value, that's what your fee is.

**Afton Chacon [02:52]**

Correct. Yes, sir.

 **[02:54]**

Okay, then thank you very much.

**Afton Chacon [02:55]**

All right. Yes, sir. You have a wonderful day. Thank you. Bye-bye.

 **[02:59]**

Okay, bye-bye.

TPM001160

## Call Details

Date: December 02, 2025 at 07:59 PM UTC
Duration: 5m 12s
Participants: ████████████ , Afton Chacon

## Summary

- Afton (Customer Support Representative, Texas Precious Metals Depository) engaged with ████ (Potential Customer), clarifying that Texas Precious Metals is a private depository and not the state-run vault.
- They discussed storage fees, insurance details, and the process for viewing metals.
- Ultimately, Afton agreed to transfer ████ to the traders for further assistance with purchasing gold and silver.

## Transcript

**Afton Chacon [00:01]**
TPMD, this is Afton, how may I help you?

**████████ [00:02]**
Yeah, is this the Texas Gold Depository?

**Afton Chacon [00:09]**
This is Texas Precious Metals Depository.

**████████ [00:11]**
Okay, well, I don't know much, but I heard that Texas was setting up their own gold vault for people to store their gold. Is that you guys? Yeah.

**Afton Chacon [00:25]**
We already have a depository and we are not run by the state of Texas. So I'm gonna go ahead and say the answer to your question is no.

**████████ [00:35]**
OK. So you know the one I'm talking about, though? I think the state of Texas may be down by Dallas or somewhere built a vault. OK. And what's that mean, IBS?

**Afton Chacon [00:47]**
Yes, I believe that is going to be IDS. That is
just their abbreviation. So if you Google it, it would be IDS of Texas. D as in dog. We are a...

**████████ [01:01]**
Oh, ID or B?
Yeah, okay. And what do you guys do?

**Afton Chacon [01:12]**
We have a depository for precious metals as well. However, we are privately owned. We are not run by the state.

**████████ [01:17]**
Okay, so you take in people's gold and keep it safe, so to speak? Okay.

**Afton Chacon [01:26]**
Yes, sir, we do.

**████████ [01:28]**
And is there a charge for that or how does that part work?

**Afton Chacon [01:30]**

TPM001161



Yes, sir. So there are storage fees. The minimum storage fee is going to be $10 a month.
And then it just kind of goes up based by what you have in the depository.

 **[01:40]**
Okay, so 120 a year. And then how does it work? Can you come see your, is it like a bank deposit box? Does it work the same way?

**Afton Chacon [01:53]**
It is not a deposit box. It is more safe than a deposit box. We do not do tours inside of the facility for security purposes.
But if you'd like to come and view your medals, you are able to do that. You will just need to give us at least 48-hour notice that you'd like to come. We would get you scheduled, and then we would take you into one of our client rooms, and you would be able to view your medals, hold your medals, you know, whatever you'd like.

**[02:17]**
Shine them or whatever.

**Afton Chacon [02:21]**
Mm-hmm.

**[02:22]**
Okay, so you guys go to the vault and get it and retrieve it for the person. Okay. All right. So you sell gold and silver too, huh? But that's not you yourself. Okay.

**Afton Chacon [02:27]**
Mm-hmm. Mm-hmm. Mm-hmm.
We do have a dealer. Yes, sir. It
is still in our building.

**[02:41]**
Yeah, OK. So are people buying, or is everybody selling now that it's

**Afton Chacon [02:47]**
They're doing a little bit of both. I see a lot of buying, but I also see a lot of selling. Yeah, I'd say probably about half and half.

**[02:50]**
up?
So you think maybe a half and half or two-thirds and one-third or
something?

**Afton Chacon [03:01]**
I don't, I don't, Praetel, work more on the purchasing side. I work more on the depository side, so I'm not exactly sure, you know, what exactly all goes on on our other side.

**[03:13]**
So do you think most people that buy it take it home or half of them leave it with you to store it or how does that work?

**Afton Chacon [03:19]**
It really depends. Everybody's preference is different. Some people have the means to keep it at home, and some people prefer, you know, to keep it inside of the deposit.
WHERE IT IS 100% INSURED, WHERE AS IF YOU TAKE IT HOME, THOSE MEDALS WILL NOT BE INSURED.

**[03:40]**
Yeah. OK. And now by insured, they replace it with new gold or they replace it with the cash value?

**Afton Chacon [03:45]**
SO IT WILL BE MEDAL FOR MEDAL, SO WHATEVER TYPE OF MEDAL, YOU KNOW, WHERE IF YOU WERE TO LOSE MEDAL, THAT IS WHAT IT WOULD BE REPLACED WITH.

TPM001162

███████████ **[03:56]**

Mm-hmm. So if Al Capone shows up and runs away with it all, they go out and get new gold?

I know

**Afton Chacon [04:06]**

Yeah, so I mean the likelihood of something like that happening is very slim to none, you know, but

███████████ **[04:12]**

on today's world anything could happen.

**Afton Chacon [04:16]**

yes, just worst case scenario, yes, it would be your medal for medal. So if you had, you know, 25

███████████ **[04:24]**

Mm-hmm.

**Afton Chacon [04:24]**

Five ounces of gold that were somehow taken, you would be replaced with 25 ounces of gold.

███████████ **[04:31]**

Well, do you remember Al Capone?

**Afton Chacon [04:33]**

I do.

███████████ **[04:35]**

You do? Yeah. He was a bad mama-jama, wasn't he?

Okay. Okay. Well, I'll do that then. I'll check with that other deal. So can you connect me with somebody that does sell you this gold and silver? My name's ██████.

**Afton Chacon [04:44]**

Yeah,

I can, let me get you over to our traders. What is your name?

██████, okay. I will get you over to them and let them know you just have some questions, okay?

███████████ **[05:05]**

All right. Thank you.

**Afton Chacon [05:07]**

All right, just a moment. You have a good day. Thank you.

███████████ **[05:09]**

You too.

TPM001163

# Inbound call with ████████████████ in queue TPMD

## Call Details

Date: December 03, 2025 at 02:09 PM UTC
Duration: 4m 7s
Participants: ████████████████, Afton Chacon

## Summary

- ██████ (Customer) reached out to Afton (Customer Support Representative, Texas Precious Metals Depository) to resolve issues accessing his account.
- After clarifying that he was at the wrong location, Afton guided him on how to proceed with signing up for access.

## Transcript

**Afton Chacon [00:02]**
This is Afton. How may I help you?

**████████████████ [00:05]**
Good morning, ma'am. I'm trying to log on and it isn't responding to my password. So I clicked on the link and said it had sent me an email and I still haven't received the email. It's been quite a while. So something's amiss. ████████████.

**Afton Chacon [00:06]**
Okay. What is your name?
Okay, just one moment.

████████
████████████

**████████████████ [00:53]**
That would be me.

**Afton Chacon [00:55]**
So I'm actually not showing that you have access to your online portal. So that could be the issue there. So instead of selecting login, you're going to select sign up. And you'll go through that process.

**████████████████ [01:02]**
Well, that's a problem. Yeah.
Okay, but it will reflect what I've got in the depository when I create a new account?

**Afton Chacon [01:18]**
Correct. Correct. What is-- do you know your account number?

**████████████████ [01:23]**
Not offhand,

**Afton Chacon [01:25]**
No. Is it listed under your name or is it under a trust or business?

**████████████████ [01:31]**
no. It's under my name. The account's under my name.

**Afton Chacon [01:54]**
I'm not
finding an account
with your name. Is

**████████████████ [02:12]**
Well, this is a problem.

TPM001164

**Afton Chacon [02:14]**
it
an IRA or a non-IRA?

████████████ **[02:21]**
Non-IRA.

**Afton Chacon [02:22]**
Is
it a joint account, a sole account?

████████████ **[02:32]**
Nope.

**Afton Chacon [02:35]**
It just says sole account?

████████████ **[02:37]**
Nope. Yep.

**Afton Chacon [03:05]**
No sir, I'm not finding anything in our system.

████████████ **[03:10]**
All right.
Well, I've got, I know it, heck, I opened it in person for Pete's sakes. Yeah, okay, well, let's get to the bottom of this.

**Afton Chacon [03:23]**
Okay, so I just want to confirm you are calling Texas Precious Metals Depository in Shiner, Texas, correct?

████████████ **[03:29]**
Oh, Shiner. No, no, no, I'm trying to get Leander.

**Afton Chacon [03:32]**
Okay, this is the Shiner Depository.

████████████ **[03:35]**
Ah, ah, yes.

**Afton Chacon [03:36]**
That would be your problem.

████████████ **[03:39]**
You started having me go into irritable bowel syndrome here. Okay.

**Afton Chacon [03:47]**
Alrighty. Well, if you need anything else, just let us know,

████████████ **[03:53]**
Are you related to them in some fashion?

**Afton Chacon [03:56]**
okay? No, sir. We are two separate businesses.

████████████ **[04:00]**
Okay. Well, thank you very much.

**Afton Chacon [04:01]**

TPM001165

Absolutely. You have a wonderful day. Thank you. Bye-bye.

██████████████ **[04:04]**
All right. Bye-bye.

TPM001166

# Inbound call with  in queue TPMD

## Call Details

Date: December 03, 2025 at 08:09 PM UTC
Duration: 3m 13s
Participants: ▨▨▨▨▨▨▨, Berny Klapuch

## Summary

- During the conversation, Berny (Customer Support Representative, Texas Precious Metals Depository) assisted ▨▨ ▨▨▨, who was confused about her account status.
- After searching, Berny found no records of an account for ▨▨ and explained the difference between Texas Precious Metals Depository and the state-owned Texas Depository.
- They discussed potential account setups and shipping logistics for transferring assets, and the call ended positively with ▨▨▨ planning to visit the website for further information.

## Transcript

**Berny Klapuch [00:01]**
TPMD, this is Berny. How may I help you?

 **[00:05]**
Hi, Bernie. I just accidentally hit a number. I don't know where I went. I think somebody did answer the phone. But I thought I opened the account a while ago. Can you check to see if you have me having an account there?

**Berny Klapuch [00:11]**
Okay. A depository storage account? Okay. Let me get your name, please.

 **[00:23]**
Yes.
▨▨▨▨▨▨▨▨▨▨.

**Berny Klapuch [00:32]**
Okay. And that was directly through us, not through an IRA custodian or an advisor of some sort? Okay. All right. Just one moment, please. Thank you so much for holding, ▨▨▨▨. I do not find an account opening for you or an account agreement. I don't.

 **[00:42]**
Correct. Yeah. Yeah. I think I just signed up online through your site.

**Berny Klapuch [00:58]**
I'm sorry, I don't know. Is this Texas Precious Metals Depository? Is this the one you're wanting to call or is it the Texas Depository you think you open it at?

 **[01:08]**
So you are what now?

**Berny Klapuch [01:11]**
We are Texas Precious Metals Depository. Okay, so that then you might want to check with them if that's where that's opened.

▨▨▨▨▨ **[01:15]**
I think it was the Texas Depository.
So are you guys doing everything the same thing they're doing?

**Berny Klapuch [01:29]**
We are another depository. We are privately owned. We have information on our website that tells all about us. Our website is TexasDepository.com and we are under the Texas Precious Metals Depository.

TPM001167

███████████ **[01:34]**

Okay.

Okay. Okay. So but the Texas Precious Metals Depository is the other one. They...

**Berny Klapuch [01:51]**

That is us. That one is us. Yes, sir.

███████████ **[01:55]**

Oh, and the Texas Depository is the one that the state opened up or owns?

**Berny Klapuch [02:01]**

That's what I believe, Leander, I think, is where they say it's at, it's located.

███████████ **[02:09]**

Yeah, okay. All right, and do you guys, like if I have an account at CNT and I wanted to transfer my stuff to you guys, I guess that probably requires shipping everything there,

**Berny Klapuch [02:22]**

Yes, sir. It would be setting up an account. You would set your account up. And then I'm not familiar with CNT. Who is that? Okay. Yes, sir. If you're wanting to, and it is not under an IRA, it's your name.

███████████ **[02:32]**

huh? It's a depository in Connecticut.

Yeah,

**Berny Klapuch [02:43]**

Oh, okay. Yes, sir. Then we would definitely get you with our logistics team to coordinate the shipping to this depository.

███████████ **[02:54]**

correct. Because I wouldn't want to get rid of the metal and then repurchase it. It's got to be moved. Yeah. Yeah, okay. Okay, I'll take a look at your website then. It was just an accident that I call you, but thank you for your help.

**Berny Klapuch [02:57]**

Right, right. Yes. Yes, sir. Yes, sir.

Yeah, please do. We appreciate it. You have a good evening now. Bye-bye.

███████████ **[03:11]**

You too. Bye-bye.

TPM001168

## Call Details

Date: December 15, 2025 at 09:56 PM UTC
Duration: 9m 16s
Participants: ████████████, Afton Chacon

## Summary

- Afton (Customer Support Representative, TPMD) received a call from ████████ and his mother, ████████████, who were experiencing issues with email verification codes that were displaying malware errors.
- Their aim was to find out the current value of ████████'s bullion for estate planning.
- Afton guided them through troubleshooting, including switching browsers and entering the correct website.
- After several attempts, they successfully accessed the account, retrieved the necessary information, and ████████ expressed her appreciation for Afton's help in resolving their issue.

## Transcript

**Afton Chacon [00:02]**

TPMD, this is Afton. How may I help you?

**████████████ [00:05]**

It's Afton.

**Afton Chacon [00:05]**

Afton,

**████████████ [00:08]**

Hey Afton, this is ████████ and my mother ████████████ in Kansas. We are continuing to have experience with these emails. We got her email, we've got her password, and every single time we try to do the verification code, it keeps coming up malware, malformed, not going to go work. That's the thing that we're getting.

**Afton Chacon [00:08]**

uh-huh.

**████████████ [00:31]**

And all we're trying to do, just so you know, we're just trying to get her value, what her bullion or whatever, how many pieces she has, because we know the current value, it's what, $6409 today or something like that. All we're trying to do is get the assessed value as of today.

**Afton Chacon [00:34]**

Is worth.

**████████████ [00:51]**

And that's all we need. Because what we're trying to do is get it and then take a picture of it and then give it to her attorney tomorrow so that we're trying to help her with her estate, with her trust, so that we can have all the assets that she owns. That's all.

**Afton Chacon [00:51]**

Okay.

Uh-huh. Got it. Got it. Okay. Ms. ████, can you please verify your home address for me?

**████████████ [01:12]**

Yeah. Yes, it's ████████████████████████. ZIP is ████.

**Afton Chacon [01:15]**

Okay.

And your email address that we would have on file?

 **[01:24]**

It's ████████████████ @gmail.com.

**Afton Chacon [01:28]**

Okay. Let me see. Yes, sir. Yes, sir. Well, we'll try to get it straightened out to the back.

Okay, so let's, are y'all on a computer or are you doing it on your phone?

██████████████ **[01:39]**

No, we're all doing it on the phone. I even went around the back because we tried it on her phone, right? And there was problems. So we waited. I went and ran an errand for it, came back. And now I did it on my phone using her password doing that. And that way, all she had to do was open up her email.

**Afton Chacon [01:41]**

Okay.

Mm-hmm.

██████████████ **[01:59]**

So we got to the verification. She opened up her email. You guys sent it to her email. And the exact code, I put it in on my phone, the exact code, and the same darn thing happened again. So, yeah, we've tried Google. We've tried all these different things. And all we're trying to do, because you guys verify she's got...

**Afton Chacon [02:02]**

Okay.

██████████████ **[02:22]**

However many in there. I think at the time when we did it in 2022 with Dr. Elliott, she spent $70,000 minus the 8%, but now it's grown. It's probably close to $145,000 now with the way silver has gone. And all we're trying to do is

**Afton Chacon [02:32]**

Okay. Okay.

██████████████ **[02:40]**

Tell us how many pieces of silver, because with mine, I have it too, with my own account. It says I have $40,904 times whatever the amount is as of today tells me how much I have. That's all we're trying to do. So we're just trying to figure that out so we can give it to the attorney.

**Afton Chacon [02:58]**

Okay, yeah, so if you could please open up a fresh browser on your phone.

██████████████ **[03:06]**

Hang on here. Oh, that's my phone. There you

**Afton Chacon [03:08]**

And are you using, are you going to use Google or Safari or?

██████████████ **[03:12]**

go. It's not perfect.

Yeah, we were using Google is what we were using before. Here, I'll use Safari. Actually, we were using Safari. Yep.

**Afton Chacon [03:19]**

Okay,

let's go ahead and try Google Chrome.

██████████████ **[03:25]**

Okay, let me kick out to Google.


Do it one more time. Do it again. Oh.

It's... I don't see Google, Mother. No. Do it one more time. Well, no, that's the last page. No, that's it. It's the last page. It's a G. No.

**Afton Chacon [03:45]**

The Google icon looks like a little ball that's yellow and blue and green and red.

**[03:50]**

There. Yeah, yeah, yeah, yeah, yeah. And it's not on. I don't see it either. It's usually a G and it's gone. Yeah. Okay. Wow.

**Afton Chacon [04:01]**

Well, we can try Safari. Let's go ahead and try Safari. Mm-hmm.

**[04:04]**

Okay. Okay. Thank you. Get back to here. Okay. There's Safari. Okay. We're on it right now where it says, ah,

**Afton Chacon [04:08]**

Okay.

**[04:14]**

Authorization. Yeah, we send a verification code to register once received below enter it below and we haven't just we put that number in and then we got it and it didn't go when we pushed verify.

**Afton Chacon [04:25]**

Okay, so let's open up a clean browser and physically type in texasdepository.com.

**[04:28]**

Okay,

I'm doing it again and. And you're on your phone. Yeah. Okay.

Texas Applausatory. Now, hang on. That one said that that is.

**Afton Chacon [04:41]**

.com.

So

**[05:02]**

Well, you don't have that jail. You're in the. No, no, no, no.

Hang on.

I know. Maybe that's it because it keeps popping up. Yeah, I don't. I don't. I don't see it. That's why.

It's on my phone, God. It's on my phone. It's okay. Okay. Let me see here.

There we go.

Okay. Texas Depository. Got it. Okay. We're on. Yeah. Hang on.

**Afton Chacon [05:39]**

you should see world-class vaulting, correct?

**[05:48]**

I don't see anything world class. All I see is

**Afton Chacon [05:50]**

The home page should say "World Class Vaulting."

**[05:56]**

It just says Texas Depository. Texas Depository, Metals Depository, Precious Metals.

There's Texas Bullion Depository homepage.

**Afton Chacon [06:08]**

Okay, so you want to click on the one that says "Texas Precious Metals Depository."

███████████ **[06:15]**
Here it is. I mean, we found that for the last month. It's right here. It's okay. Texas Metal. Got it. World-class vaulting. Got it.

**Afton Chacon [06:23]**
Yes, so go ahead and select "Log In."

███████████ **[06:26]**
Okay. Got it.

**Afton Chacon [06:27]**
And go ahead and put in her email and her password.

███████████ **[06:31]**
It went right to code successfully sent.

**Afton Chacon [06:37]**
Okay, so have her go ahead and check her email.

███████████ **[06:42]**
Okay. Check your email, Mom. Right there. There we go. This code will expire in 10 minutes. If you did not request it to code, okay. So what should she do now if it says she gave me that code?

**Afton Chacon [06:55]**
Yes. So in her email she should have received a code around 402.

███████████ **[07:02]**
Around 402. Nope. That doesn't show it. The only code that's in her, this
It was at 3:53, so she should come out of that screen, go back into a new one, right?

**Afton Chacon [07:12]**
Go back into her, refresh her email because there's going to be a new code.

███████████ **[07:19]**
Yep. So... Good man. It's okay. We'll figure this out. Yep. There it is at 4:02. That's okay. Okay.

**Afton Chacon [07:28]**
Okay, go ahead and enter in that code.

███████████ **[07:31]**
I got it. 3:9. 8. 8. Got it. 3:40.
Okay, now, wait and punch in verify,

**Afton Chacon [07:41]**
Go ahead and verify it.

███████████ **[07:46]**
correct? Hey, at least something's moving, that's a better sign. Holdings, okay, got it.
Okay. ████████, there it is. Write that number down. Tell me what the number is. The number is ██████. Okay, ███████████
██████████████. Thank

**Afton Chacon [08:18]**
Yes, that is your account number.

███████████ **[08:21]**
you. That's what I thought. So I see the total values, metals allocation, perfect. So now as of today, recent fraud is $63.95. Perfect. Oh my gosh.

TPM001172



**Afton Chacon [08:23]**

Yes.

And if you hit view as report or it says something along those lines, you'll be able to see the itemized list of the holdings.

**[08:40]**

Okay. Oh my gosh, you are wonderful. Thank you, young lady. Thank you. Oh, this is great. Come on. Now, if it'll just pull up. I think that's it. I just hit that report, but it did. Oh, let's see if it says.

**Afton Chacon [08:42]**

Absolutely. Was there anything else I could help you with?

**[08:56]**

It didn't. Holdings report. Yeah. No, pink. There. Okay. We got it. That's okay. Got it. Thank you. Okay. I will.

**Afton Chacon [09:02]**

Perfect. All right. Thank you. You all have a good day. Bye-bye.

**[09:05]**

Bye. Thank you, young ladies.

**Afton Chacon [09:15]**

Thank you.

# Inbound call with ███████████████ in queue TPMD

## Call Details

Date: December 16, 2025 at 06:11 PM UTC

Duration: 4m 1s

Participants: ███████████████, Afton Chacon

## Summary

- Afton (Customer Support Representative, TPMD) assisted ██████ (Customer) who was looking to liquidate her precious metals stored in a depository.

- However, Afton was unable to locate ██████'s account under her name and clarified that they were not affiliated with Texas Bullion, providing a phone number for her to reach out to them directly instead.

## Transcript

**Afton Chacon [00:01]**

TPMD, this is Afton. How may I help you?

**████████████ [00:04]**

Okay, I don't know if I have the right department, but I wanted to liquidate my, I wanted to liquidate

**Afton Chacon [00:11]**

Okay, what is your name?

**████████████ [00:11]**

what I have. My name is ████████████ ███████.

**Afton Chacon [00:22]**

And these are medals you have in your depository or in your possession?

**████████████ [00:29]**

No, it should be in the depository. They're precious metals.

**Afton Chacon [00:33]**

Okay, and the account is under your name or is it under a business name?
Okay.

**████████████ [00:39]**

My name.

**Afton Chacon [00:43]**

Do
you happen to know your account number?

**████████████ [01:05]**

No.
You're the one that store the precious metals, right?

**Afton Chacon [01:15]**

Yes, ma'am.

**████████████ [01:18]**

Okay.

**Afton Chacon [01:18]**

███████, TPMD, Jade.

TPM001174



 **[01:24]**
.

**Afton Chacon [01:25]**
Okay, I am not pulling up an account with your name.
I'm not finding anything. You do have your metals stored in Texas Precious Metals Depository in Shriner, Texas? Okay. I am not finding an account for you. If you are able to provide an account number, I can try and look that way. But under your name, I am not finding anything.

[02:07]
I'm not sure.

**Afton Chacon [02:20]**
Okay, that is a different depository. That is not us. I don't know that number. I'm sorry.

[02:21]
Okay, I have also something, Texas Bullion.
Could you tell me what that number is?
Okay, I haven't been able to find it online. That's why I called you to step through as a first step.

**Afton Chacon [02:44]**
We are not affiliated, so I don't know anything about that depository. Let me see if I can Google.

[02:54]
I couldn't Google it so you're probably not going to be able to find it either.

**Afton Chacon [02:57]**
Okay, I actually did find that phone number here on Google. Whenever you're ready, I can give it to you.

[03:05]
I'll tell you when I'm ready.
Okay, I have a pen and paper.

**Afton Chacon [03:31]**
Okay, that phone number is 844-416-4653.

[03:41]
Okay, who should I ask if I want to liquidate stuff? Just...

**Afton Chacon [03:42]**
I honestly could not tell you I don't know the way their business runs.

[03:51]
Okay, well, I'll give them a try. All

**Afton Chacon [03:56]**
Okay, you have a good day. Thank you, bye-bye.

[03:58]
right, thank you. Bye.

## Call Details

Date: December 17, 2025 at 10:10 PM UTC
Duration: 5m 27s
Participants: ████████████, Matthew Lemke

## Summary

- Matthew (Representative, Texas Precious Metals) started the conversation by addressing ████'s confusion regarding their services.
- ████ shared her concerns about storing American Silver Eagles and the limitations of her safe deposit box.
- They discussed the risks associated with home storage and the advantages of utilizing the company's depository.
- Matthew then suggested transferring ████ to the depository team for more detailed information on storage options.

## Transcript

**Matthew Lemke [00:02]**
Texas Precious Metals, this is Matthew. How can I help you?

 **[00:02]**
This is ████ . I had Googled precious metals storage in Texas and I saw your company listed on Google and then when I was on hold it was talking about buying and selling to you so I'm a little confused.

**Matthew Lemke [00:17]**
Okay. Yeah, we are a...
We're a precious metals company and we're also a storage company. So we offer storage to people that may have metals at their house already or buy some from somewhere else. And then we also offer a selling precious metals service.

████████████ **[00:27]**
Okay.
Okay. I was wondering with regard to the, if I was going to buy American Silver Eagles, I
just found out, I guess they're not going to fit in my safe deposit box.
Which is three by five, right? Because the tube is three inches high. So if the safe deposit box is also three inches high, it's not going to fit because it needs to be slightly lower than the three inches high, right? That means the only way I could buy the American Silver Eagle's

**Matthew Lemke [01:19]**
Right. Right.

████████████ **[01:26]**
If I put it in storage, I suppose, because otherwise if I had it in my home and I live in a condo apartment building, so if the building went up and fired, that would be the end of them. So I guess if I want to buy them, I guess I either have to take a chance or just leave them around my apartment and if the building burns down, I lose it all.
Or I have to put it in your depository or I can't buy them. That's the way I'm thinking. What do you think of my thoughts?

**Matthew Lemke [02:01]**
Yeah, no, I follow you there. You know, storage is a good way to store your precious
We are also fully insured as well and it's pretty competitive with the pricing I'd say. It's a minimum $10 a month but it just starts to kind of gradually grow as you grow your precious metals.

████████████ **[02:22]**
Well, what I was told is that the
storage fees,
if, for example, if the price of your metals is
If your storage fees triples in value, then your storage fees triple as well. That's what I was told.

TPM001176



**Matthew Lemke [02:46]**
Who told you this?

**[02:47]**
I've made a lot of calls over the last year or so. That's what I was told.

**Matthew Lemke [02:53]**
Oh, okay. To us? Like to Texas Precious Metals? Hello?
Yeah. Oh, so I was asking you had made some calls to Texas Precious Metals or just other dealers and such?

**[03:08]**
Yes? Yes?
Well, I called one Texas company. I don't know what was yours. How many Texas metals companies are there?

**Matthew Lemke [03:24]**
Okay.
I mean, there's several out there. As far as storage goes, there's this one, and then Texas Bullion Depository, and then there's a couple others, I believe.

**[03:41]**
I called the Texas bullion. If that's the one that's not...
If you're affiliated with the government, then that's the one I call.

**Matthew Lemke [03:49]**
That one is the one that's affiliated with the government. Yeah. Yeah. We're...

**[03:53]**
Oh, well, then I didn't call that one. I called the government one. They were... I didn't like what they were telling me about their, you know, requirements with the storage. But there's another company in Texas that's a big company.
I thought it was called Texas Bullion or something that I...

**Matthew Lemke [04:13]**
We're Texas Precious Metals Depository, so I'm not sure if you've spoken with us before or not.

**[04:24]**
I don't... I don't remember anyone in your company saying that they wouldn't charge me depending on... I remember any company telling me that...

**Matthew Lemke [04:32]**
- You

**[04:43]**
The storage price doesn't triple if your value of your metal triples. I think they all told me the same thing.

**Matthew Lemke [04:49]**
know what? You're actually speaking to the buying and selling side of the company here.
I think I would feel a little bit more comfortable sending you over to the depository team so that they could be able to kind of clearly communicate sort of the storage options for you. And they can maybe walk you through that piece. Yeah. And I didn't catch your name, I think. What was it again?

**[05:17]**
Okay. All right. Very good.

**Matthew Lemke [05:25]**
Okay. One moment.

TPM001177

# Outbound call with ███████████

## Call Details
Date: December 29, 2025 at 04:26 PM UTC
Duration: 4m 24s
Participants: Chad Svetlik, +15125077301

## Summary
- Chad (Texas Precious Metals) reached out to ████ to clarify the appointment necessity for tours at their facility.
- During the call, ████ showed interest in understanding their offerings, especially regarding gold and silver as state currency.
- Chad discussed the Goldback currency concept and answered questions about potential collaborations with Frontier Bank.
- The conversation concluded with Chad providing contact details for additional questions, leaving both parties satisfied.

## Transcript

**████████ [00:00]**
This is

**Chad Svetlik [00:01]**
Hey, ██, it's Chad from Texas Precious Metal. How are you?

**████████ [00:02]**
██. Oh, I appreciate you calling. Thank you, Chad. What I was calling about is I was at your website and it says you have to set an appointment to come visit or taking a tour of some sort. Do I have to do that?

**Chad Svetlik [00:07]**
Yes,
sir.
Well,
no, what is your objective? What are you trying to do?

 **[00:30]**
Well, I'm trying to understand what y'all are offering. And I just discovered y'all that, you know, I helped lobby through the state to get gold and silver as currency.

**Chad Svetlik [00:47]**
Right.

 **[00:47]**
And I noticed that y'all created paper money, but I was a little unsure how that is, how is that going to work, if you know what I mean. What is

**Chad Svetlik [00:59]**
Yeah, that's a program. It's an outfit. I think they're out of Utah originally. Goldback is the entity that's doing it. It's very finite amounts of gold embedded in a polymer. Ultimately, they're trying to build a network of retailers or

**████████ [01:03]**
the case you've ever wasted money on?
How did you figure that out?
What is that called?

**Chad Svetlik [01:23]**
Individuals that will use that for commerce. I don't know if they're you know where they're at with that or how that's going to work. But it's also a good way for for people to get into the market able to get a little bit of gold that otherwise would be priced out. But as far as you know.

TPM001178

**███████████ [01:30]**

Yeah? Hello?

What the heck?

**Chad Svetlik [01:43]**

The investment value, I leave that to you to do your research on that.

**███████████ [01:49]**

Well, how's it determined by spot price or how's that done? International spot price.

**Chad Svetlik [01:57]**

It is based off the spot price of the gold.

**███████████ [02:10]**

Okay, also I was trying to figure out what your facility is offering. Are y'all working with Frontier Bank?

**Chad Svetlik [02:18]**

We do. I'm not sure what capacity you're referring to.

**███████████ [02:22]**

Well, I was trying to understand what capacity will you be working with Frontier Bank? Because of the new legislation that's gone through the state that's gone through the state that's gone through the state.

Making gold and silver as state currency. Are y'all working on something like that with the state controller or anything like that?

**Chad Svetlik [02:44]**

Not to my knowledge. That's above my pay grade though.

Certainly is not put out there to us to be able to discuss until it's finalized. So there may be something in the back that works, but I wouldn't have a solid answer for your question.

**███████████ [03:02]**

So you don't know if your group is working with the state consular at all. Do you have any knowledge of that? Okay. Who specifically would I be talking to if I was to ask those kind of questions?

**Chad Svetlik [03:09]**

That's correct. I don't have any knowledge.

You can send an email to us and we can distribute that appropriately. You can send it to the trading desk.

**███████████ [03:22]**

Oh, okay. Is it on the website who I can send it to or what?

**Chad Svetlik [03:35]**

I can give you the email. You got a pen and paper?

**███████████ [03:37]**

Yeah, go ahead. Do it slowly, please.

**Chad Svetlik [03:41]**

It's trading, so T as in Texas, R-A-D as in dog, I-N as in Nancy, G as in George,

**███████████ [03:43]**

I want

**Chad Svetlik [03:52]**

at, I'll say it and then spell it, TexMetals.com. That's T-E-X-Metals.com.

**███████████ [04:01]**

to go over this with you. All right, trading forward at Texas.

TPM001179

T-E-X, METALS, M-E-T-A-L-S, .com. Okay. And just send the questions there. Okay. Chad, I appreciate it, and you have a Happy New Year.

**Chad Svetlik [04:17]**
Yes, sir.
You too. Thank you, sir. Bye-bye.

TPM001180

# Inbound call with PLANO TX in queue Trading

## Call Details

Date: December 29, 2025 at 05:30 PM UTC
Duration: 12m 58s
Participants: PLANO TX, Matthew Lemke

## Summary

- Matthew (Customer Service Representative, Texas Precious Metals) assisted ▮▮▮▮▮ in ordering nine 10-ounce Texas Mint Silver Bars.
- The call began with ▮▮ confirming the availability of the bars and then shifted to updating his address on file.
- Throughout the conversation, Matthew helped ▮▮ verify his account details, which took longer due to multiple accounts.
- The total cost of the order was confirmed at $7,046.10, and ▮▮ asked about any potential sales on silver, which were not available at the moment.
- The call ended with Matthew assuring ▮▮ that a confirmation email would follow shortly.

## Transcript

**Matthew Lemke [00:01]**
Texas Precious Metals, this is Matthew. I can help you. Yes, sir. Ten ounce Texas Mint Silver Bar. Let me look here.

**PLANO TX [00:06]**
Matthew, good morning. This is ▮▮▮▮▮. Yes, sir. I'd like to... Do you guys still have the 10-ounce Texas Mint Silver Bars in stock?
That's the only one I think you do have in stock. Okay.

**Matthew Lemke [00:27]**
Yeah. Yeah, it looks like it. I do have that in stock at the moment. Yes, sir. Okay. Let's see. Let me get you pulled up here.

**PLANO TX [00:33]**
Yeah, I'm going to order nine of those to have them put in the depository.

**Matthew Lemke [00:43]**
Nine of those.

**PLANO TX [00:46]**
▮▮▮,

**Matthew Lemke [00:47]**
▮▮▮▮▮▮.
And your first, how do you spell your first name again? Okay. I assumed, but I didn't want to assume too much there.

**PLANO TX [00:59]**
▮▮▮▮▮, ▮▮▮ is in the color.
That's fine.
Oh, I need to change my address on file also.

**Matthew Lemke [01:21]**
Okay, on your depository or the mine? Well, I guess both. Hold on. Oh, okay.

**PLANO TX [01:32]**
The buy, sir. Because when you guys run it, it's going to mess it up.

**Matthew Lemke [01:41]**
▮▮▮. Man, I'm having such a hard time finding you. Let me try this. Oh, you said you have a depository. Let me do that. ▮▮▮. Well, you wouldn't have an account number on the buying side. It would be an email address, but I was going to try to

TPM001181

# Inbound call with PLANO TX in queue Trading

find you on the depository. That'll be...

**PLANO TX [01:50]**
Do you want me to pull up an account number? Is that what you're needing?
Okay. Okay, it's email...
Email is ▓▓▓▓▓▓▓ at gmail.com.

**Matthew Lemke [02:05]**
Thank you.
What's your depository account number? Let me do that. Take your time. Yeah.

**PLANO TX [02:37]**
Okay, give me a minute on that. Depository. Let's see if I can pull it up here. It might take me a minute here. No, it's on.

**Matthew Lemke [02:58]**
Thank you.

**PLANO TX [03:01]**
I'm going to have to pull it up the other one, I guess. Okay.
Okay,
some text.
Yeah, I got to pull up my account. Give me a minute.

**Matthew Lemke [03:32]**
Take your time. While you're doing that, do you work with like a broker or anything or do you just buy directly from us? Okay.

**PLANO TX [03:45]**
Okay. I just buy directly through you guys usually.
Brain part. Okay, there we go. Shoot. Okay,

**Matthew Lemke [03:51]**
Okay.

**PLANO TX [04:00]**
I'm waiting for the message.
It's not sending it.
Okay, here we go. Now, my phone was acting up.

**Matthew Lemke [04:42]**
Right now,
the data is at the end.

**PLANO TX [05:01]**
Okay, ▓▓▓▓▓.
Okay, my account number at the, is that what you want?

**Matthew Lemke [05:13]**
For the depository? Mm-hmm.

**PLANO TX [05:16]**
At the depository? Yeah. ▓▓▓▓▓▓▓.

**Matthew Lemke [05:26]**
Is that somewhere else? Not here, the TPMD?

**PLANO TX [05:37]**
The Texas Depository near Austin?

TPM001182

# Inbound call with PLANO TX in queue Trading

**Matthew Lemke [05:38]**

Okay, got it. Okay, so you're talking about Texas Precious Metals.

Did possibly find you, or you might have the wrong company. This is Texas Precious Metals Depository. You might be trying to call the Texas Bullion Depository over in Leander. That's why I had a hard time finding you. But we do ship there, so you might have bought from us.

**PLANO TX [05:54]**

Uh-oh.

Oops. Oh, yeah.

**Matthew Lemke [06:12]**

I found a ███████ finally. Do you happen to have a middle initial? ███. Yeah. Okay. Yeah.

**PLANO TX [06:15]**

Yeah, I...

█, as in ████. Yeah, because I purchased through you guys, because I had sent two orders before, to Frisco. Frisco, Texas.

**Matthew Lemke [06:31]**

I do have a, let's see, I've got an account here. I've got two of them here, actually. One second. That was why I was having a hard time finding you.

**PLANO TX [06:41]**

I mean, if you...

I had sent two orders in August. I forgot what month. It was this year. It was to ████████████████, Texas.

**Matthew Lemke [06:53]**

Got it.

Ah, OK.

**PLANO TX [07:08]**

But the reason why my voice sounds so muffled if it does is because I'm in Kuwait.

Well,

**Matthew Lemke [07:19]**

So I have a ████████. This is the only ██████ I have here though. It's got a ██████████ address, ████. That's the only one I've got. I don't have any other ████████████████.

No, in Texas. What in the world? Let me

**PLANO TX [07:42]**

that's not in Kansas, is it? Yeah, no, that's not me. No, that's not me.

**Matthew Lemke [07:57]**

write that email address down. What was that email again? ████████.

**PLANO TX [08:07]**

████████ At gmail.com. I mean, let me, can you pull up old orders?

**Matthew Lemke [08:15]**

████. Got it. Is that like a TPM order? For sure. Give me a TPM order. Okay.

**PLANO TX [08:24]**

Give me a second. Let me look this up real quick. No,

**Matthew Lemke [08:31]**

Sorry this is taking so long for you.

# Inbound call with PLANO TX in queue Trading

**PLANO TX [08:34]**

that's fine. That's fine. Okay, I'll pull that up here. Here we go. Yeah. TPM... Where is it? Where is it? Where is it? Okay, TPM...

**Matthew Lemke [08:37]**

Perfect.

Okay.

Okay, I got you now. We're good. So you want to ship it to -- go ahead.

**PLANO TX [08:57]**

███████. And basically, except for my billing address, but I want to ship it to that same address if possible.

The...

It's ████████████████████████████.

**Matthew Lemke [09:19]**

Got it. Okay, so you want to ship there. Beautiful. We're working here. We're cooking. Now, we've been talking so long that I've forgotten how many you wanted. Nine of those?

**PLANO TX [09:24]**

Yes, please.

I'll get it. I'll get it one way or another.

I'm trying to get, I think, nine. Run me the number to see how much it is.

**Matthew Lemke [09:42]**

Nine? Okay. Nine of them. And then are you paying ACH or...?

Okay. 782... No, 782.90 apiece. So your total for nine of them will be...

$7,046.10. You want to do that? Okay, perfect. All right. No, no, go ahead. Okay, I show the billing address as ████████

████.

**PLANO TX [10:12]**

Yes. Yeah. Yeah. Yes.

And on the... Okay, I'll wait. No, I'll wait for your prompt on the billing address.

Okay, yeah, that's it. Yeah. ████████████████.

**Matthew Lemke [10:33]**

Alright. Good deal. So shipping it to this Frisco address, paying by ACH. And then I show a couple different cards on file for your temporary hold. I show a visa ending in ████ and then a visa ending in ████

Okay. Okay, fair. Yeah, it's just going to be a 5% hold. It's not going to actually charge the card as a reminder. It's just like a pending hold. Okay.

**PLANO TX [10:53]**

It'll be the ████. And that's my debit card. Would that... Okay. You want that?

Okay.

Okay. It's... It is... You want the number now?

**Matthew Lemke [11:15]**

Oh, we have it already. So it's saved in your system already. So you're good to go, actually. Yep. You're good to go. You should have a confirmation email here pretty shortly. But, yeah, you're all set. If you have any questions, don't hesitate to give us a call. Mm-hmm.

**PLANO TX [11:18]**

Oh, okay.

Okay. Yeah, ████. Yeah.

There's one thing I was I want to inquire about. Did you guys have any deals going on like like sales or any discounts anything like that?



**Matthew Lemke [11:43]**
For silver or gold? Or both? Silver? Not so much with silver right now. In fact, I think we may have even gone up on some prices. I don't know if you saw this weekend, but silver shot up to about $90. Yeah.

**PLANO TX [11:48]**
Silver.
All right.
Oh, it was nuts. It was nuts.

**Matthew Lemke [12:03]**
Yeah, and we sold probably about 10,000 ounces of silver, so it was a pretty busy weekend. Yeah, so no sales at this moment, though, but it doesn't hurt to ask. Mm-hmm.

**PLANO TX [12:11]**
Right.
All right. That should be... Let's see if I can check my account real quick. Texas Fresh Metals. All right. Yep, I got TPM on it. .

**Matthew Lemke [12:31]**
You got it. Yes, sir.

**PLANO TX [12:38]**
And that's going to Frisco. Okay. So...
That should be good. All right. I appreciate it,

**Matthew Lemke [12:47]**
All right. You're all set then. Of course. You have a good day. Bye.

**PLANO TX [12:55]**
sir. UK, you too. Bye-bye.

# Inbound call with ███████████████ in queue TPMD

## Call Details

Date: December 30, 2025 at 09:52 PM UTC
Duration: 5m 20s
Participants ███████████, Susan Aschenbeck

## Summary

- ███████████ a loyal customer of Texas Precious Metals, contacted Susan (Customer Support Representative) to seek clarification on an email from the Texas Comptroller about the Texas Depository and the comparison between redbacks and goldbacks.
- Despite Susan's efforts to assist, she could not provide a definitive answer regarding the legal tender status of redbacks, ultimately directing ████ to the Texas Bullion Depository for further guidance.
- The conversation concluded with a sense of unfulfilled inquiry.

## Transcript

**Susan Aschenbeck [00:01]**
TPMD, this is Susan.

**███████████ [00:04]**
Susan, this is ███████████, and I am a customer and have been for several years of Texas Precious Metals, and this may be an odd question, but I'm trying to understand an email I got from the Texas Comptroller and how this Texas Depository,

**Susan Aschenbeck [00:24]**
Thank you.

**███████████ [00:26]**
in saying that they can...
They will stand and defend money or coins in the depository against U.S. interference, but you can only purchase their coins through the U.S. Gold Bureau.

**Susan Aschenbeck [00:48]**
I'm not familiar with -- so what document are you reading?

**███████████ [00:50]**
But they say it's a Texas company. I'm just trying to gain some understanding.
It was an email I got from the Texas comptroller.
And so I started investigating it, but I've always bought from you all. And I thought, well, why don't you mint the money that they're saying, the coins that they're producing? Yeah.

**Susan Aschenbeck [01:11]**
Okay. Do you have your account number? What is the name on the account?
Okay.

**███████████ [01:34]**
Well, it's ███████████. I mean, but the question is really not about that. But I just purchased, I've purchased for many years from you, but I just purchased some goldbacks and they're offering redbacks.
And I know it's legal tender in several states and I'm just wondering if they're the same thing.
I mean, is it the same sort of Tinder? Are you familiar with what I'm talking about?

**Susan Aschenbeck [02:06]**
I am aware that we sell goldbacks, but what you're asking about redbacks?

**███████████ [02:13]**
Mm-hmm.

**Susan Aschenbeck [02:15]**

Okay.

██████████ **[02:15]**

And that was in the email from the Texas comptroller with the launch of the Texas loan store coins.

**Susan Aschenbeck [02:24]**

Okay, one moment.

All right, ma'am, we do not carry redbacks.

██████████ **[03:02]**

Yes, ma'am. I know you don't. I know you carry gold bags.

**Susan Aschenbeck [03:03]**

Yes.

██████████ **[03:06]**

But I'm trying to understand if it would be the same sort of legal tender as because, since it's from the Texas Comptroller, that they are selling redbacks.

Are they comparable?

**Susan Aschenbeck [03:32]**

All right, ma'am. You can call Texas Bullion Depository. Okay, you've already called them. All right.

██████████ **[03:37]**

Yeah, I've already called them.

But...

But since I am your customer, I wanted, you know, just to hear your opinion on what they're telling me.

**Susan Aschenbeck [03:53]**

One moment.

██████████ **[03:54]**

Because if...

**Susan Aschenbeck [03:57]**

We just offered the goldbacks. So, I mean...

██████████ **[04:06]**

Okay. But can you answer if they're the same type of legal tender?

Will they be?

**Susan Aschenbeck [04:15]**

I wouldn't be able to say what they are. I mean, if they're -- I'm sorry.

Yeah, ma'am, I would have to say we wouldn't have an opinion on that. That would be up to you.

██████████ **[04:56]**

Okay. Do you know who might answer that question for me? Okay.

**Susan Aschenbeck [05:02]**

It would be going back to their information at Texas Bullion Depository.

Yes, ma'am.

██████████ **[05:12]**

Okay. All right. Well, that's a circle. All right. Thank you.

TPM001187

# Inbound call with SAN ANTONIO TX in queue TPMD

## Call Details
Date: January 06, 2026 at 05:07 PM UTC
Duration: 6m 26s
Participants: Susan Aschenbeck, SAN ANTONIO TX

## Summary
- ██████████████, a customer, reached out to Susan (Customer Support Representative, Texas Precious Metals Depository) regarding his precious metals valued at around half a million dollars.
- He was interested in creating an account to separate his holdings and was considering the Shiner location due to its lower storage fees compared to the government-administered facility in Leander.
- Susan clarified that Texas Precious Metals is a private company and does not report storage to the government.
- The conversation included confusion about the differences between Texas Precious Metals and Texas Bullion Depository, which Susan addressed, explaining they are separate entities.
- The discussion concluded positively with ██████ thanking Susan for her help.

## Transcript

**Susan Aschenbeck [00:02]**
TPMD, this is Susan.

**SAN ANTONIO TX [00:05]**
Susan, my name's ████████████. I just called a minute ago, but I forgot my more important question.
██████ and I have
about a half million, what it's worth now up there. We want to split it up. I'm going to create an account and take all the small silver out and put it in my account and just leave
Well, the gold and big silver in her account. That's what we've been up to for a week or two now. But I'm setting up my account, and I came across this thing where you have a place in Shiner. We're going to buy a ranch out to the east side of town, and not only would Shiner be a whole lot closer, but you're charging less there for holding the stuff and everything.

**Susan Aschenbeck [00:33]**
Okay.
So, okay. And where are your metals currently?

**SAN ANTONIO TX [00:56]**
That blows me away. What's going on there? One's government administered and the other's not. Can you explain that to me? Because it looks to me like we're going to save a whole heck of a lot of money if we move what we have down to China.
They're in, up by Austin, Leander.

**Susan Aschenbeck [01:18]**
And Leander, okay. No, this is a private company. We do not report the storage to the government. So if you go to - had you dealt with an advisor or you were just looking at Texas Precious Metals?

**SAN ANTONIO TX [01:37]**
I'm
trying to figure out

**Susan Aschenbeck [01:41]**
No, that's okay. So... All right, so, yeah.

**SAN ANTONIO TX [01:44]**
What the difference is if we and whether or not you all, whether or not you all can move it from Leander to Shriner and what the heck the difference is now far as privacy goes. That's BS. The government knows who has what, no matter what anything's done. I don't play that game. I'm just, I'm just worried about the expense of storage.

TPM001188

# Inbound call with SAN ANTONIO TX in queue TPMD

**Susan Aschenbeck [02:06]**

Okay, so you can go to TexasDepository.com and under World Class Vaulting there is a full video that shows the information like we're fully insured by Lloyds of London and the level of certification for security and that it is privately owned.

**SAN ANTONIO TX [02:23]**

I,
I, so the,

**Susan Aschenbeck [02:30]**

And if you're looking at rates, I can kind of calculate that based on if you have-- so how much was the account value?

**SAN ANTONIO TX [02:30]**

So it's
about a half million right now. It's 400,000 in silver and we got 40 ounces of gold. It's got to be getting closer to three quarters of a million. So I'm dealing with the Texas Bullion Depository.

**Susan Aschenbeck [02:41]**

OK.
OK.
OK.

**SAN ANTONIO TX [02:57]**

They've got three different locations. I'm gonna watch your video and everything, but help me out with the big picture here. Y'all got three different locations,

**Susan Aschenbeck [02:59]**

The main location is in Shiner, Texas. Yes, sir. And they do offer -- yes, sir.

**SAN ANTONIO TX [03:14]**

right? The main location is in China. Why am I paying more to store it in Leander? And why is Leander government-administered and the others not?

**Susan Aschenbeck [03:25]**

This is a private company. I can't speak to the facility in Leander, but this is a private business. And the rates are as they are, the annual breakdown under the rates, which if you were storing $500,000 worth of, let's say, well, that would be around.

**SAN ANTONIO TX [03:46]**

Are they doing a comparison here? Because I'm on the TexasDepository.com page.

**Susan Aschenbeck [03:49]**

Yes, sir. TexasDepository.com. And then there's an annual breakdown. And then that gives you - you can also do an estimate of your monthly charges. But for $500,000 of gold versus silver, your rates are 0.45% and 0.5% respectively.

**SAN ANTONIO TX [04:11]**

The difference is considerable. Where I'm at a loss, and excuse me, I'm a very simple thinker, where I'm at a loss is you keep emphasizing that you're a private company.

**Susan Aschenbeck [04:22]**

Yes, sir. This

**SAN ANTONIO TX [04:25]**

Why are you emphasizing that? I believe I'm talking to the Texas Bullion Depository. That's not true?

**Susan Aschenbeck [04:29]**

is not Texas Bullion Depository. This is just Texas Depository. The website is TexasDepository.com.
And this is Texas Precious Metals Depository. Okay. All right. Yeah, we are not associated with them.

TPM001189

**SAN ANTONIO TX [04:40]**

I see. I see. I've landed on this page by mistake. Okay, so you're showing Texas Bullion Depository as a competing entity. You're charging a lot less than everyone. Okay. Ma'am, I'm sorry. This has been based on all of my mistakes, but now that you kind of know where I'm coming from, can I tell you, I advise people. I'm not trying to be argumentative or insulted. I'd really like to hear what you say about this. I tell people not to store it.

**Susan Aschenbeck [05:00]**

I won't take insult to it if it's not meant with insult. Yes, sir.

**SAN ANTONIO TX [05:20]**

It's not, ma'am. But I generally tell people I wouldn't keep my bullion in a private depository because if you all go under, in some way it's going to tie up our metal. Is it not?

**Susan Aschenbeck [05:35]**

We are fully insured by Lloyds of London in case anything were to happen, but you are definitely entitled to your own opinion. Yes, sir.

**SAN ANTONIO TX [05:47]**

All right. So you're saying that our stuff being insured by Lloyd's of London is as safe as the As the Texas Bullion Depository. That's basically your position.

**Susan Aschenbeck [05:59]**

I won't speak about the Texas Bullion Depository. I am employed by Texas Precious Metals Depository and I have seen that it has been ran with integrity since I've been here. So that's all that I can speak to.

**SAN ANTONIO TX [06:12]**

Okay. All right. You've been very kind to put up with me. And I'm sorry for my mistake, but I'm glad I talked to you, though. Thank you.

**Susan Aschenbeck [06:19]**

Yes, sir. Have a good one. Thanks.

**SAN ANTONIO TX [06:24]**

You too. Bye.

TPM001190

# Inbound call with ███████████████ in queue TPMD

## Call Details

Date: January 07, 2026 at 03:00 PM UTC
Duration: 50m 30s
Participants: ███████████████ Berny Klapuch

## Summary

- The conversation began with Berny (Customer Support Agent) assisting ██████ (Customer) who was having trouble logging into his Texas Precious Metals Depository account.
- ██████ reported receiving invalid login credentials when attempting to access his account.
- Berny guided him to reset his password, but ██████ faced difficulties with expired links and verification codes.
- After troubleshooting, including switching browsers, ██████ expressed his frustration over the repeated issues.
- Berny reassured him that his account was still valid and suggested he contact his Kirk Elliott representative for further assistance.
- The conversation ended with ████d thanking Berny for the help despite not resolving his access issues during the call.

## Transcript

**Berny Klapuch [00:01]**
TPMD, this is Berny. How may I help you?

**████████████ [00:04]**
Hi, yes. My name is ██████████████ and I was trying to log in. I got a notice for my account at the depository, and I entered my password, but it won't take it. They said it's invalid login credentials. I don't know what's going on.

**Berny Klapuch [00:29]**
Okay. If you can open a new page and go to TexasDepository.com.

**████████████ [00:37]**
Let's see.
Come on, let's see.
Okay, wait a minute, take me a minute there.

**Berny Klapuch [00:57]**
Thank you.

**████████████ [01:31]**
Okay, let's see what's...
Okay.

**Berny Klapuch [01:42]**
Okay, and it says world class vaulting across the front page.

**████████████ [01:42]**
Oh
no, wait a minute, wait a minute.

**Berny Klapuch [01:51]**
Okay, choose Texas Precious Metals Depository.

**████████████ [01:51]**
I got Texas Depository, but I got a whole list of stuff here. Different silver companies and stuff.
Let me go through. So that's what I'm looking for.
Okay. Secure precious metals vaulting and IRA solutions. Oh, no. IRA solutions.
No. Home page. Texas Bullion Depository.

TPM001191

**Berny Klapuch [02:25]**

No, sir. Texas Precious Metals Depository.

████████████████ **[02:29]**

Okay, wait a minute.

Okay, it says a gold source on us money metals. No, wait a minute.

**Berny Klapuch [02:45]**

No.

████████████ **[02:50]**

Okay.

Texas Precious Metal Depository.

**Berny Klapuch [03:13]**

Correct, yes, sir.

████████████ **[03:15]**

Okay.

**Berny Klapuch [03:21]**

Correct.

████████████ **[03:24]**

Okay,

is it world-class vaulting?

**Berny Klapuch [03:29]**

And click the login button there.

And put in your information and see what it comes back and tells us.

████████████ **[03:39]**

Okay, login.

Let's see what happens here.

Nothing's happening so far. I hit

**Berny Klapuch [04:11]**

So you click the login button.

████████████ **[04:12]**

it. Okay, it's slow this morning. Here it is. Okay, I put in my email and

**Berny Klapuch [04:15]**

Okay. Correct. Yes, sir. Okay.

████████████ **[04:20]**

now password.

And I'll try to make that visible.

So, hang on a second.

Let's see.

Okay, hit log in. Now I put in my password. This comes up. Invalid login credentials.

**Berny Klapuch [05:26]**

So if you will click that-- is your email address still in there? Click the forgot password.

And then give me your email address that you're using to sign in. Your email address that you're using to sign in.

What is that?

TPM001192

████████████████ **[05:47]**
████████████████████████ at Outlook.com.

**Berny Klapuch [05:53]**
Okay.
So go ahead and click "forgot password." It should send you a password reset.
OK,

████████████████ **[06:10]**
Okay.
Now, okay. I've got to pass away and put my email.
Okay there. And submit.
So it says once you receive email, follow the instructions to change your password.

**Berny Klapuch [06:43]**
so you'll get an email for that password reset.

████████████████ **[06:47]**
OK, so I have to go into email.
Reset your password.
Let's see.
OK, hit set a new password.

**Berny Klapuch [07:08]**
And it will need to be at least 12 digits long.
One upper, one lower, at least one number, and one special character.

████████████████ **[07:13]**
OK.
I have all of those already.
So I said the next thing I do is set a new password. OK. Let me see.
Nothing's happening.
Nope. I just-- I touched set a new password, but nothing's happening.

**Berny Klapuch [08:17]**
So is your--

████████████████ **[08:22]**
Oh, no. It's gone now. It's going now.

**Berny Klapuch [08:26]**
OK,

████████████████ **[08:26]**
It's loading up.
Your password reset code has expired as invalid. Try... Please retry your request. Hello? What's going on here?

**Berny Klapuch [08:42]**
so what browser are you using on your computer?
What browser are you searching with? Is it Google Chrome or is it Safari or Edge?

████████████████ **[08:56]**
No, no, it's...
It's... Oh...
Microsoft, oh man.

TPM001193



**Berny Klapuch [09:17]**
So is it Microsoft Edge that you're using?

**[09:23]**
Yeah, yeah, Microsoft Edge, there you go.

**Berny Klapuch [09:26]**
OK, something in that for some customers, the security settings are not allowing you to access the website. So if you can go to Google Chrome or go to Safari and go to reset your password there.

**[09:44]**
Okay, okay, I'll have to try that then.
Oh, let's see.
It's hard for me to do this, you see. You know, I'm maybe eight years old, so it takes me a while to get all this stuff together. And I'm having a problem with this.

**Berny Klapuch [10:14]**
Okay. Do you have a family member or someone who can come and help you? Okay. Okay.

**[10:17]**
No, I wish I did. I do, but they're working.
Oh, man.
Let's see.
Let's see.
I'm going to settings, see what the **** I can hear.

**Berny Klapuch [11:13]**
Or if you wanted to open a new page and search for Google, where you can click on Google to...

**[11:22]**
Let's see.

**Berny Klapuch [11:27]**
Dress or irate.

**[11:33]**
Google Chrome.
Okay.
Should I set Google Chrome as my default browser?

**Berny Klapuch [12:09]**
If you want to use that even after you do this, then you would want it as your default. That means that would be your browser every time and not Microsoft Edge.

**[12:22]**
Okay.
Okay, it says Google. Now, what do I put in the...

**Berny Klapuch [12:24]**
Yes, sir. Put in TexasDepository.com.

**[12:34]**
Oh, TexasDepository.com. Okay.

**Berny Klapuch [12:37]**
Yes, sir.
Thank you.

TPM001194

████████████████ **[13:04]**

What the **** is going on here?

**Berny Klapuch [13:13]**

I'm

████████████████ **[13:17]**

Oh, come on.

Something,

this, what's going on here?

I got a message over here from Google Chrome. Get it off.

**Berny Klapuch [13:44]**

sorry, a message from Google Chrome what?

Thank you.

████████████████ **[13:49]**

Let me see.

Let me try this all over again.

**Berny Klapuch [14:17]**

Thank

you.

Thank you.

████████████████ **[14:48]**

Okay.

Let's see.

**Berny Klapuch [15:07]**

Okay, go ahead and that's what we want. Yes, that's what we want. And it will say world-class vaulting on the front page.

████████████████ **[15:09]**

Okay, I'm in there.

It's Texas Precious Metals Depository.

Is that going to that?

Okay, I hit that.

It's slow this morning.

Okay, world class faulting.

Okay.

**Berny Klapuch [15:47]**

And then you'll want to go ahead and log in. And it's going to ask you for your email address. And then you'll want to hit the password reset.

████████████████ **[15:47]**

So what do I do next here?

Okay, I hit that.

I did that before and it wouldn't. I know. Okay.

**Berny Klapuch [16:04]**

Or forgot password.

████████████████ **[16:11]**

Okay. I just got to wait for it

to... It's

TPM001195

sometime today.

**Berny Klapuch [16:34]**
Thank

▓▓▓▓▓▓▓▓▓▓ **[16:39]**
Okay.

**Berny Klapuch [17:04]**
you.

▓▓▓▓▓▓▓▓▓▓ **[17:07]**
I don't know why it's taking so long. I hit it a couple of times. Oh, here it goes.

**Berny Klapuch [17:09]**
Thank you.

▓▓▓▓▓▓▓▓▓▓ **[17:18]**
The site can't be reached. Reload.
Oh, brother.
Okay.
What's going on here?
Okay.
Passed email.

**Berny Klapuch [17:52]**
Thank you.
Thank you.

▓▓▓▓▓▓▓▓▓▓ **[18:47]**
Now for password, do I put in the new password or the old one?

**Berny Klapuch [18:50]**
No, sir. You can try the old one to see if it will work on this browser.

▓▓▓▓▓▓▓▓▓▓ **[18:56]**
Oh, okay. Let me see. Let me try it that way. Hang on.

**Berny Klapuch [18:59]**
Mm-hmm.
Okay.
Sorry. Are you...
OK, so it still has your email address in there. OK, all right, click password-- forgot password so we can get a reset sent to you.
And then it should send you another email.

▓▓▓▓▓▓▓▓▓▓ **[19:45]**
No, I won't take it.
Yeah, it's in there.
Okay.
I did that.

**Berny Klapuch [20:06]**
It's like 9:20 AM, our time here.

▓▓▓▓▓▓▓▓▓▓ **[20:11]**
Okay.
What happened to my...

TPM001196

**Berny Klapuch [20:31]**

Thank you.

█████████████ **[20:34]**

Oh man, I don't know what's going on here.

Let's see, wait a second.

**Berny Klapuch [20:59]**

9:20 was the time here. Yes.

████████████ **[21:08]**

Okay.

Your time is 7:06,

9:20. Well it says 7:06 here, so it hasn't come true.

**Berny Klapuch [21:23]**

So what time zone are you in?

████████████ **[21:31]**

I'm in Connecticut, east.

Far east you can get almost.

**Berny Klapuch [21:34]**

OK, so your email should be-- yeah, like you're an hour different. Yeah, so that's the time it should show for your email that was received.

████████████ **[21:41]**

It should be-- it's 1021 here.

No, I haven't got it.

OK, so let's see. Send a new password.

**Berny Klapuch [22:20]**

So it came through.

████████████ **[22:23]**

Let me see.

I can't keep-- I'm sorry, but I keep getting-- your password reset code has expired or is invalid. I got to go through this all over again?

**Berny Klapuch [22:33]**

Thank you.

████████████ **[22:41]**

No, I can't do this. I mean, this is what, third or fourth time this has happened? And I'm not getting anything in.

Yeah, let me see.

Let's see

what happens.

No, I'm just going around circles here.

**Berny Klapuch [23:37]**

Okay, so probably the only thing that I can do to help is to try one more time to see if you can re-sign on starting all over. I'm going to delete everything with this account. You'll need to go in. Instead of logging in, you'll have to sign up.

And go through all of it again to set up an online presence. So if you can verify the physical address for your account.

████████████ **[23:59]**

Okay.

TPM001197


**Berny Klapuch [24:12]**
Yes, your address.

 **[24:13]**
You want me to give you your address?
Oh, it's
█████████████████████████████.

**Berny Klapuch [24:24]**
Okay, and the phone number on file for that account, please.

████████████████ **[24:29]**
Okay, it's ██████████.

**Berny Klapuch [24:34]**
Okay,
so what I'm going to do is I'm going to go into Request, I delete the account, and then you go back through starting all at the beginning at that page, if you'll go to that main page.
Where it says world class vaulting.

 **[25:04]**
It's gone now. Let me see.
Reset new password.
The last
reset password email I got is ██ .
That's the last one I got.

**Berny Klapuch [25:50]**
Okay, well you can delete. I don't know why there's a delay in you getting them. I can't answer that. So we're going to delete everything.

████████████████ **[25:51]**
So I don't know what's happening.

**Berny Klapuch [26:00]**
And you're going to start over as if you were a new customer. So go back to the web page where it's got world-class vaulting.

████████████████ **[26:04]**
Well, um...
Well, I'm trying to get to it.
OK.
It says,
we sent you verification code to your phone number, please. OK.
Enter it below. Verification code. OK.

**Berny Klapuch [26:57]**
Yes, sir, what is the question?

████████████████ **[27:07]**
Is that it?
Hello?
It says, "We just sent the verification code to your registered phone number. Once you receive, please enter it below." And all I have here, all I have here is five.

**Berny Klapuch [27:20]**
No, sir. Are you looking at the email from 721?

████████████████ **[27:30]**

Is that the verification code?

**Berny Klapuch [27:44]**

OK. So none of that's going to work anymore. You can delete those emails because you're going to start over. And the email it sends you is going to be a current time. Correct. So that's why you're going to start over.

████████████████ **[27:46]**

723.

Okay.

Well, I haven't got anything here from you now at all.

**Berny Klapuch [28:10]**

You're going to go to the Texas Precious Metals Depository website where it says World Class Vaulting.

████████████████ **[28:19]**

Okay.

**Berny Klapuch [28:22]**

Let me know when you're there.

████████████████ **[28:25]**

Oh, no.

Something's wrong here. I'm sorry, but there is something wrong here.

**Berny Klapuch [29:37]**

Thank you.

████████████████ **[29:48]**

I don't

**Berny Klapuch [30:09]**

Are you

████████████████ **[30:13]**

know what's going on here. I really don't.

**Berny Klapuch [30:17]**

back at the website?

████████████████ **[30:22]**

No. Yeah,

Texas Metals Depository.

Let me see what that does.

Okay, World Class Vaulting.

**Berny Klapuch [30:36]**

Yes, sir. Don't exit out of that. Leave that one up. And you're going to want to sign up and start over.

████████████████ **[30:40]**

Okay.

Okay, sign up.

**Berny Klapuch [30:46]**

Yes, sir.

████████████████ **[30:52]**

TPM001199



Okay. You have to bear with me because I'm from the old school.

**Berny Klapuch [30:57]**
Well, if this doesn't get through for you, and we might have to have someone come and help you or check your
Your browser and your computer that it's receiving doesn't have some type of security settings that's not allowing it to come through.

**[31:16]**
Okay, it says now email, password, confirmed password, last name is all. Should I fill that all out?

**Berny Klapuch [31:21]**
Yes, sir. Yes, sir. You're starting over, so you've got to fill all that out that it's going to need.

**[31:27]**
Okay.
Okay. Hang on.

**Berny Klapuch [31:31]**
Thank you.
Thank
you.
Thank you.
Okay, so what section are you on now?
Hello? Mr. Thompson?
Are you still there? Hello?
Thank you.

**[34:10]**
Okay.
Sign up.

**Berny Klapuch [34:18]**
Okay, so you filled that in, your email and your password.

**[34:20]**
Wait a second. You know what it says here? An account already exists for that email.

**Berny Klapuch [34:24]**
Okay.
No, because we deleted it, so let me verify.

**[34:34]**
So what do I do now?
Because that's what I got. You got my email there, and the account already exists for this, my email.

**Berny Klapuch [35:03]**
Okay,
try that now.
I verified that it has been deleted, so I'll need you to go through it again to add your information and sign up.

**[35:23]**
Well, you got to go through the whole...
Pardon?
Okay.
Okay. Okay. Let's see.
Okay.

TPM001200

**Berny Klapuch [36:15]**

Thank you.

Thank you.

████████████████ **[37:31]**

Okay. Okay.

Password save for this device, blah, blah, blah. It says sign into Chrome. Should I do that?

**Berny Klapuch [37:44]**

You clicked the sign up button. OK. And what does it tell you?

████████████████ **[37:45]**

Hello?

Yes, I did.

We sent an email to my email.

**Berny Klapuch [37:58]**

Yes, sir.

████████████████ **[37:59]**

Containing a link to verify your email address, please check the box and click on the link to complete the process.

**Berny Klapuch [38:09]**

Okay, so you'll need to go over to your email.

████████████████ **[38:14]**

Okay.

**Berny Klapuch [38:16]**

Don't exit out of this page, but go to your email.

████████████████ **[38:20]**

No, no, I'm just going through...

**Berny Klapuch [38:37]**

Yes.

████████████████ **[38:44]**

Okay.

Oh, it's going to take a bit. I just hit

it. Hit Outlook.

Okay, registration verification.

Okay, I got

the TPMD registration verification. I go into that.

Okay. Verify email address.

**Berny Klapuch [39:56]**

Thank you.

████████████████ **[40:17]**

Okay.

To confirm, I wish to continue.

OK, continue.

It says enable two-factor authentication.

**Berny Klapuch [40:41]**

TPM001201

That's correct. So you're going to either choose your phone to get your six-digit code on or you're going to choose your email address to get your six-digit code on every time you sign in. Yes.

████████████████ **[40:54]**
OK, so I enable two-factor authentication.
I already did. Let's see what happens there.

**Berny Klapuch [41:17]**
And it should ask you to choose which method that you would like. Okay,

████████████████ **[41:22]**
Yeah, it's coming up now.
Log into-- it says, welcome back. Log into your account.

**Berny Klapuch [41:29]**
so log in with the new password that you just put in there.

████████████████ **[41:34]**
OK.

**Berny Klapuch [41:45]**
Thank you.
Thank you.

████████████████ **[42:29]**
OK, select the method that says,
all right, so it says here, mobile number. Should I send a one-time code, my phone number?

**Berny Klapuch [42:44]**
Yes, sir. Yes, sir. Correct. Uh-huh.

████████████████ **[42:50]**
Okay. ████████ . Good. Send a one-time code.
Now it says please enter the code below.

**Berny Klapuch [43:11]**
So check your phone. Did you put your phone number in?

████████████████ **[43:11]**
That'd be my phone number?
Yes, I did.

**Berny Klapuch [43:17]**
All right. Check your phone and see if you received a text with that code.

████████████████ **[43:55]**
Okay.

**Berny Klapuch [44:18]**
Thank you.

████████████████ **[44:41]**
Hello?

**Berny Klapuch [44:41]**
Yes, sir. OK, so you put in the code. Did you-- OK,

████████████████ **[44:44]**

TPM001202



Yes, I did. I put it and I hit it
in. It says invalid or invalid code. ██████
That's exactly what I put in. And it says it's invalid.

**Berny Klapuch [44:58]**
so check your phone again. Check your--
OK, check your phone and see what time that code was sent to verify it wasn't a code from when we were trying earlier.

████████████████ **[45:47]**
It's about two minutes ago.

**Berny Klapuch [45:52]**
Yes, sir?

████████████████ **[45:54]**
It's about two minutes ago.

**Berny Klapuch [46:00]**
OK, so let's go to sign in on the website. Does this give you the option to send a new code?

████████████████ **[46:15]**
It says try a different phone number or method.
This is ridiculous. ██████████, everything's there,

**Berny Klapuch [46:30]**
Okay, let's try again. Go to the website.

████████████████ **[46:39]**
right? Well, I still,
it's SMS verification. That's where I'm at right now. And I put in the verification code, and it says it's invalid. And I only got it a
couple minutes ago.

**Berny Klapuch [46:46]**
Okay.
Okay, so your phone number is put in there. The correct phone number is in there.

████████████████ **[47:01]**
Yeah, ██████████. That's the right number.
And the verification code is the right one that they gave me.

**Berny Klapuch [47:13]**
Okay, so there's something missing because I don't show that the phone number has been
set up to your email account. So let's go back to the webpage.
The Texas Precious Metals Depository where it's got world-class vaulting.
Okay.

████████████████ **[48:11]**
Oh, man.
I'm not having any luck. I'm sorry. There's something screwed up here. I don't know what's going on.
I really don't. I tried everything and I just can't get through, you know.

**Berny Klapuch [48:54]**
Okay, so as soon as you're able to have someone assist you, if you can call back in for any information that you would like,
you can definitely call your Kirk Elliott representative to have them give you any information on your account.

████████████████ **[49:10]**
Okay, one question now.

TPM001203



My account is still viable, is that right? All the information is there and all that stuff?

**Berny Klapuch [49:21]**
Yes, that's what we verified your address and everything.

 **[49:26]**
Okay, so that's still
good. Okay.

**Berny Klapuch [49:32]**
Correct. Yes, sir.

 **[49:34]**
So if I want to contact you, just call this number and I'll call somebody.

**Berny Klapuch [49:39]**
Now, your account, if I'm not mistaken, is with the Kirk Elliott Group. Is that correct? You're through the Kirk Elliott Group?

 **[49:49]**
Pardon?
You're kind of breaking up a little bit.

**Berny Klapuch [49:53]**
Your account you opened through the Kirk Elliott group?

 **[49:58]**
Yep.

**Berny Klapuch [49:59]**
Okay, so you would contact your Kirk Elliott representative for any information on your account. They would be able to get that to you. Yes, sir. Okay? Yes, sir.

**[50:05]**
Okay. Okay. I'll do that. Yeah. I think that... You know what? I know you've been more than helpful, but something or...
Something is not going right here. I don't know what the heck it is. I will do that.

**Berny Klapuch [50:15]**
Yeah, it's like there's a delay.
Okay, sounds good. Yes, sir. Yes, thank you very much. You have a good day now. Bye-bye.

**[50:22]**
Yeah. I really appreciate it, and thank you very much.
Yeah. You too, honey. Bye-bye.

# Inbound call with ███████████████ in queue Trading

## Call Details

Date: January 13, 2026 at 08:52 PM UTC
Duration: 19m 58s
Participants: ███████████████ Matthew Lemke

## Summary

- Matthew (Sales Representative, Texas Precious Metals) answered a call from ████████████ (Customer) who sought information on Silver Eagles pricing and was looking to swap gold points for these coins.
- During the discussion, they confirmed ██████'s previous order history and his interest in selling gold coins while purchasing Silver Eagles.
- Matthew explained the selling process and pricing, helping ████t understand the cash requirements needed for the transaction.
- ████t expressed a desire for good pricing and indicated potential for future purchases if satisfied with the service.
- They concluded the call by confirming the details of the upcoming pickup appointment and the transaction specifics, with both parties feeling positive about the outcome.

## Transcript

### Matthew Lemke [00:01]

Texas Precious Metals, this is Matthew, how can I help you? I'm doing good sir, how are you doing? Yeah, I've got you down now.

### ████████████ [00:06]

Matthew, this is ████████████. How are you doing?
I'm doing fine. You ought to know that name by now. Okay, now, here's the deal. You're Silver Eagles. You're assorted.

### Matthew Lemke [00:23]

Yeah. Oh. Let me first - I know you're not confirming an order here, but let me get you pulled up. I'd rather have you pulled up here just to -

### ████████████ [00:29]

What kind of good price can you give me on those?
What I'm trying to do is I want to do a swap. I've got three of those gold points.

### Matthew Lemke [00:44]

Okay. Okay.

### ████████████ [00:53]

I need to know what I can get for those.
And then I'll just pay the difference in cash. It's just depending on if you can give me a good price on those eagles.

### Matthew Lemke [01:01]

Good. Oh, yeah, yeah. I got you.
Your phone? I've got a weird connection. I have a hard time hearing you sometimes. What was it you're interested in selling today? Okay. Gold coins. Are they our Texas rounds? Or...

### ████████████ [01:10]

Okay.
I have three of the 2018 Gold Points.
Your Texas Rounds, the ones you sold. I'm in the system. You should know.

### Matthew Lemke [01:26]

Yeah, no, I know that. I just have to get it from you verbally. So you're looking to sell that and then put the remainder or put it



into Silver Eagles. Got it. Okay. If it's a good price. All right. Yeah. Yeah.

**[01:35]**
But if you can give me a good prize. I brought a lot of prize, whatever the **** you call it. Because it always gets busy.
Oh, that work, and then you can't hear, and then, you know, I was watching this price, but

**Matthew Lemke [01:51]**
Yeah. Okay. Let me get you pulled up here. I think you've spelt your last name a bazillion times, but can you do that for me again? Yeah.

**[01:53]**
I don't know. They're probably going to put another margin to bring this price down again. I'm just - it's hard for me to get in, because y'all get busy, and you know how it is.

**Matthew Lemke [02:15]**
, there, okay. Got you.

**[02:26]**
And well, let's start with what you can find.

**Matthew Lemke [02:51]**
Okay. All
right.
Oh no, I've got you all. There's no need to hunt you down anymore. I've got you here. I'm just trying to kind of work up some numbers here. But have you not sold to us before?

**[03:09]**
I actually got one of the receipts in my pocket. If that'll help.
Okay.
Oh, wait. No, I haven't sold to y'all before.

**Matthew Lemke [03:31]**
Ah. Well, let me... All right. Yeah. Okay. Mm-hmm.

**[03:34]**
But we're going to have a lot of business going forward if you treat me right.
That's the problem. Because I'm trying to liquidate some other stuff because I will be buying substantial amount going forward. It's just right now I can't.

**Matthew Lemke [03:55]**
Well, give me one minute and let me get you in the selling system. There's no commitment here if we end up not making a deal, but I just need to have all the numbers for you. I can't just get you kind of like a... Yeah. Yeah.

**[03:55]**
But I can.
That'll be great.
You were the first agent I spoke to that I spoke to from. You should remember that when y'all were in the old building.

**Matthew Lemke [04:19]**
Yeah, that was quite a long time ago. I saw that. I placed an order for you about two or three years ago.

**[04:23]**
Yes, it was.

**Matthew Lemke [04:28]**
I've probably spoken to about 10,000 people after that. Oh, yeah. Away the prices are going. You are not wrong. All right.

██████████████ **[04:32]**

I'm sure you have. I mean, you'll probably speak to that much within the next two months.

They're crazy as ****.

**Matthew Lemke [04:45]**

I think I've told you this before, but I actually work in the depository now. I actually don't work on trading all the time, but they had to pull me over here to help out just because it's been so busy. So if that tells you anything.

██████████████ **[05:01]**

Okay, well, since you said that, those coins that y'all have at the depository, I was trying to get clarification. Who sells those?

**Matthew Lemke [05:08]**

The Texas Gold rounds? Texas Bullion debuts?

██████████████ **[05:11]**

The depository coins.

You know, it's a different coin altogether. It's only one of the sites, the silver and the gold.

It has like a,

yeah, it's Texas Bullion Depository. It was on one of the websites.

**Matthew Lemke [05:28]**

Yeah, that's actually one of our competitors, so we don't sell that. Yeah. Yeah.

██████████████ **[05:33]**

It has a state of Texas that's a very attractive coin. And on the backside, it has a wreath.

Really? Well, ****, we don't want to do that, do we? I thought y'all were one of the same. Okay.

**Matthew Lemke [05:53]**

No, no, no. We don't like them. So let me... Yeah. Yeah.

██████████████ **[06:00]**

I just like what the coin looks like in that...

I am an artist in the background, you know, amateur artist. So I have a, you know, I really, when I first started, I got the St. Augustine, the gold, ****, I bought many, many years ago, I bought several of those.

**Matthew Lemke [06:18]**

Yeah. Okay. All right. I'm almost there getting you some numbers here.

██████████████ **[06:29]**

Okay.

**Matthew Lemke [06:38]**

Since you weren't in the system to sell to us, I didn't have that ready.

So for the gold side, for Texas Gold Rounds, or 2018s, for this piece, and I'll give you the spot at the end. We're not going to do this right away, but spot plus $5.00.

So it's going to be whatever that spot is when we get to the end. Yeah. So let me figure out my Silver Eagle situation here.

██████████████ **[07:03]**

It was somewhere around 4616 or somewhere along in there. Anyway, go ahead.

But there is one more question. Yeah, I do buy the Eagles as well back.

**Matthew Lemke [07:19]**

What? I'm sorry, what? Yeah, yeah, yeah. Mm-hmm.

██████████████ **[07:24]**

I mean, y'all buy all the other coins back as well that I purchased from you? In other words, if I... Okay, I want to get clarification on that and I assume that's the same thing as one of our spots.

TPM001207



Okay. Anyway,

**Matthew Lemke [07:41]**
So, oh man, 45.

 **[07:56]**
thank you, Tom.

**Matthew Lemke [08:03]**
Okay. Got it. So, I don't think you told me. You're aiming for 200 Silver Eagles. Okay. That's very helpful. I didn't know that that's what you were doing. Okay.

 **[08:04]**
Just so you know, I'm going to bring some extra cash along to get a full 200.
This should make it easier on calculating. Easier.
Exactly.

**Matthew Lemke [08:24]**
Okay. Right. And you haven't done cash this year yet? I know it's only the 13th, so...

 **[08:25]**
Yeah. Well, I was - well, you know, this is the first time we're going through this process together.
I did a little cash, but the rollover is not going to be considered cash. Is it a swap?

**Matthew Lemke [08:38]**
Okay.
Yes, yes.
So the cash that you use to pay for this difference will be applied to your purchasing on $10,000 per year per household.
So...

**[08:58]**
Okay. Well, okay. Let me figure it out. So how do we do this? Because those coins are going to be over $10,000.

**Matthew Lemke [09:10]**
Well, no, no, no. So, I'm sorry. Maybe I missed a mis-explained that. So, like, for right now, I haven't done any pricing on the Silver Eagles. You would need to bring cash roughly about $5,500. So, approximately, yeah, right now.

**[09:11]**
I've got three.
I had
that number somewhere in my mind. I knew I had to bring cash. So the only thing I bought cash, that's the last, I bought, I don't know.

**Matthew Lemke [09:33]**
Yeah.

**[09:48]**
January. All I bought was the state
of Texas with the blue bonnets. I bought that and then also 10 ounces.

**Matthew Lemke [09:55]**
Okay. Yeah, you'll probably be fine with this being just $5,500. Yeah, I mean...

**[10:09]**
And yeah,
I should be under.

TPM001208

**Matthew Lemke [10:16]**

I'll double check that. I mean, one moment here. Yeah, oh yeah, yeah. I mean... So you did one order January 2nd. Okay. And you spent $1,197 even, actually. So yeah, so you will be around $7,000.

 **[10:18]**

Yes, you'll be able to double check where I am, aren't you?

Okay, I want to keep this right.

That makes sense.

**Matthew Lemke [10:41]**

Six, seven thousand dollars for the year. Yes sir. All right let me let me get this all closed up here. We'll get this taken care of see if you want to execute it. So yeah I'm having to bounce around here. I am giving you the best price on the website so

 **[10:45]**

All right, that'll be fine.

How much per coin?

**Matthew Lemke [11:07]**

So that is right now, if you bought 1,500 of them, I'm giving you that price. So they're $95.88 apiece. So $95.88 apiece. Put your total to $19,176 even. So let's do that. $19,176.

7,6 minus 13,741.32. So you would need to bring in $5,434.68.

**[11:50]**

Okay. Your eagle is still at 95?

**Matthew Lemke [11:51]**

95, and of course it's going up now, but I have you at 95.88. Yes. Okay, all right. Let me get it all locked in. I'm assuming you're bringing it all in person, so one second here. Okay.

**[11:59]**

Okay. All right, let's go ahead and do
it. Yes,

I'm going to pay that in cash. I'm coming to get up, hopefully Friday afternoon.

Because I know you are busy, but Friday afternoon late would be great.

**Matthew Lemke [12:16]**

Okay. Give me a few minutes here.

**[12:27]**

And watch good.

**Matthew Lemke [12:50]**

Okay. Okay. Okay. And then...

**[12:59]**

And get it all lined up before you execute. I got one question.

**Matthew Lemke [13:03]**

Okay, go ahead. Yes, sir. I can't say that for sure. You might get all the same dates, but you might get a couple mixed.

**[13:06]**

The Eagles, they're assorted. That's going to be any year from like 12, 14, 18, or whatever. They're going to be in tubes. If they're going to be in tubes on the same date,

in that tube,

**Matthew Lemke [13:28]**

I have 21,000 Silver Eagles, so I can't tell you what it's going to be. Yeah. Yeah. Sure. Yeah.

TPM001209

████████████ **[13:32]**

Okay. I mean, I know you've got plenty of them. You know, people don't like to pay the premium, but this will probably be the last time I'll pay for Eagles, but I will come hard after a billion later. But these are not the ones that are... I wouldn't say uncirculated. I wouldn't say uncirculated.

Matthew Lemke **[13:54]**

Yeah, yeah, so they're called BU. They're not varied condition. Yeah. Yes, sir, yeah, they are still the BU's, yes. Let's see. Oh, 5, 434.

████████████ **[13:56]**

Yeah, various conditions. That's the one I was kind of worried. The BUs.

Matthew Lemke **[14:14]**

6, 8, in cash. Okay. Submitting that one. All right, all right. So it looks like I've got both of my orders completed. Let me look at my appointments here.

Can you do 215? Okay. Okay.

████████████ **[14:44]**

Okay.

Let's see.

1030.

Yeah, I can do that. I could run a little late, but I think I can make it.

Matthew Lemke **[14:59]**

Okay, yeah, if you do, just give us a call. Give us a heads up. And we'll be happy to help you out.

████████████ **[15:01]**

It all depends on the topic.

All right, that'll be fine.

Do you need to send me a text on my phone that this,

the appointment for the pickup?

Matthew Lemke **[15:22]**

We can't send text messages. Yeah, we don't have the ability to send text messages. I can email you if you want of the appointment time, if that's what you'd like.

████████████ **[15:26]**

I'm sorry, I just hit this phone. Go ahead.

Yeah, just on the information. You know what? You don't even have to do that. Don't worry about it.

Matthew Lemke **[15:44]**

Okay. Okay. All right. What's that?

████████████ **[15:51]**

Anyway, you know what they're going to do tomorrow,

right? They're going to raise margin requirements. This family's going to go down like five bucks. Well, they did a margin increase in margin.

Matthew Lemke **[16:06]**

Oh yeah? You think so? Yeah. Yeah. Wow.

████████████ **[16:16]**

And I did nothing for about four hours. What I'm saying, it took four hours to wipe it out.

To back where it was. So the momentum is strong is what I see. It's just that I don't see any movement in your **** coins.

Matthew Lemke **[16:25]**

TPM001210



Yeah. Inventory for which or anything?

 **[16:35]**

So how's your inventory?

I mean, a lot of your 10-ounce and 5-ounce bullions are gone, at least on the website.

**Matthew Lemke [16:45]**

Yeah, we're out of stock on a lot of that 10-ounce, yeah. Mm-hmm.

 **[16:55]**

The 100-ounce are supposed to have been gone, too. I don't know if that's been updated.

**Matthew Lemke [17:02]**

Yeah, we're pretty low on both of those. I think I have some buybacks coming in soon for, yeah, I've got buybacks coming in for 100 ounce. I don't really have an ETA on that, unfortunately, but, and I do have some 10 ounce coming in as well, actually.

**[17:20]**

Oh, I've got something I've got to ask you a question for. I didn't even think about it.

**Matthew Lemke [17:23]**

Mm-hmm. Mm-hmm.

**[17:25]**

And I do have an Englehart 100 outs

that further down the line if I want to swap it for an Eagles or whatever. I didn't get the Englehart bar from y'all. Okay. I forgot. Who the ****? Oh, I got that from Monarchs.

**Matthew Lemke [17:43]**

So generally, and I want to emphasize the generally, we're kind of close to spot.

**[17:50]**

Anyway, that was way before I started trading with you guys. So what do y'all do for bullion prices and silver?

**Matthew Lemke [18:06]**

You know, spot minus $1.50, maybe a little closer than that. But most all of the bars right now, we're actually paying minus $4 for a lot of our things. So across the board, it's minus $4 an ounce. But that's just in the market right now is what we're in. So when you get closer to pull the trigger, it might be close to spot. So...

**[18:25]**

Yeah,

**Matthew Lemke [18:30]**

Yeah.

**[18:30]**

this is way further from here. We'll just see what happens, but I wanted to get this taken care of because I've got to be able to sleep at night.

It's just that I don't have time to sit on and watch this all day long because the movement's so crazy is what I don't like. And it's hard to set up a perfect entry. So I know I'm getting killed going forward. But before I get off of it,

**Matthew Lemke [18:54]**

Alright, I agree. Yeah.

**[19:05]**

Get off with you. So how are you selling? I mean, what is the percentage you're buying and selling right now? Are you still getting more? Well, right now at this price, you might have had more sellers come in, but yeah.

TPM001211

**Matthew Lemke [19:14]**

Yeah, man, it's huge. Yesterday and today, yesterday more so, I think we did about 100 plus liquidations, which is a lot. When you're thinking about dollar amount, we had a lot of liquidations yesterday. And Monday, Tuesday, Wednesday was really, really busy with a lot of both.

Actually, I don't really have a percentage of both buying and selling, but today and yesterday, it just feels like it's all been selling.

▮▮▮▮▮▮▮▮▮▮ **[19:47]**

Okay. All right. Well, that takes care of it. I will see you 2.30 Friday.

**Matthew Lemke [19:48]**

All right. You have a good day, sir. Bye.

▮▮▮▮▮▮▮▮▮▮ **[19:55]**

You too as well. Bye-bye.

TPM001212

# Inbound call with ██████████████ in queue TPMD

## Call Details
Date: January 14, 2026 at 04:11 PM UTC
Duration: 1m 19s
Participants: ██████████████ Afton Chacon

## Summary
- Afton (Customer Support Representative) assisted ██████ (Caller) by clarifying that Texas Precious Metals is different from the Texas Bullion Depository, and suggested that ██████ search online for the correct contact number.

## Transcript

**Afton Chacon [00:02]**
TPMD, this is Afton. Help me help you.

 **[00:05]**
Yes, I was looking on the website and also on the website for the Texas Bullion Depository. Is this the company that manages the Texas Bullion Depository or not?

**Afton Chacon [00:07]**
No,
we are not. That is a separate depository.
That

██████████████ **[00:23]**
Okay. Well, TPM,

**Afton Chacon [00:27]**
is Texas Precious Metals.

██████████████ **[00:31]**
and that's a different company?

**Afton Chacon [00:32]**
Yes, sir.

██████████████ **[00:35]**
You don't know how I get in touch with them, do you?

**Afton Chacon [00:36]**
How to get in touch with Texas Precious Metals or the other depository? Yes,

██████████████ **[00:44]**
Texas precious metals.

**Afton Chacon [00:47]**
so you're needing to speak to a trader to sell metals or purchase metals or... Okay, so I...

██████████████ **[00:52]**
No, I need to find out about the operation of the Texas bullion depository. I have some questions.

**Afton Chacon [01:02]**
You should probably Google that number because we are not the same depository. We are Texas Precious Metals Depository. That is a different depository.

██████████████ **[01:11]**

TPM001213

Okay, well, I sure appreciate it.

**Afton Chacon [01:12]**
Yes, sir. You have a wonderful day. Thank you. Bye-bye.

███████████ **[01:16]**
Thank you so much. Bye-bye.

TPM001214

# Inbound call with ███████████████████ in queue TPMD

## Call Details

Date: January 15, 2026 at 08:21 PM UTC
Duration: 14m 52s
Participants: ███████████████ Susan Aschenbeck

## Summary

- ███████████ (Customer) reached out to Texas Precious Metals Depository for assistance regarding her IRA account and the possibility of transferring metals to a non-IRA account.
- Susan Aschenbeck (Customer Support Representative) provided clarity on the lack of affiliation with other depositories and outlined the necessary steps for transferring metals.
- ████ expressed her frustration with Strata's contact issues, while also indicating a desire to consolidate her assets in Texas.
- Susan confirmed the potential for a nonprofit to open an account and explained the various requirements for account types.
- The conversation concluded positively, with ████ thanking Susan for her help and guidance.

## Transcript

**Susan Aschenbeck [00:01]**
I'm

**███████████████ [00:05]**
Hi, this is . I'm sorry, I'm doing something wrong here.

**Susan Aschenbeck [00:07]**
sorry,
it cut out. What was the

**███████████████ [00:15]**
██████████ .

**Susan Aschenbeck [00:15]**
name?
████████ , okay.

**███████████████ [00:20]**
Okay. I have a few questions. Okay, there's Shiner and there's Leander, right? There's two different depositories.

**Susan Aschenbeck [00:31]**
The only depository -- this is Texas Precious Metals Depository. We are not affiliated with another location in Texas.

**███████████████ [00:40]**
But there is another location in Texas, and I get you guys mixed up all the time because I have metals at both places. It's driving me crazy.

**Susan Aschenbeck [00:44]**
Oh, I'm sorry. I meant to say that we are not affiliated with them. Okay.

**███████████████ [00:53]**
Yeah, okay.
Okay. So my question, we have, or my husband has, and I'm over whatever you call it. Anyway, an IRA through Strata with the metals stored with you guys.
So if we want to take them out of the IRA and we don't want them shipped to Timbuktu, can they just be transferred from one account to another account with you all?

**Susan Aschenbeck [01:15]**



Okay. So if you had a Strata account and you were wanting to -- and you have a
A non-IRA custodian account with us? Yes, you could have the ability to request that Strata transfer your metals from your IRA custodian. If it's all good with them and it's allowable, you would request to have it transferred to us. But you would have to have a depository account with us, a non-IRA. Do you already have that or are you looking into that?

 **[01:51]**
I don't know. Right now I'm looking into it.

**Susan Aschenbeck [01:53]**
Okay, okay, yeah, no, that makes sense.

 **[01:56]**
I don't think -- I think everything we have with you guys
Is just the IRA. And then at SHINE -- no, you are SHINER. At Leander, we have the non-IRA. And then somewhere in Utah or Nevada or who knows where, we have more. We'd

**Susan Aschenbeck [02:05]**
We
are Shiner, yes, ma'am. Uh-huh. Ah.
Oh, goodness.
Okay, all right, no, that's understandable. Um...

 **[02:23]**
like to have it all in Texas.

**Susan Aschenbeck [02:25]**
That makes sense. So if you were wanting to create, let me double check just to see on my side. So can you spell the last name for me?

 **[02:35]**
It's ████████████████ .

**Susan Aschenbeck [02:40]**
Okay. And what would the first name be under?

 **[02:44]**
The IRA is under ██████████████ .

**Susan Aschenbeck [02:47]**
Okay.
Okay. I do. Go on.

████████████████ **[02:50]**
Oh,
I had some kind of number. ████ , account number ████ , is that

**Susan Aschenbeck [03:00]**
Let me look that up. One moment. Let me see if that's our...

████████████████ **[03:03]**
-- that's under
a sticky note on my thing.
I'm on a PDF file.

**Susan Aschenbeck [03:12]**
Okay, so when I'm searching ████ , I am not pulling up an account by that name. So,

TPM001216

▮▮▮▮▮▮▮▮▮▮ **[03:26]**

What about ▮▮▮▮▮▮▮▮▮▮▮▮▮?

**Susan Aschenbeck [03:28]**

let me look that up.

I am not seeing a ▮▮▮▮▮. In this situation, if you were... Now, okay, I guess the thing would be, strata should definitely know where all of your metals are stored, but I'm not seeing that name. That doesn't mean that...

We definitively don't have one, a non-IRWA one, but I'm not seeing it when I pull it up if it would be under that last name, ▮▮▮▮▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮ **[04:05]**

It would be, yes. And we may just have the IRA there. There may not be a separate,

**Susan Aschenbeck [04:05]**

Okay.

▮▮▮▮▮▮▮▮▮ **[04:14]**

you know, non-IRA account with you all yet.

**Susan Aschenbeck [04:17]**

Okay. Okay. So if you were wanting to do that and you were not dealing with an advice,

If you had been dealing with an advisor, you would go through them. But if you were wanting to create a direct TPMD account, you would go to TexasDepository.com and then you would select the sign up option.

▮▮▮▮▮▮▮▮▮▮ **[04:38]**

Okay.

And this way we wouldn't have to pay a ton in shipping it all over the place, right?

**Susan Aschenbeck [04:48]**

Sorry, one moment. I was trying to fight a sneeze. Okay. So...

▮▮▮▮▮▮▮▮▮ **[04:52]**

I understand. Me too.

**Susan Aschenbeck [04:54]**

So I can tell you if you kind of have a ballpark idea if you were considering wanting to store with us, to give you an idea of what it would cost to store with us, do you have an idea of what you would want the value that you'd be storing? Okay. And is that primarily silver or gold?

▮▮▮▮▮▮▮▮▮ **[05:11]**

Well, right now it's 600,000.

Oh, it's silver. I've got 5,000 ounces of silver.

**Susan Aschenbeck [05:18]**

Okay. No, that's okay. So a $600,000 account balance for silver would be approximately $200 per month for us.

▮▮▮▮▮▮▮▮▮▮▮ **[05:33]**

Okay. Well, that's not exactly what I'm looking for. I just meant having it shipped from one depository to another because

Some cases we had to have it -- and I may have made a mistake on this -- but try to shift it to our house. And then I had to pay again to have it shipped someplace else. No.

**Susan Aschenbeck [05:46]**

Oh, okay. So here's the thing.

If you were wanting to store with us, you would go create the storage account and then Strata could instruct the other depository or however it was going. Strata would let us know what was going on. But as far as just being shipped to us and us not store it, that is not an option because it wouldn't be like a metals are shipped here and then you pick them up here if they

TPM001217

were not stored.

Purchase from us are not going to be used for if we weren't going to be storing the metals. So I just want to make sure I understand what you're asking. Okay. That's okay. Okay. So...

████████████████ **[06:30]**

I'm not being clear here. No.

I don't want to ship it anywhere. I just want to leave it where it is and not have it in the IRA.

Correct.

**Susan Aschenbeck [06:47]**

So if you were, and you're talking about the metals that are currently here, the strata metals that were here with us? Okay. If you are wanting to not have them shipped and you are wanting us to store them, that would be the option. The other option, okay.

Yeah, so if you're wanting, there's, you can, and Strata should be able to, you know, tell you your different options, but if you're wanting to have them shipped at home or to wherever, they would be letting you know the cost of that. If you were wanting them to be stored here, I do know that if they are stored here, in order to not incur the, no, excuse me,

I guess I want to know what the end objective is. You want them here, but you don't want them to be in the Strata account.

████████████████ **[07:37]**

I do not want them in my possession. No. Okay.

**Susan Aschenbeck [07:37]**

Okay. Okay. All right. So then you could tell Strata that you wanted to have an account here, but

You would need to be creating a storage, I mean, a non-IRA custodian account with us in order to do that. Oh, goodness.

████████████████ **[07:59]**

Strata no longer has a telephone number. In fact, I have their phone number in my phone, and it doesn't work anymore. So I know. That's why I called you all first.

**Susan Aschenbeck [08:14]**

Oh, that's not fun. Okay. So when I go to their website and looking for the contact us information, I do believe, let's see if there is.

████████████████ **[08:16]**

No.

Excuse me.

**Susan Aschenbeck [08:31]**

It does, if you already have an account, submit a service request.

Okay, so the number that they have on their website is the 866-928-9394.

████████████████ **[08:56]**

That's the one that does not work.

**Susan Aschenbeck [08:58]**

Oh, goodness. Well, that is the one that we have as well. So I do apologize. I don't have a number other than that. That is their main line.

If it's not working, then maybe it's down because

████████████████ **[09:15]**

Yes. That's what I'm hoping. It's not -- I don't see it. Did you just get that off their website or did you get it out of your info?

**Susan Aschenbeck [09:19]**

I

got it off of their website, but I had to make a few selections to get there.

███████████████ **[09:30]**

Okay. Where did you go? Because I'm on their website too.

**Susan Aschenbeck [09:31]**

Okay. Okay. All right. So when I go to strata, when I go to stratatrust.com, and then I was at the Contact Us section, and then

███████████████ **[09:35]**

I got a contact. Okay.

**Susan Aschenbeck [09:44]**

It's the option there's an I'm getting started and then there's I already have an account. I selected that. And then once I scroll down to the very end of that page where you normally would fill out all their questions, there's prefer a call or meeting and it gives me that option for that phone number that I just gave you or you have the ability to book a meeting.

███████████████ **[10:04]**

Hold on. I don't see the prefer
phone call.

**Susan Aschenbeck [10:14]**

Okay. It could be a computer setting, I'm not sure, or like a browser setting, but this is just, you know, their main website. This is... Yes,

███████████████ **[10:16]**

Where is that?

What you're seeing. Okay. That's where I am too.

Okay, yeah, it just says submit a service request. Well, I don't want a service request. I want to talk to somebody. Yeah.

**Susan Aschenbeck [10:31]**

ma'am. Yes. And then I did have to scroll down all the way to the bottom of the page, so I'm not sure.

███████████████ **[10:44]**

Well, I'll look at it some more. But you've told me what I need to know. Oh, one more. Okay, I'm done with that topic. This is a new topic, okay? Okay.

**Susan Aschenbeck [10:54]**

Okay. Yes, ma'am. Forget everything we were talking about. Okay. Yes.

███████████████ **[10:55]**

So drop everything you've been thinking. Okay. All right. Can a nonprofit open an account with you?

**Susan Aschenbeck [11:06]**

Let me see. I do believe that a nonprofit can create an account, but we would not be holding. I mean, one moment. Let me double check on that. It can be created, but I mean, the taxes, that would be all their responsibility. We do not handle any of like the government responsibilities.
Reporting or anything for that. There are, if you at TexasDepository.com, there is in the sign up section, you should be able to see the different options.

███████████████ **[11:30]**

Okay. Okay. Yeah, that's fine. I just didn't know if you all required it to be an individual person with a social security number or if a nonprofit with an EIN could open an account.

**Susan Aschenbeck [11:51]**

If somebody was wanting to create a joint account versus a trust account versus a sole account, well, that would be you would be in the sign up option and then you would be going through. So if the account was going to be created, you know, as you

███████████████ **[11:57]**

I'm back on your website. Where do I look?

TPM001219



**Susan Aschenbeck [12:12]**
However, if you were wanting to set it up, you would set it up as yourself. If you were, and if another person were setting up a joint account, so it would prompt you through those steps as you go. And then if you were wanting to create an account with us, there are at least two separate pages depending on more. If there was a trust, we'd need additional information.

**[12:24]**
Okay. I think that answers my question.

**Susan Aschenbeck [12:37]**
But there would be the agreement that would be filled out and then there also would be the ACH form that would need to have a driver's license and a voided check for the monthly storage fees to be drafted from. All right. I mean, for...

**[12:50]**
Oh, okay.
Okay. But the driver's license, is that the person who is paying it or the --
These are hard questions.

**Susan Aschenbeck [13:03]**
If it were an individual signing up for themselves, it would definitely be that person. But if it was something else, it would be... I mean, there's different documents that are needed for different type situations.

**[13:14]**
Yes, okay. Okay, good, good. So it wouldn't have to be a driver's license. Got it.
Because it's not a person, it's a foundation.

**Susan Aschenbeck [13:24]**
All right. Well,

**[13:25]**
So, okay. That is all I need to know, I think. And then again,
Okay. We just keep transferring from one account. Can we take it from a one -- well,
so we take it out of the IRA and put it into a person, and then we take it from the person and put it into a foundation?

**Susan Aschenbeck [13:49]**
You would have to check with the IRA custodian to see as far as how that would play out. I would check with them. And I just know as far as Texas Precious Metal Depository, we don't give any legal or financial advice. So, I mean, I would be asking Strata that. And then if you have somebody that you consult with professionally,
We can't give any professional advice in that matter, but if you were wanting to create an account with a storage account that was not through the IRA custodian, you could do that, and Strata could, if everything worked out the way it was supposed to, they could transfer those to the account that

**[14:13]**
Sure. Yes. Yes. Okay.

**Susan Aschenbeck [14:33]**
To the non-IRA account here.

**[14:40]**
Yeah, it's confusing. Okay. Thank you. Thank you for the information. I appreciate your

**Susan Aschenbeck [14:40]**
All
right. You're very welcome. You have a great day.

**[14:49]**
help. You too. Bye-bye.

TPM001220

**Susan Aschenbeck [14:50]**
Thanks. Bye.

TPM001221

# Inbound call with █████████████████████ in queue TPMD

## Call Details

Date: January 20, 2026 at 03:25 PM UTC
Duration: 1m 28s
Participants: ████████████████, Berny Klapuch

## Summary

- ████████████ called to confirm his silver deposit with Texas Precious Metals through Allen House Metals, expressing concern about not having an account.
- Berny provided information about the location of Texas Precious Metals and other related depositories.

## Transcript

**Berny Klapuch [00:01]**
This is Bernie. How may I help you?

**█████████████ [00:05]**
My name is █████████████, and I believe I have silver deposited with you through Allen House Metals.
And I want to confirm that because I have no account with you, and I don't have an account number with you. And I have some concerns about whether the money's really there.

**Berny Klapuch [00:29]**
Yeah, I'm not familiar with the Allen House medals that you're speaking of, but...

**█████████████ [00:35]**
Okay. I may have the wrong deposit. Is there another depository in Texas?

**Berny Klapuch [00:38]**
Yes, sir, there is. There's a depository in Leander, Texas.

**█████████████ [00:46]**
In Leandre, Texas. Okay.

**Berny Klapuch [00:47]**
Yes, sir.

**█████████████ [00:50]**
Look that up.
But you don't have any business with that.
Is there one that goes by like IDS?

**Berny Klapuch [01:01]**
Yes, sir.

**█████████████ [01:04]**
Okay. Is that Leandre?

**Berny Klapuch [01:06]**
I think so. I'm not really sure. I know there is one in Leander. We are in Shiner, Texas, where Texas precious metals
Sure. Yes, sir. Thank you. Have a good day now. Bye-bye.

**█████████████ [01:15]**
Okay. Okay.
So it's IBS as the initials. And I kept hearing them say, you've been most helpful. Thank you very much.

TPM001222

# Inbound call with ████████████ in queue TPMD

## Call Details
Date: January 20, 2026 at 03:36 PM UTC
Duration: 1m 11s
Participants: , Afton Chacon

## Summary
- During the conversation, Afton (Customer Support Representative) informed ████ (Customer) that Texas Precious Metals Depository operates privately and does not notify the government about deposits, addressing his concerns about tax reporting.

## Transcript

**Afton Chacon [00:01]**
TPMD, this is Afton. How may I help you?

**████████████ [00:04]**
Yes, I hope so. I'm still asking questions. The next question I wanted to ask is, is this, when we deposit, does notification go to the United States Treasurer's Office and then we have to pay taxes on what we deposit?

**Afton Chacon [00:24]**
No, ma'am. We are privately owned. We do not report to the government.

**████████████ [00:31]**
Okay. You're privately owned as to who owns it.

**Afton Chacon [00:35]**
So we have a family here that owns it. By privately owned, I mean we are not run by the state.

**████████████ [00:42]**
Okay, even though it was set up by the state, correct?

**Afton Chacon [00:45]**
This is not a state depository, no ma'am.

**████████████ [00:51]**
Is this the Texas Depository?

**Afton Chacon [00:54]**
This is Texas Precious Metals Depository.

**████████████ [00:58]**
Okay, all right. So nothing goes anywhere. It stays there,

**Afton Chacon [01:02]**
Correct, yes ma'am.

**████████████ [01:03]**
the information. Okay, thank you very much. I appreciate it. Bye-bye.

**Afton Chacon [01:07]**
Yes ma'am, you have a wonderful day. Thank you, bye-bye.

**████████████ [01:09]**
You too.

TPM001223

# Inbound call with ████████████ in queue Trading

## Call Details
Date: January 20, 2026 at 05:13 PM UTC
Duration: 2m 29s
Participants ████████, Kyle McCord

## Summary
- In the conversation, ████████ inquired about a potential gold depository in Round Rock, but Kyle (Customer Service Representative, Texas Precious Metals) clarified that there isn't one and provided details about their depository in Shiner and others in Texas.
- ████ sought more information about the Leander depository's fees but Kyle indicated he did not have that information and suggested searching online instead.
- ████ thanked Kyle for his help.

## Transcript

**Kyle McCord [00:01]**
Texas Precious Metals, this is Kyle.

 **[00:05]**
Yes, I thought there was a gold depository in Round Rock. Am I wrong?

**Kyle McCord [00:13]**
I am not familiar with one in Round Rock. The three depositories in the state of Texas is our location here in Shiner, Texas. The state's
Which is in Leander, outside of Austin. And then there's the one up in Dallas, part of IDS systems.

 **[00:31]**
Oh, there's one in Leander.
And how much does Leander charge for maintenance and storage?

**Kyle McCord [00:46]**
I'm
not really aware of that.
That's not affiliated with us. That's the state depository.

████████ **[00:59]**
What does that mean, state depository?

**Kyle McCord [01:02]**
It's operated by the state of Texas in

████████ **[01:09]**
Oh.

**Kyle McCord [01:10]**
conjunction with some other, I think, entities.
That, you know, that built the facility and do the trading portion.

████████ **[01:25]**
Do you have a phone number for them?

**Kyle McCord [01:28]**
No, man. You would have to, I guess, just search for them through Google or whatever search engine you prefer. Although we...

TPM001224



 **[01:40]**

So it would be Texas State Depository Leander.

**Kyle McCord [01:47]**

I mean, I know that's where they're located and it should be like Texas State Depository or something like that. I'm not familiar with that as much. I'm much more familiar with our own depository services and that that we do here in Shiner.

 **[02:08]**

Where is Scheider from Austin?

**Kyle McCord [02:11]**

Oh, it's about an hour and a half drive. We're about halfway between Houston and San Antonio, 20 minutes south of I-10.

**[02:20]**

I see. Well, I appreciate your help.

**Kyle McCord [02:22]**

Yeah, Gonzalez. Oh, yes, ma'am.

**[02:26]**

Thank you.

**Kyle McCord [02:26]**

Yes, you're welcome.

TPM001225

# Outbound call with +1 ██████████

## Call Details

Date: January 21, 2026 at 04:55 PM UTC

Duration: 0m 38s

Participants: Berny Klapuch, +██████████

## Summary

- Berny called ██████ Residence to inform ████████████ that they are not storing with Equity Trust, and they can be reached at 361-594-3624.

## Transcript

**████████ 2 [00:00]**

You have reached the ██████ residence. You can't take your phone call at the present time. Please read a brief message with your name and your phone number and we'll return your call as soon as possible. Thank you.

**Berny Klapuch [00:14]**

Good morning. This message is for ████████████. This is Bernie with TPMD. We spoke this morning about your RMD. We're thinking that maybe you are actually trying to reach Texas Bullion Depository because we do not store with equity trust. So if you have any questions, please give us a call back, 361-594-3624. Thank you.

TPM001226

# Inbound call with ███████████████ in queue TPMD

## Call Details
Date: January 26, 2026 at 10:27 PM UTC
Duration: 4m 38s
Participants: ███████████  Susan Aschenbeck

## Summary
- The conversation began with ███ (Potential Customer) expressing his interest in opening a new account with Texas Precious Metals Depository.
- Susan (Customer Support Representative) provided detailed instructions on the sign-up process, ensuring ███ was navigating the correct website.
- After clarifying he was not using an IRA custodian, ████ acknowledged the busy schedule for appointments, agreeing to complete the paperwork before scheduling a visit.

## Transcript

**Susan Aschenbeck [00:01]**
TPMD, this is Susan.

**█████████████ [00:03]**
Hi, this is ████. How are you doing?

**Susan Aschenbeck [00:06]**
Hello, ████ I'm all right. How are you doing? Very nice. All right. Great. That sounds wonderful. Now, had you dealt with an advisor or consultant, or were you looking directly at TPMD?

**█████████ [00:08]**
I'm doing well, thank you. I would like to open a new account and come store metals with you.
I have not talked to anybody there before and have not opened an account and haven't stored anything and hadn't purchased anything from you.

**Susan Aschenbeck [00:25]**
Okay. No, that's -- okay. All right. Okay. Well, very good. So then what you would do is you would go to TexasDepository.com. And if you had any other -- if you had any questions, I could definitely answer those. But if you are wanting to
Sign up, you would go TexasDepository.com and then the sign up option. And then there are forms that you would fill out like the agreement and also the ACH form, which would need a copy of a driver's license and a voided check. And then once you had completed those, you would give us a courtesy call and let us know because typically the accounts

**█████████ [01:03]**
OK. OK.

**Susan Aschenbeck [01:08]**
Are not issued until we know that there are metals that whether you're wanting to make a purchase or if you have metals to ship in. Okay. So if you were wanting to, and I just want to make sure this is an account directly through this, you are not using an IRA custodian.

**█████████ [01:14]**
OK. All right. So I'm on your website. Where would I go? And this is a trust.
Correct. No IRA.

**Susan Aschenbeck [01:31]**
Okay, so then what you would do is you would go if you're at TexasDepository.com, you see the upper right-hand corner. There's an orange box with sign up. So when I'm at TexasDepository.com, I see the options of either login or

**█████████ [01:41]**

TPM001227

# Inbound call with ███████████ in queue TPMD

Sign in or create account.

**Susan Aschenbeck [01:51]**
Sign up. Do you see white words of world class vaulting in white font?
Okay. So I just want to make sure, are you at TexasDepository.com?

 **[01:59]**
Let's see.
I'm seeing create account or sign in.
So wait, tell me what city you're in. Tell me what city you're

**Susan Aschenbeck [02:13]**
Oh, that could be it. We are located in Shiner, Texas. Ah, yes, that is not us. So instead of going to a Google search, if you could just actually go to the actual address bar,

 **[02:17]**
in. Okay, so this automatically brought up the Texas Bullion Depository, which is not you, that's Leander.

**Susan Aschenbeck [02:32]**
And that would be TexasDepository.com. Or if you were to Google search it, I believe that you could do, let's see, Texas Space Depository. But let me make sure. Texas Depository. And then, so then, yes, it should bring you to, on the right-hand side, either you'll see Texas Precious Metals Depository

 **[02:43]**
Texas Depository Precious Metal Shriner. Yeah, okay, I got you.

**Susan Aschenbeck [02:54]**
Or on the left-hand side when I do a Google search, I'm seeing it's a little orange Texas and a circle logo. Yes. All right. So then you will fill out those forms. And then they will need some additional forms, but I believe that for the trust,

**[02:59]**
Sign up.

**Susan Aschenbeck [03:15]**
But as long as you're filling that out, it will kind of guide you and prompt you through of what you need to do. And then if you have questions from there, you can definitely give us a call and we can go from there.

**[03:19]**
Okay. All right.
Okay. Can I, I'm going to get this filled out. Can I make an appointment for Thursday to bring medals?

**Susan Aschenbeck [03:26]**
So I would like to tell you that you could, but we are so extremely busy that we're booking out, I believe, a week in advance.
So typically we do not create appointments until the paperwork is done because I'm sure you can imagine so many people are interested in it and then if it does not come to fruition we have appointments that are very in demand. So as soon as you get all the forms in and you are issued an account number we can definitely look at the books and pencil you in.
But I do want to -- as of right now, I do think it's at least a week's notice that I can't -- if there's a cancellation or something, we can definitely look. But it's very full, very full far out. Woo-hoo! Yes.

**[04:03]**
Very good. Well, I'll get, I'll just,
I totally get it. No problem. I'll go ahead and get all my paperwork filled out for the trust and then
I'll just be in contact if there's any questions and then we'll book an appointment. And I'll drive over and see you guys because I'm not that far. I'm in New Braunfels.

**Susan Aschenbeck [04:28]**

TPM001228

Yes. Okay. That'll be wonderful. We look forward to meeting you. Yes, sir. Have a good one. Bye-bye.

████████████ **[04:31]**

Okay. Thank you, Susan. I appreciate your help.

Bye-bye.

TPM001229

# Inbound call with ███████████████ in queue Trading

## Call Details

Date: January 28, 2026 at 03:06 PM UTC
Duration: 4m 42s
Participants: ████████████  Gabe Aguliar

## Summary

- During the call with Texas Precious Metals, Gabe Aguliar (Customer Support Representative) addressed inquiries from a representative of ████████████ about public access to their facility and purchasing options for goldbacks.
- Gabe explained that the company requires appointments for visits and detailed the online order process, highlighting the availability of free shipping.
- The customer, currently buying from a competitor, showed interest in switching to Texas Precious Metals due to the ease of their services.
- The conversation wrapped up with the customer expressing gratitude and the intention to return for an order, while also being encouraged to inform others about the company.

## Transcript

**Gabe Aguliar [00:02]**

Hi, thank you for calling Texas Precious Metals. This is Gabe. How can I help you? Sure.

**████████████ [00:05]**

Hey, Gabe, I have a question. So are you all open to the public?

**Gabe Aguliar [00:09]**

We are open. It depends what you mean by that. We don't have a storefront or anything like that. In order to come in our building, you do have to have an appointment, and then we would allow you in. Mm-hmm.

**████████████ [00:15]**

Oh, okay.

Okay. Oh, okay. Oh, okay, I got you. So I was interested in getting some of those goldbacks, the Texas. I didn't know that there was one, you know, that had the Texas on it.

**Gabe Aguliar [00:25]**

Yeah, yeah, that one's brand new and then they're coming out with a couple more. I think a Houston and Austin, I believe, sometime soon. Mm-hmm.

**████████████ [00:38]**

Oh, wow. Oh, wow. So if I placed an order with that, I'm over in, like, near Corpus in the little town of Odom. I'm not too far from you guys, but I just wondered, you know, so if I placed an order, can I go over there and pick it up, or is it better? Okay. Okay.

**Gabe Aguliar [00:47]**

Okay. Yes, that's exactly how you do it. Yeah, you can either purchase over the phone with a trader or you could do it online. If you do it online, pickup is an option if you choose cash and then you'll just have to call us to ask when you can come and pick it up.

Just a heads up, we're pretty booked on our calendar, so I'd recommend if you're wanting to get in sometime next week, this week is almost impossible, but next week, just give us a call as early as you can. Oh, okay, cool. Uh-huh.

**████████████ [01:10]**

Okay. Okay. Okay.

Okay. Yeah. Okay. Yeah, I was thinking more like in February, and I know that everything's going up. I've been keeping track of everything, but I've been buying my goldbacks from Money Metals, but I didn't realize that. One of my friends told me about you guys.

TPM001230

**Gabe Aguliar [01:31]**

Oh, okay. Oh,

 **[01:36]**

Today, or actually it was yesterday, and so I was like, what in the world? And they're just right there. So I was like, well, yeah, so I'll just start, you know, getting from you guys. So, I mean, well, I started in with a login. Let me talk to my husband and see what we want to do, and then we'll just - I really like the gold bags, you know.

**Gabe Aguliar [01:37]**

awesome. Yeah, we're so much better than them.

Yeah, for sure. Do you want me to set you up with an account now? If you want, I can do that. Perfect.

Yeah. Sure. Yeah, absolutely. Yeah.

██████████████ **[02:01]**

So it just seems a little bit more feasible for us. But anyway, I'll give you a call back and then we'll set up an account or whatever I need to do and then we'll just go from there. But I did set up like a login so that way I can...

**Gabe Aguliar [02:20]**

Textmetals.com, correct? No.

██████████████ **[02:21]**

Okay, yes. And then my other question was do you all charge for delivery or is it like...

**Gabe Aguliar [02:28]**

No, there's always insurance. There's always free shipping. Yeah, we don't lay any of that on you.

██████████████ **[02:28]**

Or is it, okay, so if it's mailed to the house, there's not like insurance or something, I have to buy extra, anything like that? Okay, okay,

okay. Okay, well, this is great. Awesome. Okay, all righty. Oh, my gosh. Yeah, for sure. Well, I'm going to let my father-in-law know because I know he buys a lot of golden

**Gabe Aguliar [02:41]**

Yeah. Yeah. Tell your friends. Oh, there you go. Yeah. Sure.

██████████████ **[02:52]**

Silver, so yeah, and I mean, we're kind of limited, but it's okay. I mean, so anyway, this is great. I appreciate it, and we'll get everything going here pretty soon, and I think we'll probably order some goldbacks and just run it through the mail, and then anything else, we'll just, we'll set up an appointment, like you said.

**Gabe Aguliar [03:05]**

And if you've already made that login, then you already created an account. So there's nothing I need to do on my end. One thing a lot of people like to do is they'll log into their account on their phone or email and they will send it to the account.

██████████████ **[03:17]**

Oh,

okay. Okay. That sounds

**Gabe Aguliar [03:28]**

So, you can do it all online if you want to. Totally up to you.

██████████████ **[03:31]**

perfect. Okay.

Ah, gotcha. Okay. Okay, that sounds perfect. Well, it just sounds really easy than the money medals. My gosh. Wow.

**Gabe Aguliar [03:47]**

We try our best. Yeah, we try our best to make it pure and simple. That's our motto. So yes, ma'am.

TPM001231

████████████████ **[03:51]**

All right. That's awesome. And, you know, I know, what was it, like, two or three years ago, Texas went under the Texas Digital Gold currency? Is that still...

**Gabe Aguliar [03:59]**

You know, we've never gone to that. That's the Texas Bullion Depository, which is in Leander.

████████████████ **[03:59]**

You know, a thing, because I don't know, this was like three years ago I read an article or something that Texas went under, Texas digital gold currency, backed by gold. You know, I don't know.
Okay. Oh, okay.

**Gabe Aguliar [04:14]**

But for us, we've always been very heavily vested in the precious metal, the physical precious metal, you know, putting the metal in your hand. You know, digital is great and all until it's not, you know. Yes, ma'am. Absolutely. There you go. Good deal. Well, yeah. Yeah. Give us a call back when you have any questions or concerns and we'll be happy to help you.

████████████████ **[04:19]**

Oh, okay. I got you.
Okay. That's me. Yep. Yep.
That's how I feel about it. That's how I feel about it. So I like to have it in my hand. We have it at home and it's locked up. So anyway, okay.
I sure will. Thank you so much. I appreciate it. Thanks. Bye-bye. You too. Bye-bye.

**Gabe Aguliar [04:38]**

No problem. Yes, ma'am. Have a good one. Bye-bye.

TPM001232

# Inbound call with  in queue TPMD

## Call Details

Date: January 29, 2026 at 06:53 PM UTC
Duration: 1m 43s
Participants: Berny Klapuch, 

## Summary

-  called Berny Klapuch at Texas Precious Metals Depository to inquire about the Texas legislation regarding gold and silver as currency.
- Berny clarified the distinction between the Texas Precious Metals Depository and the Texas Depository, guiding ▆▆ to the correct site for more information.

## Transcript

**▆▆▆▆▆▆▆ [00:01]**
TPMD, This is Bernie. How may I help you?

**▆▆▆▆▆▆ [00:05]**
Hey, Bernie. This is ▆▆▆▆▆▆▆. I'm out in California. I've been reading a lot about the Texas legislation that's going to allow gold and silver to be part of the currency. You can open up an account. I think you guys are the Depository of Choice. Is that correct?

**Berny Klapuch [00:24]**
That I'm not aware of. Are you looking for Texas Precious Metals Depository or is this the Texas Depository in Leander?

**▆▆▆▆▆▆ [00:27]**
Yeah.
Texas Depository is what it shows when they do a search. It says how to open up a Texas Depository account. You go to TexasDepository.com or TexasBullionDepository.gov. Are they two separate?

**Berny Klapuch [00:50]**
They are, yes, sir.

**▆▆▆▆▆▆ [00:52]**
Oh, okay. So I need to go to the .gov site. Do they have their own vault down there then?

**Berny Klapuch [00:58]**
We're Texas Precious Metals Depository in Shiner, Texas.

**▆▆▆▆▆▆ [01:04]**
Got it. Yeah, no, I did see that and I thought it was, yeah, Texas passed that bill, I think it was 1056 that allows gold and silver to be used as everyday currency. You get your own basically like a checking account. You'll have your own kind of ACH number, you'll have your own

**Berny Klapuch [01:22]**
Okay. Gotcha. Yes, sir.

**▆▆▆▆▆▆ [01:27]**
Yeah, yeah, you can write a check and everything against your own metal. Thank

**Berny Klapuch [01:31]**
Okay. Yes, I see. So yes, you're going to want to reach out to the Texas Bullion Depository.
You're welcome. Sure, have a good day. Bye-bye.

**▆▆▆▆▆▆ [01:38]**
you very much. I appreciate it.

TPM001233

You too. Bye-bye.

TPM001234

# Inbound call with ███████████ in queue TPMD

## Call Details

Date: February 03, 2026 at 10:19 PM UTC
Duration: 1m 38s
Participants: ███████████, Afton Chacon

## Summary

- The conversation involved ███████████ (Customer) asking Afton Chacon (Customer Support Representative, TPMD) about the possibility of accessing gold with a Visa card, to which Afton explained that it is not an option currently.
- ██████ also mentioned a related bill in Texas but was informed that Texas Precious Metals operates differently from the state depository.

## Transcript

**Afton Chacon [00:01]**
TPMD, this is Afton. How may I help you?

**███████████ [00:05]**
Yes, ma'am. I'd like to talk to somebody about

**Afton Chacon [00:08]**
Okay,

**███████████ [00:11]**
the gold that I've got on hand there and whether or not it can be accessed by a Visa card.

**Afton Chacon [00:16]**
so unfortunately it cannot. If you're wanting to liquidate some of the metals, you can liquidate them. However, we do not offer them to be on a debit card.

**███████████ [00:33]**
Okay. Any idea what the future holds on hand?
The accessibility of a Visa card.

**Afton Chacon [00:45]**
Unfortunately, I do not know.

**███████████ [00:48]**
I know the governor of Texas has got a bill passed where we will go to a Visa card. I think it's at the Depository in Leander, Texas, but that'll be for the whole state.

**Afton Chacon [00:51]**
Yeah,
that is the state depository. We are privately owned. Yes, sir.

**███████████ [01:07]**
Oh, I see. There's a difference, huh?
Do you know if the one in Leander has got the Visa card accessibility right now?

**Afton Chacon [01:17]**
I honestly, I do not know you could try calling them.

**███████████ [01:22]**
Okay.
You wouldn't happen to know that number, would you?

TPM001235

**Afton Chacon [01:26]**
I do not. I'm sorry. Yes, sir. Thank you. You as well. Bye-bye.

████████████ **[01:30]**
Okay. Well, thank you very much. Have a good day and praise the Lord.
Yes, ma'am. Bye.

TPM001236

# Outbound call with ███████████

## Call Details

Date: February 05, 2026 at 06:29 PM UTC
Duration: 9m 19s
Participants: Julie Boehm, +███████████

## Summary

- ███ (Customer) reached out to Julie Boehm (Customer Support Representative) from Texas Precious Metals Depository to address some issues he was facing with his password management and two-factor authentication.
- Julie confirmed that ███ had successfully resolved his password issues and reassured him about the ongoing two-factor authentication process.
- The conversation also covered ███'s investment growth and plans to deposit an inheritance with the company.
- He complimented Julie on her helpfulness, and they discussed the company's logo and the identification of their services.
- The call ended positively with ███ expressing gratitude for the assistance and showing interest in his silver holdings.

## Transcript

**+██████████ [00:01]**
Hello, this is ███.

**Julie Boehm [00:03]**
Hi, ███. This is Julie from Texas Precious Metals Depository. I lost you.

**+██████████ [00:04]**
You were the sweetheart I was talking to and all of a sudden my battery went in on my phone. I couldn't believe it.

**Julie Boehm [00:11]**
I figured that's what happened because when I called back, it was going straight to voicemail.

**+██████████ [00:18]**
Well, I just got about seven.

**Julie Boehm [00:20]**
Do

**+██████████ [00:22]**
Is it seven minutes or 7% or something back? So
I'm not on the cord right now, but I went back in.

**Julie Boehm [00:29]**
you want to plug it in and call me back?

**+██████████ [00:33]**
No, I can't have it near me when I plugged it in. I got in and I fixed it. My son had put a program in there called Bitwarden to save the name and password. I went in there and I think I fixed that properly now.

**Julie Boehm [00:39]**
Oh, wonderful.
Uh-huh. Uh-huh.

**+██████████ [00:53]**
But it kept coming back. Maybe I can pull that thing up and it'll make sense to you.

**Julie Boehm [00:58]**
No, I understand it's a password saver, but that's good. I just wanted to make sure your two-factor worked, and it sounds like it did.

TPM001237

**+ ████████ [01:01]**

Yeah.

Like that.

Okay. And your logo is the Texas in a circle. There's another one up there that has Texas depository. And it's got a circle kind of broken.

**Julie Boehm [01:11]**

Yes.

Let's

**+ ████████ [01:23]**

Almost like a target, like a circle inside a bigger circle and it's got breaks in the outside line with like little dots. And I wonder if I should just get rid of that. Because I think that's what's causing the problem.

**Julie Boehm [01:39]**

see if...

**+ ████████ [01:41]**

And they quote, I can delete it. I'm going to delete it because now that's not your system.

**Julie Boehm [01:45]**

Yes, that's the Texas Bullion Depository. That's not us. So yeah, you can delete that.

**+ ████████ [01:51]**

Okay. You want to send it to trash? Yes.

So now,

if you don't mind, while you're on here, I want to go back and see

if I can get back there now by using that Texas Precious

Metals. It's still got that Texas Precious Metals login there. Texas Depository.

Not .com though, right? Do you have to have the .com on yours?

**Julie Boehm [02:26]**

You don't have to. You can just put it in there. Texas Depository.

**+ ████████ [02:27]**

To go in.

Okay. Okay. Oh, here. And then it says...

**Julie Boehm [02:31]**

I just don't want it to go to a browser. I want it to go to the actual web address.

**+ ████████ [02:37]**

Yeah. Well, I just hit it and it came back and it came up with my information. So what I was going to tell you is... I was working with Shane. Are you the actual place where the silver is then? And Shane from...

**Julie Boehm [02:43]**

Awesome.

**+ ████████ [02:55]**

Kirk Elliott's office is the one I've been working with to buy the stuff.

**Julie Boehm [02:59]**

Yes, sir. So all of Kirk Elliott's metals are stored here at the Texas Precious Metals Depository. So we are the depository and Shane works for Kirk Elliott, which is in Colorado. So he just does the transactions, but everything is actually done physically here in Shiner, Texas.

**+ ████████ [03:15]**

TPM001238

Okay. Good old Shiner Texas and Shiner beer. Yeah. Okay. So I think I'm okay.

Man, I still don't really understand what's wrong, but in the Bitwarden where I was trying to come in and head the wrong stuff. And right now, maybe that's what I should ask you if it sounds right.

TexasDepository.com. It's got my email. And I'm just... We have to open it up.

And it's my thing, my password. Because that's what was wrong. And then I had a Dickens of a time. Yeah, it's got my password when I hit the eyeball.

It has autofill options.

So, yeah, it's noting that it was last edited today.

So I think I think I'm good to go, but I don't ever say that on a computer. But I'm...

**Julie Boehm [04:15]**

Well, it sounds like you're great today. Just know that I want you to note that every 30 days it's going to have to ask you to do that two-factor again. So that is the text message thing. So don't change your password. Just know that you have to enter your... It's going to send you a code to your phone and then you'll just enter that code, okay?

**+ ████████ [04:34]**

Okay, and believe it or not, Julie, did you say it? Julie? I do understand that. And because my son suggests we try to do too fast, especially on this stuff. You know, it's really something. So...

**Julie Boehm [04:36]**

Yes, sir.

Mm-hmm.

**+ ████████ [04:49]**

I mean, I just saw, I put in 5,000, I'm up over 10,000. Well, something just changed. I know prices keep changing, but it was like double. And then I have another place where I changed, it's not you, but they worked through this other place and I have more in there. I changed one of my retirement funds.

Julie.

**Julie Boehm [05:17]**

Oh gosh, that's awesome.

**+ ████████ [05:32]**

Who I thought had no money and here he's paying 22 nephews and nieces $26,600 each. He was a millionaire. He lived in the old home, never owned a home, never had kids, never married. And here we all get this letter. And that's supposed to come real soon.

**Julie Boehm [05:41]**

Wow. Wow.

That's incredible.

**+ ████████ [05:54]**

And I want to put it with you, with you, but I do this through Shane, I think you're saying, and at Elliott, at what's his name, Kirk Elliott. I will call him next and just warn him that this has happened. And I think it may be in February now if they get everything together that I will get a check for that and I want to deposit.

**Julie Boehm [06:03]**

Yes, Kirk Elliott. Uh-huh.

**+ ████████ [06:19]**

But I can't ask you that because it's his work, but I just want to know if, I know they don't day trade, but I know it starts out a little lower and it'll go higher like at noon and then it goes lower and I'm wondering if they can buy when it's down.

**Julie Boehm [06:34]**

You're going to have to ask Kirk Elliott that one. I'm not sure how they do that.

TPM001239

**+ ▮▮▮▮▮▮▮▮ [06:34]**

I don't know if they can do that.

Yeah, and I'm sure I don't, I don't mean to.

**Julie Boehm [06:41]**

No, it's okay.

**+ ▮▮▮▮▮▮▮▮ [06:42]**

Julie, you have been, I was thinking, I kind of hope they call back, but I don't know if you ever asked for my phone number, but you probably see it anyway. So thank you. You have been so kind. So I so appreciate it. The only other thing you could do would be go out and find my name on the, on my silver, take a picture of it and send that to me. That would be wonderful.

**Julie Boehm [06:55]**

No problem. They

won't let me back there. That's strict access back there.

**+ ▮▮▮▮▮▮▮▮ [07:08]**

I've heard that. But I had a friend in Texas who told me about doing it, stirring it through you and buying it from you guys or somehow the other people. But he said he was visiting south. He's from Winsboro too. And he was down there on a family trip. And he actually had to arrange ahead of time to go in and look at his

He has gold and silver he's bought for years. So he's got to be doing really well. But I've never invested. I've never done any stock market stuff on my own. It's just amazing.

It's growing up and I think it's going to go to 200 right now. It's like at 80, like a year from now. It's just crazy. I've never had that kind of thing happen. Nor have I had an uncle who was a millionaire. So, you know,

**Julie Boehm [07:52]**

You're right.

Oh gosh, yeah. Oh, that's okay. It was great speaking with you and I'm so glad you got in.

**+ ▮▮▮▮▮▮▮▮ [08:05]**

anyway, I'm telling you a lot more than you probably want to hear, my dear. But I just, I live alone and it's like, I don't know.

But you have been wonderful because so many of the people who do what you do, the IT kind of stuff, they just, okay, let's do that. You can hear them melting away on the other end like, oh, this guy, oh, man. And then my phone goes, well,

**Julie Boehm [08:28]**

Well you're very polite yourself so it makes it easy to work with.

**+ ▮▮▮▮▮▮▮▮ [08:35]**

Oh, good. Well, thank you. But I just thought when I lost you on the phone, oh, this is the last shoe just dropped. My phone runs out of power. You're going to think I really am an idiot. But anyway, I'm not a total idiot. I'm just getting close. Okay, I know you got to go, dear. I'm sorry. Julie, I...

**Julie Boehm [08:46]**

No worries. All right well you have a great you.

No, no, no worries at all. You have a great day and I'm glad you're able to get in and good luck with all of your future.

**+ ▮▮▮▮▮▮▮▮ [09:02]**

Okay, and if you can sneak a picture sometime, if you get past the guard, let me know, okay? Because I don't think, with my help, I don't think I'm going to be able to visit South Texas. So anyway, say hi to everybody in Shiner, okay? Bye-bye now.

**Julie Boehm [09:05]**

Sounds great.

All right. God bless. Bye-bye.

TPM001240

# Inbound call with  in queue TPMD

## Call Details
Date: February 06, 2026 at 05:54 PM UTC
Duration: 5m 3s
Participants:  Susan Aschenbeck

## Summary
-  (Customer) contacted Texas Precious Metals Depository seeking information about transferring his IRA services, mistakenly believing they were a state-run facility.
- Susan Aschenbeck (Customer Support Representative) clarified their private ownership and location, addressing his concerns about travel distance.
- They also discussed associated costs and the possibility of direct accounts, concluding with  expressing his intent to gather more information.

## Transcript

**Susan Aschenbeck [00:01]**
TPMD, THIS IS SUSAN.

**[00:04]**
Yes, I have an IRA. I went through the Gold Bureau and deposit. It's up in Dallas. Is there what how much would it cost me to to transfer mine to because you're in Leander, right?

**Susan Aschenbeck [00:07]**
OKAY.
We are not in Leander. This is Texas Precious Metals Depository in Shiner, Texas.

**[00:28]**
Oh, I thought. Well, where's the one that the Texas State? That's what I wanted to.

**Susan Aschenbeck [00:32]**
Yeah, I'm not sure of all of their locations, but we are located in Shiner, Texas.

**[00:34]**
Because I want to get closer. That shiner is just as far as Dallas is for me. Well, they said that this one is for the state.

**Susan Aschenbeck [00:50]**
Texas Precious Metals Depository is privately owned and we are located in Shiner, Texas.

**[00:56]**
So how much does it cost to keep your money in there per year?

**Susan Aschenbeck [01:02]**
Okay, so if you were doing direct, I can, if you go to TexasDepository.com, the pricing is listed under rates. If you have the idea of how the account balance, I could tell you your monthly storage fee. But if you're currently with an IRA custodian, a lot of times IRA custodians charge you an annual
So were these an IRA account?

**[01:23]**
Yeah. I
paid $250. Well, and up this year, it's $279.

**Susan Aschenbeck [01:30]**
Were your metals in an IRA custodian-led account? Okay. So then if you were interested in using our depository and you're

TPM001241



wanting to keep them in an IRA, you could go to TexasDepository.com and under the IRA Services tab, that shows the custodians we currently

Currently work with. So you could reach out to any of them and ask them about rates and things like that.

**[01:54]**

Okay, because, yeah, well, I thought this was the... Well, they said that Texas... Well, I knew they had their own depository. I mean, the state of Texas. And I thought that's what I was calling it.

**Susan Aschenbeck [02:02]**

This is not the state one. Our email, I mean, excuse me, our address on the internet is texasdepository.com, but this is Texas Precious Metals Depository. And we are not ran by the state. It's a private company.

**[02:18]**

Yeah, well, I'm in a private company now, too. So, it's ran by...

Well, it was a Go Bureau, not Go Bureau, it was a, ah, dang, you know, there's so many of them I go through, but this one was out of California, but they only have two depositories. Well, they have more than that now, but then when I started, we only had two. One was in Dallas, well, they have two.

I'm going to Dallas now, and the other one's in Delaware, and they have one in New Mexico and some other else. I just don't like the idea. I don't like going to Dallas. If I would have known that even you all would be better because I don't like going down to Seiner, but it's just as far as Dallas is to me, but you don't have to drive through Dallas traffic.

**Susan Aschenbeck [03:08]**

Yes, sir. Yeah. Well, wherever you feel more comfortable.

**[03:11]**

Y'all didn't exist when

I did this. This was back in 2018, 20. So I don't think y'all would have been there that long. Anyways,

**Susan Aschenbeck [03:18]**

Oh, okay.

Okay. Yes,

**[03:28]**

have you been or what?

**Susan Aschenbeck [03:30]**

sir. Yes, we have. Yes. We moved into this location, I believe, a little over two years ago, but they were doing it in 2018.

**[03:38]**

Okay, well, I didn't hear anything about that. So, I mean, the guy told me, they said they only had two at that time. Now they got...

Several, but I want something closer.

**Susan Aschenbeck [03:49]**

Yes. Yeah. Yeah. I understand. That makes sense. You want something closer.

**[03:52]**

I can go look at it, but I hate going to Dallas. It's in an IRA, but also you can do your other stuff too there, right? Your privates.

**Susan Aschenbeck [04:06]**

Yeah. You could have a direct account with us that's not through an IRA custodian. Yes, sir, you could do that.

**[04:11]**

Yeah. Okay. That's what I'm wondering now. I'm going to call around and find out more information because I wanted to talk to people. They were talking about, you know, State of Texas as their own depository. They're going to gold and silver. And you can actually deposit money there and...

TPM001242

**Susan Aschenbeck [04:13]**
Mm-hmm.

**████████ [04:29]**
And you get a card or whatever. And that way you don't have to go back and forth. Yes, ma'am.

**Susan Aschenbeck [04:35]**
Yeah. So this -- we are not the state, so I'm not sure what they have to offer,
but you're welcome to reach out to them.

**████████ [04:46]**
I just want... I don't know how I looked up and it said Texas Depository. I said Texas State Depository and you all came up. So I'm sorry,

**Susan Aschenbeck [04:56]**
Oh, goodness. No, that's okay. No need to apologize. It's fine.

**████████ [04:59]**
ma'am. All right. Thank you.

**Susan Aschenbeck [05:00]**
All right. Yes, sir. Thank you. Bye-bye.

TPM001243

# Inbound call with █████████ in queue TPMD

## Call Details

Date: February 11, 2026 at 02:16 PM UTC
Duration: 6m 0s
Participants █████████, Berny Klapuch

## Summary

- The conversation began with Berny Klapuch (Customer Support Representative, Texas Precious Metals) offering assistance to ████████ (Customer), who was looking for information on setting up a storage account.
- ████ wanted to establish separate accounts for himself and his two minor children, which Berny clarified would require him to act as a representative.
- Despite some initial confusion about completing the online application, Berny provided clear guidance on the necessary documents and the steps to follow.
- ████████ expressed his preference to complete the process in person, but Berny reiterated the requirement to finalize the application online first.
- The call ended with ████ expressing gratitude for the support and indicating he would reach out again after completing the application.

## Transcript

**Berny Klapuch [00:02]**

This is Berny. How may I help you?

**█████████ [00:05]**

Yes, I was calling, just trying to get some more info about setting up an account

**Berny Klapuch [00:12]**

Okay. Is this for storage or for purchasing?

**█████████ [00:13]**

for

storage.

**Berny Klapuch [00:20]**

Okay. How can we help?

**█████████ [00:23]**

Well, I mean, I was doing some research and just, you know, seeing some videos and checking out his website, and I'm just kind of like...
Because I'm trying to, I guess, set up, I'm trying more to set up like an account for like me and you, my, me and my two kids and my son to be wife too also.

**Berny Klapuch [00:48]**

Okay. So are you wanting to set up one joint account?
Or are you trying to set up separate accounts for each party?

**█████████ [00:59]**

I'm trying to, I'll try my doing separate.

**Berny Klapuch [01:02]**

Okay. And your children, are they minors?

**█████████ [01:07]**

Yes.

TPM001244



**Berny Klapuch [01:09]**

Okay. So that would have to be an UPMD account where you would be the representative for their account. And those documents, everything to set up is on our online

It goes through our portal. Have you created an online portal account when you were viewing the online site?

 **[01:28]**

Yes. I'm just kind of like... I can't really finish it. I'm just kind of like...

I was just kind of like... I had questions like,

okay, when it comes to actual... I guess, do I have to bring in... How do I give y'all the...

I guess by silver, do I have to mail it to y'all? Do I have to call that person and just, you know?

**Berny Klapuch [02:05]**

Once you create your account, finish your documents, I should say. When you complete your documents and send it in here to us, we will pull those to get an account open. Once you have an account number, then we can get you the intake form, what you're wanting to deposit.

We can get it to our logistics team to get you labels with instructions how to ship in and then have it scheduled to be picked up. Or if it's a drive you want to make to come in, you can, once you have an account established, call in and to set an appointment with the medals that you'll be bringing in.

**[02:44]**

Okay. I was going to, yeah, I wanted to call that person. I'd rather just call that person. I'm going to call that person to finish setting up the account.

**Berny Klapuch [02:53]**

No, that would all need to be completed online and submitted back to us. Yes, sir. And then once that's done, give us a call and we can get those pulled to get an account number and set an appointment time for you to bring in your medals.

**[02:58]**

Oh, okay. Okay.

Okay, gotcha.

**Berny Klapuch [03:10]**

Okay.

**[03:13]**

Okay, alright.

**Berny Klapuch [03:14]**

All right, sure. So there's two forms for the account that we have online when you set up. One is the account agreement holders form, and then the other is the ACH authorization for monthly storage fees to be drafted.

**[03:31]**

Thanks. Okay, gotcha.

**Berny Klapuch [03:34]**

Okay.

**[03:35]**

Okay, alright.

**Berny Klapuch [03:37]**

Alrighty, sir. So do you want to give us a call when you have that completed?

**[03:41]**

Yeah, I'll probably just do that. Yeah, I'm just trying to figure out which depositories it's create account with. If y'all order one in Shiner, because it's just too old me in Texas, so I'm just like, which one?

TPM001245

**Berny Klapuch [03:50]**

Sure.

Okay, now we are the ones in Shiner, Texas Precious Metals. We're the one in Shiner. Yes, sir, we are. And the other is...

 **[03:59]**

Oh, you're the ones in China.

**Berny Klapuch [04:04]**

I believe Leander is here. Okay. All righty. You bet.

▮▮▮▮▮▮▮▮ **[04:05]**

Okay. Yeah, it's the ender. Yeah. Okay. I'm just trying to like, yeah, because I'm just kind of like, I'm assuming it's the same like, you know, setting up a bank account like any other bank account.

**Berny Klapuch [04:14]**

Yeah, it's similar. We need some of the same documentation to create a storage account and then...

You'll be able to see that online. It'll ask you to download an ID or driver's license and void a check.

▮▮▮▮▮▮▮▮ **[04:36]**

Okay. All right. Yeah, I'm just kind of like, yeah, I'm trying to finish the application. It's just kind of like,

**Berny Klapuch [04:37]**

All righty.

▮▮▮▮▮▮▮▮ **[04:42]**

I kind of, I don't know, I'm not done yet for some reason, but I'm just kind of like, I mean, I was like, ah, can I just come in person and just finish the account? Can I

**Berny Klapuch [04:48]**

Okay.

▮▮▮▮▮▮▮▮ **[04:59]**

have, I pretty much, I just, I know, I need to finish the account. Yeah, I already have what I want to store. I just kind of want to come in person, you know?

**Berny Klapuch [05:08]**

Yeah, unfortunately I can't answer for how the other depository allows the setup. For us it is completing your application online and then once we have those documents to get an account created then we can set the appointment for you to bring those medals in. Alrighty. Okay, sir. Any other questions we can answer for you?

▮▮▮▮▮▮▮▮ **[05:26]**

Okay, gotcha.

No, I can't. I mean, yeah, I was hoping I could just come in person and just finish up my account and then just.

**Berny Klapuch [05:43]**

Okay, sorry, but when you get back online, if you need any help to walk through the documents, please give us a call back and we can help what we can. Sure, absolutely. Alrighty, thank you so much. Bye-bye now.

▮▮▮▮▮▮▮▮ **[05:54]**

All right, appreciate it.

All right, thank you.

TPM001246



# Inbound call with ██████████ in queue TPMD

December 01, 2025, 09:52 AM

---

**Host** Afton Chacon · 00:00:02

TPMD, this is Afton. How may I help you?

**Customer** ██████████ · 00:00:05

Yes, is this correct number to get some information about storing gold bars at your facility?

**Host** Afton Chacon · 00:00:11

Yes, sir. Yes,

**Customer** ██████████ · 00:00:14

Could you tell me anything about it or send me some information about

**Host** Afton Chacon · 00:00:17

sir. Yeah, if you visit our website, TexasDepository.com, all of the fees will be there. There's actually a little informative video that you could watch as well.

**Customer** ██████████ · 00:00:19

things and stuff?

**Customer** ██████████ · 00:00:31

Oh, okay. Okay, I saw the website there. And there's all...

**Customer** ██████████ · 00:00:36

I guess, I guess the, are you familiar with, I guess it would be your competitor, I guess, in Shiner, Texas?

**Host** Afton Chacon · 00:00:41

We actually are in China.

**Customer** ██████████ · 00:00:47

Oh, you are Shiner. Okay, I thought this was, I thought this was Linder.

**Host** Afton Chacon · 00:00:48

We are China.

**Host** Afton Chacon · 00:00:52

No, Leander is a different depository.

**Customer** ██████████ · 00:00:53

Linder? Linder. Oh, completely different. Okay. Okay. So is there, is there, uh,

**Host** Afton Chacon · 00:00:56

Yes, sir.

**Customer** ██████████ · 00:01:02

Just a general question, I guess it's based on the amount of GoBars you have,

**Host** Afton Chacon · 00:01:08

Correct. So what we do is we take the spot price times the number of ounces that you have and we multiply that times the storage rate. So it's really well, the storage rate is going to depend on your value of exactly what you have in the account.

**Host** Afton Chacon · 00:01:25

Yes, sir. It is a monthly fee.

**Customer** ██████████ · 00:01:25

right? Oh, okay. Okay. And that can range from what? I guess it's a monthly fee or a yearly fee?

**Customer** ██████████ · 00:01:35

TPM001247

Okay. Any idea roughly what it would be for, let's say, $18 million? Okay.

**Host**  **Afton Chacon**                                                     00:01:44

So I would have to look into that.

**Host**  **Afton Chacon**                                                     00:01:49

If you like, we can give you a call back with an idea about that.

**Customer** ▮▮▮▮▮▮                                                            00:01:56

Okay, yeah, if you would, I'd just like to compare, compare, you're right.

**Host**  **Afton Chacon**                                                     00:01:58

Okay. Absolutely. What is your name? And are these medals that you have inside of your possession?

**Customer** ▮▮▮▮▮▮                                                            00:02:04
▮▮▮▮▮▮

**Customer** ▮▮▮▮▮▮                                                            00:02:12

No, they're being shipped from overseas.

**Host**  **Afton Chacon**                                                     00:02:19

Yeah, okay, we will look into this and give you a call, but if you want to visit our website, TexasDepository.com, there is a little informative video that you can watch and kind of get a little idea.

**Customer** ▮▮▮▮▮▮                                                            00:02:31

Okay, so is there like a set fee or is there a fee on top of another fee or is it just based on the amount, the value? Okay.

**Host**  **Afton Chacon**                                                     00:02:33

So the only... Correct. It's based on the amount and the value. We don't do any additional fees.

**Customer** ▮▮▮▮▮▮                                                            00:02:45

Okay, so whatever it is on the website based on the dollar amount value, that's what your fee is.

**Host**  **Afton Chacon**                                                     00:02:52

Correct. Yes, sir.

**Customer** ▮▮▮▮▮▮                                                            00:02:54

Okay, then thank you very much.

**Host**  **Afton Chacon**                                                     00:02:55

All right. Yes, sir. You have a wonderful day. Thank you. Bye-bye.

**Customer** ▮▮▮▮▮▮                                                            00:02:59

Okay, bye-bye.

TPM001248


| Host | Susan Aschenbeck | 00:00:01 |

I'm

| Customer | ███████████ | 00:00:05 |

Hi, this is . I'm sorry, I'm doing something wrong here.

| Host | Susan Aschenbeck | 00:00:07 |

sorry,

| Host | Susan Aschenbeck | 00:00:11 |

it cut out. What was the

| Customer | ███████████ | 00:00:15 |

█████████ .

| Host | Susan Aschenbeck | 00:00:15 |

name?

| Host | Susan Aschenbeck | 00:00:18 |

██████ , okay.

| Customer | ███████████ | 00:00:20 |

Okay. I have a few questions. Okay, there's Shiner and there's Leander, right? There's two different depositories.

| Host | Susan Aschenbeck | 00:00:31 |

The only depository -- this is Texas Precious Metals Depository. We are not affiliated with another location in Texas.

| Customer | ███████████ | 00:00:40 |

But there is another location in Texas, and I get you guys mixed up all the time because I have metals at both places. It's driving me crazy.

| Host | Susan Aschenbeck | 00:00:44 |

Oh, I'm sorry. I meant to say that we are not affiliated with them. Okay.

| Customer | ███████████ | 00:00:53 |

Yeah, okay.

| Customer | ███████████ | 00:00:55 |

Okay. So my question, we have, or my husband has, and I'm over whatever you call it. Anyway, an IRA through Strata with the metals stored with you guys.

| Customer | ███████████ | 00:01:09 |

So if we want to take them out of the IRA and we don't want them shipped to Timbuktu, can they just be transferred from one account to another account with you all?

| Host | Susan Aschenbeck | 00:01:15 |

Okay. So if you had a Strata account and you were wanting to -- and you have a

| Host | Susan Aschenbeck | 00:01:28 |

A non-IRA custodian account with us? Yes, you could have the ability to request that Strata transfer your metals from your IRA custodian. If it's all good with them and it's allowable, you would request to have it transferred to us. But you would have to have a depository account with us, a non-IRA. Do you already have that or are you looking into that?

| Customer | ███████████ | 00:01:51 |

I don't know. Right now I'm looking into it.

| Host | Susan Aschenbeck | 00:01:53 |

TPM001249

Okay, okay, yeah, no, that makes sense.

| Customer | ▮▮▮▮▮▮▮ | 00:01:56 |

I don't think -- I think everything we have with you guys

| Customer | ▮▮▮▮▮▮▮ | 00:02:04 |

Is just the IRA. And then at SHINE -- no, you are SHINER. At Leander, we have the non-IRA. And then somewhere in Utah or Nevada or who knows where, we have more. We'd

| Host | Susan Aschenbeck | 00:02:05 |

We

| Host | Susan Aschenbeck | 00:02:09 |

are Shiner, yes, ma'am. Uh-huh. Ah.

| Host | Susan Aschenbeck | 00:02:16 |

Oh, goodness.

| Host | Susan Aschenbeck | 00:02:20 |

Okay, all right, no, that's understandable. Um...

| Customer | ▮▮▮▮▮▮▮ | 00:02:23 |

like to have it all in Texas.

| Host | Susan Aschenbeck | 00:02:25 |

That makes sense. So if you were wanting to create, let me double check just to see on my side. So can you spell the last name for me?

| Customer | ▮▮▮▮▮▮▮ | 00:02:35 |

It's ▮▮▮▮▮▮▮.

| Host | Susan Aschenbeck | 00:02:40 |

Okay. And what would the first name be under?

| Customer | ▮▮▮▮▮▮▮ | 00:02:44 |

The IRA is under ▮▮▮▮▮▮▮.

| Host | Susan Aschenbeck | 00:02:47 |

Okay.

| Host | Susan Aschenbeck | 00:02:49 |

Okay. I do. Go on.

| Customer | ▮▮▮▮▮▮▮ | 00:02:50 |

Oh,

| Customer | ▮▮▮▮▮▮▮ | 00:02:52 |

I had some kind of number. ▮▮, account number ▮▮, is that

| Host | Susan Aschenbeck | 00:03:00 |

Let me look that up. One moment. Let me see if that's our...

| Customer | ▮▮▮▮▮▮▮ | 00:03:03 |

-- that's under

| Customer | ▮▮▮▮▮▮▮ | 00:03:05 |

a sticky note on my thing.

| Customer | ▮▮▮▮▮▮▮ | 00:03:11 |

I'm on a PDF file.

| Host | Susan Aschenbeck | 00:03:12 |

Okay, so when I'm searching ███ , I am not pulling up an account by that name. So,

| Customer ███████████ | 00:03:26 |

What about ██████████████████ ?

| Host Susan Aschenbeck | 00:03:28 |

let me look that up.

| Host Susan Aschenbeck | 00:03:39 |

I am not seeing a ████████ . In this situation, if you were... Now, okay, I guess the thing would be, strata should definitely know where all of your metals are stored, but I'm not seeing that name. That doesn't mean that...

| Host Susan Aschenbeck | 00:03:56 |

We definitinely don't have one, a non-IRWA one, but I'm not seeing it when I pull it up if it would be under that last name, ████████ .

| Customer ███████████ | 00:04:05 |

It would be, yes. And we may just have the IRA there. There may not be a separate,

| Host Susan Aschenbeck | 00:04:05 |

Okay.

| Customer ███████████ | 00:04:14 |

you know, non-IRA account with you all yet.

| Host Susan Aschenbeck | 00:04:17 |

Okay. Okay. So if you were wanting to do that and you were not dealing with an advice,

| Host Susan Aschenbeck | 00:04:23 |

If you had been dealing with an advisor, you would go through them. But if you were wanting to create a direct TPMD account, you would go to TexasDepository.com and then you would select the sign up option.

| Customer ███████████ | 00:04:38 |

Okay.

| Customer ███████████ | 00:04:41 |

And this way we wouldn't have to pay a ton in shipping it all over the place, right?

| Host Susan Aschenbeck | 00:04:48 |

Sorry, one moment. I was trying to fight a sneeze. Okay. So...

| Customer ███████████ | 00:04:52 |

I understand. Me too.

| Host Susan Aschenbeck | 00:04:54 |

So I can tell you if you kind of have a ballpark idea if you were considering wanting to store with us, to give you an idea of what it would cost to store with us, do you have an idea of what you would want the value that you'd be storing? Okay. And is that primarily silver or gold?

| Customer ███████████ | 00:05:11 |

Well, right now it's 600,000.

| Customer ███████████ | 00:05:17 |

Oh, it's silver. I've got 5,000 ounces of silver.

| Host Susan Aschenbeck | 00:05:18 |

Okay. No, that's okay. So a $600,000 account balance for silver would be approximately $200 per month for us.

| Customer ███████████ | 00:05:33 |

Okay. Well, that's not exactly what I'm looking for. I just meant having it shipped from one depository to another because

| Customer ███████████ | 00:05:43 |

Some cases we had to have it -- and I may have made a mistake on this -- but try to shift it to our house. And then I had to pay again to have it shipped someplace else. No.

**Host** Susan Aschenbeck 00:05:46

Oh, okay. So here's the thing.

**Host** Susan Aschenbeck 00:05:58

If you were wanting to store with us, you would go create the storage account and then Strata could instruct the other depository or however it was going. Strata would let us know what was going on. But as far as just being shipped to us and us not store it, that is not an option because it wouldn't be like a metals are shipped here and then you pick them up here if they were not stored.

**Host** Susan Aschenbeck 00:06:22

Purchase from us are not going to be used for if we weren't going to be storing the metals. So I just want to make sure I understand what you're asking. Okay. That's okay. Okay. So...

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:06:30

I'm not being clear here. No.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:06:36

I don't want to ship it anywhere. I just want to leave it where it is and not have it in the IRA.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:06:44

Correct.

**Host** Susan Aschenbeck 00:06:47

So if you were, and you're talking about the metals that are currently here, the strata metals that were here with us? Okay. If you are wanting to not have them shipped and you are wanting us to store them, that would be the option. The other option, okay.

**Host** Susan Aschenbeck 00:07:06

Yeah, so if you're wanting, there's, you can, and Strata should be able to, you know, tell you your different options, but if you're wanting to have them shipped at home or to wherever, they would be letting you know the cost of that. If you were wanting them to be stored here, I do know that if they are stored here, in order to not incur the, no, excuse me,

**Host** Susan Aschenbeck 00:07:29

I guess I want to know what the end objective is. You want them here, but you don't want them to be in the Strata account.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:07:37

I do not want them in my possession. No. Okay.

**Host** Susan Aschenbeck 00:07:37

Okay. Okay. All right. So then you could tell Strata that you wanted to have an account here, but

**Host** Susan Aschenbeck 00:07:50

You would need to be creating a storage, I mean, a non-IRA custodian account with us in order to do that. Oh, goodness.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:07:59

Strata no longer has a telephone number. In fact, I have their phone number in my phone, and it doesn't work anymore.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:08:08

So I know. That's why I called you all first.

**Host** Susan Aschenbeck 00:08:14

Oh, that's not fun. Okay. So when I go to their website and looking for the contact us information, I do believe, let's see if there is.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:08:16

No.

**Customer** ▮▮▮▮▮▮▮▮▮▮ 00:08:29

Excuse me.

TPM001252

| Host | Susan Aschenbeck | 00:08:31 |
|---|---|---|

It does, if you already have an account, submit a service request.

| Host | Susan Aschenbeck | 00:08:43 |
|---|---|---|

Okay, so the number that they have on their website is the 866-928-9394.

| Customer | | 00:08:56 |
|---|---|---|

That's the one that does not work.

| Host | Susan Aschenbeck | 00:08:58 |
|---|---|---|

Oh, goodness. Well, that is the one that we have as well. So I do apologize. I don't have a number other than that. That is their main line.

| Host | Susan Aschenbeck | 00:09:10 |
|---|---|---|

If it's not working, then maybe it's down because

| Customer | | 00:09:15 |
|---|---|---|

Yes. That's what I'm hoping. It's not -- I don't see it. Did you just get that off their website or did you get it out of your info?

| Host | Susan Aschenbeck | 00:09:19 |
|---|---|---|

I

| Host | Susan Aschenbeck | 00:09:22 |
|---|---|---|

got it off of their website, but I had to make a few selections to get there.

| Customer | | 00:09:30 |
|---|---|---|

Okay. Where did you go? Because I'm on their website too.

| Host | Susan Aschenbeck | 00:09:31 |
|---|---|---|

Okay. Okay. All right. So when I go to strata, when I go to stratatrust.com, and then I was at the Contact Us section, and then

| Customer | | 00:09:35 |
|---|---|---|

I got a contact. Okay.

| Host | Susan Aschenbeck | 00:09:44 |
|---|---|---|

It's the option there's an I'm getting started and then there's I already have an account. I selected that. And then once I scroll down to the very end of that page where you normally would fill out all their questions, there's prefer a call or meeting and it gives me that option for that phone number that I just gave you or you have the ability to book a meeting.

| Customer | | 00:10:04 |
|---|---|---|

Hold on. I don't see the prefer

| Customer | | 00:10:11 |
|---|---|---|

phone call.

| Host | Susan Aschenbeck | 00:10:14 |
|---|---|---|

Okay. It could be a computer setting, I'm not sure, or like a browser setting, but this is just, you know, their main website. This is... Yes,

| Customer | | 00:10:16 |
|---|---|---|

Where is that?

| Customer | | 00:10:23 |
|---|---|---|

What you're seeing. Okay. That's where I am too.

| Customer | | 00:10:27 |
|---|---|---|

Okay, yeah, it just says submit a service request. Well, I don't want a service request. I want to talk to somebody. Yeah.

| Host | Susan Aschenbeck | 00:10:31 |
|---|---|---|

ma'am. Yes. And then I did have to scroll down all the way to the bottom of the page, so I'm not sure.

| Customer | | 00:10:44 |
|---|---|---|

Well, I'll look at it some more. But you've told me what I need to know. Oh, one more. Okay, I'm done with that topic. This is a new topic, okay? Okay.

**Host** **Susan Aschenbeck** 00:10:54

Okay. Yes, ma'am. Forget everything we were talking about. Okay. Yes.

**Customer** ████████████████ 00:10:55

So drop everything you've been thinking. Okay. All right. Can a nonprofit open an account with you?

**Host** **Susan Aschenbeck** 00:11:06

Let me see. I do believe that a nonprofit can create an account, but we would not be holding. I mean, one moment. Let me double check on that. It can be created, but I mean, the taxes, that would be all their responsibility. We do not handle any of like the government responsibilities.

**Host** **Susan Aschenbeck** 00:11:28

Reporting or anything for that. There are, if you at TexasDepository.com, there is in the sign up section, you should be able to see the different options.

**Customer** ████████████████ 00:11:30

Okay. Okay. Yeah, that's fine. I just didn't know if you all required it to be an individual person with a social security number or if a nonprofit with an EIN could open an account.

**Host** **Susan Aschenbeck** 00:11:51

If somebody was wanting to create a joint account versus a trust account versus a sole account, well, that would be you would be in the sign up option and then you would be going through. So if the account was going to be created, you know, as you

**Customer** ████████████████ 00:11:57

I'm back on your website. Where do I look?

**Host** **Susan Aschenbeck** 00:12:12

However, if you were wanting to set it up, you would set it up as yourself. If you were, and if another person were setting up a joint account, so it would prompt you through those steps as you go. And then if you were wanting to create an account with us, there are at least two separate pages depending on more. If there was a trust, we'd need additional information.

**Customer** ████████████████ 00:12:24

Okay. I think that answers my question.

**Host** **Susan Aschenbeck** 00:12:37

But there would be the agreement that would be filled out and then there also would be the ACH form that would need to have a driver's license and a voided check for the monthly storage fees to be drafted from. All right. I mean, for...

**Customer** ████████████████ 00:12:50

Oh, okay.

**Customer** ████████████████ 00:12:52

Okay. But the driver's license, is that the person who is paying it or the --

**Customer** ████████████████ 00:12:58

These are hard questions.

**Host** **Susan Aschenbeck** 00:13:03

If it were an individual signing up for themselves, it would definitely be that person. But if it was something else, it would be... I mean, there's different documents that are needed for different type situations.

**Customer** ████████████████ 00:13:14

Yes, okay. Okay, good, good. So it wouldn't have to be a driver's license. Got it.

**Customer** ████████████████ 00:13:21

Because it's not a person, it's a foundation.

**Host** **Susan Aschenbeck** 00:13:24

All right. Well,

TPM001254

**Customer**                                                                    00:13:25

So, okay. That is all I need to know, I think. And then again,

**Customer**                                                                    00:13:32

Okay. We just keep transferring from one account. Can we take it from a one -- well,

**Customer**                                                                    00:13:41

so we take it out of the IRA and put it into a person, and then we take it from the person and put it into a foundation?

**Host**  Susan Aschenbeck                                                      00:13:49

You would have to check with the IRA custodian to see as far as how that would play out. I would check with them. And I just know as far as Texas Precious Metal Depository, we don't give any legal or financial advice. So, I mean, I would be asking Strata that. And then if you have somebody that you consult with professionally,

**Host**  Susan Aschenbeck                                                      00:14:10

We can't give any professional advice in that matter, but if you were wanting to create an account with a storage account that was not through the IRA custodian, you could do that, and Strata could, if everything worked out the way it was supposed to, they could transfer those to the account that

**Customer**                                                                    00:14:13

Sure. Yes. Yes. Okay.

**Host**  Susan Aschenbeck                                                      00:14:33

To the non-IRA account here.

**Customer**                                                                    00:14:40

Yeah, it's confusing. Okay. Thank you. Thank you for the information. I appreciate your

**Host**  Susan Aschenbeck                                                      00:14:40

All

**Host**  Susan Aschenbeck                                                      00:14:43

right. You're very welcome. You have a great day.

**Customer**                                                                    00:14:49

help. You too. Bye-bye.

**Host**  Susan Aschenbeck                                                      00:14:50

Thanks. Bye.

---

**Host** Susan Aschenbeck — 00:00:01

TPMD, this is Susan.

**Customer** ███████████ — 00:00:03

Hi, this is ███. How are you doing?

**Host** Susan Aschenbeck — 00:00:06

Hello, ███. I'm all right. How are you doing? Very nice. All right. Great. That sounds wonderful. Now, had you dealt with an advisor or consultant, or were you looking directly at TPMD?

**Customer** ███████████ — 00:00:08

I'm doing well, thank you. I would like to open a new account and come store metals with you.

**Customer** ███████████ — 00:00:24

I have not talked to anybody there before and have not opened an account and haven't stored anything and hadn't purchased anything from you.

**Host** Susan Aschenbeck — 00:00:25

Okay. No, that's -- okay. All right. Okay. Well, very good. So then what you would do is you would go to TexasDepository.com. And if you had any other -- if you had any questions, I could definitely answer those. But if you are wanting to

**Host** Susan Aschenbeck — 00:00:46

Sign up, you would go TexasDepository.com and then the sign up option. And then there are forms that you would fill out like the agreement and also the ACH form, which would need a copy of a driver's license and a voided check. And then once you had completed those, you would give us a courtesy call and let us know because typically the accounts

**Customer** ███████████ — 00:01:03

OK. OK.

**Host** Susan Aschenbeck — 00:01:08

Are not issued until we know that there are metals that whether you're wanting to make a purchase or if you have metals to ship in. Okay. So if you were wanting to, and I just want to make sure this is an account directly through this, you are not using an IRA custodian.

**Customer** ███████████ — 00:01:14

OK. All right. So I'm on your website. Where would I go? And this is a trust.

**Customer** ███████████ — 00:01:30

Correct. No IRA.

**Host** Susan Aschenbeck — 00:01:31

Okay, so then what you would do is you would go if you're at TexasDepository.com, you see the upper right-hand corner. There's an orange box with sign up. So when I'm at TexasDepository.com, I see the options of either login or

**Customer** ███████████ — 00:01:41

Sign in or create account.

**Host** Susan Aschenbeck — 00:01:51

Sign up. Do you see white words of world class vaulting in white font?

**Host** Susan Aschenbeck — 00:01:59

Okay. So I just want to make sure, are you at TexasDepository.com?

**Customer** ███████████ — 00:01:59

Let's see.

**Customer** ███████████ — 00:02:04

I'm seeing create account or sign in.

**Customer** ▮▮▮▮▮▮▮▮▮ 00:02:10

So wait, tell me what city you're in. Tell me what city you're

**Host** Susan Aschenbeck 00:02:13

Oh, that could be it. We are located in Shiner, Texas. Ah, yes, that is not us. So instead of going to a Google search, if you could just actually go to the actual address bar,

**Customer** ▮▮▮▮▮▮▮▮▮ 00:02:17

in. Okay, so this automatically brought up the Texas Bullion Depository, which is not you, that's Leander.

**Host** Susan Aschenbeck 00:02:32

And that would be TexasDepository.com. Or if you were to Google search it, I believe that you could do, let's see, Texas Space Depository. But let me make sure. Texas Depository. And then, so then, yes, it should bring you to, on the right-hand side, either you'll see Texas Precious Metals Depository

**Customer** ▮▮▮▮▮▮▮▮▮ 00:02:43

Texas Depository Precious Metal Shriner. Yeah, okay, I got you.

**Host** Susan Aschenbeck 00:02:54

Or on the left-hand side when I do a Google search, I'm seeing it's a little orange Texas and a circle logo. Yes. All right. So then you will fill out those forms. And then they will need some additional forms, but I believe that for the trust,

**Customer** ▮▮▮▮▮▮▮▮▮ 00:02:59

Sign up.

**Host** Susan Aschenbeck 00:03:15

But as long as you're filling that out, it will kind of guide you and prompt you through what you need to do. And then if you have questions from there, you can definitely give us a call and we can go from there.

**Customer** ▮▮▮▮▮▮▮▮▮ 00:03:19

Okay. All right.

**Customer** ▮▮▮▮▮▮▮▮▮ 00:03:24

Okay. Can I, I'm going to get this filled out. Can I make an appointment for Thursday to bring medals?

**Host** Susan Aschenbeck 00:03:26

So I would like to tell you that you could, but we are so extremely busy that we're booking out, I believe, a week in advance.

**Host** Susan Aschenbeck 00:03:40

So typically we do not create appointments until the paperwork is done because I'm sure you can imagine so many people are interested in it and then if it does not come to fruition we have appointments that are very in demand. So as soon as you get all the forms in and you are issued an account number we can definitely look at the books and pencil you in.

**Host** Susan Aschenbeck 00:04:02

But I do want to -- as of right now, I do think it's at least a week's notice that I can't -- if there's a cancellation or something, we can definitely look. But it's very full, very full far out. Woo-hoo! Yes.

**Customer** ▮▮▮▮▮▮▮▮▮ 00:04:03

Very good. Well, I'll get, I'll just,

**Customer** ▮▮▮▮▮▮▮▮▮ 00:04:13

I totally get it. No problem. I'll go ahead and get all my paperwork filled out for the trust and then

**Customer** ▮▮▮▮▮▮▮▮▮ 00:04:19

I'll just be in contact if there's any questions and then we'll book an appointment. And I'll drive over and see you guys because I'm not that far. I'm in New Braunfels.

**Host** Susan Aschenbeck 00:04:28

Yes. Okay. That'll be wonderful. We look forward to meeting you. Yes, sir. Have a good one. Bye-bye.

TPM001257

Customer 00:04:31

Okay. Thank you, Susan. I appreciate your help.

Customer 00:04:35

Bye-bye.


---

Host Susan Aschenbeck                                                                          00:00:01

TPMD, this is Susan. No, this is not. This is Texas Precious Metal Depository in Sheiner.

Customer ████████                                                                              00:00:03

Hey, Susan. I am calling about a... First, let me see if I have the right place. Is this the Texas Spolian Depository in Leander?

Customer ████████                                                                              00:00:21

Oh, okay. Thank you. Bye-bye.

Host Susan Aschenbeck                                                                          00:00:24

You're welcome.

TPM001259


| Host | **Chad Svetlik** | 00:00:01 |

Texas Precious Metals is Chad. How can I help?

| Customer | ███████████ | 00:00:06 |

Yeah, I want to place an order.

| Host | **Chad Svetlik** | 00:00:07 |

Okay. Have you ordered from us before? All right. Well, welcome. Did I get your name? All right.

| Customer | ███████████ | 00:00:12 |

Nope, first time.

| Customer | ███████████ | 00:00:17 |

████████████████████████

| Host | **Chad Svetlik** | 00:00:31 |

What's your email address?

| Customer | ███████████ | 00:00:38 |

█████████ at yahoo.com.

| Host | **Chad Svetlik** | 00:01:12 |

And then let me go ahead and gather your home address.

| Customer | ███████████ | 00:01:20 |

Yeah, ████████████████████████,

| Customer | ███████████ | 00:01:34 |

████ .

| Host | **Chad Svetlik** | 00:01:47 |

Okay. And what's the best contact phone number for you?

| Customer | ███████████ | 00:01:53 |

This phone, ███████████ , cell phone.

| Host | **Chad Svetlik** | 00:01:59 |

All right. Excellent. Thank you.

| Host | **Chad Svetlik** | 00:02:05 |

And is this both your billing and your shipping address? All right. And do you know what it is that you're wanting to order?

| Customer | ███████████ | 00:02:09 |

Yeah, sure is.

| Customer | ███████████ | 00:02:16 |

Yeah, I want 30 of the Texas silver coins.

| Host | **Chad Svetlik** | 00:02:22 |

Okay.

| Host | **Chad Svetlik** | 00:02:27 |

You want the 2026.

| Customer | ███████████ | 00:02:30 |

2025.

TPM001260

| **Host** Chad Svetlik | 00:02:31 |
|---|---|

2025s, we are sold out currently.

| **Customer** ██████████ | 00:02:35 |
|---|---|

Oh, ****. That's the inaugural year. That's what I wanted. Okay, well,

| **Host** Chad Svetlik | 00:02:41 |
|---|---|

Well, the inaugural year of what now?

| **Customer** ██████████ | 00:02:45 |
|---|---|

what's that?

| **Host** Chad Svetlik | 00:02:46 |
|---|---|

The inaugural year of what?

| **Customer** ██████████ | 00:02:49 |
|---|---|

Of those coins was 2025. Yeah, I was hoping to get them in time.

| **Host** Chad Svetlik | 00:02:53 |
|---|---|

Well,

| **Host** Chad Svetlik | 00:02:55 |
|---|---|

the... I got you. Well, the Texas Mint... Are you referring to Texas Mint or to the Texas Bullion Depository?

| **Customer** ██████████ | 00:03:06 |
|---|---|

Well, bullion depository coins.

| **Host** Chad Svetlik | 00:03:09 |
|---|---|

Okay, because we're here at Texas Precious Metals. We do have the minted Texas pieces, but we've been issuing these since 2013. If you're referring to that other outfit, the one out of Leander, that's the Texas Bullion Depository. I think they were rolling something out for 2025. I'm not too sure about that.

| **Customer** ██████████ | 00:03:20 |
|---|---|

Oh, really?

| **Customer** ██████████ | 00:03:34 |
|---|---|

Well, which is the one that's actually dealing with the comptroller?

| **Host** Chad Svetlik | 00:03:40 |
|---|---|

That would not be us.

| **Customer** ██████████ | 00:03:43 |
|---|---|

Oh, really? Yeah. Okay. Well, I wanted to get the official stuff.

| **Host** Chad Svetlik | 00:03:44 |
|---|---|

Yes, sir. I got you. Yeah, I don't have a direct contact number for them, but yeah, we're not affiliated.

| **Customer** ██████████ | 00:03:50 |
|---|---|

Huh. Well, that's interesting.

| **Customer** ██████████ | 00:03:57 |
|---|---|

But did they

| **Customer** ██████████ | 00:03:59 |
|---|---|

actually sell corns?

| **Host** Chad Svetlik | 00:04:02 |
|---|---|

You know, I'm not really too familiar with their operations. But

| **Host** Chad Svetlik | 00:04:09 |
|---|---|

I've heard something about them. That we are.

TPM001261

| Customer ████████████ | 00:04:12 |
|---|---|

Well, yeah, that's the internet for you. Are you all located in Shiner? Yeah.

| Customer ████████████ | 00:04:21 |
|---|---|

Yeah. Well, the only other thing they got there is the brewery.

| Host  Chad Svetlik | 00:04:22 |
|---|---|

That's it? Yes, sir.

| Customer ████████████ | 00:04:28 |
|---|---|

Yeah, when I was young, I used to drink the Shiner beer and it came in steel cans, steel cans. And it was good. Really good stuff.

| Host  Chad Svetlik | 00:04:31 |
|---|---|

Oh yeah. Oh yeah. The good old yellow bellies. Yeah. It's the original. My grandfather used to drink those. Those are the original ones.

| Customer ████████████ | 00:04:46 |
|---|---|

Well...

| Customer ████████████ | 00:04:48 |
|---|---|

So what are the Texas coins that you have? Are they like rounds?

| Host  Chad Svetlik | 00:04:49 |
|---|---|

They are. They're going to be the Texas Mint Silver Rounds. We partner with the private mint to issue those, so it's trademarked by us,

| Customer ████████████ | 00:04:59 |
|---|---|

Okay, you say Texas mint. Who makes them?

| Host  Chad Svetlik | 00:05:08 |
|---|---|

but it's minted by a private mint that we work in conjunction with. Okay.

| Customer ████████████ | 00:05:12 |
|---|---|

Oh, well, they're not affiliated with the state itself.

| Host  Chad Svetlik | 00:05:15 |
|---|---|

Right. We have no affiliation with the state as far as our mint that we partner with. I don't know what kind of affiliations they may have, but no, we don't have any affiliations with the state.

| Customer ████████████ | 00:05:25 |
|---|---|

Well, probably the...

| Customer ████████████ | 00:05:29 |
|---|---|

The place that's in Leander, it's just a place where you can store your metal. It's probably not even a mint, is it?

| Host  Chad Svetlik | 00:05:30 |
|---|---|

Okay.

| Host  Chad Svetlik | 00:05:37 |
|---|---|

To my understanding, it's just a depository. Now, whether or not they sell or buy metals out of there, I don't know. But I'm fairly confident they don't have a mint there. They're going to be contracting out with another private mint as well.

| Customer ████████████ | 00:05:51 |
|---|---|

Yeah, yeah.

| Customer ████████████ | 00:05:54 |
|---|---|

Well, let me check with them, and I may be back with you because I like the way these Texas coins look. They're beautiful. Mm-hmm.

| Host  Chad Svetlik | 00:06:00 |
|---|---|

TPM001262

They are. I agree. Well, check with them and then let us know. Yes, sir. Bye-bye.

Customer ████████████████                                                    00:06:10

Okay. Thanks a lot.


| Host | **Berny Klapuch** | 00:00:01 |
|---|---|---|

This is Bernie. How may I help you?

| Customer | ████████████ | 00:00:05 |
|---|---|---|

My name is ████████████, and I believe I have silver deposited with you through Allen House Metals.

| Customer | ████████████ | 00:00:14 |
|---|---|---|

And I want to confirm that because I have no account with you, and I don't have an account number with you. And I have some concerns about whether the money's really there.

| Host | **Berny Klapuch** | 00:00:29 |
|---|---|---|

Yeah, I'm not familiar with the Allen House medals that you're speaking of, but...

| Customer | ████████████ | 00:00:35 |
|---|---|---|

Okay. I may have the wrong deposit. Is there another depository in Texas?

| Host | **Berny Klapuch** | 00:00:38 |
|---|---|---|

Yes, sir, there is. There's a depository in Leander, Texas.

| Customer | ████████████ | 00:00:46 |
|---|---|---|

In Leandre, Texas. Okay.

| Host | **Berny Klapuch** | 00:00:47 |
|---|---|---|

Yes, sir.

| Customer | ████████████ | 00:00:50 |
|---|---|---|

Look that up.

| Customer | ████████████ | 00:00:53 |
|---|---|---|

But you don't have any business with that.

| Customer | ████████████ | 00:00:57 |
|---|---|---|

Is there one that goes by like IDS?

| Host | **Berny Klapuch** | 00:01:01 |
|---|---|---|

Yes, sir.

| Customer | ████████████ | 00:01:04 |
|---|---|---|

Okay. Is that Leandre?

| Host | **Berny Klapuch** | 00:01:06 |
|---|---|---|

I think so. I'm not really sure. I know there is one in Leander. We are in Shiner, Texas, where Texas precious metals

| Host | **Berny Klapuch** | 00:01:15 |
|---|---|---|

Sure. Yes, sir. Thank you. Have a good day now. Bye-bye.

| Customer | ████████████ | 00:01:15 |
|---|---|---|

Okay. Okay.

| Customer | ████████████ | 00:01:18 |
|---|---|---|

So it's IBS as the initials. And I kept hearing them say, you've been most helpful. Thank you very much.


| Host | **Kyle McCord** | 00:00:01 |

Texas Precious Metals, this is Kyle.

| Customer | ▮▮▮▮▮ | 00:00:05 |

Yes, I thought there was a gold depository in Round Rock. Am I wrong?

| Host | **Kyle McCord** | 00:00:13 |

I am not familiar with one in Round Rock. The three depositories in the state of Texas is our location here in Shiner, Texas. The state's

| Host | **Kyle McCord** | 00:00:27 |

Which is in Leander, outside of Austin. And then there's the one up in Dallas, part of IDS systems.

| Customer | ▮▮▮▮▮ | 00:00:31 |

Oh, there's one in Leander.

| Customer | ▮▮▮▮▮ | 00:00:44 |

And how much does Leander charge for maintenance and storage?

| Host | **Kyle McCord** | 00:00:46 |

I'm

| Host | **Kyle McCord** | 00:00:47 |

not really aware of that.

| Host | **Kyle McCord** | 00:00:54 |

That's not affiliated with us. That's the state depository.

| Customer | ▮▮▮▮▮ | 00:00:59 |

What does that mean, state depository?

| Host | **Kyle McCord** | 00:01:02 |

It's operated by the state of Texas in

| Customer | ▮▮▮▮▮ | 00:01:09 |

Oh.

| Host | **Kyle McCord** | 00:01:10 |

conjunction with some other, I think, entities.

| Host | **Kyle McCord** | 00:01:18 |

That, you know, that built the facility and do the trading portion.

| Customer | ▮▮▮▮▮ | 00:01:25 |

Do you have a phone number for them?

| Host | **Kyle McCord** | 00:01:28 |

No, man. You would have to, I guess, just search for them through Google or whatever search engine you prefer. Although we...

| Customer | ▮▮▮▮▮ | 00:01:40 |

So it would be Texas State Depository Leander.

| Host | **Kyle McCord** | 00:01:47 |

I mean, I know that's where they're located and it should be like Texas State Depository or something like that. I'm not familiar with that as much. I'm much more familiar with our own depository services and that that we do here in Shiner.

**Customer** ▮▮▮▮▮▮▮▮ 00:02:08

Where is Scheider from Austin?

**Host** Kyle McCord 00:02:11

Oh, it's about an hour and a half drive. We're about halfway between Houston and San Antonio, 20 minutes south of I-10.

**Customer** ▮▮▮▮▮▮▮▮ 00:02:20

I see. Well, I appreciate your help.

**Host** Kyle McCord 00:02:22

Yeah, Gonzalez. Oh, yes, ma'am.

**Customer** ▮▮▮▮▮▮▮▮ 00:02:26

Thank you.

**Host** Kyle McCord 00:02:26

Yes, you're welcome.

TPM001266



---

**Host** Susan Aschenbeck · 00:00:02
TPMD, this is Susan.

**Customer** SAN ANTONIO TX · 00:00:05
Susan, my name's ▮▮▮▮▮▮▮. I just called a minute ago, but I forgot my more important question.

**Customer** SAN ANTONIO TX · 00:00:13
Margie and I have

**Customer** SAN ANTONIO TX · 00:00:17
about a half million, what it's worth now up there. We want to split it up. I'm going to create an account and take all the small silver out and put it in my account and just leave

**Customer** SAN ANTONIO TX · 00:00:32
Well, the gold and big silver in her account. That's what we've been up to for a week or two now. But I'm setting up my account, and I came across this thing where you have a place in Shiner. We're going to buy a ranch out to the east side of town, and not only would Shiner be a whole lot closer, but you're charging less there for holding the stuff and everything.

**Host** Susan Aschenbeck · 00:00:33
Okay.

**Host** Susan Aschenbeck · 00:00:54
So, okay. And where are your metals currently?

**Customer** SAN ANTONIO TX · 00:00:56
That blows me away. What's going on there? One's government administered and the other's not. Can you explain that to me? Because it looks to me like we're going to save a whole heck of a lot of money if we move what we have down to China.

**Customer** SAN ANTONIO TX · 00:01:14
They're in, up by Austin, Leander.

**Host** Susan Aschenbeck · 00:01:18
And Leander, okay. No, this is a private company. We do not report the storage to the government. So if you go to – had you dealt with an advisor or you were just looking at Texas Precious Metals?

**Customer** SAN ANTONIO TX · 00:01:37
I'm

**Customer** SAN ANTONIO TX · 00:01:40
trying to figure out

**Host** Susan Aschenbeck · 00:01:41
No, that's okay. So... All right, so, yeah.

**Customer** SAN ANTONIO TX · 00:01:44
What the difference is if we and whether or not you all, whether or not you all can move it from Leander to Shriner and what the heck the difference is now far as privacy goes. That's BS. The government knows who has what, no matter what anything's done. I don't play that game. I'm just, I'm just worried about the expense of storage.

**Host** Susan Aschenbeck · 00:02:06
Okay, so you can go to TexasDepository.com and under World Class Vaulting there is a full video that shows the information like we're fully insured by Lloyds of London and the level of certification for security and that it is privately owned.

**Customer** SAN ANTONIO TX · 00:02:23
I,

**Customer** SAN ANTONIO TX · 00:02:27

TPM001267

I, so the,

**Host** Susan Aschenbeck                                                 00:02:30

And if you're looking at rates, I can kind of calculate that based on if you have-- so how much was the account value?

**Customer** SAN ANTONIO TX                                               00:02:30

So it's

**Customer** SAN ANTONIO TX                                               00:02:39

about a half million right now. It's 400,000 in silver and we got 40 ounces of gold. It's got to be getting closer to three quarters of a million. So I'm dealing with the Texas Bullion Depository.

**Host** Susan Aschenbeck                                                 00:02:41

OK.

**Host** Susan Aschenbeck                                                 00:02:45

OK.

**Host** Susan Aschenbeck                                                 00:02:50

OK.

**Customer** SAN ANTONIO TX                                               00:02:57

They've got three different locations. I'm gonna watch your video and everything, but help me out with the big picture here. Y'all got three different locations,

**Host** Susan Aschenbeck                                                 00:02:59

The main location is in Shiner, Texas. Yes, sir. And they do offer -- yes, sir.

**Customer** SAN ANTONIO TX                                               00:03:14

right? The main location is in China. Why am I paying more to store it in Leander? And why is Leander government-admin- istered and the others not?

**Host** Susan Aschenbeck                                                 00:03:25

This is a private company. I can't speak to the facility in Leander, but this is a private business. And the rates are as they are, the annual breakdown under the rates, which if you were storing $500,000 worth of, let's say, well, that would be around.

**Customer** SAN ANTONIO TX                                               00:03:46

Are they doing a comparison here? Because I'm on the TexasDepository.com page.

**Host** Susan Aschenbeck                                                 00:03:49

Yes, sir. TexasDepository.com. And then there's an annual breakdown. And then that gives you – you can also do an estimate of your monthly charges. But for $500,000 of gold versus silver, your rates are 0.45% and 0.5% respectively.

**Customer** SAN ANTONIO TX                                               00:04:11

The difference is considerable. Where I'm at a loss, and excuse me, I'm a very simple thinker, where I'm at a loss is you keep emphasizing that you're a private company.

**Host** Susan Aschenbeck                                                 00:04:22

Yes, sir. This

**Customer** SAN ANTONIO TX                                               00:04:25

Why are you emphasizing that? I believe I'm talking to the Texas Bullion Depository. That's not true?

**Host** Susan Aschenbeck                                                 00:04:29

is not Texas Bullion Depository. This is just Texas Depository. The website is TexasDepository.com.

**Host** Susan Aschenbeck                                                 00:04:39

And this is Texas Precious Metals Depository. Okay. All right. Yeah, we are not associated with them.

**Customer** SAN ANTONIO TX                                               00:04:40

I see. I see. I've landed on this page by mistake. Okay, so you're showing Texas Bullion Depository as a competing entity.

TPM001268

You're charging a lot less than everyone. Okay. Ma'am, I'm sorry. This has been based on all of my mistakes, but now that you kind of know where I'm coming from, can I tell you, I advise people. I'm not trying to be argumentative or insulted. I'd really like to hear what you say about this. I tell people not to store it.

Host    Susan Aschenbeck                                      00:05:00

I won't take insult to it if it's not meant with insult. Yes, sir.

Customer    SAN ANTONIO TX                                    00:05:20

It's not, ma'am. But I generally tell people I wouldn't keep my bullion in a private depository because if you all go under, in some way it's going to tie up our metal. Is it not?

Host    Susan Aschenbeck                                      00:05:35

We are fully insured by Lloyds of London in case anything were to happen, but you are definitely entitled to your own opinion. Yes, sir.

Customer    SAN ANTONIO TX                                    00:05:47

All right. So you're saying that our stuff being insured by Lloyd's of London is as safe as the

Customer    SAN ANTONIO TX                                    00:05:55

As the Texas Bullion Depository. That's basically your position.

Host    Susan Aschenbeck                                      00:05:59

I won't speak about the Texas Bullion Depository. I am employed by Texas Precious Metals Depository and I have seen that it has been ran with integrity since I've been here. So that's all that I can speak to.

Customer    SAN ANTONIO TX                                    00:06:12

Okay. All right. You've been very kind to put up with me. And I'm sorry for my mistake, but I'm glad I talked to you, though. Thank you.

Host    Susan Aschenbeck                                      00:06:19

Yes, sir. Have a good one. Thanks.

Customer    SAN ANTONIO TX                                    00:06:24

You too. Bye.


| Host | **Afton Chacon** | 00:00:02 |

This is Afton. How may I help you?

| Customer | ███████████ | 00:00:05 |

Good morning, ma'am. I'm trying to log on and it isn't responding to my password. So I clicked on the link and said it had sent me an email and I still haven't received the email. It's been quite a while. So something's amiss. ███████

| Host | **Afton Chacon** | 00:00:06 |

Okay. What is your name?

| Host | **Afton Chacon** | 00:00:24 |

Okay, just one moment.

| Host | **Afton Chacon** | 00:00:31 |

███████

| Host | **Afton Chacon** | 00:00:49 |

████████

| Customer | ███████████ | 00:00:53 |

That would be me.

| Host | **Afton Chacon** | 00:00:55 |

So I'm actually not showing that you have access to your online portal. So that could be the issue there. So instead of selecting login, you're going to select sign up. And you'll go through that process.

| Customer | ███████████ | 00:01:02 |

Well, that's a problem. Yeah.

| Customer | ███████████ | 00:01:13 |

Okay, but it will reflect what I've got in the depository when I create a new account?

| Host | **Afton Chacon** | 00:01:18 |

Correct. Correct. What is-- do you know your account number?

| Customer | ███████████ | 00:01:23 |

Not offhand,

| Host | **Afton Chacon** | 00:01:25 |

No. Is it listed under your name or is it under a trust or business?

| Customer | ███████████ | 00:01:31 |

no. It's under my name. The account's under my name.

| Host | **Afton Chacon** | 00:01:54 |

I'm not

| Host | **Afton Chacon** | 00:02:06 |

finding an account

| Host | **Afton Chacon** | 00:02:09 |

with your name. Is

| Customer | ███████████ | 00:02:12 |

Well, this is a problem.

| Host | **Afton Chacon** | 00:02:14 |

it

**Host** Afton Chacon                                            00:02:18
an IRA or a non-IRA?

**Customer** ▇▇▇▇▇▇▇▇                                            00:02:21
Non-IRA.

**Host** Afton Chacon                                            00:02:22
Is

**Host** Afton Chacon                                            00:02:28
it a joint account, a sole account?

**Customer** ▇▇▇▇▇▇▇▇                                            00:02:32
Nope.

**Host** Afton Chacon                                            00:02:35
It just says sole account?

**Customer** ▇▇▇▇▇▇▇▇                                            00:02:37
Nope. Yep.

**Host** Afton Chacon                                            00:03:05
No sir, I'm not finding anything in our system.

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:10
All right.

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:13
Well, I've got, I know it, heck, I opened it in person for Pete's sakes. Yeah, okay, well, let's get to the bottom of this.

**Host** Afton Chacon                                            00:03:23
Okay, so I just want to confirm you are calling Texas Precious Metals Depository in Shiner, Texas, correct?

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:29
Oh, Shiner. No, no, no, I'm trying to get Leander.

**Host** Afton Chacon                                            00:03:32
Okay, this is the Shiner Depository.

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:35
Ah, ah, yes.

**Host** Afton Chacon                                            00:03:36
That would be your problem.

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:39
You started having me go into irritable bowel syndrome here. Okay.

**Host** Afton Chacon                                            00:03:47
Alrighty. Well, if you need anything else, just let us know,

**Customer** ▇▇▇▇▇▇▇▇                                            00:03:53
Are you related to them in some fashion?

**Host** Afton Chacon                                            00:03:56
okay? No, sir. We are two separate businesses.

**Customer** ▇▇▇▇▇▇▇▇                                            00:04:00
Okay. Well, thank you very much.

**Host** Afton Chacon                                            00:04:01

Absolutely. You have a wonderful day. Thank you. Bye-bye.

All right. Bye-bye.


**Host** Susan Aschenbeck                                          00:00:01

TPMD, THIS IS SUSAN.

**Customer** ███████                                          00:00:04

Yes, I have an IRA. I went through the Gold Bureau and deposit. It's up in Dallas. Is there what how much would it cost me to to transfer mine to because you're in Leander, right?

**Host** Susan Aschenbeck                                          00:00:07

OKAY.

**Host** Susan Aschenbeck                                          00:00:23

We are not in Leander. This is Texas Precious Metals Depository in Shiner, Texas.

**Customer** ███████                                          00:00:28

Oh, I thought. Well, where's the one that the Texas State? That's what I wanted to.

**Host** Susan Aschenbeck                                          00:00:32

Yeah, I'm not sure of all of their locations, but we are located in Shiner, Texas.

**Customer** ███████                                          00:00:34

Because I want to get closer. That shiner is just as far as Dallas is for

**Customer** ███████                                          00:00:44

me. Well, they said that this one is for the state.

**Host** Susan Aschenbeck                                          00:00:50

Texas Precious Metals Depository is privately owned and we are located in Shiner, Texas.

**Customer** ███████                                          00:00:56

So how much does it cost to keep your money in there per year?

**Host** Susan Aschenbeck                                          00:01:02

Okay, so if you were doing direct, I can, if you go to TexasDepository.com, the pricing is listed under rates. If you have the idea of how the account balance, I could tell you your monthly storage fee. But if you're currently with an IRA custodian, a lot of times IRA custodians charge you an annual

**Host** Susan Aschenbeck                                          00:01:21

So were these an IRA account?

**Customer** ███████                                          00:01:23

Yeah. I

**Customer** ███████                                          00:01:25

paid $250. Well, and up this year, it's $279.

**Host** Susan Aschenbeck                                          00:01:30

Were your metals in an IRA custodian-led account? Okay. So then if you were interested in using our depository and you're wanting to keep them in an IRA, you could go to TexasDepository.com and under the IRA Services tab, that shows the custodians we currently

**Host** Susan Aschenbeck                                          00:01:47

Currently work with. So you could reach out to any of them and ask them about rates and things like that.

**Customer** ███████                                          00:01:54

Okay, because, yeah, well, I thought this was the... Well, they said that Texas... Well, I knew they had their own depository. I mean, the state of Texas. And I thought that's what I was calling it.

| Host Susan Aschenbeck | 00:02:02 |
|---|---|

This is not the state one. Our email, I mean, excuse me, our address on the internet is texasdepository.com, but this is Texas Precious Metals Depository. And we are not ran by the state. It's a private company.

| Customer ▮▮▮▮▮▮ | 00:02:18 |
|---|---|

Yeah, well, I'm in a private company now, too. So, it's ran by...

| Customer ▮▮▮▮▮▮ | 00:02:23 |
|---|---|

Well, it was a Go Bureau, not Go Bureau, it was a, ah, dang, you know, there's so many of them I go through, but this one was out of California, but they only have two depositories. Well, they have more than that now, but then when I started, we only had two. One was in Dallas, well, they have two.

| Customer ▮▮▮▮▮▮ | 00:02:44 |
|---|---|

I'm going to Dallas now, and the other one's in Delaware, and they have one in New Mexico and some other else. I just don't like the idea. I don't like going to Dallas. If I would have known that even you all would be better because I don't like going down to Seiner, but it's just as far as Dallas is to me, but you don't have to drive through Dallas traffic.

| Host Susan Aschenbeck | 00:03:08 |
|---|---|

Yes, sir. Yeah. Well, wherever you feel more comfortable.

| Customer ▮▮▮▮▮▮ | 00:03:11 |
|---|---|

Y'all didn't exist when

| Customer ▮▮▮▮▮▮ | 00:03:15 |
|---|---|

I did this. This was back in 2018, 20. So I don't think y'all would have been there that long. Anyways,

| Host Susan Aschenbeck | 00:03:18 |
|---|---|

Oh, okay.

| Host Susan Aschenbeck | 00:03:26 |
|---|---|

Okay. Yes,

| Customer ▮▮▮▮▮▮ | 00:03:28 |
|---|---|

have you been or what?

| Host Susan Aschenbeck | 00:03:30 |
|---|---|

sir. Yes, we have. Yes. We moved into this location, I believe, a little over two years ago, but they were doing it in 2018.

| Customer ▮▮▮▮▮▮ | 00:03:38 |
|---|---|

Okay, well, I didn't hear anything about that. So, I mean, the guy told me, they said they only had two at that time. Now they got...

| Customer ▮▮▮▮▮▮ | 00:03:46 |
|---|---|

Several, but I want something closer.

| Host Susan Aschenbeck | 00:03:49 |
|---|---|

Yes. Yeah. Yeah. I understand. That makes sense. You want something closer.

| Customer ▮▮▮▮▮▮ | 00:03:52 |
|---|---|

I can go look at it, but I hate going to Dallas. It's in an IRA, but also you can do your other stuff too there, right? Your privates.

| Host Susan Aschenbeck | 00:04:06 |
|---|---|

Yeah. You could have a direct account with us that's not through an IRA custodian. Yes, sir, you could do that.

| Customer ▮▮▮▮▮▮ | 00:04:11 |
|---|---|

Yeah. Okay. That's what I'm wondering now. I'm going to call around and find out more information because I wanted to talk to people. They were talking about, you know, State of Texas as their own depository. They're going to gold and silver. And you can actually deposit money there and...

| Host Susan Aschenbeck | 00:04:13 |
|---|---|

Mm-hmm.

TPM001274

**Customer** ▮▮▮▮▮                                                    00:04:29

And you get a card or whatever. And that way you don't have to go back and forth. Yes, ma'am.

**Host** Susan Aschenbeck                                             00:04:35

Yeah. So this -- we are not the state, so I'm not sure what they have to offer,

**Host** Susan Aschenbeck                                             00:04:43

but you're welcome to reach out to them.

**Customer** ▮▮▮▮▮                                                    00:04:46

I just want... I don't know how I looked up and it said Texas Depository. I said Texas State Depository and you all came up. So I'm sorry,

**Host** Susan Aschenbeck                                             00:04:56

Oh, goodness. No, that's okay. No need to apologize. It's fine.

**Customer** ▮▮▮▮▮                                                    00:04:59

ma'am. All right. Thank you.

**Host** Susan Aschenbeck                                             00:05:00

All right. Yes, sir. Thank you. Bye-bye.


| Host | Kayla Michalec | 00:00:02 |

TPM Shipping, this is Shanna. Probably at a FedEx shipping center, yes.

| Customer | ████████████ | 00:00:04 |

Hello. I have a question about shipment. I'm selling something and the person I talked to asked if I wanted to drop it off. And I think he meant drop it off at a UPS place. You don't -- or FedEx.

| Host | Kayla Michalec | 00:00:27 |

Like if it's over a thousand, you have to sign for it. Like you're buying something from us or you're...

| Customer | ████████████ | 00:00:27 |

Okay, so you don't accept people dropping stuff off on your doorstep, right?

| Customer | ████████████ | 00:00:49 |

No, I'm selling something to you and I know you're in Leander. Is it Leander?

| Host | Kayla Michalec | 00:00:50 |

We are in Shiner. And drop it off. No. No.

| Customer | ████████████ | 00:00:57 |

Where are

| Customer | ████████████ | 00:01:00 |

you? Shiner. Okay, Shiner. So I can't drive over to Shiner and knock on your door and drop off something, right?

| Host | Kayla Michalec | 00:01:10 |

We schedule a pickup for you and then they come, either FedEx will come and pick it up from you. Yes. Third source app. Oh, yes. No, we will schedule a pickup for you and send you a label.

| Customer | ████████████ | 00:01:17 |

Okay. That's what I thought. I just wondered because he asked me if I wanted to drop it off and that made me think, I don't think I can go to your doorstep. All right.

| Host | Kayla Michalec | 00:01:32 |

And then we'll schedule a pickup time for you and they will come by and pick up the package. Okay. You're welcome. You too. Bye.

| Customer | ████████████ | 00:01:38 |

Okay. Great. All right. Thank you very much. Have a good day.

| Customer | ████████████ | 00:01:43 |

Bye.

| Host **Berny Klapuch** | 00:00:01 |
|---|---|

TPMD, this is Berny. How may I help you?

| Customer ███████████ | 00:00:05 |
|---|---|

Hi, yes, I just finally registered my account on your website and it said to call this number to finish the process.

| Host **Berny Klapuch** | 00:00:07 |
|---|---|

Okay. Awesome. Okay. Is this an account through us directly or was it through an IRA custodian or the Kirk Elliott group?

| Customer ███████████ | 00:00:24 |
|---|---|

I didn't realize you handled IRA stuff.

| Host **Berny Klapuch** | 00:00:27 |
|---|---|

Well, the custodians will use this. Some custodians use this for storage. Yes, ma'am.

| Host **Berny Klapuch** | 00:00:33 |
|---|---|

So directly. Okay. If you wouldn't mind giving me your name, I'll look that up. Make sure we have everything we need on this side. Absolutely. Okay.

| Customer ███████████ | 00:00:34 |
|---|---|

Hmm. No, this is strictly directly to

| Customer ███████████ | 00:00:46 |
|---|---|

you. Sure, my name is ███████████ and the account name is ███████████. It's a joint personal.

| Host **Berny Klapuch** | 00:00:52 |
|---|---|

All right, just one moment,

| Host **Berny Klapuch** | 00:00:58 |
|---|---|

please. Ms. ██████, thank you so much for holding. Yes, ma'am, we do have both those documents completed, so we'll get those pulled and get an account number for you. You will receive that account number by email by the end of business today, and you'll be good to go to start depositing to your account.

| Customer ███████████ | 00:01:17 |
|---|---|

Great. I have a few questions for you if you have a second.

| Host **Berny Klapuch** | 00:01:19 |
|---|---|

Sure. Yes, ma'am.

| Customer ███████████ | 00:01:21 |
|---|---|

Do you sell the new Texas bullion?

| Host **Berny Klapuch** | 00:01:24 |
|---|---|

Now, by new Texas bullion, what is it you're meeting?

| Customer ███████████ | 00:01:30 |
|---|---|

The new Texas coins that have been...

| Host **Berny Klapuch** | 00:01:32 |
|---|---|

Now, this is Texas Precious Metals Depository, and we have our own coins. Is that what you're speaking of, the Texas bullion 2026? Yes.

| Customer ███████████ | 00:01:44 |
|---|---|

Well, didn't Texas just announce that they are going to

| Host **Berny Klapuch** | 00:01:47 |
|---|---|

TPM001277

I don't know. You may be speaking of the depository that's in Leander. Is that what you're? Yeah, I think they're a state depository. We're a private depository.

**Customer** ████████████ 00:01:50

mint their own coins?

**Customer** ████████████ 00:02:00

No, it was a state thing, not a...

**Host** Berny Klapuch 00:02:10

Texas Precious Metals. Our website for purchasing is Texas Precious Metals. It's texmetals.com and it shows our inventory there online.

**Customer** ████████████ 00:02:24

Okay.

**Customer** ████████████ 00:02:30

And the other one you said is Texas Depository?

**Host** Berny Klapuch 00:02:33

I know there is another Texas depository. It's in Leander, Texas. I don't exactly know. I'm not sure. It's a state depository, so I'm not sure that's maybe the one you're referring to or looking for.

**Customer** ████████████ 00:02:40

I mean, yeah.

**Customer** ████████████ 00:02:48

No, I thought that the state of Texas was going to start minting its own Buzon coins. How they're sold, I don't know.

**Host** Berny Klapuch 00:02:52

Okay.

**Host** Berny Klapuch 00:02:57

Let's...

**Host** Berny Klapuch 00:03:00

Let me ask for you right quick. I'm not sure, or I can get you to the trading desk if you'd like to speak.

**Customer** ████████████ 00:03:06

No, no, I'll check my sources online in the news. Yeah, no worries. But question, if I want to send in coins...

**Host** Berny Klapuch 00:03:10

Okay. Okay. Okay. Sure thing. Sure. Yes, ma'am.

**Customer** ████████████ 00:03:20

And I know that, I mean, I've done a little research on this with you, with your depository. I know I can call you and get labels and that you pick it up at no charge, right? You only charge for shipping if I take delivery of

**Host** Berny Klapuch 00:03:24

Okay.

**Host** Berny Klapuch 00:03:32

Okay.

**Host** Berny Klapuch 00:03:33

That is correct. If you would like me to, I can email you our intake form. You would fill that out and get back to us when you're ready to ship in, of course. And then our logistics team will take it and get you packing instructions and the labels for insuring and shipping it from your home to ours.

**Customer** ████████████ 00:03:39

it. Oh, that'd be

**Customer**                                              00:03:56

great. That'd be great. I'd love to have the packing instructions as soon as possible because I'm going to start getting that done.

**Host**  Berny Klapuch                                   00:04:02

Okay, I will send you this form and go ahead and fill out what it is you're wanting to send in with your first shipment. I'll get that to our logistics and they will be contacting you within the next few days. Alrighty, you're very welcome. Thank you. You bet. Anything else, please give us a call. Have a good day now. Thank you. Bye-bye.

**Customer**                                              00:04:10

Okay.

**Customer**                                              00:04:15

Perfect. Thank you so much. I appreciate your help. Okay. Take care.

**Customer**                                              00:04:21

Will do. All right. Bye-bye. You too.

**00:00:03,849 --> 00:00:05,220 [speaker_0]**
Texas Precious Metals, this is Josh.

**00:00:06,040 --> 00:00:13,580 [speaker_1]**
Hi, Josh, this is ██████. I am calling to, uh, confirm my order this morning.

**00:00:13,700 --> 00:00:15,720 [speaker_0]**
Okay. Did you buy some or?

**00:00:15,800 --> 00:00:16,640 [speaker_1]**
I'm trying to.

**00:00:16,650 --> 00:00:16,650 [speaker_0]**
Okay.

**00:00:16,660 --> 00:00:27,570 [speaker_1]**
It says, next step, activate your account. Uh, said... Okay, I sent- okay, they sent me an email. Let's see. I thought I needed to call to finalize the order. Maybe I didn't need to do that. I don't know.

**00:00:27,880 --> 00:00:30,080 [speaker_0]**
Did you, did you just pay online already? Like, did you-

**00:00:30,100 --> 00:00:38,360 [speaker_1]**
Well, I, I said I wanted to do wire. That was the same as the cash price. I've, I really need some help, I guess, in walking through the best way to do this.

**00:00:38,420 --> 00:01:00,220 [speaker_0]**
Okay, well, glad you called. Um, let's see, ██████. Mm-hmm. What's a good email for that account?

**00:01:00,860 --> 00:01:03,720 [speaker_1]**
██████████@yahoo.

**00:01:05,580 --> 00:01:07,480 [speaker_0]**
██████████?

**00:01:07,540 --> 00:01:08,160 [speaker_1]**
That's correct.

**00:01:08,220 --> 00:01:18,840 [speaker_0]**
Okay. It doesn't look like the order's gone through yet. Let's see.

**00:01:18,880 --> 00:01:23,610 [speaker_1]**
Well, I don't... It says next step, validation, and it just says, "Call this number," and it-

**00:01:23,610 --> 00:01:23,610 [speaker_0]**
Oh.

**00:01:23,610 --> 00:02:03,480 [speaker_1]**
-doesn't give me any button to push to do anything else. I've got it in my cart. [clears throat] Let me try this again. Let me try the email again and see what it says here. Thank you. Confirming purchase, da, da, da, da. If we get your, uh, sign into our society, use these

credentials. Uh, let's see now.

**00:02:03,520 --> 00:02:16,440 [speaker_0]**
Okay. Let's see. Yeah, it doesn't say that the order's been pushed through yet. But you want-

**00:02:16,520 --> 00:02:20,440 [speaker_1]**
All right, maybe I need to start over. Maybe I need to start over and try it again.

**00:02:20,480 --> 00:02:22,780 [speaker_0]**
Well, it-- we can do it right here on the phone if you'd like.

**00:02:23,240 --> 00:02:25,160 [speaker_1]**
Perfect. Yes, I would like that.

**00:02:25,200 --> 00:02:25,360 [speaker_0]**
Okay.

**00:02:25,380 --> 00:02:34,480 [speaker_1]**
Because I currently show a picture of twenty of the Dallas gold notes for two oh two twenty.

**00:02:36,380 --> 00:02:48,580 [speaker_0]**
Okay, let's see. Gold. The goldbacks?

**00:02:48,660 --> 00:02:49,320 [speaker_1]**
Yes.

**00:02:49,380 --> 00:02:50,580 [speaker_0]**
Okay.

**00:02:50,640 --> 00:02:52,640 [speaker_1]**
Now, how long have they been out?

**00:02:52,660 --> 00:02:58,060 [speaker_0]**
Those are fairly recent. Um, I'm a bit newer. I don't have an exact date here.

**00:02:58,100 --> 00:02:58,540 [speaker_1]**
Okay.

**00:02:58,660 --> 00:03:00,140 [speaker_0]**
Let me see.

**00:03:00,260 --> 00:03:13,280 [speaker_1]**
Just curious, because I've been purchasing goldbacks from other states, but apparently this is a take state of Texas only kind of thing, and you can't get them through... Well, I don't know. I'm just learning, too. [chuckles]

**00:03:13,320 --> 00:03:19,440 [speaker_0]**
Hey, me and you both. Um, let's see, get that over here.

**00:03:23,060 --> 00:03:34,060 [speaker_1]**
Alpine Gold is where I got the first one. The, the first one that was created was through Alpine Gold. I believe that the person used to work with Alpine Gold, who created these.

**00:03:35,940 --> 00:03:41,900 [speaker_0]**

Okay. Um, and you said you wanted twenty of those?

**00:03:42,060 --> 00:03:43,780 [speaker_1]**
Yes, sir.

**00:03:43,880 --> 00:03:49,890 [speaker_0]**
Okay. [clears throat]

**00:03:52,120 --> 00:03:59,400 [speaker_1]**
Now, tell me what the policy is as far as if I needed to redeem any later, at a later date. How do you handle that?

**00:03:59,500 --> 00:04:01,140 [speaker_0]**
Uh, like to buy them back from you?

**00:04:01,220 --> 00:04:02,560 [speaker_1]**
Yes. Yeah.

**00:04:02,680 --> 00:04:11,360 [speaker_0]**
Um, you'd essentially just call in, and you'd get our, our bid on them. Uh, they're, they're subject to change, like how, you know-

**00:04:11,370 --> 00:04:11,410 [speaker_1]**
Sure.

**00:04:11,410 --> 00:04:13,420 [speaker_0]**
-the market changes and moves around, so.

**00:04:13,460 --> 00:04:13,940 [speaker_1]**
Sure.

**00:04:14,040 --> 00:04:15,730 [speaker_0]**
Um, can't really-

**00:04:15,740 --> 00:04:15,920 [speaker_1]**
So-

**00:04:15,960 --> 00:04:19,100 [speaker_0]**
-give you an exact answer on where they'd be, where our bid would be at, but-

**00:04:19,380 --> 00:04:20,280 [speaker_1]**
Yeah.

**00:04:20,300 --> 00:04:20,540 [speaker_0]**
Um-

**00:04:20,579 --> 00:04:20,680 [speaker_1]**
Okay.

**00:04:20,700 --> 00:04:26,520 [speaker_0]**
Yeah, it's kind of just how you'd call in here, talk to, talk to me or one of the other traders here, and-

**00:04:26,600 --> 00:04:27,260 [speaker_1]**

Okay, now-

**00:04:27,270 --> 00:04:28,700 [speaker_0]**
-we get you locked in, and-

**00:04:28,740 --> 00:04:28,900 [speaker_1]**
Oh.

**00:04:28,940 --> 00:04:29,469 [speaker_0]**
Yeah, it's pretty-

**00:04:29,520 --> 00:04:29,780 [speaker_1]**
Oh.

**00:04:29,790 --> 00:04:31,120 [speaker_0]**
-pretty straightforward.

**00:04:31,220 --> 00:04:42,900 [speaker_1]**
Okay, is there any way, like with Alpine Gold, I can pay and have it held in my... Like, like a bank account, so my bank account grows?

**00:04:42,960 --> 00:04:56,540 [speaker_0]**
Yes, we do have a depository. Um, we're the largest depository here in Texas, and we do offer that service. I would, like, after this call, I could send you over to our depository team, and they could help set you up an account.

**00:04:56,580 --> 00:05:00,080 [speaker_1]**
Well, but then I'd have to pay a rent, right? This is different than that.

**00:05:00,140 --> 00:05:00,190 [speaker_0]**
Oh, okay.

**00:05:00,200 --> 00:05:11,200 [speaker_1]**
This is different. This is different. This is where I... It's like... Well, anyway, they, they use my money to create more goldbacks, kind of, and it's like a lease program kind of thing.

**00:05:11,240 --> 00:05:12,860 [speaker_0]**
Through Alpine?

**00:05:12,980 --> 00:05:13,460 [speaker_1]**
Yeah.

**00:05:14,380 --> 00:05:19,100 [speaker_0]**
Huh. Yeah, um, unfortunately, we don't have something like that set up.

**00:05:19,140 --> 00:05:19,170 [speaker_1]**
Okay.

**00:05:19,180 --> 00:05:19,880 [speaker_0]**
Or at least not yet.

**00:05:19,900 --> 00:05:19,910 [speaker_1]**
Okay.

**00:05:19,920 --> 00:05:20,700 [speaker_0]**
I don't want to say we-

**00:05:20,710 --> 00:05:21,120 [speaker_1]**
Okay

**00:05:21,130 --> 00:05:22,240 [speaker_0]**
-are never going to, but-

**00:05:22,640 --> 00:05:24,700 [speaker_1]**
Okay. Well, I'll just take them for delivery then.

**00:05:24,760 --> 00:05:24,980 [speaker_0]**
Okay.

**00:05:24,990 --> 00:05:28,560 [speaker_1]**
And is, does delivery cost anything or is that-

**00:05:28,620 --> 00:05:29,630 [speaker_0]**
No, ma'am.

**00:05:29,700 --> 00:05:36,260 [speaker_1]**
Okay.

**00:05:37,540 --> 00:05:53,550 [speaker_0]**
Uh, okay. ███████, your last name ███████████.

**00:05:53,580 --> 00:05:56,520 [speaker_1]**
Yes, that's correct. Yes.

**00:05:57,880 --> 00:05:58,860 [speaker_0]**
What's a good address?

**00:05:59,660 --> 00:06:10,100 [speaker_1]**
████████████████████████████████████████████████.

**00:06:12,780 --> 00:06:20,220 [speaker_0]**
Seven seven four nine four. I got a brother over there in Richmond. I know it's not the same, but-

**00:06:21,060 --> 00:06:25,560 [speaker_1]**
[laughing] It's not too far. Not too far.

**00:06:26,560 --> 00:06:26,570 [speaker_0]**
Yeah.

**00:06:26,600 --> 00:06:29,360 [speaker_1]**
So how far away is Shiner? Is that where you are?

**00:06:29,420 --> 00:06:32,870 [speaker_0]**
Yes, ma'am. Shiner is about, uh, an hour and a half, uh-

**00:06:32,920 --> 00:06:32,930 [speaker_1]**

Okay.

**00:06:32,930 --> 00:06:34,610 [speaker_0]**
-west of you.

**00:06:34,820 --> 00:06:35,780 [speaker_1]**
Okay.

**00:06:35,900 --> 00:06:38,520 [speaker_0]**
If you're driving fast, it is not. I'm kidding.

**00:06:38,530 --> 00:06:38,530 [speaker_1]**
[laughing]

**00:06:38,540 --> 00:06:39,949 [speaker_0]**
It's about an hour and a half. Um-

**00:06:40,120 --> 00:06:41,180 [speaker_1]**
Okay.

**00:06:41,240 --> 00:06:43,240 [speaker_0]**
And this would be a good phone number to put on record?

**00:06:43,300 --> 00:06:43,790 [speaker_1]**
Yes, sir.

**00:06:43,840 --> 00:06:44,210 [speaker_0]**
Okay.

**00:06:44,240 --> 00:06:57,360 [speaker_1]**
Yep. Yep. Now, I'm also getting-- I also want to get, uh, ten of the twenty twenty-six Texas silver rounds.

**00:06:57,420 --> 00:07:14,260 [speaker_0]**
Okay. Add those on. I just recently bought some of those as well.

**00:07:14,280 --> 00:07:16,850 [speaker_1]**
They're pretty cool looking. [chuckles]

**00:07:17,140 --> 00:07:17,150 [speaker_0]**
Oh, yeah.

**00:07:17,150 --> 00:07:19,200 [speaker_1]**
And they're going to go up, up, up.

**00:07:19,240 --> 00:07:20,300 [speaker_0]**
Yes, ma'am.

**00:07:20,580 --> 00:07:37,100 [speaker_1]**
[chuckles] Probably should buy twenty.

**00:07:37,340 --> 00:07:37,710 [speaker_0]**
Should.

**00:07:38,300 --> 00:07:38,900 [speaker_1]**
[chuckles]

**00:07:38,940 --> 00:07:40,940 [speaker_0]**
Ten or twenty, ma'am, so that's up to you.

**00:07:40,950 --> 00:07:40,950 [speaker_1]**
[chuckles]

**00:07:40,960 --> 00:07:46,380 [speaker_0]**
The deal... So we- you do get a better price in, um, at twenty-five, we'll say that.

**00:07:46,500 --> 00:07:47,960 [speaker_1]**
Oh, what would the price-

**00:07:48,520 --> 00:07:48,660 [speaker_0]**
Yeah

**00:07:48,700 --> 00:07:48,850 [speaker_1]**
Okay, tell me.

**00:07:48,850 --> 00:07:52,250 [speaker_0]**
Fifty cents off the, off the per ounce pricing at twenty-five.

**00:07:52,260 --> 00:08:01,500 [speaker_1]**
Uh-huh. Okay. So what would the total cost for twenty-five be versus the eight ninety-five for ten?

**00:08:03,000 --> 00:09:07,349 [speaker_0]**
Um, let's see. Let me get that difference for you. Um, let's see. Just doing a little of my math here for you. Two two seven. Um... So the difference is about, uh, eleven hundred dollars, um, between the ten and twenty-five. So twenty-five would be, uh, about twenty-two hundred, and the other one, the, uh, ten would cost you about one thousand and ninety-seven dollars.

**00:09:07,360 --> 00:09:22,220 [speaker_1]**
So twenty-two hundred plus twenty-seven hundred. Um, so what's the per, uh, per ounce price? I guess, tell me that much on the twenty-five.

**00:09:22,280 --> 00:09:27,400 [speaker_0]**
Uh, it is eighty-nine oh five compared to, like, the ten would be eighty-nine fifty-five.

**00:09:27,520 --> 00:09:28,560 [speaker_1]**
Oh, okay.

**00:09:28,620 --> 00:09:29,080 [speaker_0]**
It's always-

**00:09:29,100 --> 00:09:29,210 [speaker_1]**
Um-

**00:09:29,240 --> 00:09:32,220 [speaker_0]**
It's always pretty much like a fifty, fifty cent per ounce-

**00:09:32,240 --> 00:09:32,360 [speaker_1]**

Yeah.

**00:09:32,400 --> 00:09:36,860 [speaker_0]**
-uh, drop per sort of deal structure we have set up.

**00:09:37,000 --> 00:09:39,620 [speaker_1]**
Yeah. Let me go ahead and do that.

**00:09:40,020 --> 00:09:40,430 [speaker_0]**
The twenty-five?

**00:09:41,100 --> 00:09:41,720 [speaker_1]**
Yeah.

**00:09:41,780 --> 00:10:19,780 [speaker_0]**
Okay. Okay. And let's see, address, phone. Got you set up there. And you wanted to do a, a, a wire or, or an ACH payment?

**00:10:20,880 --> 00:10:25,280 [speaker_1]**
What... Um, which is-- I mean, neither one costs me anything, right?

**00:10:25,319 --> 00:10:31,700 [speaker_0]**
That's correct. The bank wire, you'd essentially have to, uh, go through your bank and have them initiate the payment to us.

**00:10:31,820 --> 00:10:33,760 [speaker_1]**
Oh, no, I don't want to do that.

**00:10:33,780 --> 00:10:34,350 [speaker_0]**
The ACH is-

**00:10:34,360 --> 00:10:35,020 [speaker_1]**
Let me just do an ACH.

**00:10:35,120 --> 00:10:37,800 [speaker_0]**
Okay. The ACH is, is, is automatic. Um-

**00:10:37,900 --> 00:10:51,460 [speaker_1]**
Yeah, let's just do that. [clears throat]

**00:10:51,470 --> 00:11:01,620 [speaker_0]**
Okay. Also, um, your bank may charge you, like, a small fee for a bank, like, using a bank wire either, so I think ACH is probably the best-

**00:11:01,780 --> 00:11:02,000 [speaker_1]**
Yeah -

**00:11:02,010 --> 00:11:02,329 [speaker_0]**
-route to have-

**00:11:02,329 --> 00:11:02,950 [speaker_1]**
Let's do that.

**00:11:02,950 --> 00:11:03,930 [speaker_0]**

TPM001287

-to have it set up.

**00:11:03,940 --> 00:11:03,950 [speaker_1]**
Yep.

**00:11:03,980 --> 00:11:04,940 [speaker_0]**
So just in-

**00:11:05,020 --> 00:11:05,220 [speaker_1]**
Yeah

**00:11:05,240 --> 00:11:05,760 [speaker_0]**
-the future.

**00:11:05,800 --> 00:11:18,660 [speaker_1]**
Yep. Perfect. [clears throat]

**00:11:20,480 --> 00:11:42,990 [speaker_0]**
And we do take a credit card number, just like as in the case of insurance or somebody wants to back out on a trade. We do hedge all of our positions, so we do take, like, a decent amount of financial risk, like, when making that happen. It's just like a, it-- we take a, a five or a five percent of the transaction hold on your credit card, and then that is refunded to you, like, as soon as we receive that ACH payment.

**00:11:43,000 --> 00:11:43,860 [speaker_1]**
Of course.

**00:11:43,920 --> 00:11:44,080 [speaker_0]**
Okay.

**00:11:44,120 --> 00:11:47,360 [speaker_1]**
Of course. It's, uh, Visa.

**00:11:47,420 --> 00:11:48,960 [speaker_0]**
Yes, that's perfect.

**00:11:49,160 --> 00:12:04,760 [speaker_1]**
██████████████████████████████████████████
████████████. Do you need the code?

**00:12:04,820 --> 00:12:05,760 [speaker_0]**
Yes, ma'am.

**00:12:05,820 --> 00:12:08,000 [speaker_1]**
███████████████.

**00:12:08,080 --> 00:12:10,400 [speaker_0]**
And then zip code, same as your address?

**00:12:10,440 --> 00:12:11,000 [speaker_1]**
Correct.

**00:12:11,080 --> 00:12:29,170 [speaker_0]**

Okay....Next time.

**00:12:34,770 --> 00:12:39,740 [speaker_1]**
Now, are you all affiliated with the Texas Comptroller?

**00:12:39,810 --> 00:12:41,010 [speaker_0]**
No, that is-

**00:12:41,410 --> 00:12:41,420 [speaker_1]**
Okay.

**00:12:41,420 --> 00:12:44,050 [speaker_0]**
That is the Texas Bullion Depository.

**00:12:44,130 --> 00:12:45,100 [speaker_1]**
Ah.

**00:12:45,110 --> 00:12:45,880 [speaker_0]**
That is something else.

**00:12:45,930 --> 00:12:55,790 [speaker_1]**
Okay. Okay, good. [laughing] All right. But are they the ones that first initiated this goldback?

**00:12:55,950 --> 00:12:58,750 [speaker_0]**
Um, no, that, that is us.

**00:12:58,850 --> 00:13:00,510 [speaker_1]**
Oh, okay.

**00:13:00,550 --> 00:13:00,670 [speaker_0]**
The-

**00:13:00,690 --> 00:13:00,920 [speaker_1]**
Cool.

**00:13:02,310 --> 00:13:07,110 [speaker_0]**
We use, we use goldback.com. Not... We don't, we don't go through them or do any business with them.

**00:13:07,250 --> 00:13:09,770 [speaker_1]**
I see. I see.

**00:13:11,010 --> 00:13:31,620 [speaker_0]**
Um, all righty. Let's see. So, um, to set up that ACH payment, you're just going to, like, upload a, a picture to our website, or you can email it in to us, and I'll get that over to our accounting team, of the front and back of your license, and then-

**00:13:31,650 --> 00:13:31,700 [speaker_1]**
Okay.

**00:13:31,700 --> 00:13:34,830 [speaker_0]**
-a picture, like, of a front of your, a check or-

**00:13:34,850 --> 00:13:35,130 [speaker_1]**

Uh-huh.

**00:13:35,140 --> 00:13:37,190 [speaker_0]**
-like a picture just to-

**00:13:37,250 --> 00:13:37,340 [speaker_1]**
Yeah

**00:13:37,340 --> 00:13:41,210 [speaker_0]**
-to see your account and routing number.

**00:13:41,290 --> 00:13:45,890 [speaker_1]**
Okay. So I... [sighs] Okay. I can't-

**00:13:45,950 --> 00:13:47,930 [speaker_0]**
A few extra steps. I know, but.

**00:13:47,990 --> 00:13:56,180 [speaker_1]**
Well, okay, so I got to take a picture of this on my phone, but it's, the order's on my computer. So do I need to put the order on my phone then, or? I don't know.

**00:13:56,510 --> 00:14:00,910 [speaker_0]**
Well, no, I ha- I have the order right here in front of me. I'm about to, I'm about to submit it for you.

**00:14:01,510 --> 00:14:03,250 [speaker_1]**
Okay. All right. So-

**00:14:04,030 --> 00:14:16,010 [speaker_0]**
You could email in those pictures to, um, either our trading email or actually that's probably best, just, uh, send it to the trading email, email, and I'll get it over to the accounting team.

**00:14:16,110 --> 00:14:17,870 [speaker_1]**
Okay. What's the email?

**00:14:17,930 --> 00:14:25,010 [speaker_0]**
It is trading@texmetals.com.

**00:14:25,909 --> 00:14:32,070 [speaker_1]**
Okay. All right. I'll do that. And then will I get, like, a text or some confirmation?

**00:14:32,080 --> 00:14:34,910 [speaker_0]**
Yes, you'll get, you'll get confirmation of the order. Um-

**00:14:34,970 --> 00:14:35,150 [speaker_1]**
Okay.

**00:14:35,160 --> 00:14:35,730 [speaker_0]**
-and-

**00:14:37,510 --> 00:14:37,699 [speaker_1]**
Okay.

**00:14:37,730 --> 00:14:57,390 [speaker_0]**

Pretty much as soon as we, as, as accounting gets that and, and then verifies and gets all of their numbers where they need to go, um, they'll initiate that, that, uh, transfer of funds from your account. And then, uh, pretty much as soon as that happens, we ask for one to three days, and then we do overnight shipping, and you should receive it pretty soon after that.

**00:14:57,450 --> 00:14:58,550 [speaker_1]**
Good. Great.

**00:14:58,590 --> 00:14:58,690 [speaker_0]**
Yes, ma'am.

**00:14:58,810 --> 00:15:04,259 [speaker_1]**
Love it. Okay. All right. So thank you, Josh. I appreciate your time and help.

**00:15:04,259 --> 00:15:11,350 [speaker_0]**
You're very welcome. You're very welcome. Um, so I do have to read you a disclaimer. It's sort of involved with that, uh, credit card number I took down.

**00:15:11,360 --> 00:15:11,360 [speaker_1]**
I get it.

**00:15:11,390 --> 00:15:32,210 [speaker_0]**
Okay. So we are now locking your price. Please note that regardless of whether the spot price goes up or down after this call, your price and this order cannot be changed. If you fail to pay the agreed upon total for any of the reason, you'll be subject to cancellation penalties that include a fif-- three hundred and fifty dollar fee, along with any market losses to reverse the transaction. Do you agree to proceed with locking in your order?

**00:15:32,310 --> 00:15:33,130 [speaker_1]**
Yes.

**00:15:33,210 --> 00:15:59,350 [speaker_0]**
Awesome. Let that load. All right, let's see. All righty. Um, like I said, uh, just email that information-

**00:15:59,370 --> 00:15:59,380 [speaker_1]**
Yep

**00:15:59,380 --> 00:16:01,780 [speaker_0]**
-to that email that I gave you, and-

**00:16:01,780 --> 00:16:01,780 [speaker_1]**
Yep

**00:16:01,780 --> 00:16:08,570 [speaker_0]**
-all of that will, will be taken care of, and you should be set up to, like, do... It should be a lot easier the next time around, uh-

**00:16:08,580 --> 00:16:09,100 [speaker_1]**
Perfect.

**00:16:09,100 --> 00:16:10,510 [speaker_0]**
-if you want to do business with us.

**00:16:10,730 --> 00:16:15,430 [speaker_1]**
Yes. Yes, I will. All right. Well, thank you again so much, and God bless your day.

**00:16:15,470 --> 00:16:16,710 [speaker_0]**
Yes, ma'am. You too. Have a good one.

**00:16:16,730 --> 00:16:18,590 [speaker_1]**
All right. You too. Bye-bye.

**00:16:18,640 --> 00:16:18,810 [speaker_0]**
Bye.

CAUSE NO. D-1-GN-26-000754

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KELLY HANCOCK in his OFFICIAL | § | |
| CAPACITY as ACTING TEXAS | § | |
| COMPTROLLER of PUBLIC | § | |
| ACCOUNTS, and MACY DOUGLAS in | § | |
| her OFFICIAL CAPACITY as | § | |
| ADMINISTRATOR of THE TEXAS | § | |
| BULLION DEPOSITORY, | § | |
| | § | |
| Defendants. | § | 459th JUDICIAL DISTRICT |

## ORDER GRANTING
## PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION

Before the Court is Texas Precious Metals, LLC's ("Plaintiff") Application for Temporary Injunction against Defendants Kelly Hancock as Acting Texas Comptroller of Public Accounts and Macy Douglas as Administrator of the Texas Bullion Depository. Having considered Plaintiff's application, the pleadings, the evidence admitted during the hearing held on March 5, 2026, and arguments of counsel, the Court **GRANTS** Plaintiff's application.

The Court makes the following findings:

1.      The Court has subject-matter jurisdiction over the claims because the Plaintiff's claims are ripe.

2.      The Court has personal jurisdiction over the parties in this case.

3.      Venue is proper in this Court.

4.      Plaintiff is a dealer of precious metals, such as gold and silver. Plaintiff sells a series of gold and silver rounds bearing Texas-themed imagery (the "Texas Rounds"). Each Texas Round bears Plaintiff's mint mark, which is a silhouette of the State of Texas (the "Mint Mark").

5.     Plaintiff also sells a collection of state-themed gold notes, which are thin, lightweight banknote-style bills made with 24-karat gold. The Dallas-Fort Worth Texas Gold Note features Plaintiff's Mint Mark.

6.     Defendants operate the Texas Bullion Depository, an agency of the State of Texas in the Office of the Texas Comptroller of Public Accounts. The Texas Bullion Depository is authorized by Texas Government Code Chapter 2116. The purpose of the Texas Bullion Depository is to serve as a state-administered precious metals depository.

7.     On December 29, 2025, Defendants announced a new program by which Defendants would design, market, and sell "commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes" (the "State of Texas Coins").

8.     Defendants also design, market, and sell "a series of 24K commemorative gold notes . . . , each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate" ("Redbacks").

9.     Defendants currently sell the State of Texas Coins and the Redbacks through a third party, USGB, LLC d/b/a United States Gold Bureau. United States Gold Bureau is a private entity and a direct competitor of Plaintiff.

10.    The State of Texas Coins and Redbacks compete with Plaintiff's Texas Rounds and gold notes in the precious metals market.

11.    Plaintiff has shown a probable right to recovery under its cause of action for declaratory judgment and has no adequate remedy at law. Specifically, Plaintiff has shown a probable right to relief on its claims that:

      a.    Chapter 2116 of the Texas Government Code does not authorize Defendants to design, commission, authorize, produce, mint, promote, market, or contract for

the manufacture of the State of Texas Coins, Redbacks, or other precious metals products.

b. Section 2116.021(c)'s authorization of the selling of "promotional items" is limited to promotion of the Depository's existing operational purpose as a depository and does not authorize minting and selling bullion and specie including gold and silver coins and notes.

c. Defendants are acting *ultra vires* by designing, commissioning, authorizing, producing, minting, promoting, marketing, contracting for the manufacture or distribution of, and selling the State of Texas Coins and Redbacks.

12. Plaintiff has established that Defendants' *ultra vires* actions have resulted in imminent and irreparable harm and will continue to result in imminent and irreparable harm if not enjoined. Defendants' *ultra vires* actions have resulted—and will continue to result—in imminent and irreparable harm because:

a. Plaintiff has been and will continue to be harmed by Defendants' unauthorized entry into the precious metals market.

b. Defendants' *ultra vires* actions are eroding Plaintiff's brand and damaging Plaintiff's goodwill by creating confusion in the marketplace.

c. The resulting harm to Plaintiff's brand and goodwill is irreparable.

13. Money damages are not adequate compensation because the harms Plaintiff has suffered and will continue to suffer cannot be measured by any certain pecuniary standard.

14. The harm to Plaintiff outweighs any potential harm to Defendants that would result from preserving the status quo during the pendency of this case.

15. The public will not suffer harm if a temporary injunction is granted; however, the public will suffer harm if Defendants are allowed to continue their *ultra vires* actions. Defendants' unauthorized entry into the precious metals market has created and will continue to create confusion among consumers, in the following ways:

a. By marketing the State of Texas Coins as "commemorative coins," Defendants are confusing consumers, many of whom believe or may believe that the State of Texas Coins are authorized by a sovereign mint.

b. By marketing and selling the State of Texas Coins and Redbacks as "official" products, Defendants are confusing consumers, many of whom believe or may believe that the State of Texas Coins and Redbacks are authorized by the State of Texas.

c. By designing, marketing, and selling the State of Texas Coins and Redbacks bearing Plaintiff's Mint Mark, Defendants are confusing consumers, many of whom believe or may believe that the State of Texas Coins and Redbacks are produced by or in partnership with Plaintiff.

16.    The injunctive relief that Plaintiff requests is narrowly drawn and precisely tailored to in scope to prohibit Defendants from continuing to engage in *ultra vires* actions. The balance of equities and public interest weigh in favor of granting Plaintiff's requested injunctive relief.

The Court therefore **ORDERS** that Plaintiff's Application for Temporary Injunction is **GRANTED**.

The Court further **ORDERS** that Defendants, and all other persons or entities in active concert or participation with Defendants, are restrained and enjoined from designing, commissioning, authorizing, producing, minting, advertising, promoting, marketing, offering for sale, selling, distributing, or otherwise facilitating the commercialization of precious metals, including the State of Texas Coins and the Redbacks, whether directly or indirectly, and whether in their own name or through any third party.

The Court further **ORDERS** that that Defendants, and all other persons or entities in active concert or participation with Defendants, are restrained and enjoined from performing under any request for proposals, solicitation, procurement, agreement, or contract issued, executed, or maintained by Defendants or their officials for the design, commissioning, authorization, production, manufacture, minting, marketing, advertising, promotion, offering for sale, sale, distribution, fulfillment, or other commercialization of precious metals products—including the State of Texas Coins and the Redbacks—or for any activity beyond custodial depository services (including storage and safeguarding) authorized by Texas Government Code Chapter 2116.

The Court further **ORDERS** that Defendants shall provide notice of this Temporary Injunction to their officers, agents, servants, employees, and attorneys, as well as any persons or entities in active concert or participation with Defendants.

The Court further **ORDERS** that Plaintiff's bond or cash deposit in lieu of bond is set in the amount of $_____.

The Court further **ORDERS** that this Temporary Injunction shall not expire until final judgment in this case is entered or this case is otherwise dismissed by this Court.

The Court further **ORDERS** that trial on the merits is set for _____.

SIGNED this ____ day of _____, 2026.

_____
Judge Presiding