**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 1:26-CV-00513-DAE |
| KELLY HANCOCK in his OFFICIAL CAPACITY as ACTING TEXAS COMPTROLLER of PUBLIC ACCOUNTS, and MACY DOUGLAS in her OFFICIAL CAPACITY as ADMINISTRATOR of THE TEXAS BULLION DEPOSITORY, | § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

In 2015, the Texas Legislature created the Texas Bullion Depository (the "Agency") and gave it a narrow and single task: **store** precious metals. The statute authorizes safekeeping. It does not authorize minting, marketing, or selling bullion products. Yet in late 2025, the Agency launched what it calls a "new program" to produce, promote, and sell gold and silver "coins" and "notes." That program is *ultra vires*.

The Agency's new venture does more than exceed its authority. It places the State in direct competition with Texas Precious Metals, LLC ("Texas Precious Metals") and other private dealers of precious metals. The Agency's products bear the same mint mark Texas Precious Metals uses to authenticate its own goods—a mark protected by an incontestable federal trademark. The Agency uses that mark without statutory authority and without Texas Precious Metals' permission. By doing so, it unlawfully trades on Texas Precious Metals' reputation and brand recognition to sell its own products.

The competitive harm to Texas Precious Metals is immediate and ongoing. The Agency markets and sells the coins and notes for up to thousands of dollars apiece, positioning itself as a sovereign mint. Each sale diverts customers, erodes TPM's market position, and weakens the distinctiveness of Texas Precious Metals' mark. The damage to Texas Precious Metals' goodwill and brand integrity cannot be measured or repaired after the fact. Once consumer trust is lost, it cannot simply be restored with money.

The Agency's conduct also risks public confusion and constitutes false advertising. By using Texas Precious Metals' mint mark and by presenting its products as part of an official State initiative for "coins" and "notes," the Agency blurs the line between private and government offerings. Consumers believe the products originate with, are affiliated with, or are authorized by Texas Precious Metals when they are not, and that the products are legal tender, when they are not. That confusion compounds the injury to Texas Precious Metals and further underscores the need for immediate relief.

The Agency's erroneous position that the "coins" and "notes" are mere promotional items fails as a matter of common sense, statutory construction, and law. The precious metals in the "coins" and "notes" are too valuable, and the Agency does not market the products as promotional items. The Court should immediately enjoin the Agency's unauthorized minting, marketing, and sale of precious metals products before the harm deepens and Texas Precious Metals' rights are further harmed.

**PARTIES**

1.      Plaintiff Texas Precious Metals is a Texas limited liability company with its principal place of business located at 959 Hwy 95N, Shiner, Texas 77984.

2.      Defendant Kelly Hancock is Acting Texas Comptroller of Public Accounts (the "Comptroller"). The Comptroller's principal office is located at 111 East 17th Street, Austin, Texas

78774. The Comptroller is the public official responsible for overseeing the Agency and ensuring that the Agency operates within its stated statutory authority contained in Chapter 2116 of the Texas Government Code including ensuring that any transactions and relationships are prudent and suitable to facilitate the operations of the Agency or those authorized by the statute. The Comptroller has appeared in this action through counsel.

3.    Defendant Macy Douglas ("Administrator") is Administrator of the Agency, which is an agency of the Comptroller's Office. The Administrator's principal office is located at 111 East 17th Street, Austin, Texas 78774. The Administrator is the public official responsible for administering, supervising, and directing the operations and affairs of the Agency and its agents and is required to liaise with the Comptroller to ensure that any transaction by the Agency is planned, administered, and executed in a manner authorized by Chapter 2116 of the Texas Government Code. The Administrator has appeared in this action through counsel.

**JURISDICTION AND VENUE**

4.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Article I, Section 10 of the United States Constitution and the Lanham Act, 15 U.S.C. § 1125(a). This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202 and injunctive relief under Federal Rule of Civil Procedure 65.

5.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Texas Precious Metals' related state-law claims because those claims form part of the same case or controversy as Texas Precious Metals' federal claims.

6.    Defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. By voluntarily removing this case to federal court, Defendants have invoked this Court's jurisdiction and waived sovereign immunity.

7. Texas Precious Metals seeks prospective declaratory and injunctive relief against state officials in their official capacities to halt ongoing violations of federal and state law. To the extent sovereign immunity would otherwise be asserted, this suit falls within *the Ex parte Young* exception—*i.e.*, sovereign immunity is waived for purposes of prospective relief to stop ongoing unlawful conduct. *Ex parte Young*, 209 U.S. 123 (1908).

8. Texas Precious Metals has standing under Article III because it has suffered and will continue to suffer concrete competitive and reputational injuries—including diverted sales, loss of goodwill, and consumer confusion—that are traceable to Defendants' challenged conduct and are redressable by declaratory and injunctive relief. In addition, Texas Precious Metals has taxpayer standing as a Texas taxpayer and Defendants are expending public funds and resources to design, procure, market, promote, administer, and commercialize their *ultra vires* program, and Texas Precious Metals seeks prospective relief to restrain this unlawful expenditure of public funds.

9. Venue is proper in this Court under 28 U.S.C. § 1441(a) because this District embraces the state court in which this action was originally filed.

### JURY DEMAND

10. Texas Precious Metals demands a trial by jury on all issues triable in this lawsuit.

### FACTS

**I.     Since 2011, Texas Precious Metals Has Marketed and Sold Gold and Silver**

11. Texas Precious Metals is a subsidiary of Kaspar Companies, a 128-year-old, fifth-generation family business in Shiner, Texas with deep Texas roots. Its longstanding connections to the State of Texas have been at the heart of its business since its inception.

12. For more than 15 years, Texas Precious Metals has been a leader in the precious metals industry, having processed over $4 billion in client transactions and shipped more than

200,000 orders to all 50 states. As one example of its industry leadership, in 2025 Texas Precious Metals became an Affiliate Member of the London Bullion Market Association (the "LBMA"). The LBMA is the leading global trade association for the precious metals industry. Among other things, the LBMA sets the benchmark spot prices for precious metals that financial institutions and industry participants use worldwide.

13.    At the core of Texas Precious Metals' branding is a series of marks featuring a silhouette of the State of Texas (the "Mint Mark"), which functions as a central source identifier for Texas Precious Metals' products and appears as follows:



14.    In the precious metals industry, a "mint mark" is a letter, symbol, or inscription on precious metals products indicating their source, purity, and authenticity. Texas Precious Metals consistently uses its Mint Mark across its product line to identify Texas Precious Metals as the source of its minted products.

15.    For example, one of Texas Precious Metals' signature products is a series of "rounds"—an industry term for privately minted, non-legal tender medallions resembling a coin, made with either gold or silver—bearing Texas-themed imagery (known as "Texas Rounds"). These products are widely distributed and prominently marketed by Texas Precious Metals, and

all feature Texas Precious Metals' Mint Mark. Below are examples of the 2024 Gold Texas Round and the 2019 Silver Texas Round, featuring the Mint Mark:



16.     The signature gold and silver Texas Rounds—as well as the Mint Mark—are at the heart of the nationwide brand recognition of Texas Precious Metals and serve as key source identifiers for its precious metals products.

17.     Texas Precious Metals also sells a collection of rodeo-themed silver rounds (the "Pro Rodeo Rounds"). As shown in the examples below, the Pro Rodeo Rounds also feature Texas Precious Metals' Mint Mark:





18.    Another category of products sold by Texas Precious Metals is silver and gold bars. For example, below are images of its Texas Mint Silver Bars, which prominently feature the Mint Mark on both sides:



19.     Texas Precious Metals also sells a collection of state-themed gold notes, which are thin, lightweight banknote-style bills made with genuine 24-karat gold and protected by a durable polymer. Gold notes are a newer and emerging category within the precious metals industry that are distinct from conventional bullion bars, rounds, and coins. The Dallas-Fort Worth Texas Gold Note features Texas Precious Metals' Mint Mark, as shown in the image and excerpt below:





20.    Texas Precious Metals also prominently features its Mint Mark on its product packaging, as shown below, thereby reinforcing consumer recognition of the Mint Mark as an indicator of Texas Precious Metals' source and quality:

9



21.      Texas Precious Metals also owns a federal trademark registration for Texas Mint, and it operates a minting division known as Texas Mint, through which it designs and offers precious metals products to the public. Texas Precious Metals markets and sells those products nationwide through the Texas Mint website, as shown below, and the site prominently features Texas Mint branding that consumers recognize as identifying Texas Precious Metals as the source of those minted products.



10



## II.   In 2015, the Texas Legislature Created the Agency to Do One Thing and One Thing Only—Store and Safeguard Precious Metals

22.   In 2015, the Texas Legislature enacted H.B. 483 to establish the Texas Bullion Depository and allow the State, state agencies, and private individuals to **store** precious metals in Texas.[1] The Legislature created the Agency as a custodial depository, not as a mint and not as a precious metals retailer.

23.   H.B. 483 was codified at Texas Government Code Chapter 2116, which established the Agency "as an agency of this state in the office of the comptroller." Tex. Gov't Code § 2116.002(a).

24.   Chapter 2116 authorizes the Agency "to serve as the custodian, guardian, and administrator of certain bullion and specie that may be transferred to or otherwise acquired by this state or an agency, a political subdivision, or another instrumentality of this state." *Id*. at § 2116.002(b). In other words, the Agency is authorized to store precious metals.

---

[1] *See* Office of the Texas Governor, *Governor Abbott Signs Legislation To Establish State Bullion Depository* (Press Release, June 12, 2015), at https://gov.texas.gov/news/post/governor_abbott_signs_legislation_to_establish_state_bullion_depository, last visited March 11, 2026.

25.     As recently as September 10, 2025, the Agency reaffirmed its limited role by clarifying on social media that it "doesn't sell precious metals or act as a dealer."



26.     To fulfill its sole purpose, the Agency operates a facility designed exclusively for the storage of precious metals.

III.    **In 2025, the Agency Began Acting as a Mint by Designing, Marketing, and Selling Precious Metals Featuring the Mint Mark**

27.     On December 29, 2025, Defendants announced "a new program . . . that offers authorized commemorative precious metal products to investors and collectors."[2] Rather than simply store precious metals, the Agency now acts as a mint and designs, markets, and sells

---

[2]   *See*   https://comptroller.texas.gov/about/media-center/news/20251229-acting-texas-comptroller-kelly-hancock-announces-launch-of-texas-lone-star-coins-and-modern-texas-redback-gold-notes-1766087680245, last visited March 11, 2026.

"commemorative coins . . . featuring 1oz gold coins in proof and uncirculated (bullion) finishes and 1oz silver coins in uncirculated (bullion) finishes"[3] ("State of Texas Coins"). The Agency advertises its limited, statutorily-authorized role of custodial storage "as an independent alternative to private depositories and major bank safe deposit boxes," and then describes the new, unauthorized program as "tak[ing] that independent streak one step further by offering State of Texas precious metal products available to collectors in Texas and around the world."[4]

28.     The State of Texas Coins are not actually "coins" at all, and Defendants' use of that term is false and misleading. In the precious metals industry, the terms "round" and "coin" have different meanings. The term "coin" denotes official coinage by sovereign governments or mints with face value and legal tender status. By contrast, a "round" is minted by a private manufacturer and has no legal tender status. Because the State of Texas Coins have no legal tender status or face value, they are "rounds," not "coins." Use of the term "commemorative coin" is similarly improper, because commemorative coins still imply sovereign currency, and in the United States only the U.S. Mint may print commemorative coins in a manner that is strictly prescribed by an Act of Congress. But that has not stopped Defendants from falsely advertising the State of Texas Coins as legal tender or falsely advertising the Agency as a sovereign mint that issues State of Texas currency.

29.     According to communications with the Agency, the Agency has produced as much as 46,000 State of Texas Coins to date.

---

[3] *See* https://texasbulliondepository.gov/state-of-texas-coins, last visited March 11, 2026.

[4] *See* https://texasbulliondepository.gov/about, last visited March 11, 2026.

 

30.    The Agency also designs, markets, and sells "a series of 24K commemorative gold notes . . . each of which contains a precise and verifiable layer of pure gold deposited onto a durable polymer substrate" ("Redbacks"). The Redbacks are available in three weights: 5 cg, 20 cg, and 100 cg.

 

 

14

 

31.     Defendants promote the Redbacks as "modern" versions of currency "issued by the Republic of Texas between 1839 and 1840."[5] By doing so, and as with the State of Texas Coins, Defendants are falsely promoting the Redbacks as legal tender and falsely advertising the Agency as a sovereign mint.

32.     The State of Texas Coins and the Redbacks are "crafted under the direction of the Texas Bullion Depository and the state of Texas," according to a press release issued by the Comptroller. Defendants advertise and market the State of Texas Coins and the Redbacks prominently on the Agency's website, which includes a link to "Shop State Metals":

---

[5] *See* https://texasbulliondepository.gov/modern-texas-redbacks-the-gold-notes-of-texas, last visited March 11, 2026.



33.      Defendants sell the State of Texas Coins and the Redbacks by linking the Agency's website to a third party, United States Gold Bureau ("USGB"), a direct competitor of Texas Precious Metals. USGB offers the State of Texas Coins and Redbacks for sale to consumers nationwide through online commerce and ships products in interstate commerce. Though the State of Texas Coins and Redbacks are available through other retailers, Defendants provide a link to USGB only:



34.     Defendants also advertise their plans to expand sales, including through direct purchase from the Agency itself:

> **Where To Buy**
>
> The Depository seeks to make State of Texas Precious Metal products available worldwide, and at competitive prices. Direct purchases from the Depository will soon be available on this website.

35.     Defendants' State of Texas Coins and Redbacks compete—intentionally and directly—with Texas Precious Metals' products, including the Texas Rounds and gold notes. Defendants are marketing to Texas Precious Metals' exact customer base, *i.e.*, purchasers of gold and silver rounds and 24-karat gold deposited in a durable polymer, with an interest in Texas-themed products. Defendants' conduct constitutes direct, unfair competition, not only because Defendants have no authorization to sell precious metals, but also because Defendants misrepresent the State of Texas Coins and Redbacks as carrying the State's official imprimatur.

The Comptroller even described the coins in a Request for Proposal ("RFP No. 237b") as "official state of Texas numismatic and commemorative coins."[6]

36.     Defendants have funded and are funding this program with public resources, including employee time and agency resources devoted to developing the program, issuing and administering procurement instruments (including RFP No. 237b), preparing and publishing related marketing content, and overseeing and expanding the commercialization of the State of Texas Coins and Redbacks. These unauthorized expenditures are ongoing and will continue absent injunctive relief.

37.     Compounding the harm of unauthorized competition, the State of Texas Coins also depict Texas Precious Metals' Mint Mark, thereby making Defendants' products confusingly similar to Texas Precious Metals' Texas Rounds:

**Texas Precious Metals' Texas Rounds**          **Defendants' State of Texas Coins**




---

[6] Texas Precious Metals was unaware of RFP No. 237b until January 2026.

 

38.    And by their very nature of being banknote-style bills made with 24-karat gold deposited in a durable polymer, Defendants' Redbacks are also confusingly similar to Texas Precious Metals' gold notes and also feature Texas Precious Metals' Mint Mark:

**Defendants' Use of Texas Precious Metals' Mint Mark with Excerpt**





19

39.     These facts reflect a direct and unauthorized effort to capture market share in the precious metals retail space using the State's credibility and perceived endorsement—advantages no private competitor can match. The facts further represent Defendants' deliberate attempt to improperly use Texas Precious Metals' goodwill and reputation to create confusion in the marketplace. This conduct exceeds the scope of Defendants' authority and is causing ongoing market confusion and competitive harm.

40.     As one example of such confusion, a potential customer called Texas Precious Metals to order "30 of the Texas silver coins." When a Texas Precious Metals representative asked whether the caller wanted the 2026 edition of the Texas Silver Rounds, the caller said he wanted the 2025 edition. The Texas Precious Metals representative told the caller that the 2025 edition was sold out, to which the caller replied, "Oh, ****. That's the inaugural year. . . . I was hoping to get them in time." But Texas Precious Metals has been selling its signature Texas Silver Rounds since 2013. Sensing confusion, the Texas Precious Metals representative asked, "Are you referring to Texas Mint or to the Texas Bullion Depository?" The caller replied, "Well, bullion depository coins. . . . Well, which is the one that's actually dealing with the comptroller?" When told that Texas Precious Metals does not deal with the Comptroller, the caller said, "Oh, really? Yeah. Okay. Well, I wanted to get the official stuff." The caller did not buy anything from Texas Precious Metals before hanging up.

41.     Similar instances of confusion pervade social media. For example, in reference to Defendants' announcement of the State of Texas Coins, an X user posted "Texas just announced they will be producing their own money in gold and silver coins." Citing the same announcement, a user erroneously posted online that the State of Texas has been selling the State of Texas Coins since 2017 and included a link to **Texas Precious Metals' website**. Another user added to the

thread, "They keep saying they are non-legal tender but keep calling them a 'coins.' [sic] A coin is money."



42.    These examples demonstrate the confusion among consumers and the public at large, who mistake the State of Texas Coins and Redbacks for Texas Precious Metals' products, for official State of Texas currency, or both.

43.    The State of Texas Coins and the Redbacks are manufactured by Defendants' contractors or subcontractors, including Valaurum, Inc., and Scottsdale Mint, LLLP. Because the Agency lacks statutory authority to design, commission, authorize, mint, market, or sell precious metals products, the Agency's procurement instruments and contracts for the manufacture and commercialization of these products are *ultra vires* and void ab initio. Texas Precious Metals has asserted its trademark rights in separate proceedings against manufacturers involved in producing

these products, while this action challenges Defendants' *ultra vires* conduct and unlawful commercialization program.

44. When Texas Precious Metals wrote to one of the manufacturers regarding trademark issues concerning the State of Texas Coins, Texas Precious Metals received a response not from the manufacturer, but from the Texas Comptroller's Office. In that response, dated January 22, 2026, the Comptroller's Office stated the State of Texas Coins were "authorized by the Texas Bullion Depository" and that "the State of Texas, operating the Texas Bullion Depository through the office of the Texas Comptroller of Public Accounts, is the real party of interest concerning this matter."

45. Defendants' engagement of Scottsdale Mint further reflects an intent to operate and to be perceived as a mint. Scottsdale Mint is a producer of coins and bullion and serves as a contract manufacturer for foreign countries and private mints. In substance and in presentation, Defendants are functioning in the same way a private mint would—designing, commissioning, distributing, and selling minted precious metals products—while holding themselves out as if they were the official mint of the State of Texas, despite lacking any statutory authority to create or operate a mint. And Defendants' own online marketing materials draw comparisons to products produced by sovereign mints, as shown below, which further underscore their intent to be falsely perceived as a mint issuing "coins" with face value as legal tender:

> Like the US Mint's Gold Eagle and Silver Eagle coins, or the Canadian Mint's Maple Leaf coins, State of Texas Coins are beautiful pieces of art crafted in gold or silver of the highest purity.

46. Moreover, the Agency now presents itself as a minting entity. In addition to the Agency's use of Texas Precious Metals' Mint Mark, the Agency has adopted and used its own mint mark on the State of Texas Coins, a practice commonly used to identify the entity that struck or produced a coin.

 

47.    Defendants also represent on the Agency's website that the State of Texas Coins are "struck by the State of Texas," reinforcing the message that the Agency is acting as a State-authorized mint rather than a custodial storage facility:

**Description**

Introducing the 2025 1 oz Silver State of Texas Bullion Coin, a landmark release struck by the State of Texas under the authority of the Texas Bullion Depository law.

48.    News reports further reveal Defendants' acts for what they are: an entry into the precious metals market by minting and selling gold and silver products to precious metals investors:



## IV.     The Agency Has No Authority to Produce, Design, Market, or Sell Precious Metals

49.     Chapter 2116, as amended, authorizes the Agency to store precious metals—not to operate as a mint and sell them. After all, the Legislature chose to refer to the Agency as a **depository**, not a seller or a mint, and all the powers and duties of the Comptroller and the

Administrator provided by Chapter 2116 stem directly from ensuring the Agency fulfills its narrow mission of acting as a depository. By operating the Agency to engage in a new line of business by designing, marketing, and selling the State of Texas Coins and the Redbacks, Defendants are acting outside the bounds of their legislatively crafted authority. Nothing in Chapter 2116 grants the Agency authority to operate as a precious metals seller or mint. The statute instead limits the Agency to storing precious metals and entering into limited transactions and relationships to further this narrow purpose, nothing more. *See* Tex. Gov't Code § 2116.002.

50.    Despite that narrowly crafted authority, Defendants entered into a contract for "Texas Bullion Depository Commemorative Coinage Services." That contract is for "designing, producing, marketing, and selling commemorative coins," not just safeguarding precious metals.

**AGREEMENT
FOR
TEXAS BULLION DEPOSITORY COMMEMORATIVE COINAGE SERVICES
BETWEEN
COMPTROLLER OF PUBLIC ACCOUNTS
AND
LONE STAR TANGIBLE ASSETS, LP**

This Agreement for Texas Bullion Depository Commemorative Coinage Services (Contract) is entered into by and between the Texas Comptroller of Public Accounts (Comptroller), an agency of the State of Texas, and Lone Star Tangible Assets, LP (Contractor), located at 203 Heritage Grove Road, Leander, Texas 78641; each a "Party" and collectively the "Parties."

**I. Recitals**

**Whereas,** on November 9, 2023, Comptroller issued a Request for Proposals No. 237b (RFP) from qualified, independent entities interested in designing, producing, marketing, and selling commemorative coins for the Texas Bullion Depository;

**Whereas,** Contractor submitted a proposal on December 5, 2023 in response to Comptroller's RFP (Proposal);

| Texas Comptroller of Public Accounts | Lone Star Tangible Assets, LP |
|---|---|
| DocuSigned by: | |
| By: *Lisa Craven* | By: |
| E450165D764443C... | |
| Lisa Craven | Matthew A. Ferris |
| Deputy Comptroller | President and Director |
| | |
| Date: 8/7/2024 \| 3:40 PM CDT | Date: August 6, 2024 |

51.     But nothing in Chapter 2116 authorizes the Agency to design, produce, market, and sell rounds; create mint marks; strike coins; or hold itself out as a state mint.

52.     The Legislature included only a narrow, express sales authorization in the Agency's enabling statute: the Agency may sell "**promotional items** approved by the administrator to further the purposes of this chapter and to promote the depository." Tex. Gov't Code § 2116.021(c). Chapter 2116 does not define "promotional items," let alone define the term to include precious metals. And, tellingly, the contract let by the Agency is for "commemorative coinage" and not for promotional items.

53.     The Agency's precious metals products cannot be promotional items because, among other reasons, they have substantial value. Defendants market and sell the State of Texas Coins and Redbacks as investment-grade precious metals products—"commemorative, numismatic and collectible" products offered "at competitive prices," described as "made from pure precious metals that serve as a **store of value**" and "crafted with **intrinsic value**." For example, the silver State of Texas Coins are promoted as "**state-sanctioned** silver bullion coins accessible to **investors** and collectors nationwide."

54.     These statements create an expectation that the State of Texas Coins and Redbacks have investment value and may be resold for a return on the buyer's investment. Defendants

26

reinforce this expectation by selling the State of Texas Coins and Redbacks at a markup based on their "collectability."

55.    Any attempt to reframe these products as mere "promotional items" under § 2116.021(c) fails as a matter of basic logic. The Agency exists to store customers' precious metals; the very items it is charged with storing cannot be both "precious metals" necessitating safeguarding and mere "promotional items." Treating stored precious metals (or depository-issued precious metals products) as "promotional" is a non sequitur that would convert a narrow merchandising carve-out into an authorization to sell the depository's core subject matter.

56.    Defendants' own marketing confirms the point: the Agency touts these products as "commemorative, numismatic and collectible"[7] with resale value and offers them "at competitive prices,"[8] language that is incompatible with nominal promotional merchandise and instead reflects a deliberate effort to sell genuine, valuable precious metals products in direct competition with private dealers and mints.

57.    Moreover, the Comptroller's RFP No. 237b distinguishes the State of Texas Coins from "promotional" items. RFP No. 237b explicitly prohibits the successful bidder from using its "trademark or logo" in connection with the coins "except that [the successful bidder] may use its trade name on packaging, advertising, and **promotional materials** for the" State of Texas Coins. If the coins were promotional items, then RFP No. 237b would make no sense.

58.    Other Texas statutes confirm what "promotional items" are—and what they are not. For example, the Agriculture Code authorizes the sale of "'Go Texan' promotional items and program merchandise," including "clothing, posters, and banners." Tex. Agric. Code § 46.0095(a).

---

[7] *See* https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin, last visited March 11, 2026.

[8] *See* https://texasbulliondepository.gov/where-to-buy, last visited March 11, 2026.

The Transportation Code likewise describes promotional items as "calendars, books, prints, caps, light clothing, or other items" approved to advertise Texas resources. Tex. Transp. Code §204.009(a). And the Government Code authorizes the sale of "items, including clothing, posters, and banners" to promote Texas-manufactured products. Tex. Gov't Code §490C.056(a). These examples reflect the ordinary meaning of "promotional items:" incidental merchandise whose purpose is advertising or public outreach, not the sale of regulated assets or financial products.

59.     Unlike promotional items, precious metals have **substantial** intrinsic value. If they had no value, then they would not need a depository to act as a "custodian, guardian, and administrator." *See* Tex. Gov't Code § 2116.002.

60.     The State of Texas Coins and the Redbacks are priced relative to the intrinsic value of their gold and silver content, and their listed prices scale with metal weight and fluctuate with market spot prices—further demonstrating that they are not merely "promotional items."

61.     Defendants' own marketing confirms they are offering the State of Texas Coins and Redbacks as precious metals products intended to be purchased and held for their metal value. In their December 2025 announcement, Defendants described State of Texas Coins as "made from pure precious metals **that serve as a store of value**." And they described the Redbacks as "crafted **with intrinsic value**." Those admissions are incompatible with the notion that these are merely "promotional items."

62.     Section 2116.021(c) is a narrow exception that allows the Agency to sell only administrator-approved "promotional items" to promote the depository. Tex. Gov't Code §2116.021(c). It cannot be validly construed to authorize the sale of bullion or specie, especially where Chapter 2116 defines those terms and assigns the Agency a custodial role over them. *See id.* §§ 2116.001, 2116.002. Reading "promotional items" to include products marketed and valued

as stores of precious metals wealth would transform a limited promotional carve out into an unbounded retail authorization the Legislature did not grant.

63.    Nor can Defendants expand their powers by styling these products as "commemorative." Chapter 2116 does not authorize the Agency to create a State-issued product line, commission designs, arrange minting or manufacturing, set terms of sale, advertise to consumers, or otherwise operate as a market-facing seller of precious metals goods. The statute does not use the term "commemorative" at all, and marketing labels cannot supply legal authority the Legislature withheld. In short, the Agency's limited power to sell "promotional items" does not include the power to sell precious metals.

## V.    Defendants Refuse to Stop Their *Ultra Vires* Acts

64.    On February 2, 2026, Texas Precious Metals Founder and Chief Executive Officer Tarek Saab met with Agency Deputy Administrator David Cruz to discuss the improper use of Texas Precious Metals' Mint Mark and registered trademarks. During the meeting, Mr. Saab questioned the Agency's authorization to produce, market, and sell precious metals products in light of Chapter 2116's limited scope for storage only. Mr. Cruz responded that Defendants' design, marketing, and sale of precious metals products was authorized by the "promotional items" text in Section 2116.021(c). He did not offer any other purported authority for the Agency's actions made the subject of this Amended Complaint.

65.    But, as discussed above, that section permits only the sale of "promotional items," such as T-shirts, posters, and caps. Tellingly, in RFP No. 237b, Defendants relied on a misstatement of Section 2116.021(c) as the basis for their actions: "The Depository is also authorized to issue, sell, or license for sale, or obtain a license to sell promotional items, **including commemorative coins**, approved by the Administrator to promote the Depository and further the purposes of the Depository." Section 2116.021(c) makes no mention of "commemorative coins." RFP No. 237b

further reveals that Defendants plan to design, mint, and sell additional products, "including Coins of appropriate weight and purity, as Respondent believes will **maximize sales**." Thus, Defendants have no intention of reining in their *ultra vires* actions, and their primary motivation is to "maximize sales."

66.    Two days after the February 2 meeting, Mr. Cruz, writing on behalf of the Comptroller on Comptroller letterhead, refused to stop the unauthorized conduct and confirmed, again, that with respect to Texas Precious Metals' efforts to protect its goodwill, "we [the Comptroller and the Agency] are the real party of interest in this matter…." Due to this impasse, Texas Precious Metals filed this suit in state court the same day, February 4, 2026.

## VI.    Defendants' Conduct is Causing Ongoing Competitive and Reputational Harm

67.    Defendants' challenged conduct is causing Texas Precious Metals ongoing and escalating harm. Among other things, that harm flows from: (i) direct State-backed competition in the same market segment; (ii) Defendants' use of Texas Precious Metals' Mint Mark and confusingly similar Texas-themed source identifiers on competing products; and (iii) Defendants' marketing of the products as "struck by the State of Texas" and otherwise tied to the State as a sovereign mint—representations that materially influence purchasing decisions and distort competition in ways a private market participant cannot match. These actions have already generated actual consumer confusion regarding affiliation, sponsorship, and authorization, and Texas Precious Metals' hard-earned goodwill is being eroded.

**FIRST CAUSE OF ACTION:**
**DECLARATION THAT THE AGENCY IS ACTING *ULTRA VIRES* AND CANNOT TRADE IN PRECIOUS METALS**

68.    Texas Precious Metals realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

69.    Texas Precious Metals brings this *ultra vires* claim against Defendants in their official capacities because they have acted outside of and exceeded their authority under Chapter 2116 by approving the design, promotion, and sale of State of Texas Coins and Redbacks outside of the authorized operations of the Agency and by claiming such operations constitute the permissible sale of "promotional items" under § 2116.021(c).

70.    Pursuant to 28 U.S.C. §§ 2201–2202, Texas Precious Metals seeks a declaratory judgment to determine a question of construction arising under Texas Government Code Chapter 2116 because the parties' rights, status, or other legal relations are affected by that statute. Texas Precious Metals further seeks declarations construing and enforcing the statutory limits on Defendants' authority to procure, market, and commercialize products under the Comptroller's and Agency's names and programs.

71.    Texas law provides that state agencies are "creatures of the legislature," possessing only the powers the Legislature delegates in clear statutory language, together with implied powers reasonably necessary to carry out those expressly delegated duties. *Pub. Util. Comm'n of Tex. v. GTE-Sw., Inc.*, 901 S.W.2d 401, 406 (Tex. 1995); *Cent. Educ. Agency v. Sellhorn*, 781 S.W.2d 716, 718 (Tex. App.—Austin 1989, writ denied). The separation of powers likewise limits executive agencies to delegated authority and prohibits the exercise of powers not granted by law. *See* Tex. Const. II, § 1.

72.    Consistent with those principles, there are "two general means of proving an ultra vires claim: (1) an action 'without legal authority' or (2) failure to 'perform a purely ministerial act.'" *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds

of his granted authority or if his acts conflict with the law itself." *Id.*at 238. Here, Defendants and the Agency are acting *ultra vires* by commissioning, authorizing, producing, advertising, promoting, marketing, offering for sale, and contracting for the manufacture, sale, and distribution of precious metals products, even though the Agency's only legislatively authorized purpose is to serve as a precious metals depository.

73.     An actual controversy exists between Texas Precious Metals and Defendants arising in connection with Texas Government Code Chapter 2116. The parties disagree as to whether Texas Government Code Chapter 2116 authorizes Defendants to design, sell, and market precious metals to the general public or limits Defendants to securing and storing precious metal assets on behalf of those who choose to use the Agency's depository services.

74.     This controversy turns on Defendants' interpretation and application of their enabling statute, Texas Government Code Chapter 2116, and thus concerns the bounds of their own authority. Defendants' entry into the precious metals market by selling and marketing gold and silver, including the State of Texas Coins and Redbacks, exceeds any limited discretion conferred by Chapter 2116 and constitutes action without legal authority.

75.     Texas Precious Metals seeks a declaration that Texas Government Code Chapter 2116 does **not** authorize Defendants to compete with private retailers in the precious metals market by selling and marketing precious metals, including the State of Texas Coins and Redbacks.

76.     Texas Precious Metals further seeks a declaration that Chapter 2116 cannot be construed to authorize the minting or commercialization of State-issued "coins" or "notes" in a manner that implicates or violates the Constitutional prohibition on state coinage. U.S. Const. art. I, § 10. Even if Defendants had statutory authority from the Legislature—which they do not—the Constitution does not permit them to issue official State of Texas currency.

77.    Texas Precious Metals further seeks a declaration that any request for proposals, solicitation, procurement, agreement, or contract issued, executed, or maintained by the Agency or its officials, including Defendants, for the design, commissioning, authorization, production, manufacture, minting, marketing, promotion, offering for sale, sale, distribution, fulfillment, or other commercialization of precious metals products, including the State of Texas Coins and the Redbacks, or for any activity beyond custodial depository services (including storage and safeguarding) authorized by Texas Government Code chapter 2116, is *ultra vires*, unauthorized, and therefore void and of no force or effect. Texas Precious Metals seeks a further declaration that neither the State of Texas Coins nor the Redbacks are "promotional items" within the meaning Texas Government Code § 2116.021(c).

78.    Texas Precious Metals further seeks a declaration that the Comptroller exceeded his statutory authority to ensure the Agency carries out the legislatively defined operations of a depository and enter into business transactions for that purpose. The Comptroller lacks authority to use contracting or procurement mechanisms to authorize or commercialize the *ultra vires* coin and note program described in this Amended Complaint, and any such instruments purporting to do so are unauthorized and void.

79.    Texas Precious Metals also seeks a declaration that the Administrator exceeded her statutory authority to administer and supervise depository operations (including depository agents) and to approve promotional items to promote the depository. She lacks authority to approve, direct, or participate in marketing, sales, or other transactions for non-depository programs, including the coin and note program described in this Amended Complaint. Defendants' challenged conduct exceeds the statutory authority delegated by Chapter 2116 and is *ultra vires*.

## SECOND CAUSE OF ACTION:
## FALSE ADVERTISING (LANHAM ACT) – 15 U.S.C. §1125

80.     Texas Precious Metals realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

81.     Defendants' advertising in connection with the State of Texas Coins and Redbacks constitutes use in commercial advertising or promotion of false and/or misleading descriptions of fact that misrepresent the nature, characteristics and/or qualities of the State of Texas Coins and Redbacks in violation of 15 U.S.C. § 1125(a). These false and/or misleading descriptions of fact actually deceived or tended to deceive a substantial number of consumers of precious metals products and were material to consumers' purchasing decisions.

82.     Defendants falsely advertise the State of Texas Coins and Redbacks as currency and as lawfully minted under official State of Texas authority. In reality, Defendants' products are neither currency nor authorized by the Legislature. The State of Texas cannot lawfully issue legal tender or "coin Money," and Defendants therefore lack constitutional authority to market these products as state-issued coinage or currency. U.S. Const. art. I, § 10.

83.     Defendants' actions as alleged herein constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Texas Precious Metals.

85.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Texas Precious Metals, and to its goodwill and reputation, and will continue to both damage Texas Precious Metals and confuse the public unless enjoined by this Court. Texas Precious Metals has no adequate remedy at law.

86.     Texas Precious Metals is entitled to relief under 15 U.S.C. §§ 1116 and 1117 and other applicable provisions, including injunctive relief, disgorgement of profits, and/or Texas Precious Metals' damages to the extent recoverable, corrective advertising and other equitable relief, costs, and where warranted, enhanced monetary relief and attorneys' fees.

## APPLICATION FOR PERMANENT INJUNCTIVE RELIEF

87.     Texas Precious Metals incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

88.     Defendants are engaged in an ongoing program to design, commission, authorize, procure, manufacture, market, advertise, promote, offer for sale, and facilitate the sale of State-issued precious metals products, including the State of Texas Coins and the Redbacks. Defendants' challenged conduct is continuing and, absent injunctive relief, will continue during the pendency of this litigation and thereafter.

89.     Unless Defendants' conduct is permanently enjoined, Texas Precious Metals will suffer irreparable harm for which there is no adequate remedy at law. That harm includes, without limitation, loss of control over the goodwill symbolized by Texas Precious Metals' Mint Mark and related Texas-themed source identifiers; erosion of brand integrity and reputation; ongoing consumer confusion as to affiliation, sponsorship, approval, and "official" status; and diversion of sales and business opportunities in a trust-dependent market. These injuries are not readily quantifiable, cannot be reliably unwound through monetary relief after the fact, and will continue so long as Defendants' program continues and expands.

90.     As described above, there is a substantial likelihood that Texas Precious Metals will prevail on the merits of its claims.

91.     The balance of equities favors injunctive relief. An injunction would merely require Defendants to cease unlawful and misleading commercial conduct and to operate within the lawful

bounds of their authority; it would not prevent Defendants from carrying out any legitimate custodial depository functions authorized by Chapter 2116. By contrast, denying injunctive relief would permit ongoing marketplace confusion and continued erosion of Texas Precious Metals' goodwill.

92.    The public interest would be served by entry of permanent injunctive relief because it (i) prevents consumer deception and confusion in the precious-metals market regarding source, sponsorship, and "official" status, and (ii) ensures state officials act within the limits of the authority granted by law.

## PRAYER FOR RELIEF

Texas Precious Metals prays that this Court enter judgment against Defendants and award the following relief:

a. Issue a declaration that the Defendants are acting *ultra vires* by designing, commissioning, authorizing, producing, minting, marketing, contracting for the manufacture or distribution of, and selling precious metals products.

b. Issue a declaration that Texas Government Code § 2116 does not authorize the Agency to compete with private retailers in the precious metals market.

c. Issue a declaration that neither the State of Texas Coins nor the Redbacks are "promotional items" within the meaning Texas Government Code § 2116.021(c).

d. Issue a declaration that any request for proposals, solicitation, procurement, agreement, or contract issued, executed, or maintained by the Agency or its officials for the design, commissioning, authorization, production, manufacture, minting, marketing, advertising, promotion, offering for sale, sale, distribution, fulfillment, or other commercialization of precious metals products—including the State of Texas Coins and the Redbacks—or for any activity beyond custodial depository services (including storage and safeguarding) authorized by Texas Government Code chapter 2116, is *ultra vires*, unauthorized, and therefore void ab initio and of no force or effect, and order Defendants to cease performance under any such instruments.

e. Issue a temporary restraining order and preliminary injunction enjoining Defendants, and all persons in active concert or participation with them who receive actual notice of the order, from continuing the challenged conduct pending final judgment.

f.  Issue a permanent injunction enjoining Defendants from designing, commissioning, authorizing, producing, minting, advertising, promoting, marketing, offering for sale, selling, distributing, or otherwise facilitating the commercialization of precious metals, including the State of Texas Coins and the Redbacks, whether directly or indirectly, and whether in their own name or through any third party.

g.  Issue a permanent injunction enjoining Defendants from using Texas Precious Metals' Mint Mark (or any confusingly similar designation) on any precious metals' product, packaging, advertising, promotional materials, or online listing.

h.  Such injunctive and other equitable relief as the Court deems appropriate under 15 U.S.C. §§ 1116 and 1117 to prevent continued deception, confusion, and harm to goodwill.

i.  Grant all other relief in law and equity to which Texas Precious Metals may be entitled.

Date: March 13, 2026                          Respectfully submitted,

                                              /s/ Ryan J. Sullivan

                                              Casey Low
                                              Texas Bar No. 24041363
                                              casey.low@pillsburylaw.com

                                              Ryan J. Sullivan
                                              Texas Bar No. 24102548
                                              ryan.sullivan@pillsburylaw.com

                                              Elizabeth Blackford *(Pro Hac Vice)*
                                              Texas Bar No. 24150283
                                              elizabeth.blackford@pillsburylaw.com

                                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                              401 W. 4th Street
                                              Suite 3200
                                              Austin, TX 78701
                                              (512) 580-9600

                                              *Attorneys for Texas Precious Metals, LLC*

37

38

## CERTIFICATE OF SERVICE

The undersigned certifies that, on March 13, 2026, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

/s/ *Ryan J. Sullivan*
Ryan J. Sullivan