UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | No. 1:26–CV–513–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| KELLY HANCOCK in his official | § | |
| capacity as Acting Texas Comptroller | § | |
| of Public Accounts, and MACY | § | |
| DOUGLAS in her official capacity as | § | |
| Administrator of the Texas Bullion | § | |
| Depository, | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING PLAINTIFF'S REQUEST FOR A TEMPORARY
<u>RESTRAINING ORDER</u>

Before the Court is Plaintiff Texas Precious Metals, LLC's

("Plaintiff" or "TPM") Motion for Temporary Restraining Order and Preliminary

Injunction, filed March 13, 2026.  (Dkt. # 19.)  Defendants Kelly Hancock and

Macy Douglas (collectively, "Defendants") filed a Response in Opposition on

March 18, 2026.  (Dkt. # 23.)  Plaintiff's motion requests that the Court

immediately enjoin Defendants from "(1) using [Plaintiff's] Mint Mark or any

confusingly similar designation in connection with any precious metals products;

and (2) minting, marketing, offering for sale, selling, or otherwise facilitating the

sale of the state-branded precious metals products at issue in this case in a manner

that creates a false impression of affiliation, sponsorship, approval, or 'official' 'coin' status." (Dkt. # 19 at 20.)

After careful consideration of the memoranda in support and in opposition to the motion, the Court, for the reasons that follow, **DENIES** the request for a TRO and **HOLDS IN ABEYANCE** Plaintiff's request for a preliminary injunction pending the hearing set for April 16, 2026.

BACKGROUND

Plaintiff is a Texas-based precious metals dealer and producer that has operated for more than fifteen years and sells Texas-themed gold and silver "rounds," gold notes, and other precious metal products nationwide.[1]  (Dkt. # 19 at 2–3.)  Plaintiff alleges that a key element of its branding is a Texas-shaped "Mint Mark" used on its products and packaging, which it alleges is protected by an incontestable federal trademark registration.  (Id. at 2.)

In 2015, the Texas Legislature passed House Bill 483, codified as Chapter 2116 of the Texas Government Code, creating the Texas Bullion Depository ("TBD") as "an agency of this state in the office of the comptroller" to

---

[1] Plaintiff notes that in the precious metals industry, the terms "round" and "coin" have different meanings. "Coin denotes official coinage by sovereign-governments with face value and legal tender status; whereas a "round" is minted by a private manufacturer and has no legal tender status.  (Dkt. # 19 at 2 n.1.)  The Court notes that for ease and purposes of this Order, the Court refers to Defendants' products at issue as "commemorative coins," and does not use the term "coin" in the technical sense.

serve as "the custodian, guardian, and administrator of certain bullion and specie." (Dkts. ## 19 at 3; 23 at 3 (citing Tex. Gov't Code § 2116.002 (a)-(b)).)  In 2019, the Legislature amended § 2116.021 to provide that the TBD "may advertise and promote the depository in any available media" and "may additionally issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator for a commercially reasonable price."  (Id. (citing Tex. Gov't Code § 2116.021(b)-(c)).)  The Texas House also initially adopted an amendment that would have expressly authorized TBD to "offer for sale under Section 2116.021(c) commemorative gold and silver coins" but later struck that section from the bill. (Dkt. # 19 at 3 (citing Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 24, 2019); Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 25, 2019)).)

In late 2025, the Texas Comptroller and TBD announced a new program selling Texas-themed silver and gold commemorative coins and notes. (Dkts. ## 19 at 4; 23 at 4.)  Under a 2023 solicitation and 2024 contract, private vendors design, manufacture, and sell these coins and notes, which prominently display TBD's name and, for the notes, TBD's website address.  (Dkts. ## 19 at 4–5; 23 at 4–5, 7.)  Plaintiff alleges that Defendants' products directly compete with Plaintiff's Texas-themed rounds and gold notes and that Defendants have used their Texas-silhouette Mint Mark or a confusingly similar design on the State's

3

products and related marketing, which has led to actual consumer confusion about affiliation, sponsorship, and legal-tender status.  (Dkt. # 19 at 6–9, 15–16.)

Plaintiff first filed suit in Travis County District Court on February 4, 2026, seeking a temporary restraining order and injunctive relief.  (See Dkts. ## 1-3; 1-5.)  The state court held a hearing on Plaintiff's request for a TRO and ultimately denied the request for TRO but offered to set the preliminary injunction hearing.  (Dkts. ## 19 at 9; 23 at 4; 19-2 at 67.)  Defendant removed the case to federal court on March 2, 2026.  (Dkt. # 1.)  Also on March 2, 2026, Defendants initiated a separate lawsuit against Plaintiff in the United States District Court for the Northern District of Texas to invalidate Plaintiff's trademarks.  (Dkt. # 23 at 5 (citing See State of Texas, et al. v. Texas Precious Metals, LLC, 7:26-cv-00021 (N.D. Tex.).)  In the above-captioned case, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on March 13, 2026.  (Dkt. # 19.)  On March 16, 2026, the Court issued an Order clarifying that the Court will handle the request for TRO and preliminary injunction separately and requesting Defendant's response.  (Dkt. # 20.)  On March 17, 2026, the Court issued an order setting the preliminary injunction hearing for April 16, 2026, and setting the briefing schedule.  (Dkt. # 21.)  On March 18, 2026, Defendant filed a Response in Opposition to the request for TRO.  (Dkt. # 23.)

4

LEGAL STANDARD

A TRO is an "extraordinary remedy." Lewis v. S.S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976). In order to obtain injunctive relief, including a TRO, a plaintiff must establish that (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to the public interest. Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)); Fed. R. Civ. P. 65.

DISCUSSION

Given the preliminary nature of the proceedings and having considered all four factors, the Court finds that Plaintiff has not carried its burden to justify a TRO on the current record and in light of the imminent preliminary injunction hearing.

A. Substantial Likelihood of Success

To obtain a preliminary injunction, the movant must first show a substantial likelihood of success on the merits. Lindsay v. City of San Antonio, 821 F.2d 1103, 1107 (5th Cir. 1987). Plaintiff's First Amended Complaint

includes two causes of action: (1) declaratory judgment that Defendants are acting *ultra vires*, and (2) false advertising under the Lanham Act.  (Dkt. # 18 at 30–35.)

### 1. Ultra Vires Claim

"An agency acts *ultra vires* when it goes beyond what Congress has permitted it to do."  Carreon v. Garland, 71 F.4th 247, 253 (5th Cir. 2023) (citation modified).  Both parties put forth compelling arguments regarding Defendants' statutory authority to sell commemorative coins and notes.

Plaintiff contends that Chapter 2116 of the Texas Government Code authorizes TBD only to act as a custodian of precious metals, but does not authorize TBD to design, mint, market, or sell them.  (Dkt. # 19 at 11.)  Plaintiff points to the statute's legislative history in which a proposed amendment expressly authorizing TBD to sell commemorative coins was ultimately struck before final enactment.  (Id. at 12.)  Plaintiff argues that § 2116.021(a) authorizes TBD to sell "promotional items," which should be read as the Legislature has used the term in other statutes—to mean incidental merchandise such as clothing, posters, and banners—not the regulated product itself.  (Id. at 12–13.)  In contrast, Plaintiff contends, Defendants' products are marketed not as promotional items, but for investment and appreciation for the purpose of generating profits.  (Id. at 14.)

Defendant responds with a declaration from David Cruz, the Deputy Administrator of TBD, that the purpose of the commemorative coins and notes

"was to create branded products featuring the name of the Depository to increase awareness and promote the custodial services of the Depository to the customers that are most likely to need them – purchasers of gold and silver bullion." (Dkt. # 23-2 at 3.)  Defendants also proffer data showing a significant increase in account applications and new accounts after the program launched, and that thousands of coins have been deposited into depository accounts. (Dkts. ## 23 at 8, 23-2 at 3–4.)  Defendants argue that this evidence of the coins' real-life promotional effect is the "ultimate proof as to whether something is a 'promotional item[.]'" (Dkt. # 23 at 8.)  As to the legislative interpretation argument, Defendant contends that the fact that the Legislature did impose limitations by defining "promotional items" in unrelated statutes "shows only that the Legislature knows how to impose such limits when it wants to – and the Legislature did *not* want to do so as to the Depository's promotional items." (Id. at 9.)

On this limited record, the Court finds that Plaintiff has raised serious questions as to the scope of TBD's statutory authority and the meaning of "promotional items" in Chapter 2116, particularly in light of the 2019 legislative history.  Defendants, however, have offered support for their position that the purpose of the commemorative coins and notes was to promote TBD's core custodial services, and that the coins have in fact achieved that promotional purpose.  While Plaintiff urges that Defendants' actions exceed express statutory

authority, Defendant argues that Plaintiff would have the Court re-write a statute and control the exercise of discretion by a state agency. (Dkts. ## 19 at 11; 23 at 9.) Both offer competing theories of statutory interpretation. Thus, the Court cannot conclude at this preliminary stage that Plaintiff has established a substantial likelihood of success on its *ultra vires* claim. Such fact-dependent questions are better resolved on a fuller record at the preliminary injunction hearing.

2.  Lanham Act False Advertising Claim

To establish a claim for false advertising under the Lanham Act, the plaintiff must establish: (1) a false or misleading statement about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir. 2000).

Plaintiff argues that Defendants falsely market the commemorative coins and notes as part of an "official" program authorized by the State of Texas, despite having no statutory authority to mint, market, or sell precious metals. (Dkt. # 19 at 15.) Plaintiff further contends that Defendants' marketing the State of Texas Coins as "coins" is false because they are actually "'rounds' because they

8

are not minted by a sovereign entity and have no face value or legal tender status."
(Id.)  Plaintiff proffers examples of call transcripts and internet posts in which
individuals appear to believe the State of Texas has begun issuing its own money
or assume Plaintiff is affiliated with TBD's program.  (See Dkt. # 19-1 at 1–132.)
Plaintiff argues that "[e]ach misleading promotion and sale diverts customers,
weakens the distinctiveness of [Plaintiff's] mark, and damages the goodwill the
company is built in the marketplace."  (Dkt. # 19 at 16.)

Defendants respond that they do not represent the products as legal
tender and, to the contrary, expressly disclaim legal-tender status on their website.
(Dkt. # 23 at 10–11.)  They further contend that describing the products as "coins"
is not meant to denote legal tender but the more common definition as "something
resembling a coin especially in shape."  (Id. at 10.)  Defendants argue that it is not
false to describe the product as "official" because, in their view, they have
statutory authority to issue and sell promotional coins and notes.  (Id.)  Lastly,
Defendants argue that Plaintiff wholly fails to address the interstate commerce
element of a false advertising claim.  (Id. at 12.)

Plaintiff's evidence of actual confusion, while limited and anecdotal,
is not trivial and may support a confusion-based theory at a later stage.  However,
in light of Defendants' disclaimers, competing definition of "coin," and the
absence of more developed evidence and arguments regarding the materiality and

9

interstate commerce elements, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on its Lanham Act false advertising claim.

Lastly, the Court notes additional arguments raised but which the Court does not presently address, and requests that the parties further address these issues in briefing and preparation for the preliminary injunction hearing. First, Defendants argue that Plaintiff's customer calls and online forums do not show that the alleged misrepresentations were material to any actual consumer decisions. (Dkt. # 23 at 11.) However, the case Defendant cites, Pizza Hut, 227 F.3d, states that "Plaintiffs seeking injunctive relief must prove that defendant's representations have a tendency to deceive consumers." Id. at 497 (citation modified). The Court requests that the parties address the proper standard for the materiality element and further flesh out the available evidence of such material consumer effect. Second, both parties discuss Plaintiff's underlying trademarks which Plaintiff alleges Defendant is infringing upon. (Dkts. ## 19-1 at 1–11; 23 at 12.) Defendant brings to the Court's attention a related case filed by Defendants and the State of Texas in the United States District Court for the Northern District of Texas challenging the validity of Plaintiff's trademarks. See State of Texas, et al. v. Texas Precious Metals, LLC, 7:26-cv-00021 (N.D. Tex.). The related pending litigation does not affect the Court's present decision, but the Court

requests that the parties be prepared to discuss how they believe the related case may or should affect the present case and any potential for inconsistent rulings.

    B. <u>Substantial Threat of Irreparable Harm</u>

Even assuming Plaintiff established substantial likelihood of success on the merits, the Court finds no substantial threat of irreparable harm, particularly in light of the preliminary injunction hearing scheduled for April 16, 2026.  To show irreparable harm "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm."  <u>Humana, Inc. v. Avram A. Jacobson, M.D., P.A.</u>, 804 F.2d 1390, 1394 (5th Cir. 1986).

Plaintiff claims irreparable harm in the form of ongoing loss of goodwill, marketplace confusion, and diversion of customers to a state-backed competitor.  (Dkt. # 19 at 16–17.)  Plaintiff argues that money damages cannot adequately remedy their injuries because the losses in both sales and goodwill are difficult to quantify.  (<u>Id.</u> at 18.)

While Plaintiff is correct that loss of goodwill and control over their brand and reputation may constitute irreparable harm, Plaintiff has not demonstrated that any potential loss of goodwill and harm to reputation is so imminent and irreparable in the present case to warrant the extraordinary remedy of a TRO.  <u>See</u> <u>Emerald City Mgmt., L.L.C. v. Kahn</u>, 624 Fed. App'x 223, 224

11

(5th Cir. 2015) (finding that loss of control over reputation and goodwill cannot be quantified and thus constitutes irreparable harm).  Although Plaintiff's proffered evidence demonstrates some customer confusion, Plaintiff has not adequately demonstrated how customer confusion amounts to loss of goodwill or concrete harm to Plaintiff's reputation.  Additionally, while Plaintiff may be losing sales to Defendants, they do not offer any evidence of such loss of sales other than to point to Defendants' own increase in coin production.  (Dkt. # 19 at 17.)  See also Pruvit Ventures, Inc. v. Forevergreen Int'l LLC, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *6 (E.D. Tex. Dec. 23, 2015) ("'[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.'" (quoting Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991))), report and recommendation adopted, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016).

In conclusion, Plaintiff's speculative and conclusory arguments as to its loss of goodwill, customer confusion, and incalculable loss of sales and brand value is insufficient to demonstrate that it will suffer irreparable harm in the following 27 days before Plaintiff may again fully present its evidence before the Court.

C. Balance of Equities and Public Interest

Lastly, the Court finds that the balance of equities and public interest do not weigh in favor of a TRO. Plaintiff asserts that as Defendants' program expands, consumer confusion will continue to grow, further eroding Plaintiff's goodwill and brand control, and further harming and misleading public consumers. (Dkt. # 19 at 16–19.) Defendants argue that a TRO would interfere with a state agency's ability to exercise its statutorily authorized functions, and that there is no evidence that Plaintiff's business will suffer complete collapse before the preliminary injunction hearing. (Dkt. # 23 at 14.)

The public has an interest both in ensuring that state officials act within the bounds of their statutory authority and in preventing consumer confusion. See Nobby Lobby, Inc. v. City of Dallas, 767 F. Supp. 801, 821 (N.D. Tex. 1991) ("[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve."), aff'd, 970 F.2d 82 (5th Cir. 1992); Lakedreams v. Taylor, 932 F.2d 1103, 1110 (5th Cir. 1991) ("[T]he public has an interest in preventing confusion about the origin of the products that it buys."); Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C., 83 F.Supp.2d 810, 832 (S.D.Tex.1999) ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."). However, the public also has

13

a strong interest in permitting state agencies to carry out duly enacted programs without unnecessary federal-court intervention, particularly where, as is the case here, the Court is not yet convinced of any illegal or *ultra vires* activity, and another federal court is already considering the related Lanham Act issues between the parties.

Balancing these competing considerations, the Court concludes that the equities and public interest do not favor the issuance of a TRO, and the Court will be better positioned to resolve the issues on a more complete record and briefing at the scheduled hearing.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for a temporary restraining order.  The Court **HOLDS IN ABEYANCE** Plaintiff's request for a preliminary injunction pending the preliminary injunction hearing scheduled for April 16, 2026, at 1:30 p.m.  (See Dkt. # 21.)

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, March 20, 2026.

_____
David Alan Ezra
Senior United States District Judge

14