# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| TEXAS PRECIOUS METALS, LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>KELLY HANCOCK; in his official capacity as Acting Texas Comptroller of Public Accounts, and MACY DOUGLAS, in her official capacity as Administrator of the Texas Bullion Depository,<br>     *Defendants.* | CASE NO. 1:26-CV-00513 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................................iv

Introduction .......................................................................................................................... 1

Factual Background ............................................................................................................... 1

Legal Standards..................................................................................................................... 3

Argument ............................................................................................................................... 4

   I.   TPM is unlikely to succeed on the merits of its claims. ......................................................... 4

       A.  Sovereign immunity bars TPM's Lanham Act claims. ................................................. 4

       B.  TPM will not succeed on the merits of its ultra vires claim. ....................................... 5

           1.  Section 2116.021(c) authorizes the Depository to issue, sell, license for sale, or obtain a license to sell commemorative coins and notes. .................................. 6

           2.  The Court should not consider legislative history, but even if it does, legislative history supports Defendants' authority. ............................................... 7

              a. H.B. 2458 gives the Comptroller more flexibility to administer the Texas Bullion Depository....................................................................................................8

              b. The Legislature determined the Depository already possessed such authority and amendment was unnecessary. .....................................................8

           3.  The commemorative coins and notes promote the Depository and further the purposes of Chapter 2116....................................................................................9

           4.  TPM's arguments to the contrary are unavailing and amount to requests that the Court legislate from the bench.............................................................. 10

           5.  The Comptroller did not act ultra vires in failing to adopt rules to carry out Chapter 2116....................................................................................................11

       C.  TPM will not succeed on the merits of its false advertising and false designation of origin claims. ......................................................................................................... 12

           1.  TPM has not yet been granted leave to amend its complaint, and the false designation of origin claim is not part of this lawsuit........................................... 12

           2.  TPM fails to demonstrate valid false advertising or false designation of origin claims under the Lanham Act. .................................................................... 13

           3.  TPM fails to demonstrate that the alleged false or misleading statements impacted consumer purchasing decisions or deceived consumers. ...................... 15

       D.  TPM will not succeed on the merits of its trademark infringement and counterfeiting claims. .............................................................................................. 16

   II.  TPM will not suffer irreparable harm in the absence of preliminary injunctive relief. ........ 18

III. The balance of equities weighs in favor of denying TPM's PI Motion. .............................. 19

    A.  The harm the State and public will suffer in the event of an injunction outweighs the speculative harm TPM will suffer absent an injunction. ..................................... 19

    B.  The First to File Rule and efficient judicial administration favors denying preliminary injunctive relief.................................................................................20

IV. Defendants object to the admission of TPM's attachments, declaration, and expert report into evidence. ..................................................................................................20

Conclusion ................................................................................................................................20

Certificate of Service.............................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) .................................................................................................... 7

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) ..................................................................................... 19

*Brauckmiller v. Univ. of Texas San Antonio*,
No. SA-23-CV-01182-XR, 2024 WL 5265296 (W.D. Tex. Dec. 20, 2024) ............................. 4

*Byrum v. Landreth*,
566 F.3d 442 (5th Cir. 2009) ...................................................................................... 3

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) .....................................................................................20

*Camacho v. Ford Motor Co.*,
993 F.3d 308 (5th Cir. 2021) ...................................................................................... 6

*Canal Auth. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) ...................................................................................... 3

*CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n*,
37 F.4th 1069 (5th Cir. 2022) ................................................................................ 6, 7

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ...................................................................................... 5

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) .................................................................................................... 4

*Eastman Chem. Co. v. Plastipure, Inc.*,
775 F.3d 230 (5th Cir. 2014) .................................................................................... 14

*Enter. Int'l, Inc., v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) ................................................................................ 4, 19

*Entergy Gulf States, Inc. v. Summers*,
282 S.W.3d 433 (Tex. 2009) ...................................................................................... 6

*Fisher v. Metro. Life Ins. Co.*,
895 F.2d 1073 (5th Cir. 1990) .............................................................................12, 16

*Fla. Med. Ass'n Inc. v. U.S. Dep't of H.E.W.*,
601 F.2d 199 (5th Cir. 1979) ...................................................................................... 3

*Fort Worth Transp. Auth. v. Rodriguez*,
547 S.W.3d 830 (Tex. 2018) ...................................................................................... 6

*Franklin v. State*,
193 S.W.3d 616 (Tex. App.—Ft. Worth 2006, no pet.) ............................................... 14

*Goswami v. Am. Collections Enter., Inc.,*
    377 F.3d 488 (5th Cir. 2004) ...........................................................................7

*Green Valley Special Util. Dist. v. City of Schertz,*
    969 F.3d 460 (5th Cir. 2020) ........................................................................ 4, 5

*Hall v. McRaven,*
    508 S.W.3d 232 (Tex. 2017) ........................................................................5, 12

*Hibbs v. Winn,*
    542 U.S. 88 (2004) ..........................................................................................10

*Hous. Belt & Terminal Ry. v. City of Houston,*
    487 S.W.3d 154 (Tex. 2016) ............................................................................5

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia,*
    535 U.S. 613 (2002) ...........................................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ........................................................................................ 15

*Logan v. Burgers Ozark Country Cured Hams Inc.,*
    263 F.3d 447 (5th Cir. 2001) ......................................................................... 15

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .......................................................................................... 18

*Matzen v. McLane,*
    659 S.W.3d 381 (Tex. 2021) ........................................................................ 4, 5

*Milner v. Dep't of the Navy,*
    562 U.S. 562 (2011) ...........................................................................................7

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) ........................................................................3, 19

*Nat'l Ass'n of Mfrs. v. DOD,*
    583 U.S. 109 (2018) ...........................................................................................7

*Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.,*
    516 F. Supp. 3d 633 (W.D. Tex. 2021) ......................................................... 13

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................................................3, 19

*Nutrition 21 v. United States,*
    930 F.2d 867 (Fed. Cir. 1991) ....................................................................... 19

*Oreck Corp. v. U.S. Floor Systems, Inc.,*
    803 F.2d 166 (5th Cir. 1986) ......................................................................... 17

*Pebble Beach Co. v. Tour 18 I Ltd.,*
    155 F.3d 526 (5th Cir. 1998) ......................................................................... 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ..........................................................................................................4

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
  227 F.3d 489 (5th Cir. 2000).................................................................................. 13, 15

*Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*,
  No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952 (E.D. Tex. Dec. 23, 2015),
  *report and recommendation adopted*, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan.
  19, 2016).....................................................................................................................18, 19

*Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*,
  646 S.W.3d 329 (Tex. 2022) ..........................................................................................5

*Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*,
  883 F.2d 345 (5th Cir. 1989)...........................................................................................5

*Speaks v. Kruse*,
  445 F.3d 396 (5th Cir. 2006) ..........................................................................................3

*State of Texas v. Texas Precious Metals, LLC*,
  Case No. 7:26-cv-00021 (N.D. Tex., filed March 17, 2026) ...................................... 17

*State of Texas v. Texas Precious Metals, LLC*,
  Case No. 7:26-cv-00021 (N.D. Tex., filed March 2, 2026) ....................................17, 20

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
  908 F.3d 313 (8th Cir. 2018)........................................................................................ 17

*Sw. Bell Tel., L.P. v. Emmett*,
  459 S.W.3d 578 (Tex. 2015) .......................................................................................5, 12

*Tex. Health Presbyterian Hosp. of Denton v. D.A.*,
  569 S.W.3d 126 (Tex. 2018) ........................................................................................6, 11

*Texas A & M Univ. Sys. v. Koseoglu*,
  233 S.W.3d 835 (Tex. 2007)...........................................................................................4

*Texas Dep't of Transp. v. Needham*,
  82 S.W.3d 314 (Tex. 2002) .............................................................................................7

*Toxco Inc. v. Chu*,
  724 F.Supp.2d 16 (D.D.C.2010)................................................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................ 18

**Statutes**

Tex Gov't Code § 2116 ..................................................................................................... 10

Tex. Gov't Code § 2116.001 ...............................................................................................6

Tex. Gov't Code § 2116.005 ...............................................................................................7

Tex. Gov't Code § 2116.021 ........................................................................................passim

Tex. Gov't Code § 2116.071..........................................................................................7

Tex. Gov't Code § 403.0301...........................................................................................11

**Legistlative History**

Debate on H.B. 2458 on the Floor of the House, 86th Leg., R.S. at 9:25:48- 9:26:06 (Apr. 25, 2019), https://house.texas.gov/videos/10026................................................9

H.J. of Tex., 86th Leg., R.S. 2148 (2019) ......................................................................8

H.J. of Tex., 86th Leg., R.S. 2273 (2019) ......................................................................8

Senate Research Center, Bill Analysis, Tex. H.B. 2458, 86th Leg., R.S. (2019) ...........8

Tex. H.B. 2458, 86th Leg., R.S. (House floor amend. Adopted Apr. 25, 2019)..............7

**Other Authorities**

Merriam-Webster's Collegiate Dictionary (12th ed. 2025), https://www.merriam-webster.com/dictionary .................................................................................... 6, 14

Merriam-Webster's Collegiate Dictionary (12th ed. 2025), https://www.merriam-webster.com/thesaurus/official ................................................................... 14

SilverTowne Mint, https://silvertownemint.com/minting-products/custom-minting/ ..............11

State of Texas 2025 1oz Gold Proof Coin, https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin..........................................................................2

Texas Precious Metals Depository, https://texasdepository.com.........................................16, 18

The Highland Mint, https://www.highlandmint.com/pages/custom-minting-request ..............11

**Federal Statutes**

15 U.S.C. § 1064 ....................................................................................................... 17

15 U.S.C. § 1115......................................................................................................... 17

**INTRODUCTION**

In 2019, the Texas Legislature gave the Texas Bullion Depository ("the Depository") the authority to issue, sell, license for sale, or obtain a license to sell promotional items. Pursuant to that authority, the Depository licensed for sale commemorative coins and notes made from precious metals. Since the Depository announced the commemorative coins and notes, applications to store precious metals at the Depository have skyrocketed.

Displeased with the Depository's success, TPM claims that the Legislature did not actually intend to give the Depository authority to issue commemorative coins and notes as promotional items and that (despite "Texas Bullion Depository" being emblazoned on the commemorative coins) a State of Texas relief map on the Depository's commemorative coins causes consumers to think the Depository's commemorative coins are actually TPM's. This is a farce. To the extent confusion exists, the cause of that confusion lies directly at the feet of TPM. The Court should not grant TPM the extraordinary remedy of preliminary injunctive relief when it is neither warranted by fact or law.

**FACTUAL BACKGROUND**

In 2019, the Texas Legislature passed H.B. 2458, giving the Depository authority to issue, sell, license for sale, or obtain a license to sell promotional items approved by the Administrator of the Depository to promote the Depository and further the purposes of Chapter 2116. Tex. Gov't Code § 2116.021(c). In 2023, the Depository issued a solicitation seeking to select a vendor to design, manufacture, and sell commemorative coins, rounds, bars, or other items made from precious metals for the purpose of promoting the Depository. Ex. D ("Cruz Decl.") ¶ 5. The solicitation was issued pursuant to the Comptroller's statutory authority under Texas Government Code Chapters 403 and 2116. Cruz Decl. ¶ 5. Upon information and belief, TPM was aware of this Request for Proposal but affirmatively chose not to submit a bid because it did not fit in with TPM's business model. Cruz Decl. ¶ 6.

In August 2024, the Comptroller awarded a contract to an entity other than TPM, and licensed for sale commemorative coins and notes with the Comptroller's trademarks, including the

1

mark "Texas Bullion Depository," U.S. Reg. No. 5,597,704. Cruz Decl. ¶ 7. In return, the Depository receives an annual licensing fee plus a per item fee for each unit sold. Cruz Decl. ¶ 7. The purpose of the commemorative coins and notes is to increase awareness of the Depository's services particularly among people most likely to use the Depository—purchasers of precious metals. Cruz Decl. ¶ 9. The commemorative coins are not legal tender and are not marketed as such. ECF No. 28 at 12. They have no monetary denomination. *See* https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin (last accessed April 2, 2026).

The promotion has been a success. Since the commemorative coins and notes were announced, applications for depository accounts have skyrocketed. Cruz Decl. ¶ 12. Prior to the announcement of the commemorative coins and notes, the Depository saw an average of 94 initiated applications a month. Cruz Decl. ¶ 12. In the first three months after announcing the commemorative coins and notes, the Depository saw an average of 265 initiated applications a month. Cruz Decl. ¶ 12. The average number of new accounts approved and opened increased from an average of 50 new accounts per month to 116 new accounts per month. Cruz Decl. ¶ 12. As of February 24, 2026, more than 12.6% of purchased commemorative coins were deposited by customers into accounts at the Depository. Cruz Decl. ¶ 13.

To increase visibility, the Depository plans to redesign its commemorative coins every year. Cruz Decl. ¶ 16. The 2025 version of the commemorative coin contains a relief map of the State of Texas. Cruz Decl. ¶ 15. The 2026 commemorative coin will not use the relief map or an outline of Texas at all. Cruz Decl. ¶ 16. The Depository has no plans to use the 2025 design on any future coins. Cruz Decl. ¶ 16.

TPM also sells "precious metals products, including gold and silver coins, rounds and bars." ECF No. 28-1 at 2. "TPM operates an online retail platform at www.texmetals.com . . . ." ECF No. 28-1 at 2. TPM claims it is the only entity that can use an outline of the shape of Texas on coins. ECF No. 28-1 at 3–4. TPM claims the Depository's use of the relief map of Texas confuses consumers, but it is TPM's domain names which confuse consumers. *See, e.g.*, ECF

2

No. 28-1 at 106, 125–26. Now, TPM has resorted to litigation to keep its foothold in the marketplace as "the Texas Mint" when in reality, it never was.

In Mr. Saab's declaration and accompanying exhibits, TPM raised factual allegations concerning compromise negotiations which took place days prior to TPM initiating suit against Defendants. *E.g.*, ECF No. 28-1 at 11–12, Exs. 8–12. Defendants object to these and related statements and exhibits under Federal Rule of Evidence 408. However, to the extent the Court considers them, Defendants assert the following to ensure the Court has a complete understanding of events.

After the Comptroller announced the commemorative coins and notes, TPM contacted the Depository. TPM did not raise any concerns about the Depository lacking authority to create or sell the coins under Chapter 2116. Instead, TPM requested the Depository pay TPM an exorbitant royalty to use the outline of the State of Texas on the commemorative coins and notes. Because the Depository disagreed that it was infringing on TPM's trademarks it refused to cave to TPM's unreasonable demands, and TPM sued.

## LEGAL STANDARDS

"[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant *clearly carries the burden of persuasion*." *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) (emphasis added). To obtain a preliminary injunction, it is the movant's burden to establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)). The government's and the public's interests merge when the government is a party. *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). A preliminary injunction . . . must be the product of reasoned application of the four factors held to be necessary prerequisites . . . ." *Fla. Med. Ass'n Inc. v. U.S. Dep't of H.E.W.*, 601 F.2d 199, 202 (5th Cir. 1979).

"[I]f the movant does not succeed in carrying its burden [of persuasion] on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Enter. Int'l, Inc.*, *v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

**ARGUMENT**

## I.  TPM is unlikely to succeed on the merits of its claims.

### A.  Sovereign immunity bars TPM's Lanham Act claims.

TPM is unlikely to succeed on the merits of its Lanham Act claims relating to Defendants' use of the shape of Texas on the commemorative coins and notes because such claims are barred by sovereign immunity. "Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability." *Matzen v. McLane*, 659 S.W.3d 381, 387 (Tex. 2021). As state officials sued in their official capacities, Defendants are entitled to sovereign immunity absent a valid legislative waiver. *Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex. 2007). The Lanham Act does not validly abrogate Defendants' sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999).

Further, Defendants did not waive sovereign immunity from suit to TPM's Lanham Act claims. A state's consent to suit must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The basis for finding Defendants waived sovereign immunity upon removal is the idea that Defendants *consented* to the court's jurisdiction over those claims. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620–24 (2002). Defendants did not consent to being sued for any Lanham Act claims because those claims did not exist at the time of removal. *See Brauckmiller v. Univ. of Texas San Antonio*, No. SA-23-CV-01182-XR, 2024 WL 5265296 (W.D. Tex. Dec. 20, 2024) (sustaining defendants' objections to magistrate judge's report and recommendation and holding that defendants' waiver did not extend to post-removal amendments).

The *Ex parte Young* exception to sovereign immunity applies only to ongoing violations of federal law. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020). That exception to sovereign immunity does not, and cannot, apply here because first, there is no

4

violation of federal law, but even assuming *arguendo* there was, the Depository will not be using the outline of Texas on its commemorative coins in the future. Cruz Decl. ¶ 16. Thus, TPM's alleged harm is not ongoing, its claims are barred by sovereign immunity, and it lacks a likelihood of success on the merits. *See Green Valley*, 969 F.3d at 471.

### B.  TPM will not succeed on the merits of its ultra vires claim. [1]

"An ultra vires claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (citing *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). "If the challenged actions 'were not truly outside the officer's authority or in conflict with the law,' then the plaintiff has not stated a valid ultra vires claim[.]" *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332–33 (Tex. 2022) (quoting *Matzen v. McLane*, 659 S.W.3d at 388).

The other type of ultra vires claim occurs when a government officer has "failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). An act is purely ministerial when "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall*, 508 S.W.3d at 243 (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (defining a ministerial duty)). TPM is unlikely to succeed on the merits of its ultra vires claims against Defendants because their actions were within their discretion under Chapter 2116 and Chapter 403 of the Texas Government Code.

---

[1] When the Court exercises supplemental jurisdiction over state law claims, the court applies state law. *See, e.g., Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989). TPM's repeated citations to and reliance on federal law, ECF No. 28 at 7, is improper and should be disregarded. *See id*. ("A federal court exercising pendent jurisdiction over state law claims, must apply the substantive law of the state in which it sits.").

1. <u>Section 2116.021(c) authorizes the Depository to issue, sell, license for sale, or obtain a license to sell commemorative coins and notes.</u>

The plain language of section 2116.021(c) authorizes Defendants' conduct. "Where text is clear, text is determinative[.]" *CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)). "When faced with an undefined statutory term, [the court's] job is to apply the 'common, ordinary meaning, unless a more precise definition is apparent from the statutory context or the plain meaning yields and absurd result." *Id.* (quoting *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021)). "To determine a term's common, ordinary meaning, [courts] typically look first to dictionary definitions." *Id.* (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)).

Here, section 2116.021(c) plainly states that the Depository "may issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator to further the purposes of this chapter and promote the depository" Tex. Gov't Code § 2116.021(c), but it does not define the term "promotional item," Tex. Gov't Code § 2116.001. So, the first step is to look at the common, ordinary meaning of the term according to dictionary definitions. *See CANarchy Craft Brewery Collective, L.L.C.*, 37 F.4th at 1074.

The dictionary definition of "promotional" is "of, relating to, or serving the end of promotion[.]" *Promotional*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). The dictionary definition of "promotion" is "the act of furthering the growth or development of something," "especially: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). Putting that all together, a "promotional item" for the Depository is an item that helps advance the Depository's growth or development through branding, advertising, publicity, or discounting. *See id*. Because the phrase is unambiguous, the Court must not look further than the text. *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) (finding reliance on extrinsic aids is "'improper' and 'inappropriate' when statutory language is clear.").

TPM improperly invites the Court to transplant examples of promotional items in other statutes into Chapter 2116. ECF No. 28 at 8 n.11. Courts look "primarily to how that term is used throughout *the statute* as a whole" to determine the meaning of an undefined term, and should not consider *other* statutes unless the meaning is unclear. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (emphasis added). Terms must be consistent *within an act,* so the Court should examine how terms are used throughout *that act*. *See id.* Here, the Legislature did not limit the scope of promotional items.

In this act, the meaning of "promotional item" is clear from the face of the statute and another definition is not apparent from the context of Chapter 2116. *See CANarchy Craft Brewery Collective, L.L.C.*, 37 F.4th at 1074 (requiring the court to apply the plain meaning of the term unless another meaning is clear from the statutory context). To the contrary, the Legislature was specific in certain areas of the statute—including areas concerning the authority to lease facilities and receive deposits, *see* Tex. Gov't Code §§ 2116.005, 2116.071—but not in section 2116.021(c). This shows the Legislature had the ability to specify what types of promotional items could be issued, sold, or licensed for sale but it did not. This Court should resist TPM's request to rewrite the law from the bench.

2. The Court should not consider legislative history, but even if it does, legislative history supports Defendants' authority.

TPM argues the Texas House intentionally declined "to authorize the Agency to 'offer for sale . . . gold and silver coins.'" ECF No. 28 at 6 (quoting Tex. H.B. 2458, 86th Leg., R.S. (House floor amend. Adopted Apr. 25, 2019)); *id.* at 4. But that argument flounders because extratextual aids like "'legislative history' cannot trump 'clear statutory language.'" *Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 130 n.9 (2018) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011)). Since the plain, ordinary meaning of "promotional items" under Chapter 2116 of the Texas Government Code is clear, the Court's inquiry must end with the statutory text—it cannot consider legislative history. *See supra* pp. 6–7; *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 492 (5th Cir. 2004). But even if the

7

Court does consider legislative history, it will find H.B. 2458's legislative history *supports* Defendants' authority to issue, sell, license for sale, or obtain a license to sell commemorative coins and notes as promotional items.

        a.  H.B. 2458 gives the Comptroller more flexibility to administer the Texas Bullion Depository.

As an initial matter, the 86th Texas Legislature introduced H.B. 2458 to update H.B. 483—a previously enacted statute establishing the Texas Bullion Depository—based on numerous "issues identified by the [C]omptroller." Ex. A, Senate Research Center, Bill Analysis, Tex. H.B. 2458, 86th Leg., R.S., at 1 (2019). In its earliest efforts to implement the Depository, the Comptroller observed the enabling legislation, H.B. 483, needed improvements to ensure the Depository could "be administered in an efficient, prudent manner." *Id.* Accordingly, H.B. 2458 gives the Comptroller *more* "flexibility to administer [the Depository]." *Id.* at 1–2.

Lawmakers envisaged the state-run Depository as an entity capable of "compet[ing] with privately owned depositories[.]" *Id.* at 1. So, they "enhance[d] the commercial competitiveness of the [D]epository," by drafting H.B. 2458 to grant the Comptroller "additional authority to . . . promote and advertise the depository," among other things. *Id.* In other words, H.B. 2458 was intended to, and does, endow the Comptroller with *broader* discretionary authority to promote the Depository.

        b.  The Legislature determined the Depository already possessed such authority and amendment was unnecessary.

True, the Texas House adopted, and later struck, an amendment to H.B. 2458 explicitly authorizing the Depository to sell commemorative gold or silver coins as promotional items. Ex. B, H.J. of Tex., 86th Leg., R.S., at 2148 (2019); Ex. C, H.J. of Tex., 86th Leg., R.S., at 2273 (2019). That is merely because the Legislature understood section 2116.021(c) to authorize the sale of commemorative coins and notes as promotional items absent such an amendment.

Indeed, the Court need look no further than the statements of Representative Andrew Murr during House floor debates on April 25, 2019. Representative Murr introduced both the

amendment authorizing the Depository's sale of gold and silver commemorative coins, and the amendment striking that very provision from H.B. 2458. Exs. B, C. Addressing the House, Representative Murr clarified why he sought to strike the amendment language about commemorative coins:

> Mr. Speaker, members, this amendment simply removes the second reading of the amendment that I added yesterday. In visiting with the Comptroller of Public Accounts . . . I understand that they **currently have the authority to generate commemorative gold and silver coins, and hopefully they're headed in that direction.** And I believe [this amendment] is acceptable to the author.

Debate on H.B. 2458 on the Floor of the House, 86th Leg., R.S., at 9:25:48- 9:26:06 (Apr. 25, 2019), https://house.texas.gov/videos/10026 (emphasis added). Representative Murr's April 25 statements and the Texas House's adoption of his amendment striking his prior amendment show lawmakers understood the Depository's existing statutory authority to include the sale of commemorative coins and notes and thus, there was no need for an amendment.

That the Legislature declined to unnecessarily amend H.B. 2458 with superfluous language purporting to authorize actions that section 2116.021(c) already empowers the Depository to undertake reinforces Defendants' arguments contrary to Plaintiff's contention. *See* Tex. Gov't Code § 2116.021(c). For that reason, the Court should not interpret Chapter 2116's silence on the sale of commemorative coins and notes as a limitation on authority.

3. The commemorative coins and notes promote the Depository and further the purposes of Chapter 2116.

The commemorative coins and notes further the purposes of Chapter 2116 and promote the Depository as required by section 2116.021(c). Tex. Gov't Code § 2116.021(c). According to TPM's own expert,[2] "promotional items are properly understood as mechanisms to stimulate demand for the firm's primary goods or services[.]" ECF No. 28-3 at 7–8. Each Depository coin and note is branded "Texas Bullion Depository" on its face. Since the launch of the commemorative coins, the average number of new precious metals storage accounts at the

---

[2] Defendants object to TPM's expert report. *See ingfra* § IV.

Depository has more than doubled. Cruz Decl. ¶ 12.

The U.S. Gold Bureau website sells the Depository's commemorative coins and notes. Cruz Decl. ¶ 13. "When customers go to the U.S. Gold Bureau to purchase a commemorative coin, the checkout cart offers customers an option to select the Depository as a storage option." *Id.* This provides an easy method for customers to select Depository storage and promotes the purpose of the Depository—storing precious metals. Cruz Decl. ¶ ¶ 11, 13.  And it is working. As of the end of February, more than 12.6% (2092) of the coins manufactured were deposited in accounts at the Depository by customers who purchased the coins. Cruz Decl. ¶ 13.

4. <u>TPM's arguments to the contrary are unavailing and amount to requests that the Court legislate from the bench.</u>

To rule for TPM on the ultra vires claim, the Court would have to insert requirements into the statute that do not exist; specifically, that the items be incidental, inexpensive, and not made of precious metal. ECF No.18 at 24–29; 28 at 10. TPM offers no legitimate reason for this Court to do so. Section 2116.021(c) expressly contemplates that the promotional items will be sold for value. *See* Tex. Gov't Code § 2116.021(c) (stating the promotional items may be sold for "commercially reasonable prices"). TPM incorrectly argues that the coins are solely a "new line of business" and that the coins are too valuable to be promotional items. ECF No. 28 at 9–11. Nothing in section 2116.021 indicates the Legislature intended the promotional items issued, licensed, or sold at prices to be merely "incidental" or have no intrinsic value or purpose. Tex Gov't Code § 2116.001 *et seq.* Importantly, there is nothing in Chapter 2116 stating the commemorative coins and notes stop being promotional items when they have collectable and investment value. *Id.* Under common vernacular, the Legislature clearly authorized the Depository to enter into a new line of business by issuing, selling, obtaining a license for sale, or licensing for sale promotional items. Tex. Gov't Code § 2116.021(c). Under TPM's line of reasoning, even if the Depository sold hats or calendars or keychains, those items would still be an entirely separate, and presumably impermissible, line of business from storing precious metals. Such a reading improperly renders section 2116.021(c) meaningless. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

10

TPM's urging that the coins and notes are not promotional items because they have collectable and investment value also ignores current industry practice. Many companies offer to manufacture coins, including coins made out of precious metals, to other companies and organizations for use as promotional items. *See, e.g.*, https://silvertownemint.com/minting-products/custom-minting/ (last accessed April 2, 2026) (specifically offering to "[m]ake your business instantly unforgettable with a custom minted promotional item"); https://www.highlandmint.com/pages/custom-minting-request (last accessed April 2, 2026) (specializing in custom promotional coins for sports teams).

TPM's expert's analysis concerning the meaning of promotional items should not be considered because it is extrinsic evidence unnecessary to determine the meaning of the statute. *See Tex. Health Presbyterian Hosp. of Denton*, 569 S.W.3d at 136. However, even according to according to TPM's expert, activities that "directly support and enhance demand for the firm's existing products . . . cannot reasonably be characterized as a separate line of business." ECF No. 28-3 at 8. As explained above, the commemorative coins and notes *directly* increase demand for the Depository's existing services. Cruz Decl. at ¶ 12. Additionally, the intent of the program is not to generate "the highest revenue and profit available for the items," ECF No. 28-3 at 9, as the Depository "receives a [modest] per item fee" for each coin and note sold, a hallmark of a promotional item. Cruz Decl. at ¶ 8.

5.  <u>The Comptroller did not act ultra vires in failing to adopt rules to carry out Chapter 2116.</u>

TPM will not succeed on the merits of its ultra vires claims against the Comptroller for all the reasons above and because (1) the Comptroller has independent, additional authority under Texas Government Code Chapter 403 and (2) TPM has not shown the Comptroller failed to carry out a purely ministerial duty.

First, the Comptroller contracted for the commemorative coins and notes pursuant to his authority under Chapter 403. ECF 28-2 at 95. TPM did not address the Comptroller's authority under Texas Government Code Chapter 403. Tex. Gov't Code §§ 403.0301(a)(2–3) (authorizing

the Comptroller to "contract with a person for the sale, lease, marketing, or other distribution of the comptroller's intellectual property" and "obtain . . . a royalty, license right, or other appropriate means of securing reasonable compensation for the development or purchase of the comptroller's intellectual property"). TPM's failure to address the Comptroller's section 403 authority is fatal to its ultra vires claim because it provides authority independent of Chapter 2116 to which TPM objects.

Second, TPM improperly raises the Comptroller's alleged failure to establish rules for the first time in its Amended Motion for PI. ECF No. 28 at 11. It appears nowhere in TPM's First or Second Amended Complaints. ECF Nos. 18, 27–1. As such, it an improper basis to grant a PI. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (holding that a claim not raised in the live complaint is not properly before the court). But were the Court to consider the merits, TPM would not prevail because section 2116.002(c) does not present a purely ministerial duty (requiring the Comptroller to determine what is "necessary"). TPM also does not provide evidence or argument showing the Comptroller failed to adopt *necessary* rules or unlawfully determined rules were not necessary. *See Hall*, 508 S.W.3d at 243 (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d at 587 (defining a ministerial duty)). As such, TPM will not prevail on its ultra vires claim against the Comptroller.

## C. TPM will not succeed on the merits of its false advertising and false designation of origin claims.

### 1. TPM has not yet been granted leave to amend its complaint, and the false designation of origin claim is not part of this lawsuit.

It would be inappropriate for this Court to grant preliminary injunctive relief on TPM's false designation of origin claim. A movant must demonstrate a substantial likelihood of success on the merits of its claims to obtain a preliminary injunction. *See Fisher*, 895 F.2d at 1078 (holding that a claim not raised in the live complaint is not properly before the court). Here, the false designation of origin claim is not at issue because TPM did not raise it in its operative complaint. *See* ECF No. 18. TPM filed its Opposed Motion for Leave to File Second Amended Complaint on March

27, 2026, seeking leave of court to file a second amended complaint in which it proposes to add a false designation of origin claim under the Lanham Act. ECF No. 27. The Court has not yet ruled on that motion, so the false designation of origin claim is not before the Court and cannot be a proper basis on which to grant injunctive relief. TPM's request for preliminary injunctive relief on its proposed false designation of origin claim is unconnected to any claim contained in its First Amended Complaint. *See* ECF No. 18.

   2. TPM fails to demonstrate valid false advertising or false designation of origin claims under the Lanham Act.

The Court should not consider the merits of TPM's proposed false designation of origin claim because it is not properly before the Court. Should the Court choose to do so, it should find that TPM is unlikely to succeed on the merits of that claim. It should also find that TPM is unlikely to succeed on the merits of its false advertising claim.

To show a prima facie case of false advertising or false designation of origin under the Lanham Act, a plaintiff must establish the following factors: "(1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *see Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 650–51 (W.D. Tex. 2021) (noting that a majority of courts within the Fifth Circuit apply the *Pizza Hut* elements to false designation of origin claims under the Lanham Act). A plaintiff's failure to prove any element is fatal to its claim. *Pizza Hut*, 227 F.3d at 495. To obtain injunctive relief, a plaintiff must demonstrate that the commercial advertisement or promotion is either "literally false" or that "it is likely to mislead and confuse consumers." *Id*. "If the statement is shown to be misleading, the plaintiff must also introduce evidence of the statement's impact on consumers, referred to as materiality." *Id*.

TPM's false advertising and false designation of origin claims must fail because Defendants

13

have not made any literally false or misleading statements. To be be the basis of a Lanham Act false advertising claim, a statement of fact must be susceptible of "empirical verification." *See, e.g., Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014). TPM argues that the Depository has falsely stated that its promotional coins and notes are "official" and that the Depository falsely describes its promotional coins as "coins." ECF No. 28 at 11. However, both of those statements are true.

First, the word "official," is defined as "ordered or allowed by those in authority." *Official*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025), https://www.merriam-webster.com/thesaurus/official (last accessed April 2, 2026). It is synonymous with the word "authorized" when it is used as an adjective, as it is on the Depository's website. *Id.* Other synonyms for "official" include "legal," "approved," and "promoted." *Id.*; *see also Franklin v. State*, 193 S.W.3d 616, 620–21 (Tex. App.—Ft. Worth 2006, no pet.) (noting evidence that defendant "authorized" conduct permitted jury to find that defendant gave his "official approval or permission" for the conduct).

The Texas Government Code plainly authorizes the Depository to "advertise and promote the depository in any available media" and also to "issue, sell, license for sale, or obtain a license to sell promotional items." Tex. Gov't Code § 2116.021. The issuance and sale of the promotional coins and notes is an "official" Texas program authorized by Texas law to promote the Depository's services. TPM has failed to demonstrate that the Depository's statement describing the promotional program as "official" is literally false or misleading.

Second, TPM argues that the Depository's commemorative coins are not "coins" because they are not minted by a sovereign entity with a face value and legal tender status. ECF No. 28 at 11. Although TPM's preferred definition is included in the definition of "coin," the meaning of "coin" is not so narrow as TPM argues. "Coin," when used as a noun, also means "something resembling a coin especially in shape." *Coin*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025), https://www.merriam-webster.com/dictionary/coin (last accessed April 2, 2026); *see* ECF No. 28-1 ¶ ¶ 4, 21, 23 (Tarek Saab admits in his declaration that TPM's rounds are non-monetary

14

coins.).

Furthermore, the Depository expressly disclaims that its branded commemorative coins and notes are legal tender and that the commemorative coins are not stamped with a monetary face value. https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin (last accessed April 2, 2026) ("State of Texas coins are not legal tender in the United States or any foreign country."). Disclaimers can help to prevent consumer confusion by providing clear information about a product. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 552–53 (5th Cir. 1998).

The Depository labels its branded commemorative coins as "coins," using language that, in common vernacular, truthfully describes its products. The commemorative coins clearly resemble coins, especially in shape. *See* ECF No. 28-1 at 8. TPM has failed to demonstrate that the Depository's description of its products as "coins" is literally false or misleading.

3. <u>TPM fails to demonstrate that the alleged false or misleading statements impacted consumer purchasing decisions or deceived consumers.</u>

TPM has failed to demonstrate that the Depository's statements that its products are "official" and some of its products are "coins" were a material misrepresentation likely to influence consumer purchasing decisions. Additionally, TPM has failed to demonstrate that the Depository's statements were misleading in the context in which they were made.

The Fifth Circuit has held that a statement that is not literally false but is likely to mislead and confuse consumers is actionable under the Lanham Act. *Pizza Hut*, 227 F.3d at 495. A plaintiff must show that such a statement is either ambiguous or true but misleading. *Id.* at 497. Then "the plaintiff must present evidence of actual deception." *Id.*. And the plaintiff must prove "that [it] ha[s] been or [is] likely to be injured because of a defendant's misrepresentation." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). Generally, the plaintiff must show "economic or reputational injury flowing directly from deception wrought by the defendant's advertising; and that that occurs when [a defendant's] deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

15

TPM has produced no evidence of actual lost sales to date or shown that any lost sales flow from the Depository's description of its commemorative coins and notes as "official" or its commemorative coins as "coins." Mr. Saab's declaration and Donald House's report's reliance on a few purported telephone calls to TPM and a few random internet postings are insufficient to demonstrate materiality. TPM failed to offer any evidence concerning the notes. TPM failed to offer any evidence consumers purchased a commemorative coin because they thought it was legal tender. Nor has TPM offered any evidence that the relief map of Texas on the Depository's promotional products misled consumers into believing that they were produced by TPM.

To the contrary, the scant evidence on which TPM relies actually demonstrates it is TPM's website domain name that misleads consumers into believing that TPM is the Texas Bullion Depository. *See* https://texasdepository.com/ (last accessed April 2, 2026). The call logs TPM offered show consumers were confused as to who they were calling, but not by the Depository's description of its commemorative coins and notes as "official" or the description of the commemorative coins as "coins." TPM uses its online presence to masquerade as the Depository, not the other way around. Thus, TPM has failed to demonstrate a likelihood of success on the merits of its false advertising or false designation of origin claims and the Court should deny preliminary injunctive relief.

## D. TPM will not succeed on the merits of its trademark infringement and counterfeiting claims.

The Court should not consider the merits of TPM's trademark infringement and counterfeiting claims. A movant must demonstrate a substantial likelihood of success on the merits of its claims to obtain a preliminary injunction. *See Fisher*, 895 F.2d at 1078 (holding that a claim not raised in the live complaint is not properly before the court). Here, the trademark infringement and counterfeiting claims are not at issue because TPM did not raise them in its operative Complaint, and the Court has not ruled on TPM's Motion for Leave. *See* ECF Nos. 18, 27. Even if they were properly before the Court, TPM is highly unlikely to succeed on its trademark infringement and counterfeiting claims, as explained in Defendants' first-filed suit in the Northern

District. *See* Orig. Pet., *State of Texas v. TPM*, Case No. 7:26-cv-00021 (N.D. Tex., filed March 2, 2026).

First, TPM offers no proof that its alleged marks acquired distinctiveness before the State of Texas began using the shape or an outline of the State. *See* 15 U.S.C. § 1115(b)(5); *see also Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 323 (8th Cir. 2018) (registrant not entitled to presumption of secondary meaning where defendant's use pre-dated registration).

Second, regardless of whether TPM's alleged marks in fact acquired distinctiveness prior to Defendants' first use, they are subject to cancellation as they (1) consist of or comprise insignia of the State of Texas, 15 U.S.C. § 1052(b), (2) are generic, ornamental designs that do not function as marks, 15 U.S.C. § 1064(3); and (3) are being used by TPM to mispresent the source of its goods and services, 15 U.S.C. § 1064(3). The State of Texas has petitioned the Northern District for an order cancelling TPM's registrations on these grounds in their first-filed suit. *See* Orig. Pet., *State of Texas v. TPM*, Case No. 7:26-cv-00021 (N.D. Tex., filed March 2, 2026).

Third, TPM does not even contend in the sole paragraph devoted to its trademark and counterfeiting claims that Defendants are using the shape of the State of Texas as a mark. ECF No. 28 at 15–16. That is because they are not. Rather, as is obvious from the face of the coins and notes, Defendants are using generic, ornamental designs of the shape of the State and its other sovereign symbols and insignia ornamentally on the commemorative coins, notes, and related promotional items to descriptively, fairly, and in good faith describe the geographic origin of the goods. *See* 15 U.S.C. § 1115(b)(4); Cruz Decl. ¶ 15.

Fourth, TPM's alleged marks are incredibly weak. As noted in the first-filed suit in the Northern District of Texas, numerous Texas State agencies use depictions of the shape or outline of the State of Texas and the Lone Star, as well as the Texas State Capitol, in their official agency seals. *See* First Am. Pet. ¶ 17, *State of Texas v. Texas Precious Metals, LLC*, Case No. 7:26-cv-00021, (N.D. Tex., March 17, 2026). Despite its arguments to the contrary, "[i]ncontestable status does not make a weak mark strong." *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 171 (5th Cir. 1986).

Fifth, TPM claims there is "ample evidence of actual confusion," but as detailed above, this is due to TPM's conduct, not Defendants. TPM has intentionally misled consumers into believing it is the official Texas Bullion Depository by marketing itself as the "Texas Mint" and the "Texas Depository," registering and using the insignia of the State of Texas, registering and using the domains texasdepository.com and texasstatedepository.com, which redirect to TPM's site, and using the email address notices@texasdepository.com. *See* Cruz Decl. ¶ 17, ECF No. 28-1 at 14; https://texasdepository.com (last accessed April 3, 2026).

## II.  TPM will not suffer irreparable harm in the absence of preliminary injunctive relief.

The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983)). The "'possibility' standard is too lenient." *Id.* TPM's alleged injuries do not meet these requirements.

TPM has not rectified the deficiencies cited in this Court's denial of TPM's request for temporary restraining order. ECF No. 25 at 12. TPM still "has not demonstrated that any potential loss of goodwill and harm to reputation is so imminent and irreparable in the present case to warrant the extraordinary remedy" of preliminary injunctive relief. ECF No. 25 at 11. Nor has TPM shown "customer confusion amounts to loss of goodwill or concrete harm to [its] reputation." ECF No. 25 at 12. TPM cannot simply assume that a customer's decision to purchase a commemorative coin or note from the Depository is a lost sale for TPM. A "showing of reputational harm must be concrete and corroborated, not merely speculative." *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *5 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted*, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) (quoting *Toxco Inc. v. Chu*, 724 F.Supp.2d 16, 30 (D.D.C.2010)). TPM's expert does not close this gap. ECF No. 28-3. The expert's evidence of reputational harm includes a few anecdotal comments by social media users and conclusory assumptions. *See, e.g.,* ECF No. 28-3 at

18

This is not sufficient to demonstrate the requisite irreparable harm to justify preliminary injunctive relief. *See id.*

"[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." *Pruvit Ventures, Inc.,* 2015 WL 9876952, at \*6 (quoting *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991)). Whether customers who purchase the Depository's commemorative coins and notes would have purchased coins and notes from TPM in the absence of the Depository's alleged unlawful acts is purely speculative and insufficient to justify preliminary injunctive relief.

### III. The balance of equities weighs in favor of denying TPM's PI Motion.

The balance of the equities weighs in favor of denying TPM's PI Motion. When the state is a party, its interest merges with the public interest. *See Mock*, 75 F.4th at 577 (citing *Nken v. Holder*, 556 U.S. at 435).

#### A. The harm the State and public will suffer in the event of an injunction outweighs the speculative harm TPM will suffer absent an injunction.

Here, TPM's risk of irreparable harm is negligible compared to the certain irreparable harm Defendants will suffer in the event of a preliminary injunction. Injunctive relief is an extraordinary remedy issued to prevent imminent and irreparable future harm. *See Enter. Int'l, Inc.*, 762 F.2d at 472. TPM's alleged injuries stem, in large part, from government actions which are not ongoing. Cruz Decl. ¶ 16. TPM is also unable to clearly articulate exactly what harm it will suffer and how Defendants' actions cause TPM's alleged harm. Defendants on the other hand, will certainly suffer irreparable harm if the Court grants an injunction. *See Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."). Thus, an injunction is an improper remedy.

19

### B. The First to File Rule and efficient judicial administration favors denying preliminary injunctive relief.

Efficient judicial administration favors denying TPM's request for preliminary injunction on the Lanham Act trademark claims. "[A]nother federal court is already considering the related Lanham Act issues between the parties." ECF No. 25 at 14. The Fifth Circuit adheres to the first-to-file rule. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This case is the second-filed case concerning Lanham Act claims between the parties. *See* Orig. Pet. *State of Texas v. TPM*, Case No. 7:26-cv-00021 (N.D. Tex., filed March 2, 2026). The Lanham Act trademark claims cannot be asserted in this case as they are compulsory counterclaims in the first-filed case. Fed. R. Civ. P. 13(a). And while the ultra vires claims are legally distinct from the Lanham Act trademark claims, TPM attempts to insert the trademark issues into the ultra vires claim. ECF No. 25 at 10. To preserve judicial resources and avoid the possibility of competing rulings from sister courts, this Court should stay ruling on TPM's preliminary injunction until the Northern District of Texas has resolved the Parties' competing trademark claims first-filed there.

### IV. Defendants object to the admission of TPM's attachments, declaration, and expert report into evidence.

In addition to the Rule 408 objection asserted above, Defendants object to Mr. Saab's Declaration and the various exhibits attached under Federal Rules of Evidence 403, 602, 701, 802, 805, and 901. Defendants object to Exhibits B-5, B-6, and B-7 in Sullivan's Declaration under Federal Rules of Evidence 802, 805, 901. Defendants object to Donald House's Expert Report under Federal Rules of Evidence 702, 802, and 805. Defendants reserve the right to revise or supplement these objections and will provide more specificity upon request.

CONCLUSION

For these reasons, Defendants Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository respectfully request that the Court deny Plaintiff Texas Precious Metals, LLC's Amended Motion for Preliminary Injunction.

20

Dated: April 3, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted,

DAVID BRYANT
Senior Special Counsel
Texas State Bar No. 03281500
david.bryant@oag.texas.gov

*/s/ Ali M. Thorburn*

ALI M. THORBURN
Special Counsel
Attorney-in-Charge
Texas State Bar No. 24125064
Direct: (512) 936-2275
ali.thorburn@oag.texas.gov

MUNERA AL-FUHAID
Special Counsel
Texas State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

ALEXIA K. BAKER
Assistant Attorney General
Texas State Bar No. 24149596
alexia.baker@oag.texas.gov

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 3, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system and/or electronic mail to all counsel and parties of record.

CASEY LOW
Texas Bar No. 24041363
casey.low@pillsburylaw.com

RYAN J. SULLIVAN
Texas Bar No. 24102548
ryan.sullivan@pillsburylaw.com

ELIZABETH BLACKFORD
Texas Bar No. 24150283
elizabeth.blackford@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W. 4th Street
Suite 3200
Austin, TX 78701
(512) 580-9600

COUNSEL FOR TEXAS PRECIOUS METALS, LLC

*/s/ Ali M. Thorburn*
ALI M. THORBURN

21