**FILED**

May 26, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS PRECIOUS METALS, LLC, | § | No. 1:26–CV–513–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| KELLY HANCOCK in his official | § | |
| capacity as Acting Texas Comptroller | § | |
| of Public Accounts, and MACY | § | |
| DOUGLAS in her official capacity as | § | |
| Administrator of the Texas Bullion | § | |
| Depository, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING PRELIMIINARY INJUNCTION

Before the Court is Plaintiff Texas Precious Metals, LLC's

("Plaintiff" or "TPM") Motion for Temporary Restraining Order and Preliminary

Injunction, as amended.  (Dkts. # 19, 28.)  Defendants Kelly Hancock and Macy

Douglas (collectively, "Defendants") filed a Response in Opposition on April 3,

2026.  (Dkt. # 29.)  Plaintiff filed a Reply on April 10, 2026.  (Dkt. # 31.)  The

Court held a hearing on the 16th, 21st, and 22nd of April 2026.  (See Dkts. # 35,

37, 38.)  Following the hearing, both parties submitted written closing arguments

on May 12, 2026.  (Dkts. ## 47, 48.)  After careful consideration of the filings, the

arguments of counsel at the hearing, and the relevant law, the Court, for the reasons that follow, **DENIES** Plaintiff's request for a preliminary injunction.

BACKGROUND

Plaintiff is a Texas-based precious metals dealer and producer that has operated for more than fifteen years and sells Texas-themed gold and silver "rounds," gold notes, and other precious metal products nationwide.[1]  (Dkt. # 19 at 2–3.)  Plaintiff alleges that a key element of its branding is a Texas-shaped "Mint Mark" used on its products and packaging, which it alleges is protected by an incontestable federal trademark registration.  (Id. at 2.)

In 2015, the Texas Legislature passed House Bill 483, codified in Chapter 2116 of the Texas Government Code, creating the Texas Bullion Depository ("TBD") as "an agency of this state in the office of the comptroller" to serve as "the custodian, guardian, and administrator of certain bullion and specie." (Dkts. ## 19 at 3; 23 at 3 (citing Tex. Gov't Code § 2116.002 (a)-(b)).)  In 2019, the Legislature amended § 2116.021 to provide that the TBD "may advertise and promote the depository in any available media" and "may additionally issue, sell,

---

[1] Plaintiff notes that in the precious metals industry, the terms "round" and "coin" have different meanings.  "'Coin' denotes official coinage by sovereign-governments with face value and legal tender status; whereas a 'round' is minted by a private manufacturer and has no legal tender status."  (Dkt. # 19 at 2 n.1.) The Court notes that for ease and purposes of this Order, the Court refers to Defendants' products at issue as "commemorative coins," and does not use the term "coin" in the technical sense.

license for sale, or obtain a license to sell promotional items approved by the administrator for a commercially reasonable price." (Id. (citing Tex. Gov't Code § 2116.021(b)-(c)).) The Texas House also initially adopted an amendment that would have expressly authorized TBD to "offer for sale under Section 2116.021(c) commemorative gold and silver coins" but later struck that section from the bill. (Dkt. # 19 at 3 (citing Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 24, 2019); Tex. H.B. 2458, 86th Leg., R.S. (2019) (House floor amend. adopted Apr. 25, 2019)).) However, Defendants also point to the statements of Representative Andrew Murr, the amendment sponsor, during the House floor debates on April 25, 2019, in which he clarified that he sought to strike the amendment language about the commemorative coins because he understood the Comptroller to already "have the authority to generate commemorative gold and silver coins, and hopefully they're headed in that direction." (Dkt. # 29 at 16 (citing Debate on H.B. 2458 on the Floor of the House, 86th Leg., R.S., at 9:25:48-9:26:06 (Apr. 25, 2019), https://house.texas.gov/videos/10026 [https://perma.cc/F4YW-Y8FG] (last accessed April 14, 2026)).)

In late 2025, the Texas Comptroller and TBD announced a new program selling Texas-themed silver and gold commemorative coins and notes. (Dkts. ## 19 at 4; 23 at 4.) Private vendors design, manufacture, and sell these

coins and notes, which display TBD's name and, for the notes, TBD's website address.  (Dkts. ## 19 at 4–5; 23 at 4–5, 7.)  Plaintiff alleges that Defendants' products directly compete with Plaintiff's Texas-themed rounds and gold notes and that Defendants have used their Texas-silhouette Mint Mark or a confusingly similar design on the State's products and related marketing, which has led to actual consumer confusion about affiliation and legal-tender status.  (Dkt. # 19 at 6–9, 15–16.)

Plaintiff first filed suit in Travis County District Court on February 4, 2026, seeking a temporary restraining order and injunctive relief.  (See Dkts. ## 1-3; 1-5.)  The state court held a hearing on Plaintiff's request for a TRO and ultimately denied the request.  (Dkts. ## 19 at 9; 23 at 4.)  Defendant removed the case to federal court on March 2, 2026.  (Dkt. # 1.)  Also on March 2, 2026, Defendants initiated a separate lawsuit against Plaintiff in the United States District Court for the Northern District of Texas seeking declaratory relief and to invalidate Plaintiff's trademarks that are underlying Plaintiff's claims in the above-captioned case.  (Dkt. # 23 at 5 (citing State of Texas, et al. v. Texas Precious Metals, LLC, 7:26-cv-00021 (N.D. Tex.).)

In the present case, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on March 13, 2026.  (Dkt. # 19.)  On March 20, 2026, the Court denied Plaintiff's request for a TRO and held the Motion for

Preliminary Injunction in abeyance pending the preliminary injunction hearing in this matter.  (Dkt. # 25.)  On March 27, 2026, Plaintiff, in compliance with the Court's briefing schedule (Dkt. # 21), filed an Amended Motion for Preliminary Injunction.  (Dkt. # 28.)  On April 3, 2026, Defendants filed a Response in Opposition.  (Dkt. # 29.)  On April 10, 2026, Plaintiff filed a Reply.  (Dkt. # 31.)  From April 16–21, 2026, the Court held the preliminary injunction hearing.  (Dkts. ## 35, 37, 38.)  Following the hearing, both parties submitted written closing arguments on May 12, 2026.  (Dkts. ## 47, 48.)

LEGAL STANDARD

A TRO is an "extraordinary remedy."  Lewis v. S.S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976).  In order to obtain injunctive relief, including a TRO, a plaintiff must establish that (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to the public interest.  Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)); Fed. R. Civ. P. 65.

5

DISCUSSION

Plaintiff requests that the Court enjoin Defendants from: (1) using TPM's Mint Mark or any confusingly similar designation in connection with any precious metals products; and (2) minting, marketing, offering for sale, selling, or otherwise facilitating the sale of the state-branded precious metals products at issue in this case in a manner that creates a false impression of affiliation, sponsorship, approval, or "official" "coin" status. (Dkt. # 28 at 22.)

The Court previously denied Plaintiff's request for a TRO after conducting a full four-factor analysis. (Dkt. # 25 at 5–14.) Subsequently, with leave of the Court, Plaintiff filed a Second Amended Complaint adding claims under the Lanham Act for false designation of origin, false association, passing off, and unfair competition under 15 U.S.C. § 1125(a)(1)(A); registered trademark infringement under 15 U.S.C. § 1114; and trademark counterfeiting under 15 U.S.C. §§ 1116 and 1117. (Dkts. ## 27, 30.) After reviewing Plaintiff's Second Amended Complaint and the amended briefing, the Court adopts and incorporates the reasoning set forth in its prior order denying the TRO (Dkt. # 25 at 5–14). Although the Court will not revisit each factor, it will evaluate the likelihood of success on the merits of each claim, including the newly-added claims. Before doing so, the Court will address preliminary issues raised in the amended briefing—specifically, the first-to-file rule and qualified immunity.

6

I.    Preliminary Issues

     A. First-to-File Rule

The Court previously requested that the parties further address how the pending litigation in the Northern District of Texas, State of Texas v. Texas Precious Metals, No. 7:26-CV-00021 (N.D. Tex., filed March 2, 2026), may affect the above-captioned case. (Dkt. # 25 at 10–11.) Both parties invoke the first-to-file rule in support of their position. Under the first-to-file rule, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997). The cases need not be identical; rather, "the crucial inquiry is one of substantial overlap." In re Amerijet Int'l, Inc., 785 F.3d 967, 976 (5th Cir. 2015), as revised (May 15, 2015) (citation modified).

The above-captioned case was filed in Texas state court on February 4, 2026 (Dkt. # 1-5), and Defendants removed to this Court on March 2, 2026 (Dkt. # 1). The State of Texas filed the related pending litigation in the Northern District of Texas on March 2, 2026. Thus, Plaintiff argues that the above-captioned case "is first-filed and involves the same parties and set of operative facts, and this Court is the appropriate court to determine whether the related pending litigation should proceed." (Dkt. # 28 at 20.) On the other hand,

7

Defendants argue that the Northern District of Texas lawsuit is the first-filed case because it is the first case concerning Lanham Act trademark claims between the parties.  (Dkt. # 20 at 27.)  However, Plaintiff first amended its complaint on March 13, 2026, to add claims under the Lanham Act, and again amended on April 7, 2026, to add the additional Lanham Act trademark claims.  (Dkts. ## 18, 30.)  Although Defendants argue that "[t]he Lanham Act trademark claims cannot be asserted in this case as they are compulsory counterclaims in the [Northern District] case" (Dkt. # 29 at 27), Defendants failed to file a response in opposition to Plaintiff's Opposed Motion for Leave to File Second Amended Complaint (Dkt. # 27), and thus that argument is now moot in light of the Second Amended Complaint.[2]

For purposes of this Order, the Court makes the preliminary determination that the above-captioned case involves substantially similar issues, which neither party disputes.  Given the urgent nature of the requested relief, the Court will analyze the merits of the additional, contested trademark claims, but declines to yet opine on which venue is ultimately proper to hear those claims.  In

---

[2] Additionally, Defendants filed a Motion for Extension requesting that their answer deadline be extended until fourteen days after the Court resolves the Plaintiff's forthcoming Motion for Leave to File an Amended Complaint.  (Dkt. # 26.)  Thus, Defendants clearly had notice of the motion, anticipated modifying their answer in light of the added claim, and yet chose not to file any response in opposition to the Motion for Leave.

the Northern District of Texas related case, Plaintiff has filed motions to dismiss and transfer to this Court under the first-filed rule.  (See Dkt. # 31-1.) Subsequently, Defendants filed their own Motion to Change Venue (Dkt. # 34) and Motion to Dismiss (Dkt. # 43) in the present case.  This Order is not intended to influence or predetermine the Northern District's or the undersigned's resolution of those issues and has no bearing on this Court's eventual resolution of the pending motions.

## B. Qualified Immunity

Defendants also assert that sovereign immunity bars Plaintiff's Lanham Act claims.  (Dkt. # 29 at 4.)  Defendants argue that they did not waive sovereign immunity to the claims when they removed the case to federal court because the Lanham Act claims did not exist at the time of removal but were added by post-removal amendment.  (Id.)

The Eleventh Amendment bars an individual from suing a state regardless of the relief sought, whether it be monetary damages or other equitable relief.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984). Sovereign immunity also extends to suits against a state agency or state official in his or her official capacity, as in the present case.  Clay v. Tex. Women's Univ., 728 F.2d 714, 715 (5th Cir. 1984).  Federal courts therefore do not have jurisdiction over suits "against a state, a state agency, or a state official in his

9

official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." Moore v. La. Bd. of Elementary & Secondary Educ., 743 F.3d 959, 963 (5th Cir. 2014) (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996)). Generally, "[a] State waives its Eleventh Amendment immunity when it removes a case from state court to federal court." Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 613 (2002).

Defendant cites a case out of this district which sustained objections to the magistrate judge's recommendation and report that the defendants waived immunity by removing, despite post-removal amendments. (Dkt. # 29 at 4 (citing Brauckmiller v. Univ. of Texas San Antonio, No. SA-23-CV-01182-XR, 2024 WL 5265296, at *4 (W.D. Tex. Dec. 20, 2024).) However, the court did not engage in detailed analysis or explanation of its determination that the defendants' waiver did not extend to post-removal amendments. See id. The undersigned finds the reasoning of Jackson v. Louisiana Dep't of Pub. Safety & Corr., No. CV 15-490-JJB-RLB, 2016 WL 482049 (M.D. La. Feb. 5, 2016) more persuasive.

In Jackson, the district court engaged in a detailed review of different courts' approaches as to whether the waiver-by-removal rule should extend to claims added after removal. Id. at *2. "Although the Fifth Circuit has not explicitly addressed this issue, it has implicitly demonstrated support for the

10

proposition that the waiver-by-removal rule applies to post-removal claims." Id. (citing Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 247 (5th Cir. 2005)). The Louisiana district court, relying on the rationales of the Ninth and Eleventh Circuits, reasoned that "if a state makes the tactical decision to invoke the federal court's jurisdiction, then it does so at the risk of the plaintiff taking advantage of the federal court's liberal rules on amending complaints." Id. (citing Fed. R. Civ. P. 15(a)(2); Stroud v. McIntosh, 722 F.3d 1294, 1300–02 (11th Cir. 2013); Embury v. King, 361 F.3d 562, 564–65 (9th Cir. 2004)).

The Court finds this reasoning persuasive, especially in light of Defendants' initiation of the litigation in the Northern District of Texas involving related trademark claims. Any attempt by Defendants to invoke sovereign immunity against the post-removal Lanham Act claims in this case is lacking because the State of Texas attempted to invalidate the underlying trademarks in related federal litigation. The State of Texas and its officials have twice made the tactical decision to invoke the federal court's jurisdiction regarding these matters. As such, the Court disagrees with Defendants' argument that Plaintiff's Lanham Act claims are barred by sovereign immunity.

## II.   Preliminary Injunction Analysis

Having addressed the above preliminary issues, the Court now returns to the injunctive relief analysis. As stated, the Court adopts and incorporates the

11

reasoning set forth in its prior order denying the TRO and extends upon the existing analysis only to address the likelihood of success on the merits.

A. Likelihood of Success on the Merits

To obtain a preliminary injunction, the movant must first show a *substantial* likelihood of success on the merits. Lindsay v. City of San Antonio, 821 F.2d 1103, 1107 (5th Cir. 1987) (emphasis added).

1. Ultra Vires Claim

There are "two general means of proving an *ultra vires* claim: (1) an action 'without legal authority' or (2) failure to 'perform a purely ministerial act.'" Hall v. McRaven, 508 S.W.3d 232, 241 (Tex. 2017) (quoting City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex. 2009)). "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." Id. at 239 (citing Houston Belt & Terminal Ry. Co. v. City of Houston, 487 S.W.3d 154, 158 (Tex. 2016)).

i. Statutory Authority

Plaintiff's *ultra vires* claim is mainly premised on Defendants' acts, which Plaintiff alleges exceeded statutory authority. Thus, the Court begins with a review of the basic principles of statutory interpretation under Texas law:

Under Texas law, the court's "fundamental goal when reading statutes 'is to ascertain and give effect to the Legislature's intent.'" Cadena

12

Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n, 518 S.W.3d 318, 325 (Tex. 2017) (quoting Tex. Mut. Ins. Co. v. Ruttiger, 381 S.W.3d 430, 452 (Tex. 2012)). "We seek that intent first and foremost in the plain meaning of the text." Greater Hous. P'ship v. Paxton, 468 S.W.3d 51, 58 (Tex. 2015). And "[w]here text is clear, text is determinative." Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009). "When faced with an undefined statutory term, our job is to apply the 'common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result.'" Camacho v. Ford Motor Co., 993 F.3d 308, 312 (5th Cir. 2021) (quoting Fort Worth Transp. Auth. v. Rodriguez, 547 S.W.3d 830, 838 (Tex. 2018)). "To determine a term's common, ordinary meaning, we typically look first to dictionary definitions." Rodriguez, 547 S.W.3d at 838; see also Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n, 511 S.W.3d 28, 35 (Tex. 2017) ("To determine a statutory term's common, ordinary meaning, we typically look first to [its] dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities.").

CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n, 37 F.4th 1069, 1074 (5th Cir. 2022).

Section 2116.021(c) of the Texas Government Code authorizes the TBD to "issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator to further the purposes of this chapter and to promote the depository. The depository may set commercially reasonable prices for items licensed or sold under this section." Tex. Gov't Code § 2116.021(c). Chapter 2116 does not define "promotional." See § 2116.001. Plaintiff argues that Defendants exceed the authority of § 2116.021(c) to sell "promotional items" by selling and promoting their commemorative coins and notes. (Dkt. # 30 at 35–38.)

13

Both parties agree that the Court's inquiry should begin with an analysis of the plain language of the statute.  (Dkts. ## 28 at 8; 29 at 13.)  Of course, the parties disagree as to the plain meaning of the statute, and each party puts forth compelling arguments.  The Court finds that the strength of the competing interpretations and arguments concerning statutory construction and legislative history undermines Plaintiff's ability to show a substantial likelihood of success on the merits of its *ultra vires* claim.  The Court examines the arguments.

The dictionary definition of "promotional" is "of, relating to, or serving the end of promotion[.]" *Promotional*, Merriam-Webster, https://www.merriam-webster.com/dictionary/promotional [https://perma.cc/42CF-W9BZ] (last visited May 18, 2026).  The dictionary definition of "promotion" is "the act of furthering the growth or development of something," "especially . . . the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/promotion [https://perma.cc/G24J-K4NA] (last visited May 18, 2026).  Defendants argue that their commemorative coins and notes further the growth and development of TBD's depository services, as evidenced by the doubling of new precious metals storage accounts at TBD since the launch of the commemorative coins.  (See Dkt. # 29-4 at 4–5.)  Plaintiffs rebut that this expansive interpretation opens the door for the sale of virtually any item with the

14

agency's name on it to be considered "promotional," expands the ordinary meaning to impermissibly include commercial investments, and conflates outcome with statutory authorization.  (Dkts. ## 28 at 8–10; 31 at 1–2.)

Plaintiff, rather than relying on a dictionary definition, looks to the statutory context to guide the Court's interpretation of "promotional."  (Dkt. # 28 at 8.)  Plaintiff argues that when the Legislature has allowed the sale of "promotional items" in other statutes, it specified the items as including things "such as calendars, books, prints, caps, light clothing, or other items . . . ."  Tex. Transp. Code § 204.009(a).  Defendants respond that the Court should only look to other statutes if the meaning of the term is unclear, which it is not.  (Dkt. # 29 at 13 (citing Texas Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002).)  Defendants further urge that the Legislature knew how to restrict "promotional items" to items such as calendars, books, etc., as demonstrated by its use in other statutes, and thus if it wanted to do so in this section, it would have.  (Id. at 14.)  On the other hand, Plaintiff points to the Legislature's repeated use of the defined terms "specie" and "bullion" to argue that if the Legislature intended to authorize the depository to sell precious metals as promotional items, it would have said so using these terms it defined and used throughout the statute.  (Dkt. # 31 at 3.)  Thus, both parties contend that the other is asking the Court to rewrite the statute to insert new terms and conditions.

Because both parties have put forth compelling arguments, the Court finds it necessary to look to legislative history for guidance.  See Tex. Gov't Code Ann. § 311.023(3) (West); Dibidale of Louisiana, Inc. v. Am. Bank & Tr. Co., New Orleans, 916 F.2d 300, 305 (5th Cir. 1990), opinion amended and reinstated on reh'g, 941 F.2d 308 (5th Cir. 1991).  Plaintiff points to the statute's legislative history in which a proposed amendment expressly authorizing TBD to sell commemorative coins was ultimately struck before final enactment.  (Dkt. # 28 at 7–8.)

Although compelling at first glance, Defendants paint a clearer picture.  The Legislature struck the amendment because, as stated by the amendment's sponsor, Representative Andrew Murr, during House floor debates, he understood the Comptroller to "currently have the authority to generate commemorative gold and silver coins, and hopefully they're headed in that direction."  Debate on H.B. 2458 on the Floor of the House, 86th Leg., R.S., at 9:25:48–9:26:06 (Apr. 25, 2019), https://house.texas.gov/videos/10026 [https://perma.cc/F4YW-Y8FG] (last accessed May 18, 2026).  Thus, it appears that the Legislature did not remove the amendment expressly allowing Defendants to sell commemorative coins because they did not intend for Defendants to do so, but to avoid superfluous language.  Plaintiff counters that "the statement of a single legislator, even the author and sponsor of the legislation, does not determine

16

legislative intent." (Dkt. # 48 at 6 (quoting <u>AT&T Commc'ns of Texas, L.P. v. Sw. Bell Tel. Co.</u>, 186 S.W.3d 517, 528–29 (Tex. 2006).)  However, the Court does not treat Representative Murr's comments as binding authority but as "persuasive authority as might be given the comments of any learned scholar of the subject." <u>Gen. Chem. Corp. v. De La Lastra</u>, 852 S.W.2d 916, 923 (Tex. 1993). The Court finds that Plaintiff opened the door to a full examination of the record surrounding the Legislature's decision to remove the amendment by first pointing to it as evidence of legislative intent.

After careful consideration of the parties' statutory interpretation arguments, the Court finds that the Legislature likely intended to allow Defendants to sell commemorative coins and notes as promotional items.  At a minimum, the Court finds that Plaintiff has failed to show substantial likelihood of success on the merits of its *ultra vires* claim on the grounds that Defendants' acts exceeded legal authority.  Lastly, the Court notes that despite each party's considerable briefing of extrinsic evidence and arguments surrounding the promotional effect of Defendants' products and whether others understood them to be promotional, the Court's analysis of statutory authority begins and ends with its examination of the statute's language and legislative history.  (<u>See</u>, <u>e.g.</u>, Dkts. ## 47 at 4–8; 48 at 2–6.)

17

ii.    Ministerial Duty

Lastly, Plaintiff appears to argue that Defendants failed to comply with their ministerial duties by failing to "adopt rules necessary to carry out this chapter." (Dkt. # 28 at 11 (citing Tex. Gov't Code § 2116.002(c)).)

The second means of proving an *ultra vires* claim is by showing that a government officer failed to perform a purely ministerial act, defined as those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." Hall, 508 S.W.3d at 238 (quoting Sw. Bell Tel., L.P. v. Emmett, 459 S.W.3d 578, 587 (Tex. 2015)).

The Court finds that the statutory requirement to "adopt rules necessary to carry out this chapter," without more, does not impose a ministerial duty because it inherently requires judgment and discretion to determine what rules are "necessary." Further, although Plaintiff appears to be referencing the notice-and-comment rulemaking procedures as set out in the Administrative Procedures Act, Plaintiff does not provide any details as to *how* Plaintiff failed to adopt any necessary rules to satisfy this notice-and-comment requirement. As such, the Court finds that Plaintiff has failed to show substantial likelihood of success on the merits of its *ultra vires* claim on the grounds that Defendants failed to comply with their ministerial duties.

18

2.  False Advertising and False Designation of Origin Claims

To establish a claim for false advertising under the Lanham Act, the plaintiff must establish: (1) a false or misleading statement about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce[3]; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue.  Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir. 2000).  The same elements apply to a claim for false designation of origin under the Lanham Act.  Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V., 516 F. Supp. 3d 633, 650–51 & n.11 (W.D. Tex. 2021).

i.  False or Misleading Statement

The first element requires "a plaintiff [to] demonstrate that the commercial advertisement or promotion is either literally false, or that [if the advertisement is not literally false,] it is likely to mislead and confuse consumers."  Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1390 (5th Cir. 1996). Plaintiff alleges that Defendants falsely and misleadingly describe their products as

---

[3] Regarding the interstate commerce element, Plaintiff argues that Defendants sell and market their products online in interstate commerce and have admitted to partnering with an out-of-state entity, Scottsdale Mint, LLLP, to mint the State of Texas Coins.  (Dkt. # 28 at 10, n.12).

19

"official" and "coins." (Dkt. # 28 at 12.) They argue that Defendants falsely market the commemorative coins and notes as part of an "official" program authorized by the State of Texas, despite having no statutory authority to mint, market, or sell precious metals. (Id.) Plaintiff further contends that Defendants' marketing the State of Texas Coins as "coins" is false because they are actually "'rounds' because they are not minted by a sovereign entity and have no face value or legal tender status." (Id.)

Defendants respond that they do not represent the products as legal tender and, to the contrary, expressly disclaim legal-tender status on their website. (Dkt. # 29 at 21–22.) They further contend that describing the products as "coins" is not meant to denote legal tender but the more common definition as "something resembling a coin especially in shape." (Id.) Defendants argue that it is not false to describe the product as "official" because, in their view, they have statutory authority to issue and sell promotional coins and notes. (Id. at 21.)

"Official," when used as an adjective, is defined as "authorized or approved by a proper authority." *Official*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, the Court agrees that, given the Court's above finding that Defendants likely have statutory authority to sell promotional coins and notes, it is not literally false or misleading to call the program "official."

20

However, the Court finds Defendants' use of the word "coin" to be misleading. The Court does not find "coin" to be a literally false definition because it may also mean "something resembling a coin especially in shape." However, the Court finds that this term is somewhat misleading because the common understanding of "coin" is synonymous with money or currency.[4] Indeed, the same dictionary source that Defendants rely on first defines "coin" as "a usually flat piece of metal issued by governmental authority as money." See *Coin*, Merriam-Webster, https://www.merriam-webster.com/dictionary/coin [https://perma.cc/BH93-CSDY] (last visited May 18, 2026).

Additionally, the Court acknowledges that Defendants' website expressly disclaims its commemorative coins and notes as legal tender. See https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin [https://perma.cc/8APM-56R2] (last accessed May 18, 2026) ("State of Texas coins are not legal tender in the United States or any foreign country."). While "[d]isclaimers are a recognized alternative to a prohibitive injunction," they are

---

[4] The Court notes Defendants' argument that the public does not understand "coins" to have the technical, narrow meaning pushed by Plaintiff, as evidenced by other types of commemorative coins which the public is familiar with, such as "Challenge Coins," "Harry Potter Coins," and "Disney Coins." (Dkt. # 47 at 8.) While the Court agrees that it is unlikely the public believes these coins are legal tender, there is no evidence before the Court of such. Additionally, these examples hold minimal illustrative value because the present situation involves a government entity selling commemorative coins as opposed to a private corporation.

only appropriate when it "can *effectively* make the presentation of particular information no longer deceptive or misleading." Eastman Chem. Co. v. PlastiPure, Inc., 969 F. Supp. 2d 756, 770 (W.D. Tex. 2013) (emphasis added), aff'd, 775 F.3d 230 (5th Cir. 2014). Given that Plaintiff is requesting an injunction in circumstances where the disclaimer already exists, as opposed to a situation in which the defendant requests imposition of a disclaimer as an alternative to an injunction, the Court will next examine whether customers have been materially misled despite the disclaimer.

### ii.    Material Deception of Customers

Having found Defendants' use of the word "coin" to be misleading, the Court must next assess whether such deception was material. In circumstances where "the statements at issue are either ambiguous or true but misleading, the plaintiff must present evidence of actual deception." Pizza Hut, 227 F.3d at 497. The materiality standard for plaintiffs seeking injunctive relief requires proof "that defendant's representations 'have a tendency to deceive consumers.'" Id. (quoting Balance Dynamics Corp. v. Schmitt Ind., 204 F.3d 683, 690 (6th Cir. 2000)). "To prove a tendency to deceive, plaintiffs need to show that at least some consumers were confused by the advertisements." Id. at 498.

Plaintiff has attached around 100 pages of exhibits containing call logs, social media posts and forums, and articles that they purport demonstrates

22

customer confusion. (Dkt. # 28-1 at 93–183.) After the Court's denial of the TRO, Plaintiff obtained an expert report from an economist, Donald R. House, which discusses publicly available statements and analyzes Defendants' higher premium which he posits exemplifies the ongoing confusion. (Dkt. # 28-3 at 13–20, 21–25.) Plaintiff also presented witnesses and evidence at the hearing speaking to customer confusion. (See Dkt. # 48 at 10–14 (describing evidence produced in briefing and at hearing).) The evidence provided certainly demonstrates that there is customer confusion regarding the differentiation of Plaintiff's products from Defendants', as well as confusion as to whether Defendants' products are legal tender.

However, the Court is not convinced that the confusion is due to Defendants' use of the word "coin." Although Plaintiff has identified comments and calls in which consumers express uncertainty about the difference between coins and rounds and question whether the Defendants' products qualify as coins (See Dkts. ## 28-3 at 16; 48 at 10–12), a comprehensive review of the evidence demonstrates that customer confusion does not result solely from Defendants' use of the word "coin," but rather from broader confusion regarding coins, rounds, and legal tender. Although Plaintiff's evidence demonstrates general confusion, the Court does not find any evidence that specifically links Defendants' use of the word "coin" to the confusion. As Defendants argue, such confusion could just as easily stem from Plaintiff's website domain name, which may mislead consumers

23

into believing that TPM is the Texas Bullion Depository, or from Plaintiff's Texas-shaped Mint Mark, which may cause consumers to think its products are state-endorsed, or from Plaintiff's opening of its own depository after TBD opened one in 2018.[5]  (See Dkts. ## 29 at 23; 47 at 9.)  The Court finds it much more likely that any confusion is a consequence of the simple fact that it is the State of Texas entering the market, not their use of the term "coin" instead of "round."

In conclusion, the possibility that the State of Texas's entry into the precious metals market may cause consumer confusion or divert customers does not render its participation unlawful; rather, such effects are an inevitable consequence of marketplace competition. Although Plaintiff has shown some evidence of customer confusion, the Court is not persuaded that this confusion arises *because of* Defendants' misleading use of the word "coin" and therefore cannot find that Plaintiff is *substantially* likely to succeed on the merits of its false advertising or false designation of origin claims.

3. Trademark Infringement and Counterfeiting Claims

Plaintiff's Second Amended Complaint added claims for trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C.

---

[5] The Court does not intend to predetermine the merits of the underlying trademark infringement claims.  The Court merely credits Defendants' argument to explain the Court's conclusion that the evidence of customer confusion does not necessarily support Plaintiff's position that the confusion is due to Defendants' marking their products as "coins."

§§ 1114, 1116, 1117.  Defendants seek declaratory relief of non-infringement and seek to invalidate the underlying trademarks in the related lawsuit in the Northern District of Texas.  See State of Texas v. Texas Precious Metals, LLC, No. 7:26-cv-21, Dkt. 1 (N.D. Tex., March 2, 2026).  In support of its trademark infringement and counterfeiting claims, Plaintiff dedicates only one paragraph to argue that it owns an incontestable federal trademark registration for the Mint Mark as well as additional relevant federal trademark registrations, and that it has already demonstrated ample evidence of customer confusion.  (Dkt. # 28 at 15.)  See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (stating criteria for trademark infringement).  Plaintiff's closing arguments essentially repeat their previous arguments and merely add a direct side-by-side comparison of its and Defendants' products.  (See Dkt. # 48 at 15–18.)  Defendants offer several arguments and defenses in response, such as attacking the distinctiveness, strength, and validity of Plaintiff's marks and urging that Plaintiff's marks are subject to cancellation, none of which Plaintiff attempts to address in its Reply or closing arguments.  (See Dkt. # 29 at 24–25; see generally Dkts. ## 31, 48.)

Without any meaningful discussion or rebuttal of Defendants' arguments regarding the trademark infringement and counterfeiting claims and the cancellation of the trademarks, the Court cannot find that Plaintiff is substantially

likely to succeed on the merits.  Having found that Plaintiff is not substantially likely to succeed on the merits of any of its claims, the Court need not address the remaining factors for injunctive relief.

III.    Defendant's Objections

Lastly, Defendants object to Mr. Saab's Declaration and the attached exhibits (Dkt. # 28-1) under Federal Rules of Evidence 403, 602, 701, 802, 805, and 901.  (Dkt. # 29 at 27.)  Defendants also object to Exhibits B-5, B-6, and B-7 in Sullivan's Declaration (Dkt. # 28-2 at 139–144) under Federal Rules of Evidence 802, 805, and 901.  (Dkt. # 29 at 27.)  Lastly, Defendants object to Donald House's Expert Report (Dkt. # 28-3) under Federal Rules of Evidence 702, 802, and 805.  (Dkt. # 29 at 27.)

Because the Court rules in favor of Defendants, their objections are **OVERRULED AS MOOT**.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for a preliminary injunction.  (Dkts. ## 19, 28.)

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, May 26, 2026.

_____
David Alan Ezra
Senior United States District Judge

26