**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| TEXAS PRECIOUS METALS, LLC,<br>*Plaintiff,*<br><br>v.<br><br>DON HUFFINES, IN HIS OFFICIAL CAPACITY AS TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, AND MACY DOUGLAS, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE TEXAS BULLION DEPOSITORY,<br>*Defendants.*<br><br>THE STATE OF TEXAS, THE TEXAS BULLION DEPOSITORY, AND DON HUFFINES IN HIS OFFICIAL CAPACITY AS TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,<br>*Consolidated Plaintiffs,*<br><br>v.<br><br>TEXAS PRECIOUS METALS, LLC,<br>*Consolidated Defendant.* | CASE NO. 1:26-CV-00513 |

**MOTION TO DISMISS TEXAS PRECIOUS METALS, LLC'S SECOND AMENDED COMPLAINT**

Don Huffines, in his official capacity as Texas Comptroller of Public Accounts and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository (collectively the "the State"), file their Motion to Dismiss Texas Precious Metals, LLC's Second Amended Complaint. ECF 30.

## TABLE OF CONTENTS


Table Of Contents ..... ii

Index of Authorities ..... iii

Introduction ..... 1

Legal Standard ..... 1

Argument ..... 2

I. TPM has not stated a plausible *ultra vires* claim for relief because Defendants' actions were within their statutory authority as a matter of law ..... 2

A. Chapter 2116 of the Texas Government Code authorizes Defendants to design, promote, issue, sell, license for sale, or obtain a license to sell, and contract for the production of the commemorative coins and notes ..... 4

1. The plain text of the statute authorizes the commemorative coins and notes. ..... 4

2. Nothing in the statute prohibits the Depository from issuing, selling, licensing for sale, or obtaining a license to sell commemorative coins and notes made from precious metals as promotional items. ..... 5

3. The commemorative coins and notes are promotional items intended to further the purposes of Chapter 2116 and promote the purposes of the Depository. ..... 6

4. TPM's arguments to the contrary are unavailing. ..... 7

5. TPM's requested relief belies its arguments. ..... 8

B. The Administrator did not exceed her statutory authority. ..... 9

C. The Comptroller did not exceed his statutory authority. ..... 9

II. TPM has not pled plausible Lanham Act false advertising and false designation of origin claims. ..... 10

III. TPM lacks statutory standing to pursue its claims arising under § 1125(a) of the Lanham Act. ..... 13

IV. TPM has not pled a plausible Lanham Act trademark infringement claim. ..... 15

V. TPM has not pled a plausible counterfeiting claim. ..... 18

Conclusion ..... 19

Certificate of Service ..... 20

## INDEX OF AUTHORITIES

**Cases** **Page(s)**

*Am. Conservative Union v. Inst. for Legislative Analysis*,
No. 1:24-cv-500 (RDA/LRV), 2025 WL 510236 (E.D. Va. Feb. 13, 2025) ....18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 2

*Blue Star Press, LLC v. Blasko*,
No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835 (W.D. Tex. Mar. 6, 2018) ....15

*Camacho v. Ford Motor Co.*,
993 F.3d 308 (5th Cir. 2021) .... 4

*CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alcoholic Bev. Comm'n*,
37 F.4th 1069 (5th Cir. 2022).... 4

*Eastman Chem. Co. v. Plastipure, Inc.*,
775 F.3d 230 (5th Cir. 2014) .... 11

Entergy Gulf States, Inc. v. Summers,
282 S.W.3d 433 (Tex. 2009).... 4

*Fort Worth Transp. Auth. v. Rodriguez*,
547 S.W.3d 830 (Tex. 2018) .... 4

*Franklin v. State*,
193 S.W.3d 616 (Tex. App.—Ft. Worth 2006, no pet.) .... 11

*Haggar Clothing Co. v. Sai Lakshmi Indus. Priv. Ltd.*,
No. 3:09-CV-0802-M, 2009 WL 2868443 (N.D. Tex. Sept. 3, 2009) ....19

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017) ....3, 5

*Harold H. Huggins Realty, Inc. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011)....14

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992)....14

*HomeLight, Inc. v. Shkipin*,
694 F. Supp. 3d 1242 (N.D. Cal. 2023)....15

*Hous. Belt & Terminal Ry. Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016)....3

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
10 F.4th 422 (5th Cir. 2021) .......... 16, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 13, 14, 15

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
263 F.3d 447 (5th Cir. 2001) .......... 13

*Matzen v. McLane*,
659 S.W.3d 381 (Tex. 2021) .......... 3

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
671 F.3d 526 (5th Cir. 2012) .......... 16

*Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*,
516 F. Supp. 3d 633 (W.D. Tex. 2021) .......... 11

*Noble Cap. Tex. Real Est. Income Fund LP v. Newman*,
No. 1:22-CV-652, 2024 WL 987572 (W.D. Tex. Mar. 7, 2024) .......... 15

*Nola Spice Designs, L.L.C v. Haydel Enters., Inc.*,
783 F.3d 527 (5th Cir. 2015) .......... 16, 17

*Packman v. Chicago Tribune Co.*,
267 F.3d 628 (7th Cir. 2001) .......... 18

*Pebble Beach Co. v. Tour 18 I Ltd.*,
155 F. 3d 526 (5th Cir. 1998) .......... 12

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) .......... 11, 12, 13

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .......... 2

*Reed v. Marshall*,
142 F.4th 338 (5th Cir. 2025) .......... 14

*Reed v. Marshall*,
No. H-21-3942, 2024 WL 1468702 (S.D. Tex. Apr. 4, 2024) .......... 14

*Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*,
646 S.W.3d 329 (Tex. 2022) .......... 3

*Simmons v. UBS Fin. Servs., Inc.*,
972 F.3d 664 (5th Cir. 2020) .......... 14

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) .......... 2

*Soweco, Inc. v. Shell Oil Co.*,
617 F.2d 1178 (5th Cir. 1980) .......... 18

*Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*,
912 F.3d 805 (5th Cir. 2019) .......... 19

*Springboards to Educ., Inc. v. Kipp Found.*,
325 F. Supp. 3d 704 (N.D. Tex. 2018) ........ 19

*Tex. Health Presbyterian Hosp. of Denton v. D.A.*,
569 S.W.3d 126 (Tex. 2018) ........ 5

**Statutes**

15 U.S.C. § 1115 ........ 18

15 U.S.C. § 1127 ........ 19

Tex. Gov't Code § 2116 ........ 4, 5, 7

Tex. Gov't Code § 2116.003 ........ 9

Tex. Gov't Code § 2116.005 ........ 5

Tex. Gov't Code § 2116.021 ........ 4, 5, 6, 9

Tex. Gov't Code § 2116.071 ........ 5

Tex. Gov't Code § 403.0301 ........ 10

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ........ 2

**Internet Sources**

Office of the Texas Comptroller of Public Accounts, *Acting Texas Comptroller Kelly Hancock Announces Launch of Texas Lone Star Coins and Modern Texas Redback Gold Notes*, (Press Release, December 29, 2025), at (last accessed May 5, 2026) ........ 1

Texas Bullion Depository.Gov, State of Texas 2025 1 oz Gold Proof Coin, https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin (last accessed May 3, 2026) ........ 12

Texas Mint - Texas Gold, https://www.texasmint.com/texasgold (last accessed May 5, 2026) ........ 17

Texas Precious Metals Depository, https://texasdepository.com/ (last accessed May 4, 2026) ........ 13

**Other Authorities**

*Coin*, https://www.merriam-webster.com/dictionary/coin
(last accessed May 3, 2026) ........ 12

*Official*, https://www.merriam-webster.com/thesaurus/official
(last accessed May 3, 2026) ........ 11

*Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025) ........ 4, 5

## INTRODUCTION

In December 2025, the Texas Bullion Depository ("the Depository") launched a program to promote the Depository's precious metals storage services.[1] The program includes commemorative coins and notes which can be stored at the Depository. *See* ECF No. 30 at 15 n.22. As an agency of the State of Texas, the Depository designed the commemorative coins and notes to reflect the heritage of the State of Texas. ECF No. 30 at 15 n.22. Texas Precious Metals ("TPM") also sells Texas-themed precious metals products. ECF No. 30 at 4–9. But TPM does not want competition. *See* ECF No. 30 at 37, 45. To dispel competition for Texas-themed precious metals products, TPM first threatened and then filed suit against Defendants. TPM now requests that the Court declare, among other things, that (1) the Depository has no authority to enter into a contract for any activity beyond custodial depository services and (2) the Depository has no authority to compete with private retailers in the precious metals market or use the shape of the State of Texas, the Texas Capitol, the Texas Capitol Rotunda, or the Texas Star with "T," "E," "X," "A," "S" between the points on any precious metals product, packaging, advertising, promotional materials, or online listing. ECF No. 30 at 37, 45, 46. TPM's claims and requested relief are consistent with neither statute nor logic.

Even taking as true the facts alleged in TPM's Complaint, ECF No. 30, TPM has not plausibly alleged a claim for relief. TPM's conclusory allegations and implausible assertions simply cannot overcome the plain text of Chapter 2116 and carry the burden required to survive a motion to dismiss. The Court should dismiss TPM's Complaint, ECF No. 30, in its entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state

[1] ECF No. 30 at 15 n. 22 (incorporating by reference Office of the Texas Comptroller of Public Accounts, *Acting Texas Comptroller Kelly Hancock Announces Launch of Texas Lone Star Coins and Modern Texas Redback Gold Notes*, (Press Release, December 29, 2025), at https://comptroller.texas.gov/about/media-center/news/20251229-acting-texas-comptroller-kelly-hancock-announces-launch-of-texas-lone-star-coins-and-modern-texas-redback-gold-notes-1766087680245 (last accessed May 5, 2026)der) (hereinafter "ECF No. 30 at 15 n.22").

claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

## ARGUMENT

TPM's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief. TPM failed to state a plausible *ultra vires* claim for relief because even taking as true the facts alleged in TPM's Complaint, Defendants' actions were within their authority as a matter of law. TPM failed to state plausible Lanham Act false advertising and false designation of origin claims because TPM did not plausibly allege a false or misleading material statement that proximately caused a concrete injury to TPM. TPM failed to state plausible Lanham Act trademark infringement and counterfeiting claims because even taking as true the facts in TPM's Complaint, TPM did not allege facts showing the requisite consumer confusion or facts showing Defendants used TPM's marks as source identifiers. Taken as a whole, TPM has not nudged its claims across the line from conceivable to plausible and they should be dismissed. *See Twombly*, 550 U.S. 554, 570 (2007).

### I. TPM has not stated a plausible *ultra vires* claim for relief because Defendants' actions were within their statutory authority as a matter of law.

TPM has not alleged a plausible *ultra vires* claim. "An ultra vires claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v.*

*McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (citing *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). "If the challenged actions 'were not truly outside the officer's authority or in conflict with the law,' then the plaintiff has not stated a valid *ultra vires* claim, and governmental immunity will bar the suit." *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332–33 (Tex. 2022) (quoting *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021)). Crucially, "[u]ltra vires claims depend on the scope of a state official's authority." *Matzen*, 659 S.W.3d at 234. The natural starting place, therefore, is Defendants' authority to act.

Here, TPM incorrectly claims (1) Defendants "acted outside of and exceeded their authority under Chapter 2116 by approving the design, promotion, and sale of State of Texas Coins and Redbacks outside of the authorized operations of the Agency and by claiming such operations constitute the permissible sale of 'promotional items' under § 2116.021(c)[,]" ECF No. 30 at 35; (2) "Defendants and the Agency are acting *ultra vires* by commissioning, authorizing, producing, advertising, promoting, marketing, offering for sale, and contracting for the manufacture, sale, and distribution of precious metals products, even though the Agency's only legislatively authorized purpose is to serve as a precious metals depository[,]" ECF No. 30 at 36; (3) "the Comptroller exceeded his statutory authority to ensure the Agency carries out the legislatively defined operations of a depository and enter into business transactions for that purpose[,]" ECF No. 30 at 38; and (4) "the Administrator exceeded her statutory authority to administer and supervise depository operations (including depository agents) and to approve promotional items to promote the depository," ECF No. 30 at 38.

Even taking as true the facts alleged in TPM's Complaint, Defendants' actions were within their statutory authority and do not conflict with the law. Thus, TPM has not stated a plausible *ultra vires* claim for relief and TPM's ultra vires claim should be dismissed. *See Schroeder*, 646 S.W.3d at 332–33.

### A. Chapter 2116 of the Texas Government Code authorizes Defendants to design, promote, issue, sell, license for sale, or obtain a license to sell, and contract for the production of the commemorative coins and notes.

#### 1. The plain text of the statute authorizes the commemorative coins and notes.

"[W]here text is clear, text is determinative[.]" *Canarchy CRAFT Brewery Collective, L.L.C. v. Tex. Alcoholic Bev. Comm'n,* 37 F.4th 1069, 1074 (5th Cir. 2022) (*quoting Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)). Here, the text is clear. The Depository is authorized to "issue, sell, license for sale, or obtain a license to sell promotional items approved by the administrator to further the purposes of [Chapter 2116] and to promote the depository." Tex. Gov't Code § 2116.021(c). There is no contention that the Administrator did not approve the items. See ECF No. 30. The only question is whether the commemorative coins and notes are promotional items under the statute. The answer is simple: they are.

Chapter 2116 does not define the term "promotional item." Tex. Gov't Code § 2116; ECF No. 30 at 30. "When faced with an undefined statutory term, [the court's] job is to apply the 'common, ordinary meaning, unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Canarchy CRAFT Brewery Collective, L.L.C.*, 37 F.4th at 1074 (quoting *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021)). "To determine a term's common, ordinary meaning, [courts] typically look first to dictionary definitions.'" *Id.* (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)).

The dictionary definition of "promotional" is "of, relating to, or serving the end of promotion." *Promotional*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). The dictionary definition of "promotion" is "the act of furthering the growth or development of something," "especially: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025). Under these definitions, a "promotional item" for the Depository is any item that helps advance the Depository's growth or development through branding, advertising, publicity, or

discounting. *See id.* This phrase is unambiguous and does not yield an absurd result. Therefore, the Court must not look further than the text of Chapter 2116 and find Defendants have authority to authorize and contract for the creation of the commemorative coins and notes. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) (finding reliance on extrinsic aids is "'improper' and 'inappropriate' when statutory language is clear.").

To avoid this outcome, TPM improperly invites the Court to transplant narrower examples of promotional items enumerated in *other* statutes *into* Chapter 2116. ECF No. 30 at 32. However, this argument makes little sense. The fact that the Legislature circumscribed the term "promotional item" more narrowly in other statutes but did not do so in Chapter 2116, cautions *against* TPM's proposed narrow reading of the term "promotional item." It illustrates that the Legislature can narrow the scope of permissible promotional items when it desires, but did not do so here. TPM presents no legal reason for the Court to rewrite the statute to include narrower provisions the Legislature was aware it could include but chose not to include.

Another look at Chapter 2116 confirms Defendants' interpretation. The Legislature added more specific instructions in other areas of Chapter 2116—including areas concerning the authority to lease facilities and receive deposits, *see* Tex. Gov't Code §§ 2116.005, 2116.071—but not in section 2116.021(c). This again illustrates the Legislature was able to, and did, include more specific instructions in Chapter 2116 when it wanted to, but did not do so in section 2116.021(c). This Court should resist TPM's request to rewrite the law from the bench.

**2. Nothing in the statute prohibits the Depository from issuing, selling, licensing for sale, or obtaining a license to sell commemorative coins and notes made from precious metals as promotional items.**

Defendants' interpretation of the law does not conflict with the rest of Chapter 2116 or other applicable law. *See Hall*, 508 S.W.3d at 238 (stating an act is *ultra vires* if the officer exceeds the bounds of his granted authority or the acts conflict with the law). No portion of Chapter 2116 forbids Defendants from approving, issuing, selling, licensing for sale, or obtaining a license to sell precious metals products to promote the Depository. Tex. Gov't Code § 2116. TPM has not

identified any portion of the law that conflicts with Defendants' actions. Meanwhile, section 2116.021(c) provides broad discretion for the Administrator to approve items to promote the Depository. *Id.* at § 2116.021(c). Because TPM has not shown Defendants' actions conflict with Chapter 2116, nor shown that Defendants' actions are outside the scope of their authority under Chapter 2116, TPM has not alleged a plausible ultra vires claim.

**3. The commemorative coins and notes are promotional items intended to further the purposes of Chapter 2116 and promote the purposes of the Depository.**

Even taking as true the facts alleged by TPM, it is clear the commemorative coins and notes are promotional items which promote the purpose of the Depository. TPM's allegations concerning the description of the promotional items highlight the promotional purpose of the commemorative coins and notes. TPM correctly alleges that the Administrator advertised the commemorative coins and notes as a "new program [] designed to commemorate the history and spirit of Texas while also introducing a new audience to the services provided by the Texas Bullion Depository." ECF No. 30 at 15 n.22. This is consistent with the statute because introducing a new audience to the services provided by the Depository is clearly a promotional purpose.

TPM's allegations concerning the customers to which the advertisements are directed also illustrate the promotional purpose of the commemorative coins and notes. TPM alleges that "Defendants are marketing to Texas Precious Metals' exact customer base, *i.e.*, purchasers of gold and silver rounds and 24-karat gold deposited in a durable polymer, with an interest in Texas-themed products." ECF No. 30 at 19. People who purchase gold and silver rounds and 24-karat gold are the type of people who are most likely to take advantage of the Depository's service: storage of precious metals. In other words, the commemorative coins and notes are introducing the Depository's services to a new audience who is most likely to use them.

Promoting the commemorative coins and notes does not reduce the coins' and notes' promotional value or purpose. The Comptroller's RFP No. 237b's inclusion of a clause permitting promotion of the commemorative coins and notes highlights, rather than diminishes, the

promotional purpose of the commemorative coins and notes. A promotional item would serve no purpose if no one knew it existed. TPM provides no logical reason to conclude to the contrary. *See* ECF No. 30 at 32 (claiming, without citation to legal authority, that if the coins were promotional, they would not need to be promoted).

As such, even TPM's own pleading illustrates that the commemorative coins and notes serve a promotional purpose. Because the commemorative coins and notes promote the services of the Depository to the people most likely to use its services, there can be no doubt the commemorative coins and notes fall within section 2116.021(c)'s authority to issue, sell, license for sale, or obtain a license to sell promotional items to further the purpose of the Depository. Tex. Gov't Code § 2116.021(c). Thus, TPM's *ultra vires* claim should be dismissed.

**4. TPM's arguments to the contrary are unavailing.**

Nothing in the applicable statute prohibits promotional items from having extrinsic value. Chapter 2116 does not place a value limit on promotional items. Tex. Gov't Code §2116.021. TPM incorrectly claims "[t]he Agency's precious metals products cannot be promotional items because, among other reasons, they have substantial value." ECF No. 30 at 31. TPM cites no law to support this curious allegation. And in fact, there is nothing in Chapter 2116 that supports it. See Tex. Gov't Code § 2116. To the contrary, section 2116.021(c) clearly contemplates that the items may have extrinsic value. Id. at § 2116.021(c) (authorizing the items to be sold for a commercially reasonable price). Consequently, this argument holds no water.

The statute permits promotional items to be sold at commercially reasonable prices.

Section 2116.021 clearly states that "[t]he depository may set commercially reasonable prices for items licensed or sold under this section." Tex. Gov't Code § 2116.021. Yet TPM alleges that because the commemorative coins and notes are sold "at competitive prices", they are not promotional items. ECF No. 30 at 31–32 (stating the products are offered "at competitive prices"). This is nonsense. Section 2116.021(c) explicitly authorizes promotional items approved by the Administrator to be sold for commercially reasonable prices.

Here, the commemorative coins and notes are sold for commercially reasonable prices. TPM agrees. Specifically, TPM alleges that "[t]he State of Texas Coins and the Redbacks are priced relative to the intrinsic value of their gold and silver content, and their listed prices scale with metal weight and fluctuate with market spot prices . . ..'" ECF No. 30 at 33. Financial institutions and precious metals industry participants use spot prices worldwide to price precious metals products. See ECF No. 30 at 5. Because the commemorative coins and notes prices fluctuate with the spot price consistent with commercial practice worldwide, their prices are "commercially reasonable" and are therefore consistent with the statute's authorization. TPM's argument to the contrary falls flat on its face.

**5. TPM's requested relief belies its arguments.**

TPM's requested relief is so broad it would prohibit the Depository from issuing, selling, licensing for sale, obtaining a license to sell, or contracting for any promotional item—even those TPM admits are promotional in nature. Specifically, TPM requests (1) a declaration that an RFP "for *any activity beyond custodial depository services* (including storage and safeguarding) authorized by Texas Government Code chapter 2116, is *ultra vires*, unauthorized, and therefore void and of no force or effect[,]" ECF No. 30 at 37 (emphasis added), and (2) "a declaration that the Administrator exceeded her statutory authority to administer and supervise depository operations (including depository agents) and to approve promotional items to promote the depository. *She lacks authority to approve, direct, or participate in marketing, sales, or other transactions for non-depository programs*, including the coin and note program described in this Amended Complaint[,]" ECF No. 30 at 38, 45 (emphasis added). But even TPM's own arguments against the commemorative coins and notes do not support granting such broad relief.

First, TPM admits section 2116.021(c) grants the Depository and Administrator at least some authority to approve, issue, sell, license for sale, or obtain a license to sell some promotional items. ECF No. 30 at 30. Second, TPM urges this Court to adopt an atextual, limited understanding of the term "promotional items" and include only items such as clothing, posters,

banners, caps, calendars, books, prints, and the like. ECF No. 30 at 32. TPM's requested relief would not permit this understanding of the law. TPM's overbroad request for relief, which conflicts with TPM's own understanding of the law, illustrates the weakness of TPM's ultra vires claims. Accordingly, TPM's ultra vires claims should be dismissed with prejudice.

### B. The Administrator did not exceed her statutory authority.

Chapter 2116 grants the Administrator broad discretion to administer, supervise, and direct the operations of the depository and to approve promotional items for issuance, license, or sale. *See* Tex. Gov't Code §§ 2116.003(b), 2116.021(c). Even taking as true the facts asserted in TPM's claim, its allegation that "the Administrator exceeded her statutory authority to administer and supervise depository operations (including depository agents) and to approve promotional items to promote the depository" is not plausible. ECF No. 30 at 38.

First, as discussed *supra* § I(A), the items are promotional items which fall under the purview of the statute. Therefore, the Administrator was fully within her statutory authority to approve the items. *See* Tex. Gov't Code § 2116.021(c). Second, the only additional factual allegations concerning the Administrator's authority turn on whether the statute authorizes the commemorative coins and notes as promotional items. *See* ECF No. 30 at 20, 26, 29. Consequently, this claim fails for the same reasons discussed *supra* § I(A).

### C. The Comptroller did not exceed his statutory authority.

Chapter 2116 grants the Comptroller broad authority to enter into transactions to facilitate the operations of the Depository and purposes of Chapter 2116. Tex. Gov't Code § 2116.021(a). Even taking as true the facts asserted in TPM's Complaint, its allegation that "the Comptroller exceeded his statutory authority to ensure the Agency carries out the legislatively defined operations of a depository and enter into business transactions for that purpose" is not plausible. ECF No. 30 at 38.

First, as discussed *supra* § I(A), the commemorative coins and notes are promotional items which further the purposes of the Depository and TPM did not plead plausible facts to the

contrary. Therefore, the Comptroller did not exceed his authority when taking steps to enter into transactions for the design, creation, or manufacture of the commemorative coins and notes. *See* Tex. Gov't Code § 2116.021. Second, the only additional factual allegations concerning the Comptroller hinge on either (1) whether the statute authorizes the commemorative coins and notes as promotional items and (2) the Comptroller's authority to enter into the contract for the commemorative coins and notes. *See* ECF No. 30 at 20, 26, 29. To repeat, as discussed *supra* § I(A), the items are promotional items which fall under the purview of the statute. Thus, the Comptroller had authority to contract for them. Tex. Gov't Code § 2116.021.

Additionally, the Comptroller has authority under Texas Government Code Chapter 403 to license its trademarks. Tex. Gov't Code §§ 403.0301(a)(2–3) (authorizing the Comptroller to "contract with a person for the sale, lease, marketing, or other distribution of the comptroller's intellectual property" and "obtain . . . a royalty, license right, or other appropriate means of securing reasonable compensation for the development or purchase of the comptroller's intellectual property"). TPM does not address the Comptroller's authority under Chapter 403. ECF No. 30. TPM's failure to address the Comptroller's Chapter 403 authority is fatal to its ultra vires claim because it provides authority independent of Chapter 2116 to which TPM objects. For these reasons, TPM cannot state a plausible ultra vires claim, and they should be dismissed with prejudice.

### II. TPM has not pled plausible Lanham Act false advertising and false designation of origin claims.

The Court should find that TPM failed to plead valid false advertising and false designation of origin claims under the Lanham Act. A plaintiff must establish the following factors to demonstrate a prima facie case of false advertising or false designation of origin under the Lanham Act: "(1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result

of the statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *see Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 650–51 n.11 (W.D. Tex. 2021) (a majority of courts within the Fifth Circuit apply the *Pizza Hut* elements to false designation of origin claims under the Lanham Act). A plaintiff's failure to establish the existence of any element is fatal to its claim. *Pizza Hut*, 227 F.3d at 495. A plaintiff must show that the commercial advertisement or promotion of which it complains is either "literally false" or that "it is likely to mislead and confuse consumers." *Id.* "If the statement is shown to be misleading, the plaintiff must also introduce evidence of the statement's impact on consumers, referred to as materiality." *Id.* A statement of fact must be susceptible of "empirical verification" to serve as the basis of a Lanham Act false advertising claim. *See e.g., Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014).

Here, the Court should dismiss TPM's false advertising and false designation of origin claims because TPM has not pled that Defendants' statements are "literally false" or misleading. TPM takes issue with the Depository describing its commemorative coins and notes as "official" and its commemorative coins as "coins." ECF No. 30 at 15, 19. Neither statement is false or misleading.

The definition of "official," when used as an adjective (as it is on the Depository's website), is "ordered or allowed by those in authority." *Official*, https://www.merriam-webster.com/thesaurus/official (last accessed May 3, 2026). Synonyms for "official" include "authorized," "legal," "approved," and "promoted." *Id.*; *see also Franklin v. State*, 193 S.W.3d 616, 620-21 (Tex. App.—Ft. Worth 2006, no pet.) (evidence that defendant "authorized" conduct permitted jury to find that defendant gave his "official approval or permission" for the conduct).

Texas law allows the Depository to "advertise and promote the depository in any available media" and "issue, sell, license for sale, or obtain a license to sell promotional items." Tex. Gov't Code § 2116.021. Issuing and selling commemorative coins and notes is an "official" Texas program authorized by statute to promote the Depository's services. TPM has failed to plead facts sufficient to show that the Depository's description of the promotional coins and notes program

as "official" is literally false or misleading.

TPM also argues that the Depository's promotional coins are not "coins" because they are not minted by a sovereign entity with a face value and legal tender status. ECF No. 30 at 15. The definition of "coin" is broader than TPM suggests. When used as a noun, "coin," means "something resembling a coin especially in shape." *Coin*, https://www.merriam-webster.com/dictionary/coin (last accessed May 3, 2026). Moreover, the Depository's website contains a clear disclaimer stating that its branded commemorative coins and notes are not legal tender and the commemorative coins are not stamped with a monetary face value. ECF No. 30 at 31 n. 7 (citing https://texasbulliondepository.gov/state-of-texas-2025-1-oz-gold-proof-coin (last accessed May 3, 2026) ("State of Texas coins are not legal tender in the United States or any foreign country.")). Disclaimers—like the disclaimer on the Depository's website—provide clear information to consumers about a product, thereby helping to avoid consumer confusion. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F. 3d 526, 552–53 (5th Cir. 1998).

The Depository's branded commemorative coins resemble coins, especially in shape. *See, e.g.*, ECF No. 30 at 16. The Depository accurately describes its commemorative coins as "coins," as the word is commonly understood. TPM has failed to plead that the Depository's statement describing its products as "coins" is false or misleading.

TPM also failed to plead facts sufficient to show that the statements it claims are false or misleading materially impacted consumer purchasing decisions in the context in which the statements were made or that consumers were deceived by the statements. TPM has failed to show that the Depository's statements that its products are "official" or "coins" were material misrepresentations likely to influence consumer purchasing decisions. TPM has also failed to show that the Depository's statements were misleading in the context in which they were made. A statement that is not literally false but is likely to mislead and confuse consumers may give rise to a Lanham Act claim. *Pizza Hut*, 227 F.3d at 495. A claimant must demonstrate that such a statement is ambiguous or true but misleading. *Id.* at 497. The claimant "must also introduce evidence of the statement's impact on consumers, referred to as materiality." *Id.* at 495. The

claimant must also establish "that [it] ha[s] been or [is] likely to be injured as a result" of the defendant's misrepresentations. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). Generally, the claimant must demonstrate "economic or reputational injury flowing directly from deception wrought by the defendant's advertising; and that that occurs when [a defendant's] deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

TPM has not pled facts that, if true, demonstrate actual lost sales or that it lost any sales due to the Depository's description of the promotional coins and notes as "official" or "coins." TPM's reliance on a smattering of social media postings and a few telephone calls that TPM alleges it received are insufficient to establish materiality. TPM has failed to plead any facts concerning the notes. TPM has also failed to plead facts that would tend to show that consumers purchased a commemorative coin thinking it was legal tender. Nor has TPM pled facts that would tend to prove the silhouette of Texas on the Depository's promotional products led consumers to believe that TPM produced the commemorative coins or notes.

The facts TPM relies upon in its operative complaint, if true, actually show that it is TPM's website domain name that misleads consumers into believing that TPM is the Texas Bullion Depository, not the other way around. *See* ECF No. 30 ¶ 51; *see also* https://texasdepository.com/ (last accessed May 4, 2026). The phone calls TPM has pled, if true, demonstrate that its website confuses consumers, not that Defendants' statements caused consumer confusion. *See* ECF No. 30 at 25. TPM has failed to plead facts that, if true, demonstrate valid false advertising or false designation of origin claims under the Lanham Act. The Court should dismiss those claims.

### III. TPM lacks statutory standing to pursue its claims arising under § 1125(a) of the Lanham Act.

TPM lacks statutory standing to pursue its false advertisement, false designation of origin, and other claims arising under § 1125(a) of the Lanham Act. ECF No. 30 at 38–41 (raising such claims). Statutory standing, distinct from constitutional standing, "asks the merits question of whether or not a particular cause of action authorizes an injured plaintiff to sue." *Simmons v. UBS*

*Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) (citation and internal quotation marks omitted). To properly invoke a cause of action under the Lanham Act, a plaintiff must show (1) its interests rest "within the zone of interests protected by the" statute, *see Lexmark Int'l, Inc.*, 572 U.S. at 129, and (2) its injuries were "proximately caused by violations of the statute," *id.* at 132.[2] A Lanham Act plaintiff without statutory standing may have its claims dismissed on a 12(b)(6) motion. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796–97 (5th Cir. 2011). Here, TPM failed to satisfy the proximate cause requirement.

TPM has not satisfied the proximate-cause requirement of statutory standing. Ordinarily, a plaintiff suing under § 1125(a) of the Lanham Act satisfies the proximate-cause requirement by showing "economic or reputational injuries *flowing directly* from" the defendant's allegedly deceptive advertising, which ultimately "causes [consumers] to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133 (emphasis added). "[H]arm that is 'too remote' from the defendant's [allegedly] unlawful conduct" does not pass muster. *Id.* The underlying principle is courts' recognition that a party's liability should be limited to "consequences" directly connected to "that [party's] own acts." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

TPM has not pled or shown that its purported "competitive and reputational injuries," *see* ECF No. 30 at 4, "flow[] directly from" Defendants' alleged false advertisement or unauthorized use of TPM's registered trademarks in commerce. *See Lexmark*, 572 U.S. at 133. Neither the social media posts nor the phone calls described in TPM's Complaint illustrate any *causal* link between the alleged false advertisement and any alleged confusion. ECF No. 30 at 24–25.

Furthermore, TPM cannot show Defendants' advertisement and sale of commemorative coins and notes in fact prompted consumers to "withhold trade from" TPM. *See Noble Cap. Tex.*

---

[2] Although the Supreme Court's decision in *Lexmark* "only addressed unfair competition based on false advertising," at least one court in this circuit has declined to conclude "that the zone of interest or the proximate cause standards that the *Lexmark* Court applied to unfair competition claims based on false advertising differ—or should differ—from those applied to claims based on false designation of origin." *Reed v. Marshall*, No. H-21-3942, 2024 WL 1468702, at *9 (S.D. Tex. Apr. 4, 2024); *see also Reed v. Marshall*, 142 F.4th 338, 350 (5th Cir. 2025) (applying the zone of interest and proximate cause standard to a false designation of origin claim).

*Real Est. Income Fund LP v. Newman*, No. 1:22-CV-652, 2024 WL 987572, at *4 (W.D. Tex. Mar. 7, 2024) (Ezra, J.) (discussing "proximate-cause requirement" for statutory standing under Lanham Act). It is possible for a Lanham Act plaintiff to establish proximate cause by demonstrating "there is 'something very close to a 1:1 relationship' between the transactions diverted to the defendant and the plaintiffs' losses.'" *HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1254–55 (N.D. Cal. 2023) (quoting *Lexmark*, 572 U.S. at 139). But as this Court previously discerned, TPM offers no evidence of lost sales to the Depository aside from "point[ing] to the [Depository's] own increase in coin production." ECF No. 25 at 12.

The phone calls and social media posts that TPM relies on to advance its Lanham Act claims at best capture snapshots in time—they do not reveal whether consumers ultimately determined to purchase products from TPM, the Depository, or *either* entity for that matter. *See* ECF No. 30 at 24–25. Nor do they reveal whether or to what extent Defendants' supposedly false advertisement influenced consumers' purchasing decisions. *See id.* And then again, one can only speculate whether callers ended up purchasing precious metal products from TPM *and* the Depository. By "merely alleging injuries to . . . competition in the abstract, [TPM] does not show how [it] was injured by the alleged customer deception." *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *6 (W.D. Tex. Mar. 6, 2018). Because TPM has failed to establish Defendants' conduct as the proximate cause of its purported commercial harm, its claims under § 1125(a) of the Lanham Act should be dismissed.

**IV. TPM has not pled a plausible Lanham Act trademark infringement claim.**

Even taking as true the facts pled, TPM failed to state a plausible claim for trademark infringement. To prove a trademark infringement claim under 15 U.S.C. § 1114 a plaintiff must show (1) it possesses valid trademarks and (2) the other party's *use of the trademarks* creates a likelihood of confusion as to the source, affiliation, or sponsorship. *Nola Spice Designs, L.L.C v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citing *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012)). While the likelihood of confusion element

requires a fact-specific and contextual inquiry, a trademark infringement claim may still be denied at the motion to dismiss stage when the allegations regarding consumer confusion are implausible. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 428–29 (5th Cir. 2021). Such is the case here.

TPM's allegations of consumer confusion are not plausible. First, on its face, it is implausible that consumers will believe a commemorative coin with "Texas Bullion Depository" emblazoned on it is sold by TPM because it depicts a relief map of the State of Texas. ECF No. 30 at 19–20. It is even more implausible that consumers will believe a commemorative note *with Texas Bullion Depository's name and website on it* is actually sold by TPM because it contains a decorative shadow of the shape of Texas. ECF No. 30 at 22. Yet this is precisely what TPM claims. ECF No. 30 at 19–25 (including examples of the commemorative notes containing the Texas Rotunda, Capitol, a star containing "T E X A S" in the spokes, and a very small shape of Texas underneath "Texas Bullion Depository"). Despite TPM's repeated assertions that the items are "confusingly similar," common sense cautions that it is implausible consumers associate insignia of the State of Texas with TPM as opposed to the State of Texas's agency, the Texas Bullion Depository. This implausibility is borne out in the examples provided in TPM's Complaint. ECF No. 30 at 24–25.

Possibly most implausible is TPM's allegation that "by their very nature of being banknote-style bills made with 24-karat gold deposited in a durable polymer, Defendants' Redbacks are also confusingly similar to Texas Precious Metals' gold notes." ECF No. 30 at 21. In other words, TPM alleges that no other entity can make gold notes besides TPM. *See* ECF No. 30 at 21. The implausibility of this allegation (and its transparent anti-competitive purpose) is not remedied by TPM's follow up allegations that the commemorative notes contain depictions of the shape of Texas, the Texas Capitol, the Texas Star, and the Capitol Rotunda. ECF No. 30 at 22–24.

Unlike in *Jim S. Adler, P.C.*, TPM has not pled "specific factual allegations describing how the use of [TPM's] marks . . . caused initial interest confusion." 10 F.4th at 429. In *Adler*, the pleading included specific factual allegations illustrating not only did McNeil's advertisements improperly use Adler's marks, but also showing (1) that clicking on the advertisement directly led

to a call with a McNeil employee who did not identify who they were and who sought to build a rapport with the customer prior to disclosing McNeil's identity and (2) how this caused initial interest confusion. *Id.* at 429. Not so here.

Here, despite TPM's conclusory claims that the use of the marks causes confusion, the facts pled by TPM illustrate that consumers are *not* confused by the symbols or insignia. ECF No. 30 at 24–25. As one example of alleged confusion, TPM cites a potential customer who called TPM looking to purchase the Depository's commemorative coins. *Id.* In this example, the consumer knew which coins he wanted to purchase but accidentally called TPM instead of the Depository. *Id.* Unlike in *Adler*, this example does nothing to show confusion caused *by* use of the alleged marks. This example includes no information on why the consumer reached out to TPM instead of the Depository, much less plausibly illustrate it was because of the alleged use of TPM's marks.

TPM's next example of confusion fares no better. TPM includes a post on X where three users are discussing the Depository's commemorative coins. ECF No. 30 at 25. One user, clearly discussing the Depository's commemorative coins, posted a link to TPM's website: https://www.texasmint.com/texasgold. *Id.* Once again, this does nothing to show confusion *caused by use of the alleged marks*. In the same post, another user left a comment concerning why the Depository was calling the commemorative coins "coins" and not rounds. *Id.* Again, whether the item is called a coin or a round is unrelated to alleged use of the alleged trademarks and does nothing to support TPM's trademark claim. TPM's trademark claims should be dismissed on this basis.

Also, TPM has not plausibly alleged that Defendants are using TPM's silhouette mark, much less using it as a source identifier. To plead a plausible trademark claim, the moving party must plausibly allege the opposing party is using its mark. *See Nola Spice Designs, L.L.C.*, 783 F.3d at 536. As illustrated on page 20 of TPM's pleadings, the Depository's commemorative coins do not use the same silhouette mark as TPM. ECF No. 30 at 20. The Depository's commemorative coin contains a detailed relief map of Texas and TPM's round contains a flat outline of Texas with

a star over it. *Id.* These are obviously different designs. The same is true for the rest of TPM's allegations and is fatal to TPM's trademark claims. *See Am. Conservative Union v. Inst. for Legislative Analysis*, No. 1:24-cv-500 (RDA/LRV), 2025 WL 510236, at *14 (E.D. Va. Feb. 13, 2025) (granting a 12(b)(6) motion because "the only possible similarity between the two marks is the use of a star, but no one could claim that the two stars look alike").

Additionally, as is evident on the face of TPM's Complaint, the commemorative coins and notes incorporate designs that are not used as marks. ECF No. 30 at 16–17. Rather, they are used to descriptively, fairly, and in good faith describe the geographic origin of the Depository's commemorative coins and notes (the State of Texas). *See* 15 U.S.C. § 1115(b)(4). This is classic fair use. There is no need to go outside the four corners of TPM's Complaint to find that TPM's infringement claim should be dismissed on this basis. *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980) ("The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods.").

Likewise, TPM's allegations do not support finding TPM is using the designs at issue as source identifiers. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001) ( finding the record did not support finding the Tribune's distinctive masthead was the source identifier, not the use "The joy of six"). A mint mark is used as a source identifier for precious metals products. ECF No. 30 at 5. TPM's pleadings confirm the Depository's mint mark is not the same as any of TPM's alleged trademarks. *See* ECF No. 30 at 5, 27 (illustrating TPM's mint mark and the Depository's mint mark). For these reasons, TPM failed to state a plausible trademark infringement claim, and it should be dismissed.

**V. TPM has not pled a plausible counterfeiting claim.**

TPM has not pled facts plausibly showing Defendants intentionally infringed on TPM's trademark. *See* ECF No. 30 at 43 (alleging "Defendants' conduct therefore constitutes willful, deliberate, and intentional counterfeiting of Texas Precious Metals' marks."). "To state a claim

for trademark counterfeiting under 15 U.S.C. § 1114(1), a plaintiff must allege that (1) defendants committed a trademark infringement in violation of 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit, as the term is defined in 15 U.S.C. § 1116." *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 713 (N.D. Tex. 2018) (citing *Haggar Clothing Co. v. Sai Lakshmi Indus. Priv. Ltd.*, No. 3:09-CV-0802-M, 2009 WL 2868443, at *5 (N.D. Tex. Sept. 3, 2009); 15 U.S.C. § 1116 (defining "counterfeit mark"). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "Likelihood of confusion is also an element of counterfeiting." *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 818 (5th Cir. 2019).

As discussed *supra* § IV, TPM has not pled a plausible claim of trademark infringement or plausibly alleged confusion. *Kipp Found.*, 325 F. Supp. 3d at 713 (stating trademark infringement is an element of a counterfeiting claim); *Houston Indep. Sch. Dist.*, 912 F.3d at 818 (stating likelihood of confusion is an element of a counterfeiting claim). Also, TPM's silhouette mark is the only mark it has alleged is on the principal register. ECF No. 30 at 11; *see* 15 U.S.C. § 1116. TPM has not alleged sufficient facts showing intentional, willful, or deliberate use of TPM's alleged trademarks because, as discussed *supra* § IV, the shape of Texas on the commemorative coins is not identical to or substantially indistinguishable from the TPM's silhouette mark. ECF No. 30 at 20–21; *see* 15 U.S.C. § 1127 (stating a counterfeit is identical to or substantially indistinguishable from the registered mark). For these reasons, TPM has not plausibly alleged a counterfeiting claim, and it should be dismissed.

## **Conclusion**

For the foregoing reasons, Defendants Don Huffines, in his official capacity as Acting Texas Comptroller of Public Accounts and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository, respectfully request that the Court dismiss TPM's claims with prejudice.

Date: November 12, 2026

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM D. WASSDORF**
Deputy Attorney General for Civil Litigation
No. 24103022

**ROB FARQUHARSON**
Deputy Attorney General for Legal Strategy

**MICHAEL C. COTTON**
Chief, Special Litigation Division

/s/ *David Bryant*
**DAVID BRYANT**
Senior Special Counsel
Texas Bar No. 03281500

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
will.wassdorf@oag.texas.gov
david.bryant@oag.texas.gov

**JERED E. MATTHYSSE**
512-322-5200

**ALEXANDRA HOLMES BISTLINE**
512-482-5239

**PIRKEY BARBER PLLC**
1801 East 6th Street
Suite 300
Austin, TX 78702
Fax: 512-322-5201
jmatthysse@pirkeybarber.com
abistline@pirkeybarber.com

***Counsel for Don Huffines, in his official capacity as Texas Comptroller of Public Accounts, and Macy Douglas, in her official capacity as Administrator of the Texas Bullion Depository***

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on November 12, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

/s/ *David Bryant*
**DAVID BRYANT**